MORGAN, LEWIS & BOCKIUS LLP
Eric Meckley, Bar No. 168181
eric.meckley@morganlewis.com
Brian D. Berry, Bar No. 229893
brian.berry@morganlewis.com
Kassia Stephenson, Bar No. 336175
kassia.stephenson@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA  94105-1596
Tel:     +1.415.442.1000
Fax:    +1.415.442.1001

MORGAN, LEWIS & BOCKIUS LLP
Ashlee N. Cherry, Bar No. 312731
ashlee.cherry@morganlewis.com
1400 Page Mill Road
Palo Alto, CA  94304
Tel:     +1.650.843.4000
Fax:    +1.650.843.4001

Attorneys for Respondents
TWITTER, INC.; X HOLDINGS I, INC.; X HOLDINGS CORP.; X CORP.; ELON MUSK

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARAH ANOKE, CATHERINE BONN, ISABELLE CANNELL, MELANIE EUSEBIO, SAMANTHA FESTEJO, CARLOS MOISES ORTIZ GOMEZ, DAWN HOISE, WAYNE KRUG, LAURENT LUCE, PATRICK O'CONNELL, JENNIFER RYAN, JAIME SENA, JAMES SHOBE, KARYN THOMPSON, AND CRISTIAN ZAPATA,<br><br>Petitioners,<br><br>v.<br><br>TWITTER, INC., X HOLDINGS I, INC., X HOLDINGS  CORP, X CORP, AND ELON MUSK,<br><br>Respondents. | Case No. 3:23-cv-02217-SI<br><br>**RESPONDENTS' OPPOSITION TO PETITION TO COMPEL ARBITRATION PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 1281.97** |

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 45713683

RESPONDENTS' OPPOSITION TO PETITION TO COMPEL ARBITRATION
CASE NO. 3:23-cv-02217-SI

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ............................................................................................................. 1

II. FACTUAL AND PROCEDURAL BACKGROUND ....................................................... 3

    A. Petitioners' Arbitrations with JAMS. ................................................................... 3

    B. Respondents' Meet and Confer Efforts. ............................................................... 5

III. ARGUMENT ..................................................................................................................... 5

    A. The FAA's Equal-Treatment Principle Preempts Section 1281.97. ..................... 5

    B. Petitioners That Reside, Worked For Twitter, and Seek Arbitration Outside of California Lack Standing to Enforce Section 1281.97. .................................. 10

    C. Twitter Did Not Violate Section 1281.97 Because It Timely Paid All JAMS Invoices. ..................................................................................................... 11

IV. CONCLUSION ................................................................................................................ 15

-i-

RESPONDENTS' OPPOSITION
TO PETITION TO COMPEL
ARBITRATION
Case No. 3:23-cv-02217-SI

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A. Exp. Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013)..................................................................................................................5

*AT&T Mobility v. Concepcion*,
563 U.S. 333 (2011)...............................................................................................................5, 6

*Belyea v. Greensky*,
Case No. 20-cv-01693-JSC, 2022 WL 14965532 (N.D. Cal. Oct. 26, 2022).................. *passim*

*Brown v. Dillard's, Inc.*,
430 F.3d 1004 (9th Cir. 2005)...................................................................................................8

*Caballos v. Convoy Motors LLC*,
No. 37-2019-00056119-CU-CO-CTL (Cal. Super. Ct. July 23, 2020) .....................................9

*Chamber of Commerce of the U.S. of Am. v. Bonta*,
62 F.4th 473 (9th Cir. 2023).......................................................................................................6

*De Leon v. Juanita's Foods*,
85 Cal.App.5th 740 (2022).........................................................................................................9

*Durham Com. Cap. Corp. v. Select Portfolio Servicing, Inc.*,
No. 3:14-CV-877-J-34PDB, 2016 WL 6071633 (M.D. Fla. Oct. 17, 2016) ...........................12

*Epic Sys. Corp. v. Lewis*,
138 S. Ct. 1612 (2018)...............................................................................................................5

*Espinoza v. Superior Ct.*,
83 Cal. App. 5th 761 (2022)...................................................................................................8, 9

*Gallo v. Wood Ranch USA, Inc.*,
81 Cal. App. 5th 621 (2022).......................................................................................................8

*Hall v. Marriott Int'l, Inc.*,
No. 19-CV-1715 JLS (AHG), 2020 WL 4727069 (S.D. Cal. Aug. 14, 2020).........................10

*Kindred Nursing Centers Ltd. P'ship v. Clark*,
581 U.S. 246 (2017)...................................................................................................................6

*Lamps Plus, Inc. v. Varela*,
139 S. Ct. 1407 (2019)...............................................................................................................6

*Loeffler vs. DeMars & Assocs, Ltd.*,
No. 30-2017-00923227-CU-BT-CJC (Cal. Super. Ct. Aug. 14, 2020) ................................7, 9

-ii-

RESPONDENTS' OPPOSITION
TO PETITION TO COMPEL
ARBITRATION
Case No. 3:23-cv-02217-SI

Morgan, Lewis &
Bockius LLP
Attorneys at Law
San Francisco

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985) ................................................................................................... 5

*Morales v. Midland Credit Management, Inc., et al.*,
    Case No. 19CV356585 (Cal. Super. Ct. Mar. 3, 2023) ............................................. 9

*N. Alaska Salmon v. Pillsbury*,
    174 Cal. 1 (1916) ....................................................................................................... 2

*Postmates Inc. v. 10,356 Individuals*,
    2021 WL 540155 (C.D. Cal. Jan. 19, 2021) .............................................................. 8

