Ethan Jacobs (SBN 291838)
Ethan Jacobs Law Corporation
ethan@ejacobslaw.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 275-0845

Akiva M. Cohen (*pro hac vice* application forthcoming)
Kamerman, Uncyk, Soniker & Klein P.C.
acohen@kusklaw.com
1700 Broadway, 16th Floor
New York, New York 10019

Attorneys for Petitioners

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARAH ANOKE, CATHERINE BONN, ISABELLE CANNELL, MELANIE EUSEBIO, SAMANTHA FESTEJO, CARLOS MOISES ORTIZ GOMEZ, DAWN HOSIE, WAYNE KRUG, LAURENT LUCE, PATRICK O'CONNELL, JENNIFER RYAN, JAIME SENA, JAMES SHOBE, KARYN THOMPSON, AND CRISTIAN ZAPATA, <br><br> Petitioners, <br><br> vs. <br><br> TWITTER, INC., X HOLDINGS I, INC., X HOLDINGS CORP, X CORP, AND ELON MUSK, <br><br> Respondents. | Case No.: 3:23-cv-02217-SI <br><br> **PETITIONERS' NOTICE OF MOTION AND MOTION FOR REMAND AND FOR FEES; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> [Declaration of Akiva M. Cohen and [Proposed] Order filed concurrently] <br><br> Hon. Susan Illston <br> Date: June 16, 2023 <br> Time: 10:00 AM <br><br> Ctrm: 1, 17th Floor |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on June 16, 2023 at 10:30 AM, or as soon thereafter as counsel may be heard, in Courtroom 1 of the San Francisco Courthouse of the above-captioned Court, located at 450 Golden Gate Avenue, San Francisco, California 94102, Petitioners Sarah

Anoke, Catherine Bonn, Isabelle Cannell, Melanie Eusebio, Samantha Festejo, Carlos Moises Ortiz Gomez, Dawn Hosie, Wayne Krug, Laurent Luce, Patrick O'Connell, Jennifer Ryan, Jaime Sena, James Shobe, Karyn Thompson, and Cristian Zapata (collectively, "Petitioners") will and hereby do move this Court, pursuant to 28 U.S.C. § 1447 of the Federal Rules of Civil Procedure, for Remand of their Petition to Compel Arbitration under Cal. Code Civ. Proc § 1281.97 (the "Motion").

This Motion is made on the grounds that this Court lacks subject matter jurisdiction over the Petition.

This Motion is based on this Notice of Motion and Motion as well as the concurrently-filed Memorandum of Points and Authorities and Declaration of Akiva Cohen, with accompanying exhibits, and in any additional memoranda in support thereof and any oral argument presented at the hearing on this Motion.

Dated:   May 12, 2023

By:   */s/ Ethan Jacobs*
　　　　Ethan Jacobs

ETHAN JACOBS LAW CORPORATION
100 Pine Street, Suite 1250
San Francisco, California 94111
ethan@ejacobslaw.com

Akiva M. Cohen (*pro hac vice* forthcoming)
KAMERMAN, UNCYK, SONIKER & KLEIN P.C.
1700 Broadway, 16th Floor
New York, New York 10019
acohen@kusklaw.com

*Attorneys for Petitioners*

# TABLE OF CONTENTS

I. STATEMENT OF ISSUES TO BE DECIDED ...........................................1

II. INTRODUCTION ..................................................................................1

III. FACTUAL OVERVIEW AND PROCEDURAL HISTORY ....................3

    A. Petitioners and their Colleagues Demand Arbitration and Respondents Deliberately Delay the Proceedings ...........................................................3

    B. Respondents Miss the Deadline and Petitioners Apply for Sanctions ......4

IV. ARGUMENT ..........................................................................................5

    A. Legal Standard on a Motion to Remand.....................................................5

    B. There Is No 9 U.S.C. § 4 Petition for the Court to "Look Through" ........6

    C. The Court Cannot Treat Petitioners' State Law Petition As Though It Invoked Section 4 of the FAA. ................................................................9

    D. Petitioners Are Entitled to an Award of Fees and Costs Pursuant to 28 U.S.C. § 1447(c)...................................................................................10

V. CONCLUSION ....................................................................................11

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ameriprise Fin. Servs. Inc. v. Ekweani*, No. CV-14-00935-PHX-DGC, 2015 WL 1737417
  (D. Ariz. Apr. 16, 2015), *aff'd*, 683 F. App'x 641 (9th Cir. 2017) .......................................... 8