*Sullivan v. Oracle*,
    51 Cal. 4th 1191 (2011) ....................................................................................... 2, 10

*Urica, Inc. v. Pharmaplast S.A.E.*,
    2013 WL 12123230 (C.D. Cal. May 6, 2013) .......................................................... 8

*Viking River Cruises, Inc. v. Moriana*,
    142 S. Ct. 1906 (2022) ............................................................................................... 6

*Waters v. Vroom Inc.*,
    No. 22-CV-1191 TWR (AGS), 2023 WL 187577 (S.D. Cal. Jan. 13, 2023) ......... 13

*Williams v. West Coast Hospitals, Inc.*,
    86 Cal.App.5th 1054 (2022) ................................................................................ 9, 14

**Statutes**

2021 Cal. Legis. Serv. Chapter 222 ......................................................................................... 7

California Civil Code
    § 1657.1 .................................................................................................................. 6, 7
    § 1717 ........................................................................................................................ 7

California Code of Civil Procedure
    § 1281.97 .......................................................................................................... *passim*
    § 1281.97(b)(1) ......................................................................................................... 7
    § 1281.97(b)(2) ......................................................................................................... 1

**Federal Arbitration Act**, 9 U.S.C.
    § 1 et seq. .................................................................................................................. 5
    § 2 ...................................................................................................................... 5, 6, 9

**Legislation**

2021 Cal. Legis. Serv. Chapter 222 ......................................................................................... 6

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

RESPONDENTS' OPPOSITION
TO PETITION TO COMPEL
ARBITRATION
Case No. 3:23-cv-02217-SI

## I.     INTRODUCTION

Petitioners Sarah Anoke, Catherine Bonn, Isabelle Cannell, Melanie Eusebio, Samantha Festejo, Carlos Moises Ortiz Gomez, Dawn Hoise, Wayne Krug, Laurent Luce, Patrick O'Connell, Jennifer Ryan, Jaime Sena, James Shobe, Karyn Thompson, and Cristian Zapata ("Petitioners") each entered into a Dispute Resolution Agreement (the "DRA") with their former employer Twitter, Inc. ("Twitter") that requires submission of any employment-related claims between them and Twitter to individual arbitration with the third-party arbitration provider JAMS.  Petitioners do not contend that their claims are in the wrong forum at JAMS.  Indeed, without any court order, Petitioners filed their demands in arbitration with JAMS, and JAMS has been actively administering their arbitrations, including conducting an administrative conference with the parties.  Nevertheless, Plaintiffs filed a "Petition to Compel Arbitration" in court because they purportedly believe that Twitter failed to timely pay a JAMS invoice within 30 days of receipt, allegedly in violation of California Code of Civil Procedure section 1281.97, which authorizes a party to "[c]ompel arbitration in which the drafting party shall pay reasonable attorney's fees and costs related to the arbitration."  *See* Cal. Code Civ. Proc. ¶ 1281.97(b)(2); Pl's Memo. at 3:20-23.

The Court should reject their Petition in its entirety for several independent grounds. First, the Federal Arbitration Act ("FAA") expressly governs the parties' arbitration agreement and clearly preempts section 1281.97, which conflicts with the FAA's mandate to place arbitration contracts on equal footing with any other contract. *See Belyea v. Greensky*, Case No. 20-cv-01693-JSC, 2022 WL 14965532, at *8 (N.D. Cal. Oct. 26, 2022) (holding that section 1281.97 is preempted because it violates the FAA's equal-treatment principle by creating enforceability conditions unique to arbitration agreements that are at odds with general contract law).

Second, in addition to preemption, section 1281.97 is simply inapplicable to the thirteen (out of fifteen) Petitioners who are not California residents, whose arbitrations will be conducted before JAMS in states outside of California.  Specifically, Petitioners Anoke, Bonn, Cannell,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-1-

RESPONDENTS' OPPOSITION
TO PETITION TO COMPEL
ARBITRATION
Case No. 3:23-cv-02217-SI

Festejo, Gomez, Hoise, Krug, O'Connell, Ryan, Sena, Shobe, Thompson, and Zapata all submitted demands for arbitration expressly stating that they reside, and worked for Twitter, in states other than California, and are pursuing arbitration outside of California. *See* ECF No. 3, Exs. A-O. In addition, their DRAs mandate that the enforceability of the arbitration agreement be determined under the laws of the states in which Petitioners resided when they signed the DRAs (*i.e.,* not California) – thus, pursuant to the terms of these contracts, California law would not apply. As non-residents who performed their work outside of the state of California and are pursuing arbitration outside California, these Petitioners lack standing to invoke section 1281.97, which has no extraterritorial application to their claims. *N. Alaska Salmon v. Pillsbury*, 174 Cal. 1, 4 (1916); *Sullivan v. Oracle*, 51 Cal. 4th 1191, 1207 (2011).

Third, the Petition fails under section 1281.97 because Twitter paid all outstanding invoices on time. JAMS issued two separate invoices to Twitter for payment of Petitioners' filing fees—a March 6, 2023 invoice (JAMS Invoice #6564514) and an April 7, 2023 invoice (JAMS Invoice #6612772)—and both were timely paid. **Petitioners' counsel** (erroneously) paid the March 6 invoice, and JAMS responded by closing out the invoice and notifying Twitter that this invoice was closed. Indeed, JAMS repeatedly represented to the parties that the March 6 invoice had been paid and closed. When JAMS realized that it had closed the invoice based on the payment by Petitioners' counsel (who sought a refund), JAMS then "nulled" the March 6, 2023 invoice (i.e., JAMS Invoice #6564514) and issued a completely new invoice dated April 7, 2023 (i.e., JAMS Invoice #6612772), and directed Twitter to pay *this invoice* (not the prior invoice that had been both "closed" and "nulled"). Twitter timely paid the April 7 invoice within 30 days of receipt. As a result, there was no untimely payment under section 1281.97.