*Badgerow v. Walters*, 142 S.Ct. 1310 (2022) ................................................................................ 7

*Castillo v. J.P. Morgan Chase Bank, N.A.*, No. 19-CV-04905-HSG, 2020 WL 496072
  (N.D. Cal. Jan. 30, 2020) ........................................................................................................... 6

*Caterpillar Inc. v. Williams*, 482 U.S. 386 (1987) ..................................................................... 6, 9

*Dealer Computer Servs., Inc. v. Old Colony Motors, Inc.*, 588 F.3d 884 (5th Cir. 2009) ......... 10

*Espinoza v. Superior Court,* 83 Cal.App.5th 761 (2022) ............................................................... 5

*Gaus v. Miles, Inc.*, 980 F.2d 564 (9th Cir. 1992) ......................................................................... 5

*Hartford Acc. & Indem. Co. v. Equitas Reinsurance Ltd.*, 200 F. Supp. 2d 102
  (D. Conn. 2002) ....................................................................................................................... 10

*Hunter v. Philip Morris USA*, 582 F.3d 1039, (9th Cir. 2009) ...................................................... 5

*Independent Federation of Flight Attendants v. Zipes*, 491 U.S. 754 (1989) ............................. 11

*Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010 (9th Cir. 2004) .......................... 10

*Martin v. Franklin Capital Corp.*, 546 U.S. 132 (2005) ....................................................... 10, 11

*Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089 (9th Cir.2003) ................................. 5

*Merrell Dow Pharms., Inc. V. Thompson*, 478 U.S. 804 (1986) ................................................. 11

*Moore v. Permanente Med. Group, Inc.*, 981 F.2d 443 (9th Cir. 1992) ..................................... 11

*Morgan v. Sundance, Inc.*, 212 L. Ed. 2d 753, 142 S. Ct. 1708 (2022) ........................................ 9

*Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365 (1978) .............................................. 6

*Owen v. Stokes*, 849 Fed.Appx. 662 (9th Cir. 2021) ................................................................... 11

*PaineWebber Inc. v. Faragalli*, 61 F.3d 1063 (3d Cir. 1995) ....................................................... 9

*Postmates Inc. v. 10,356 Individuals*, No. CV202783PSGJEMX) 2020 WL 1908302
  (C.D. Cal., Apr. 15, 2020) ......................................................................................................... 7

*Ripley v. PMD Dev. LLC*, No. CV-18-01162-PHX-DLR, 2018 WL 4931750
  (D. Ariz. Oct. 11, 2018) ............................................................................................................ 6

*Service Employees International Union, Local 1021 v. Private Industry Council of Solano
  County, Inc.*, No. CIV. 2:13-01670 WBS, 2013 WL 5569990 at *3 n.1 (E.D. Cal. Oct. 9,
  2013) .......................................................................................................................................... 8

*Tanoh v. Dow Chem. Co.*, 561 F.3d 945 (9th Cir. 2009) ............................................................... 9

*Trustees of Constr. Indus. & Laborers Health & Welfare Tr. v. Desert Valley Landscape &
  Maint., Inc.*, 333 F.3d 923 (9th Cir. 2003) ................................................................................ 6

*U.S. Bank Nat. Ass'n v. Lasoff*, No. CV1000235MMM(RCX), 2010 WL 669239
  (C.D. Cal. Feb. 23, 2010) .......................................................................................................... 6

*Vaden v. Discover Bank*, 556 U.S. 49 (2009) ................................................................................ 7

*Wayne v. DHL Worldwide Express*, 294 F.3d 1179 (9th Cir. 2002) ............................................ 5

*Wong v. HSBC Mortg. Corp. (USA)*, No. C-07-2446 MMC, 2009 WL 151014
  (N.D. Cal. Jan. 21, 2009) ........................................................................................................... 6

**Statutes**

28 U.S.C. § 1447 .................................................................................................................10

9 U.S.C. § 4 ......................................................................................................................7, 9

**Rules**

Cal. Code Civ. Proc. § 1281.97 ........................................................................................ 2, 4

iii

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   STATEMENT OF ISSUES TO BE DECIDED

Whether this Court lacks subject matter jurisdiction over the petition, which seeks relief only under a California statute, rendering Respondents' removal on the basis of federal question jurisdiction improper, such that the Court should remand this action to state court. Whether Petitioners should be awarded the attorney fees and costs associated with the filing of this motion, pursuant to 28 U.S.C. § 1447(c).