Respondents explained the above circumstances and chronology to Petitioners' counsel prior to the filing of the Petition. Yet, in an obvious attempt to harass and increase costs for Respondents, Petitioners proceeded with filing this meritless Petition. The Court should deny the Petition in its entirety and dismiss this matter from the Court's docket.

/ / /

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-2-

RESPONDENTS' OPPOSITION
TO PETITION TO COMPEL
ARBITRATION
Case No. 3:23-cv-02217-SI

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Petitioners' Arbitrations with JAMS.

On February 24, 2023, Petitioners' counsel, the Kamerman, Uncyk, Soniker & Klein P.C. ("Kamerman") law firm, submitted seventeen (17) demands for arbitration to JAMS, which included Petitioners' fifteen (15) individual demands for arbitration.[1]  Stephenson Decl., ¶ 5. JAMS assigned Petitioners' arbitrations to JAMS Reference No. 1601002006, grouping them under an existing JAMS reference number applicable to fifteen (15) other individual arbitrations that were previously submitted on February 14, 2023 by the Kamerman law firm. *Id.*, ¶¶ 4-5. On March 6, 2023, JAMS issued a non-refundable filing fee invoice, JAMS Invoice #6564514, aggregating the filing fees for the seventeen (17) individual arbitrations that were submitted to JAMS on February 24 into a single invoice, which included Petitioners' arbitrations.[2] *Id.* ¶ 6; *see also* Declaration of Akiva M. Cohen ("Cohen Decl."), ¶ 6, Ex. 2. On March 8, 2023, the online JAMS portal showed that the "status" of this March 6, 2023 invoice was "closed," and that the full amount due for the invoice was paid. Stephenson Decl., ¶ 6. Based on the previous invoice payments that Twitter had already paid to JAMS for other arbitrations, Twitter understood this invoice payment to be completed upon reviewing the status of the invoice in the online JAMS portal. *See id.*, ¶¶ 3-4, 6.

On March 10, 2023, pursuant to JAMS Rule 9, Respondents timely served a response to the seventeen (17) demands for arbitration that were submitted on February 24, 2023, including Petitioners' demands for arbitration. Stephenson Decl., ¶ 7. On March 28, 2023, JAMS Case Manager Sarah Nevins emailed the counsel for the parties in the above arbitrations. *Id.*, ¶ 8. The subject line of Ms. Nevin's March 8 email was "Kamerman Twitter Cases – JAMS Reference No.

---

[1] In addition to Petitioners' fifteen (15) demands for arbitration, Petitioners' counsel has submitted fifty-one (51) other individual demands for arbitrations on behalf of other claimants across the country and have brought a total of sixty-six (66) individual demands for arbitration with JAMS to date.  Declaration of Kassia Stephenson ("Stephenson Decl."), ¶ 2.

[2] As of March 6, 2023, Twitter had received and was handling the processing and payment of more than 1,500 individual demands for arbitration before JAMS on behalf of claimants represented by multiple other law firms.  *Id.*, ¶ 13.  To date, Twitter has timely paid all JAMS invoices for these arbitrations. *Id.*

160100200", and the body/text of the email confirmed that "[t]he initial filing fees in the above referenced matters have now been paid." *Id.*; Cohen Decl., ¶¶ 13-14, Ex. 3. JAMS Reference No. 160100200 included *both* the fifteen demands served on February 14 *and* the seventeen arbitration demands (including Petitioners' demands) served on February 24. Stephenson Decl., ¶¶ 4-5, 8. Therefore, JAMS' email expressly represented to Respondents that the initial filings fees for all the arbitration demands within Reference No. 160100200 – including Petitioners' demands – had been paid. *Id.*, ¶ 8; Cohen Decl., ¶¶ 13-14, Ex. 3. The email further explained that Ms. Nevins was "writing to set an administrative call in these matters." Stephenson Decl., ¶ 8; Cohen Decl., ¶¶ 13-14, Ex. 3. Counsel for the parties provided their availability in response to this email. Stephenson Decl., ¶ 8. On April 3, 2023, counsel for the parties and Ms. Nevins convened for a telephonic administrative conference, during which the parties discussed administrative matters, such as the arbitrator selection process, applicable to the thirty-three (33) individual arbitrations that the Kamerman law firm had submitted as of that date, which included Petitioners' arbitration demands. *Id.*

On April 7, 2023, and without any context, JAMS issued a non-refundable filing fee invoice to Twitter (JAMS Invoice #6612772), requesting payment in the amount of $27,700. Stephenson Decl., ¶ 9. Four days later, on April 11, 2023, JAMS Case Manager Ms. Nevins emailed counsel for the parties stating that she was writing to "follow up regarding the filing fee on behalf of Respondent for the 17 other claims in this matter." *Id.*, ¶ 9, Ex. B. Ms. Nevins explained that JAMS' billing department "<u>may have nulled the original invoice</u>." (emphasis added). *Id.* Ms. Nevins attached the new April 7, 2023 invoice to her April 11, 2023 email. *Id.* On May 5, 2023, Twitter timely paid the April 7, 2023 JAMS invoice. *Id.*, ¶ 12.