## II.   INTRODUCTION

Petitioners brought this state court action by petition under Section 1281.97 of the California Code of Civil Procedure (the "Petition"), seeking sanctions for Respondents' delay in paying fees assessed in pending arbitrations. The Petition presents no federal question. The parties are not diverse. And, although Respondents assert that the Court should find federal jurisdiction in this case by "looking through" Petitioners' state court filings regarding the pending arbitration to the claims in the underlying dispute, there is nothing for the court to look through. "Look through" jurisdiction requires a petition under 9 U.S.C. § 4, and no such petition was ever filed in this case. Thus, because Respondents Twitter, Inc. ("Twitter"), X Holdings I, Inc. ("X Holdings"), and Elon Musk ("Musk") had no proper basis to remove this action, Petitioners respectfully request that it be remanded to the California state court in which it was filed.

On February 24, 2023, each of the fifteen Petitioners – Sarah Anoke, Catherine Bonn, Isabelle Cannell, Melanie Eusebio, Samantha Festejo, Carlos Moises Ortiz Gomez, Dawn Hosie, Wayne Krug, Laurent Luce, Patrick O'Connell, Jennifer Ryan, Jaime Sena, James Shobe, Karyn Thompson, and Cristian Zapata (collectively, "Petitioners") – filed arbitration demands against Respondents, seeking payment of the severance Twitter owed them and that each of the Respondents had promised them. Each Petitioner also included in their arbitration demands other, ancillary claims regarding their termination, such as discrimination claims based on how they were selected for termination and federal (and, where available) state WARN Act claims based on Twitter's conduct during each employee's "non-working notice

period." Thousands of Petitioners' former colleagues at Twitter have filed similar claims.

In response, Respondents have engaged in a calculated campaign of delay. As part of that campaign, Respondents adopted a policy of paying invoices for arbitration fees on or near the 30th day after the fees are invoiced, though the invoices are due on receipt. They do so expressly based on the argument that a California statute, Section 1281.97 of the California Code of Civil Procedure, gives them a thirty-day grace period to pay fees. Declaration of Akiva M. Cohen ("Cohen Dec."), Ex. 2. But that statute also has teeth: where an employer such as Twitter has not paid by the end of the grace period, for whatever reason, the statute mandates that the employer be sanctioned, at the employee's election, by requiring that the "drafting party shall pay reasonable attorney's fees and costs related to the arbitration." Cal. Code Civ. Proc. § 1281.97(b)(2).

In Petitioners' cases, Respondents forgot to dot their i's and cross their t's, and – though Respondents answered the arbitration demands and appeared at an initial administrative conference – they neglected to pay the case initiation fees for Petitioners' arbitrations within the thirty-day grace period. Section 1281.97 was enacted to deter and remedy this specific delaying tactic. Thus, on April 27, 2023, Petitioners filed an application for the sanctions provided under the statute. With one business day left before their opposition was due, Respondents removed to this Court, purportedly on the basis of federal question jurisdiction.

As shown below, that removal was invalid, and the Court should remand this action back to California state court. Removal is determined on the face of the Petition, and nothing about this action – brought under a California state statute providing remedies for delay in paying arbitration related fees – raises a federal question. The Federal Arbitration Act ("FAA") does not grant federal courts federal question jurisdiction over every aspect of any arbitration in which any underlying issue raises a federal question. Rather, the "look through" jurisdiction that Respondents' notice of removal relies on applies only to petitions brought under Section 4 of the FAA. But the Petition was not brought under Section 4 of the FAA. Indeed, it could not have been brought under Section 4 of the FAA, because Petitioners do not (and could not) allege that Respondents "refused, neglected, or failed" to appear in arbitration. There is simply

no basis for removal.

Arbitration is meant to be speedy and less expensive, and the goal of the FAA is to ensure that it is. Yet Respondents have deliberately tried to subvert that objective at every turn, and their removal of this action is just another tactic in that campaign. The Court should not allow Respondents' abuse of the legal process and it should, consistent with federal and state policy favoring arbitration, remand to California state court for further proceedings in connection with enforcement of Section 1281.97. And, because Twitter's removal is both a continuation of their repeated delay tactics and objectively without merit, this court should require that Twitter pay Respondents' just costs and actual expenses, as provided by 28 U.S.C. § 1447(c).