Petitioners' arbitrations are all proceeding before JAMS. *See*, *e.g.*, Stephenson Decl., ¶¶ 5, 7-8, 12. Petitioners have requested arbitration hearings in their various states and cities across the country, including all of the following: Tulsa, Oklahoma; Boulder, Colorado; Seattle, Washington; San Francisco, California; New York, New York; Madison, Wisconsin; Portland, Oregon; Beaverton, Oregon; and Lawrenceville, New Jersey. *Id.*, ¶ 5; *see also* ECF No. 3, Exs.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-4-

RESPONDENTS' OPPOSITION
TO PETITION TO COMPEL
ARBITRATION
Case No. 3:23-cv-02217-SI

A-O.  During the parties' April 3, 2023 administrative call, the parties discussed the availability of JAMS arbitrators in several of the states where Petitioners reside.  Stephenson Decl., ¶ 8.

On April 27, 2023, Petitioners filed a "Petition to Compel Arbitration" in state court requesting an order "compel[ling] Twitter to arbitration, direct[ing] it to pay any fees still outstanding, and order[ing] it to pay Petitioners' costs and reasonable attorneys' fees in connection with their arbitrations."  Pl's Memo. at 3:20-23.  On May 5, 2023, Twitter removed the Petition to this Court.  ECF No. 1.

### B. Respondents' Meet and Confer Efforts.

On April 21, 2023, Petitioners' counsel first notified Respondents' counsel of the assertion that Twitter failed to pay JAMS invoices within 30 days of issuance and their intent to file a petition under 1281.97.  *Id.*, ¶ 11.  Petitioners' counsel did not identify any specific invoice from JAMS that they contended was not timely paid or provide any other information whatsoever.  *Id.*  Petitioners' counsel stated that they intended to file the petitions the very next business day, Monday, April 24 – thus providing Respondents with less than one business day to respond to the allegation that Twitter failed to timely pay an arbitration invoice.  *Id.*  Respondents promptly responded, sending a letter to Petitioners' counsel, outlining the relevant facts surrounding the payment of this invoice and explaining why Respondents had not violated CCP section 1281.97.  *Id.*, ¶ 11, Ex. D.  Despite this clear explanation that no violation occurred, Petitioners proceeded with filing the current motion six days later, on April 27, 2023.  *See*, *e.g.*, ECF No. 1-1, Ex. A.

## III. ARGUMENT

### A. The FAA's Equal-Treatment Principle Preempts Section 1281.97.

The FAA governs the Parties' DRA because Twitter operates in interstate commerce and the DRA itself expressly states, "**This Agreement is governed by the Federal Arbitration Act**, 9 U.S.C. § 1 et seq. and evidences a transaction involving commerce."  *See* ECF No. 3 (Declaration of Eric Meckley ("Meckley Decl.")), ¶¶ 2-18, Exs. A-O (emphasis added).  Section 2 of the FAA provides that any written agreement to arbitrate "shall be valid, irrevocable, and

enforceable save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  The FAA's primary purpose is to "enforce private agreements into which parties [have] entered." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625-26 (1985).  To that end, the FAA requires courts to "rigorously enforce agreements to arbitrate." *Id.* at 626; *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018); *AT&T Mobility v. Concepcion*, 563 U.S. 333, 339 (2011); *A. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013).

Under the equal-treatment principle of Section 2 of the FAA, a court may invalidate an arbitration agreement only based on generally applicable contract defenses "but not on legal rules that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Belyea*, 2022 WL 14965532, at *7 (quoting *Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906, 1917 (2022)).  FAA therefore preempts any state law that "invalidates, revokes, or makes unenforceable an arbitration agreement upon grounds that do not exist 'at law or in equity' for the 'revocation of any contract.'" *Id.* (citing 9 U.S.C. § 2).  The FAA "also displaces any rule that covertly accomplishes the same objective by disfavoring contracts that (oh so coincidentally) have the defining features of arbitration agreements." *Kindred Nursing Centers Ltd. P'ship v. Clark*, 581 U.S. 246, 251 (2017).  Applying this rule, the U.S. Supreme Court has repeatedly corrected California's many attempts to enforce laws that are hostile to arbitration.  *See, e.g., Chamber of Commerce of the U.S. of Am. v. Bonta*, 62 F.4th 473 (9th Cir. 2023) (FAA preempted a state law that "singles out arbitration provisions as an exemption to generally applicable law" by imposing sanctions on an employer that includes non-negotiable arbitration requirements in employment contracts); *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1417-18 (2019) (FAA preempted California rule interpreting ambiguities against drafters of arbitration agreement); *Concepcion*, 563 U.S. at 337-38, 352 (FAA preempted California law that deemed class waivers unenforceable).

Section 1281.97 is the latest in a long line of California laws that are plainly hostile to arbitration agreements.  The statute singles out arbitration agreements for disfavored treatment by

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-6-

RESPONDENTS' OPPOSITION
TO PETITION TO COMPEL
ARBITRATION
Case No. 3:23-cv-02217-SI

legislating that a respondent "is in material breach of the arbitration agreement, is in default of the arbitration agreement, and waives its right to compel arbitration" if it fails to pay arbitration-initiating fees within 30 days of receipt. Cal. Civ. Proc. Code § 1281.97. Tellingly, the legislature chaptered this statute in the California Arbitration Act without imposing an automatic "material breach" rule on other contracts or other types of payment obligations that are delayed more than 30 days. Indeed, the legislature enacted Section 1281.97 as part of Senate Bill 762, which also added Section 1657.1 to the Civil Code. But the amendment to the Civil Code provides only that "[a]ny time specified in a contract of adhesion for the performance of an act required to be performed shall be reasonable," which obviously is not the same treatment that the legislature afforded to arbitration agreements in the Bill. 2021 Cal. Legis. Serv. Ch. 222 (S.B. 762); Cal. Civ. Code. § 1657.1.