### III. FACTUAL OVERVIEW AND PROCEDURAL HISTORY

#### A. Petitioners and their Colleagues Demand Arbitration and Respondents Deliberately Delay the Proceedings

In the wake of the mass layoffs that Respondent Elon Musk ("Musk") instituted shortly after he took over Twitter in November 2022, Petitioners, along with thousands of their colleagues, have sought to hold Twitter and Musk to the terms of the merger agreement that promised them severance and other benefits. Most of these former Twitter employees have needed to pursue their claims in private arbitration rather than in court because of mandatory arbitration provisions in their arbitration agreements with Twitter (the "DRAs"). Far from disputing the validity of those arbitration agreements or refusing to arbitrate, Twitter has affirmatively enforced the agreements and itself compelled arbitration in accordance with them. *See*, *e.g.*, *Cornet v. Twitter, Inc.*, N.D. Cal. Case No. 3:22-cv-06857-JD, at Dkt. No. 18 (Twitter's motion to compel arbitration and prevent class litigation).

But having successfully forced Twitter's former employees into arbitration, Respondents have responded to their arbitration demands with delay after delay. For example, when former employees assert that they signed DRAs but do not have access to copies, Respondents have objected to JAMS taking jurisdiction, *see* Cohen Dec., ¶ 5 and Ex. 1, despite previously representing to this Court that Twitter has a copy of each employee's DRA in its

files. *Cornet v. Twitter, Inc.*, N.D. Cal. Case No. 3:22-cv-06857-JD, Dkt. No. 18 at 3 (citing the Callaghan declaration for the principle that "[w]hen Twitter receives a copy of the signed offer letter and Dispute Resolution Agreement, Twitter saves the signed documents in the applicant's personnel file").

And for those who are able to produce their DRAs, Respondents continue to delay the arbitration proceedings by other means. Under the rules of the arbitration administrator, the arbitrations cannot proceed until Respondents pay their share of the case-opening fees. Cohen Dec., ¶ 7. Under those same rules (and California state law), all fees are due upon receipt of the invoice issued by the arbitration administrator. Cohen Dec., ¶ 6. *See also* Cal. Code Civ. Proc. § 1281.97(a)(2) ("To avoid delay, absent an express provision in the arbitration agreement stating the number of days in which the parties to the arbitration must pay any required fees or costs, the arbitration provider shall issue all invoices to the parties as due upon receipt."). But Respondents do not pay these fees when they are due – not even when prompted by the arbitration administrator. Counsel for Respondents has confirmed that this is a deliberate choice rather than laziness or poor organization, stating in email to counsel for other ex-Twitter employees, "[a]lthough JAMS states that the invoice is 'due immediately', the deadline for payment is actually thirty (30) days from issuance . . . You may wish to impose your own unilateral 'deadlines' for payment, but Twitter will comply with the actual statutory deadlines.[1]" Cohen Dec. Ex. 2.

**B.   Respondents Miss the Deadline and Petitioners Apply for Sanctions**

Respondents' choice to delay payment of their case-opening fees until the last possible moment leaves them no margin for error; Section 1281.97 is a strict liability statute, imposing mandatory sanctions for late payment with no exceptions for good-faith mistake or lack of

---

[1] The "statutory deadline" to which Respondents' counsel refers is that set forth in Cal. Code Civ. Proc. § 1281.97, which reads in relevant part, "In an employment or consumer arbitration that requires, either expressly or through application of state or federal law or the rules of the arbitration provider, the drafting party to pay certain fees and costs before the arbitration can proceed, if the fees or costs to initiate an arbitration proceeding are not paid within 30 days after the due date the drafting party is in material breach of the arbitration agreement." Cal. Code Civ. Proc. § 1281.97(a)(1).

prejudice. *See, e.g.*, *Espinoza v. Superior Court,* 83 Cal.App.5th 761, 776 (2022) (granting mandamus after trial court refused to apply Section 1281.97 where delay was minimal and unintentional). On April 27, 2023, after Respondents did not pay their case-opening fees within the thirty-day grace period, Petitioners applied for the sanctions to which they are entitled under California state law in California state court. Dkt. No. 1-1. Petitioners did not file a petition under 9 U.S.C. § 4 of the FAA and brought only a state law claim under Section 1281.97. *Id.*

On May 5, 2023, Respondents removed the action to this Court, claiming "look through" federal question jurisdiction on the basis of the federal employment-related claims in Petitioners' arbitration demands. Dkt. No. 1, ¶ 7. Because "look through" jurisdiction is available *solely* for petitions brought under 9 U.S.C. § 4, the removal is improper and the Court should issue an order remanding the Petition to California state court for further proceedings.