Not only does the statute deem a respondent's failure to satisfy the invoice within 30 days a material breach of the arbitration agreement, it also authorizes the draconian remedy of requiring the breaching respondent to "pay reasonable attorney's fees and costs related to the arbitration" no matter the outcome of the arbitration. Civ. Proc. Code § 1281.97(b)(1). In other words, one of the statute's remedies for this manufactured "breach" is punitive in the extreme because it imposes a fee-shifting arrangement in which the respondent must pay the petitioner's fees to prosecute a case against itself—potentially to the tune of hundreds of thousands of dollars (or more)—and the statute does so without any regard for why the respondent failed to pay the invoice within 30 days or the merits of the petitioner's claims (i.e., it is not a prevailing party fee-shifting rule). *Cf.* Cal. Civil Code § 1717 (authorizing the prevailing party to recover on a breach of contract action where an agreement provides for fee-shifting). Again, California reserves this harsh treatment for arbitration agreements without imposing it on breaches of other types of contracts. As noted in *Loeffler vs. DeMars & Assocs, Ltd.*, No. 30-2017-00923227-CU-BT-CJC (Cal. Super. Ct. Aug. 14, 2020), the trial court held that CCP §§ 1281.98 and 1281.99 are preempted by the Federal Arbitration Act, explaining: "**These statutes do not put arbitration agreements on an equal plane with other contracts**, where such a failure to pay would not necessarily constitute a material

breach, default, or waiver of the agreement. They effectively invalidate an arbitration agreement on legal rules that apply only to certain types of arbitration. ***They further punish the defaulting drafting party by mandating sanctions against that party, regardless of the merits of the case or its eventual outcome*** . . . ." (emphasis added"). See Request for Judicial Notice ("RJN"), Ex. B.

Similarly, in *Belyea*, a court in the Northern District of California found that section 1281.97 violated the FAA's equal-treatment principle because it rendered "arbitration provisions unenforceable on arbitration-specific grounds." *Belyea*, 2022 WL 14965532, at *7. Specifically, the court found that section 1281.97's "strict 30-day payment window" creates a "substantive modification of California contract law" by expressly redefining the general contract concepts of "waiver" and "breach." *Id.* The court explained that a late payment does not automatically invalidate a contract absent a "time is of the essence" clause. *Id.* "Rather, waiver or breach for failure to pay fees are traditionally fact-specific inquiries rather than bright-line rules." *Belyea*, 2022 WL 14965532, at *7 (N.D. Cal. Oct. 26, 2022) (collecting cases); *see also, e.g., Urica, Inc. v. Pharmaplast S.A.E.*, 2013 WL 12123230, at *8 (C.D. Cal. May 6, 2013) ("Given the absence of such a provision in the contract between Urica and Pharmaplast, the fact that Pharmaplast consistently accepted late payments and the seemingly minor harm the delayed payments caused, the court cannot conclude that they were material breaches as a matter of law.")[3] Thus, the FAA preempts section 1281.97.

The *Belyea* court also explained the error in earlier decisions that did not recognize

---

[3] Even in the arbitration context, there is no such bright-line rule. For instance, in *McLellan v. Fitbit, Inc.*, the court found that the defendant had not materially breached an arbitration agreement where "no more than a few weeks passed between the initial fee deadline and [the defendant's] actual payment, and AAA never suspended or terminated the proceedings." 2018 WL 3549042, at *5 (N.D. Cal. July 24, 2018). Despite the court's "strong concern" about the defendant's intentional delay of payment, the court conceded that the plaintiff had "not shown that a slow payment of filing fees, as opposed to no payment at all, is sufficient grounds to foreclose arbitration." *Id.* The court called this proposition "doubtful under contract law" absent an express provision that "time is of the essence." *Id.* Because the agreement had no such provision, the court concluded that it had no authority on these facts to find a material breach or default of the agreement because that "would be tantamount to a 'defense that is only applicable to arbitration agreements,' which the FAA does not permit." *Id.* (quoting *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1010 (9th Cir. 2005).

grounds for preemption because such decisions reasoned that section 1281.97 does not "automatically render arbitration agreements unenforceable." 2022 WL 14965532, at *8 (discussing *Postmates Inc. v. 10,356 Individuals*, 2021 WL 540155, at *7 (C.D. Cal. Jan. 19, 2021); *Gallo v. Wood Ranch USA, Inc.*, 81 Cal. App. 5th 621, 639 (2022); *Espinoza v. Superior Ct.*, 83 Cal. App. 5th 761, 783 (2022)). As *Belyea* explained, however, "what matters" is that "the drafting party may no longer enforce the agreement if they miss a 30-day payment deadline—which, as shown above, is a condition unique to arbitration agreements in California." *Belyea*, 2022 WL 14965532, at *8. The same is true where, as here, the statute blocks the enforcement of the terms of the agreement and instead re-writes the agreement to require the employer to pay petitioner's attorneys' fees. Ultimately, the entire machinery of "CCP § 1281.97 is a stick . . . not a carrot to incentivize arbitration. While there is a benefit to paying on time, that benefit is simply not being hit by the stick—*i.e.*, losing a contractually binding right to arbitrate disputes . . . That is exactly what 9 U.S.C. § 2 prohibits unless all contracts would be unenforceable under the same circumstances." *Belyea*, 2022 WL 14965532, at *7.