## IV.     ARGUMENT

### A.  Legal Standard on a Motion to Remand

The removal statute is strictly construed and a motion to remand must be granted if there is any doubt at all that removal is proper. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) ("Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance"). *See also Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003) ("Doubts as to removability must be resolved in favor of remanding the case to state court."). "The 'strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper,' and that the court resolves all ambiguity in favor of remand to state court." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009). In assessing the removability of a claim, the Court must look only at the Petition in this action and cannot consider any defenses or counterclaims Respondents might intend to raise. *Wayne v. DHL Worldwide Express*, 294 F.3d 1179, 1183 (9th Cir. 2002) (presence or absence of federal question jurisdiction is assessed on the face of the complaint, and potential defenses are irrelevant). Nor can the Court consider other claims that Petitioners might have raised or other laws under which Petitioners might have sought relief; Petitioners

5

are the "masters of the claim" and can avoid federal jurisdiction by electing not to seek relief under federal law. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law.").

### B.  There Is No 9 U.S.C. § 4 Petition for the Court to "Look Through"

Federal courts are courts of limited jurisdiction, and the Court can exercise jurisdiction over a dispute only where Congress has authorized it to do so. *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978) ("The limits upon federal jurisdiction, whether imposed by the Constitution or by Congress, must be neither disregarded nor evaded"). Respondents claim only one basis for subject matter jurisdiction: federal question jurisdiction under 28 U.S.C. § 1331 on the ground that Petitioners' *underlying claims in arbitration* include claims based on federal law. Dkt. No. 1, ¶¶ 6-7.[2] This argument fails because it misapprehends "look through" jurisdiction under Section 4 of the Federal Arbitration Act.

There is no dispute that the petition brought in this action does not, on its face, contain a basis for federal jurisdiction. Respondents do not allege that the parties are diverse, and Petitioners are proceeding solely under Section 1281.97 of the California Code of Civil Procedure, not under any federal statute. Dkt. No. 1-1. "Only state court actions that could originally have been filed in federal court may be removed." *U.S. Bank Nat. Ass'n v. Lasoff*, No. CV1000235MMM(RCX), 2010 WL 669239, at *1 (C.D. Cal. Feb. 23, 2010) (citations

---

[2] Respondents also argue that the Court would have supplemental jurisdiction over Petitioners' state law claims. Dkt. No. 1, ¶ 7. That is wrong. Supplemental jurisdiction provides federal courts with jurisdiction only over state law claims that arise out of the same nucleus of operative fact as the federal claims on which the court has federal question jurisdiction. *Trustees of Constr. Indus. & Laborers Health & Welfare Tr. v. Desert Valley Landscape & Maint., Inc.*, 333 F.3d 923, 925 (9th Cir. 2003). Petitioners' state law contract and promissory estoppel claims do not arise out of the same nucleus of operative fact as their federal claims. *See Castillo v. J.P. Morgan Chase Bank, N.A.*, No. 19-CV-04905-HSG, 2020 WL 496072, at *4 (N.D. Cal. Jan. 30, 2020) ("the counterclaims will require proof of different facts, involve different witnesses, and apply different law. They do not, therefore, 'derive from a common nucleus of operative fact,' and are not part of the same case or controversy"); *Ripley v. PMD Dev. LLC*, No. CV-18-01162-PHX-DLR, 2018 WL 4931750, at *2 (D. Ariz. Oct. 11, 2018) (employment relationship insufficient overlap to trigger supplemental jurisdiction). And even if there were sufficient overlap for supplemental jurisdiction, the state law claims sufficiently predominate so that the federal "tail" should not be allowed to "wag what is in substance a state dog." *Wong v. HSBC Mortg. Corp. (USA)*, No. C-07-2446 MMC, 2009 WL 151014, at *3 (N.D. Cal. Jan. 21, 2009).