In *Morales v. Midland Credit Management, Inc., et al.*, Case No. 19CV356585 (Cal. Super. Ct. Mar. 3, 2023), a Santa Clara County Superior Court recently followed *Belyea*. *See* RJN, Ex. A.[4] The court emphasized that the inquiry starts by identifying the ***procedural rules that govern the arbitration agreement at issue***. *Id.* In *Morales*, "the parties had expressly incorporated the procedural aspects of the FAA," which exclude section 1281.97, while prior cases had enforced section 1281.97 after concluding that California procedural law governed the parties' arbitration agreement. *Id.* (distinguishing *Espinoza v. Superior Court*, 83 Cal.App.5th 761, 785 (2022); *De Leon v. Juanita's Foods*, 85 Cal.App.5th 740, 746 (2022), and *Williams v. West Coast Hospitals, Inc.*, 86 Cal.App.5th 1054 (2022)).

---

[4] California Superior Courts have likewise found that sections 1281.98 and 1281.99 are preempted by the FAA. *See* RJN, Ex. B (*Loeffler*, No. 30-2017-00923227-CU-BT-CJC (Cal. Super. Ct. Aug. 14, 2020), Ex. C (*Caballos v. Convoy Motors LLC*, No. 37-2019-00056119-CU-CO-CTL (Cal. Super. Ct. July 23, 2020) (denying motion to terminate an arbitration under CCP §§ 1281.97 through 1281.99 because the arbitration agreement was governed by FAA and "the court [wa]s not convinced these provisions of the CAA are not preempted by the FAA").

Here, as in *Belyea* and *Morales*, the parties expressly incorporated the procedural aspects of the FAA into their DRA, unlike the agreements at issue in *Espinoza* and *De Leon*, which were governed by the application of California procedural law. See ECF No. 3, Exs. A-O. As a result, the FAA applies to the parties' DRA, and section 1281.97 simply does not apply to the DRAs at issue, given their FAA governing language. In addition, because California law does not place the same conditions for enforcement on non-arbitration contracts that section 1281.97 places on arbitration agreements, the FAA preempts section 1281.97. For all of the above reasons, the Court should reject any argument that Respondents have breached the DRA or waived arbitration under section 1281.97, and instead find that section 1281.97 violates the FAA's "equal-treatment" principle and deny the Petition.

**B.    Petitioners That Reside, Worked For Twitter, and Seek Arbitration Outside of California Lack Standing to Enforce Section 1281.97.**

California courts presume that California statutes do not have extraterritorial application. *Hall v. Marriott Int'l, Inc.*, No. 19-CV-1715 JLS (AHG), 2020 WL 4727069, at *14 (S.D. Cal. Aug. 14, 2020) (citing *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011)). Here, nothing in the language of California Code of Civil Procedure section 1287.97 indicates that the California Legislature meant for it to apply extraterritorially, such that the "presumption against extraterritoriality applies to [Section 1102.5] in full force." *Sullivan*, 51 Cal. 4th at 1207.

Thirteen of the Petitioners reside outside of California and worked for Twitter outside of California. *See* ECF No. 3, Exs. A-O. Each of these Petitioners seek to have arbitration occur in a state other than California. *Id.*; *see also* Stephenson Decl., ¶ 5. Yet Petitioners' counsel seeks to have Twitter pay their fees based on a California statute that they lack standing to invoke. In addition, Petitioners' arbitration agreements expressly provide that "[i]f the FAA is found not to apply, then this Agreement is enforceable **under the laws of the state in which you ("Employee") are employed at the time you enter into this Agreement**." ECF No. 3, Exs. A-O (emphasis added). Thus, the contractual agreement Petitioners seek to enforce through their Petition compels application of the laws of the states in which they reside (only if the FAA does not apply

-10-

RESPONDENTS' OPPOSITION
TO PETITION TO COMPEL
ARBITRATION
Case No. 3:23-cv-02217-SI

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

to preempt their Petition) and contractually prohibits application of the California Code of Civil Procedure to their arbitration claims. As a result, these Petitioners have no entitlement to seek relief under a California procedural statute. Accordingly, even if the California statute was not preempted by the FAA, the parties' DRA mandates that, for Petitioners Anoke, Bonn, Cannell, Festejo, Gomez, Hoise, Krug, O'Connell, Ryan, Sena, Shobe, Thompson, and Zapata—who are non-California residents and employees—the law of the state where they were employed when they entered into the DRA with Twitter would apply to their arbitration, including specifically the laws of Oklahoma (Sarah Anoke); Colorado (Catherine Bonn, Jennifer Ryan); Washington (Isabelle Cannell, Samantha Festejo, Carlos Moises Ortiz Gomez, Dawn Hoise, James Shobe); New York (Wayne Krug); Wisconsin (Patrick O'Connell); Oregon (Jaime Sena, Karyn Thompson); and New Jersey (Cristian Zapata).