omitted). Because no viable basis for removal can be seen on the face of the Petition in this action, Respondents argue the Court should "look through" the petition to the claims in the underlying arbitration demands, arguing that the Court has "original jurisdiction over a petition to compel arbitration when it has original jurisdiction over the claims that the petition seeks to arbitrate." Dkt. No. 1, ¶ 6. Respondents rest this assertion on their misquote of *Vaden v. Discover Bank*, 556 U.S. 49, 62 (2009): "A federal court may 'look through' a [petition to compel arbitration] to determine whether it is predicated on an action that 'arises under' federal law." Dkt. No. 1, ¶ 6 (Respondents' deletion and replacement of the relevant text).

But Respondents' argument fails, because that is not what *Vaden* says. Rather, *Vaden* said "[a] federal court may 'look through' a ***§ 4 petition*** to determine whether it is predicated on an action that 'arises under' federal law." *Vaden v. Discover Bank*, 556 U.S. 49, 62 (2009) (emphasis added). *Vaden* does not authorize federal courts to "look through" *any* petition related to arbitration regardless of whether it was brought under Section 4 of the FAA. Rather, and as the Supreme Court has subsequently noted, "[t]he look-through rule is a highly unusual one" which the Court recognized "in *Vaden* because careful analysis of Section 4's text showed that Congress wanted it applied ***to petitions brought under that provision***." *Badgerow v. Walters*, 142 S.Ct. 1310, 1316 (2022) (emphasis added). The *Badgerow* Court held that the look-through approach cannot be used even in cases brought under other sections of the Federal Arbitration Act that lack the highly specific "save for" grant found in Section 4. *Id.* at 1317-18.

The jurisdictional grant under Section 4 provides that "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate . . . *may petition* any United States district court" for an order compelling arbitration if the court otherwise has jurisdiction over the underlying dispute. 9 U.S.C. § 4 (emphasis added). Put another way, "the FAA allows federal courts to review arbitration agreements only to the extent a party invokes Section 4 of the FAA and does so in a controversy where the court would have jurisdiction over the underlying substantive dispute." *Postmates Inc. v. 10,356 Individuals*, No. CV202783PSGJEMX, 2020 WL 1908302, at *6 (C.D. Cal., Apr. 15, 2020). Here, where Petitioners did not "invoke Section 4 of the FAA," the FAA provides no basis for federal question jurisdiction.

The cases cited by Respondents do not say otherwise. *Ameriprise Fin. Servs. Inc. v. Ekweani* is one of several cases (including *Postmates*) where courts have found that the possibility that an action could be brought under 9 U.S.C. § 4 provides a sufficient basis to support federal jurisdiction for a declaratory judgment action that a claim need not be arbitrated. No. CV-14-00935-PHX-DGC, 2015 WL 1737417, at *3 (D. Ariz. Apr. 16, 2015), *aff'd*, 683 F. App'x 641 (9th Cir. 2017). But that is irrelevant here; Respondents have not brought a declaratory judgment action, and Petitioners' claim under Section 1281.97 of the California Code of Civil Procedure is not a threatened Section 4 petition. And while *Service Employees International Union, Local 1021 v. Private Industry Council of Solano County, Inc.* initially reached federal court through removal of a petition brought under state law, no motion to remand was filed, the removal had nothing to do with the FAA, and by the time of the ruling Respondents cite the operative complaint expressly relied on federal law.[3] No. CIV. 2:13-01670 WBS, 2013 WL 5569990 at *3 n.1 (E.D. Cal. Oct. 9, 2013) ("Plaintiff's [First Amended Complaint] has cured both of these deficiencies, as the motion to compel arbitration is now based on federal law, (*see* FAC 3:12–17)"). In both cases cited by Respondents, in other words, federal jurisdiction rested on either an actual or threatened Section 4 petition.

But Petitioners did not bring a Section 4 Petition in federal court.[4] Petitioners brought a different action, under a different statute, containing different provisions, before a different court. With no actual or threatened Section 4 Petition in this action, the window that allows for "look through" jurisdiction is absent, and remand is required.