### C. Twitter Did Not Violate Section 1281.97 Because It Timely Paid All JAMS Invoices.

Even if section 1281.97 was not preempted and could have applied to these arbitration demands, there was no violation under section 1281.97 because Twitter has timely paid every outstanding JAMS invoice for Petitioners' arbitrations. As the Cohen Declaration explains, **Petitioners' counsel** inadvertently paid the March 6, 2023 JAMS invoice (JAMS Invoice #6564514) that was intended for Twitter and contained Twitter's portion of the filing fees for the seventeen (17) individual arbitrations submitted on February 24, 2023, including Petitioners'. Cohen Decl., ¶ 8. Apparently, the Kamerman firm realized this error the next day, and requested a refund for the inadvertent payment. *Id.*, ¶¶ 9-10. Although it appears that JAMS refunded the Kamerman firm for this inadvertent payment on March 21, 2023 (*see id.*, ¶ 10), the online JAMS portal for these arbitrations continued to reflect (and to this date still reflects) that the March 6 invoice (JAMS Invoice #6564514) was paid in full and closed. Stephenson Decl., ¶¶ 6, 11, Exs. A, D. Based on its previous experiences in paying JAMS invoices and its review of the respective online JAMS portals, Twitter understood that this March 6 invoice (JAMS Invoice #6564514) had been paid and closed. *Id.*, ¶¶ 3-4, 6. Indeed, this March 6 invoice (JAMS Invoice #6564514) *was*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-11-

RESPONDENTS' OPPOSITION
TO PETITION TO COMPEL
ARBITRATION
Case No. 3:23-cv-02217-SI

paid and closed—albeit by Petitioners' own counsel. Cohen Decl., ¶¶ 8-10. Importantly, this March 6 invoice was never "reopened" or "reactivated" or made "live" by JAMS' billing department; it remained "closed". Stephenson Decl., ¶¶ 6, 11, Exs. A, D.

The undisputed fact that the March 6 invoice (JAMS Invoice #6564514) had been paid and closed was further reinforced by a March 28, 2023 email from JAMS Case Manager Ms. Nevins, unequivocally stating that "[t]he **initial filing fees in the above referenced matters** [i.e., the "Kamerman Twitter Cases – JAMS Reference No. 160100200"] **have now been paid**." Stephenson Decl., ¶ 8 (emphasis added); Cohen Decl., ¶¶ 13-14, Ex. 3. The parties thereafter scheduled and convened for a telephonic administrative conference with Ms. Nevins – a conference that Ms. Nevins had previously explained would occur *only* "[o]nce the filing fee ha[d] been paid." *Id.*, ¶¶ 8, 11, Ex. D. Again, Twitter construed the occurrence of the April 3 administrative call, following JAMS' March 28, 2023 email confirming that all fees for JAMS Reference No. 1601002006 had been paid, as confirmation that all invoices had been timely paid and that the parties were proceeding with all arbitrations under that JAMS reference number, including Petitioners'.

On April 11, 2023, JAMS emailed counsel for the parties and explained that the March 6 invoice had been "nulled" due to an error by JAMS' billing department. Stephenson Decl., ¶ 9, Ex. B. JAMS attached to its email an entirely new invoice dated April 7, 2023 (JAMS Invoice #6612772). *Id.* Although the amount of the invoice was the same as the March 6 invoice (JAMS Invoice #6564514) (i.e., $27,700), the new invoice (JAMS Invoice #6612772) was assigned a different invoice number than the March 6 invoice (which already had been, and remains, "closed"). *Compare id. to* Cohen Decl., ¶ 6, Ex. 2. Twitter timely paid JAMS Invoice #6612772 on May 5, 2023, within 28 days of receiving it. *Id.*, ¶ 12.

Respondents only learned of the Kamerman firm's inadvertent payment and reversal for the first time in reviewing the Cohen Declaration. Neither Petitioners' counsel nor JAMS ever informed Respondents of the Kamerman firm's erroneous payment of the invoice or provided any explanation for the representations to Respondents that the invoice had been paid and was

"closed." In a display of pure gamesmanship, the Kamerman firm now seeks to benefit from its own misleading conduct and gross error.

The invoice numbers and chronology make clear that there was simply no untimely payment here. The March 6 invoice (JAMS Invoice #6564514) was paid by Petitioners' counsel and deemed "closed" by JAMS. Thereafter, JAMS "nulled" that invoice. Stephenson Decl., ¶ 9, Ex. B. As the Court is aware, "null" means to have *no legal or binding force, invalid*.[5] There is no legitimate basis for penalized Respondents for supposedly not paying an invoice that the arbitration provider expressly represented had no legal effect. The April 7 invoice (JAMS Invoice #6612772) was an entirely separate invoice from the March 6 invoice, as evidenced by its distinct invoice number and date. And Twitter paid this April 7 invoice (JAMS Invoice #6612772) within 28 days of the invoice date. *See* Stephenson Decl., ¶ 9, 12, Ex. B; *see also* Cohen Decl., ¶ 6, Ex. 2. While Petitioners claim that there was a "delay"[6] in Twitter paying the filing fees corresponding to Petitioners' arbitrations (*see, e.g.*, Petition), there was no actual delay whatsoever. The timing and sequencing of the invoice payments were entirely the direct result of (1) Petitioners' counsels' erroneous payment of the March 6 invoice (JAMS Invoice #6564514) and subsequent purposeful failure to disclose such fact to Respondents, (2) several representations from JAMS that expressly notified Respondents that all arbitration fees had been timely paid, and (3) JAMS' own billing

---

[5] *See, e.g., Durham Com. Cap. Corp. v. Select Portfolio Servicing, Inc.*, No. 3:14-CV-877-J-34PDB, 2016 WL 6071633, at *15 (M.D. Fla. Oct. 17, 2016) (citing Black's Law Dictionary (9th ed.) at 1172 (defining "null" as "[h]aving no legal effect; without binding force")).