---

[3] The removal of the state court petition to compel arbitration in *SEIU* was not based on the FAA at all, and did not rely on Section 4 "look through" jurisdiction. It was based, instead, on a claim that the entire case was expressly preempted by Section 301 of the Labor Management Relations Act, and that the court had subject matter jurisdiction on that basis. *Serv. Emp. Int'l Union, Loc. 1021 v. Priv. Indus. Council of Solano Cnty, Inc.*, E.D. Cal. Case No. 2:13-cv-01670-WBS-EFB, Dkt. 2 at ¶¶ 8-9, attached as Cohen Dec. Ex. 4. Plaintiff in that action responded to removal by bringing an amended motion to compel arbitration that was explicitly based on 9 U.S.C. § 4. *Id.*, Dkt. 12 at 3, Cohen Dec. Ex. 5. By the time the court ruled, there was a live 9 U.S.C. § 4 petition.

[4] Not only have Petitioners not invoked Section 4 – neither have Respondents. There is no explicit mention of or reference to Section 4 in their Notice of Removal, presumably because Respondents are aware that, as discussed in Point III below, Petitioners' application did not allege any failure or refusal to arbitrate.

### C. The Court Cannot Treat Petitioners' State Law Petition as Though It Invoked Section 4 of the FAA.

That Petitioners did not proceed under Section 4 is outcome determinative. Even if Respondents wanted to argue Petitioners could have proceeded under Section 4, or that their claim under California law is equivalent to a Section 4 application, Petitioners are masters of their own complaint. The Ninth Circuit and Supreme Court have repeatedly instructed that on removal, what matters is not what the plaintiff *could have* pled or what laws the plaintiff *could have* sought relief under, but what the plaintiff *actually* pled and what laws the plaintiff *actually* invoked. *See Caterpillar*, 482 U.S. at 392; *Tanoh v. Dow Chem. Co.*, 561 F.3d 945, 953 (9th Cir. 2009) (relying on "the well-established rule that plaintiffs, as masters of their complaint, may choose their forum by selecting state over federal court and [] the equally well-established presumption against federal removal jurisdiction"). Respondents can no more force Petitioners to rely on Section 4 of the FAA than the Caterpillar corporation could force its employees to bring claims based on the collective bargaining agreement (governed by federal law) instead of their individual contracts (governed purely by state law). *Caterpillar*, 482 U.S. at 395 ("respondents… possessed substantial rights under the collective agreement, and could have brought suit under § 301. As masters of the complaint, however, they chose not to do so").

And even if look through jurisdiction somehow was an exception to the rule that Petitioners are the masters of their own Petition, Petitioners' state court application to enforce Section 1281.97 could not have been brought under Section 4 of the FAA in the first instance. An application under Section 4 of the FAA must allege that the respondent is "fail[ing], neglect[ing], or refus[ing] to arbitrate." 9 U.S.C. § 4. Jurisdiction under Section 4 of the FAA thus requires that there be a dispute among the parties as to whether arbitration is required at all. *See PaineWebber Inc. v. Faragalli*, 61 F.3d 1063, 1067 (3d Cir. 1995) (a party cannot be "aggrieved" under the FAA, as required by Section 4, where the counterparty is willing to arbitrate, and there is no Article III jurisdiction before the counterparty expresses that refusal), *abrogated on other grounds by Morgan v. Sundance, Inc.*, 212 L. Ed. 2d 753, 142 S. Ct. 1708 (2022) (party can waive right to compel arbitration by litigating for too long, even if there is no prejudice); *Hartford Acc. & Indem. Co. v. Equitas Reinsurance Ltd.*, 200 F. Supp. 2d 102, 108

9

(D. Conn. 2002) (application under Section 4 "require[es] a petitioner to allege that the adverse party has actually failed, neglected, or refused to arbitrate … [and] that there is, in fact, a dispute concerning whether the parties should arbitrate"). Here, Respondents have acknowledged the arbitration agreements are valid, appeared in the arbitration, filed answers and affirmative defenses, and participated in administrative conferences. Cohen Dec., ¶ 10. And, for that reason, Petitioners did not allege that Respondents "fail[ed], neglect[ed], or refus[ed ]to arbitrate" as would have been required for an application under Section 4 of the FAA.