[6] Petitioners improperly seek to establish "delay" here by referencing different arbitration proceedings pending before JAMS that involve <u>claimants represented by different counsel</u> (*i.e.*, the Litchen & Liss-Riordan, P.C law firm). *See* Cohen Decl., ¶¶ 18, 19, Ex. 5. Respondents hereby object to Paragraphs 18 and 19, and Exhibit 5, of the Cohen Declaration, and request that the Court strike this evidence. Respondents object pursuant to Federal Rules of Evidence, Rules 401, 402, 602 and 701, on the basis that the reference in Paragraph 18 and document in Exhibit 5 are irrelevant and lacking in foundation. Respondents further object pursuant to Federal Rule of Evidence, Rule 602, on the basis that Mr. Cohen lacks personal knowledge regarding the conduct of these separate arbitration proceedings, as Mr. Cohen is neither a party nor represents any party in these other proceedings. Respondents also object pursuant to Federal Rule of Evidence Rule 403 on the basis that Mr. Cohen's statement that Twitter purportedly "confirmed that it is deliberately delaying payment of JAMS invoices" through this email communication is false, misleading, and mischaracterizes the document (which is evident through a plain reading of the text in Exhibit 5).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-13-

RESPONDENTS' OPPOSITION
TO PETITION TO COMPEL
ARBITRATION
Case No. 3:23-cv-02217-SI

department's "nullifying" the March 6 invoice (JAMS Invoice #6564514). *See* Stephenson Decl., ¶¶ 6, 8-9, Exs. A, B.; Cohen Decl., ¶¶ 6, 13, 14, Exs. 2, 3.

Petitioners' reliance on their cited cases is misplaced. For example, in *Waters v. Vroom Inc.*, No. 22-CV-1191 TWR (AGS), 2023 WL 187577 (S.D. Cal. Jan. 13, 2023), the defendants had received several notices from the third-party arbitration provider, AAA, providing that there remained an outstanding invoice that was due on a certain date, and that AAA "would not grant any extensions for this payment unless all Parties agreed." *Id.* at *3. Here, in contrast, Twitter received several express and implicit representations from JAMS, demonstrating that the March 6 invoice (JAMS Invoice #6564514) had been paid and closed out. *See* Stephenson Decl., ¶¶ 6, 8-9, Exs. A, B; *see also* Cohen Decl., ¶¶ 13, 14, Ex. 3. Clearly, Twitter's nonpayment of the March 6 invoice (JAMS Invoice #6564514) was not the result of Twitter's own inadvertence or a mere clerical error, but rather caused by (1) Petitioners' counsel's *own* inadvertence, (2) repeated inaccurate representations from JAMS indicating that the invoice had been timely paid and was closed, and (3) errors made by JAMS' billing department. *See* Stephenson Decl., ¶¶ 6, 8-9, Exs. A, B.; Cohen Decl., ¶¶ 6, 13, 14, Exs. 2, 3. Further, unlike the cases that Petitioners cite to, which involved invoices where the payments had been made past the respective invoice deadlines, here, neither the March 6 invoice (JAMS Invoice #6564514) nor April 7 invoice (JAMS Invoice #6612772) were paid in an untimely fashion. Rather, as explained above, the first March 6 invoice (JAMS Invoice #6564514) was nulled and cancelled (after being inadvertently paid by Petitioners' counsel), and the second April 7 invoice (JAMS Invoice #6612772) was timely paid within 30 days of receipt. Stephenson Decl., ¶¶ 9, 12, Ex. B. Accordingly, Twitter did not violate section 1281.97.

From a policy standpoint, finding that there was an "untimely" payment on this record sufficient to trigger a violation under section 1281.97 would be a manifest miscarriage of justice and create disastrous precedent. For example, other claimants could attempt to claim material breaches of his or her own agreements by "inadvertently" paying the arbitration invoices that were directed to the respondent and (like the Kamerman firm here) purposefully not disclosing

this fact to the respondent. In addition, it would unlawfully punish respondents who, like Twitter, relied in good faith on both express and implicit representations by the third-party arbitration provider fees had been paid and/or invoices has been "closed" and were "null". The nominal purpose of section 1281.97 is to avoid delay caused when a party strategically refuses to pay an invoice—not to encourage claimants to hide the ball in the hopes that the respondent may miss a payment deadline or to encourage a mistrust of the third-party arbitration providers facilitating these arbitrations. *See Williams v. W. Coast Hosps., Inc.*, 86 Cal. App. 5th 1054, 1067 (2022) (noting that the "Legislature intended to prevent drafting parties from abusing their obligations to pay arbitration fees" by "strategically delay[ing]" arbitration proceedings). Here, Respondents clearly had no intention to delay Petitioners' arbitration proceedings, as evidenced by Respondents' participation in the parties' April 3 administrative call with opposing counsel and JAMS, where the parties discussed next steps for Petitioners' arbitrations and process of arbitrator selections.

Twitter did not miss a payment deadline. Petitioners' counsel are responsible for any purported "delay" and their petition under section 1281.97 must be denied.

## IV.   **CONCLUSION**

For the foregoing reasons, Respondents request that this Court deny the pending Petition and dismiss the judicial proceedings in Court.

Dated: May 11, 2023                    MORGAN, LEWIS & BOCKIUS LLP

By  */s/ Eric Meckley*
Eric Meckley
Brian D. Berry
Ashlee N. Cherry
Kassia Stephenson

Attorneys for Respondents
TWITTER, INC.; X HOLDINGS I, INC.;
X HOLDINGS CORP.; X CORP.; ELON MUSK

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-15-

RESPONDENTS' OPPOSITION
TO PETITION TO COMPEL
ARBITRATION
Case No. 3:23-cv-02217-SI