Rather, Petitioners' application presents an issue of California state law, and only California state law. Respondents are deliberately dragging their feet on paying fees to delay the progress of the arbitrations. Cohen Dec., ¶¶ 3-8 and Ex. 2. The Federal Arbitration Act gives Petitioners no remedy for that foot dragging,[5] and Petitioners pled only a state law claim under Section 1281.97, which does. Thus, even under the presumption that claims Petitioners could have made (but did not make) matter for purposes of removal, they could not have made Section 4 claim, and the removal would still be improper.

**D. Petitioners Are Entitled to an Award of Fees and Costs Pursuant to 28 U.S.C. § 1447(c).**

28 U.S.C. § 1447(c) provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." The language of the statute leaves the grant of such fees within the discretion of this Court. *See Martin v. Franklin Capital Corp.*, 546 U.S. 132, 138-39 (2005). The appropriate test for the exercise of that discretion is whether the removal is sought "for the purpose of prolonging litigation or imposing costs on the opposing party." *Martin*, 546 U.S. at 140. Thus,

---

[5] The Ninth Circuit has already expressly held that an arbitrating party's failure to pay fees initially assessed to it by an arbitration association is not a "'failure, neglect, or refusal' to arbitrate, within the terms of § 4 of the Federal Arbitration Act." *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1011 (9th Cir. 2004) (reversing order compelling payment of fees as beyond the court's discretion under Section 4 of the FAA where arbitration association informed Lifescan that arbitration would only proceed if it advanced the adverse party's fees). *See also Dealer Computer Servs., Inc. v. Old Colony Motors, Inc.*, 588 F.3d 884, 888 (5th Cir. 2009) (dispute over payment of arbitration fees is not basis for an order under Section 4 of the FAA where "Old Colony has stated multiple times in briefs and oral argument that it is willing to go forward with the arbitration").

whether to award fees turns on the reasonableness of the removal. *Martin*, 546 U.S. at 141 (citing *Independent Federation of Flight Attendants v. Zipes*, 491 U.S. 754, 759 (1989)) If the removing party lacks an "objectively reasonable" basis for removal, fees are proper. *Id*. And Section 1447(c) does **not** require a showing of bad faith. *See Moore v. Permanente Med. Group, Inc.*, 981 F.2d 443, 448 (9th Cir. 1992). Because the decision to award fees is incidental to the remand, the district court may retain jurisdiction over the issue of fees specifically even after remanding the case. *Id*.

Under that standard, the Court should award fees and costs here. Respondents' removal is emphatically not objectively reasonable, because Petitioners did not rely on Section 4 of the FAA as required to trigger the "look through" jurisdiction Respondents rely on. And Respondents' alteration of the quote from *Vaden*, in which they swapped in the generic "petition to compel arbitration" for the more specific "§ 4 petition," and studious avoidance of any mention of Section 4 of the FAA, appears to confirm that Respondents knew as much when they filed their notice of removal. Indeed, and particularly given Respondents' broader attempts to delay Petitioners' claims, it is reasonable to conclude that increasing delays and costs was at least one reason for removal in this case, the very conduct *Martin* warns against. *See Martin*, 546 U.S. at 141.

In a similar case seeking to "look through" state court pleadings to manufacture federal question jurisdiction in which the Ninth Circuit ruled that jurisdiction should not be "sustained on a theory the plaintiff has not advanced," the Ninth Circuit held that there was no objective basis for removal. *Owen v. Stokes*, 849 Fed.Appx. 662, 664 (9th Cir. 2021) (not designated for publication), *citing Merrell Dow Pharms., Inc. V. Thompson*, 478 U.S. 804, 809 n.6 (1986). As in *Owen*, not only is remand appropriate here, so is imposing costs against Respondents to reimburse Petitioners for incurring "wholly unnecessary" costs and delays. *See Moore*, 981 F.2d at 447.

## V.   CONCLUSION

For all of these reasons, the motion should be granted, the action remanded to California state court, and Petitioners awarded their just costs, actual expenses, and attorneys' fees.

Dated: May 12, 2023

By:    */s/ Ethan Jacobs*
      Ethan Jacobs

ETHAN JACOBS LAW CORPORATION
100 Pine Street, Suite 1250
San Francisco, California 94111
ethan@ejacobslaw.com

Akiva M. Cohen (*pro hac vice* forthcoming)
KAMERMAN, UNCYK, SONIKER & KLEIN P.C.
1700 Broadway, 16th Floor
New York, New York 10019
acohen@kusklaw.com

*Attorneys for Petitioners*