1  Ethan Jacobs (SBN 291838)
   Ethan Jacobs Law Corporation
2  ethan@ejacobslaw.com
   100 Pine Street, Suite 1250
3  San Francisco, CA 94111
   Telephone: (415) 275-0845
4

5  Akiva M. Cohen (*pro hac vice* application forthcoming)
   Kamerman, Uncyk, Soniker & Klein P.C.
6  acohen@kusklaw.com
   1700 Broadway, 16th Floor
7  New York, New York 10019

8  Attorneys for Petitioners

9
                    UNITED STATES DISTRICT COURT
10
                FOR THE NORTHERN DISTRICT OF CALIFORNIA
11

12

13  SARAH ANOKE, CATHERINE BONN,
    ISABELLE CANNELL, MELANIE            Case No.: 3:23-cv-02217-SI
14  EUSEBIO, SAMANTHA FESTEJO,
    CARLOS MOISES ORTIZ GOMEZ,           **DECLARATION OF AKIVA M. COHEN**
15  DAWN HOSIE, WAYNE KRUG,              **IN SUPPORT OF MOTION TO**
    LAURENT LUCE, PATRICK                **REMAND AND FOR FEES AND COSTS**
16  O'CONNELL, JENNIFER RYAN, JAIME      **PURSUANT TO 28 U.S.C. § 1447(c)**
    SENA, JAMES SHOBE, KARYN
17  THOMPSON, AND CRISTIAN ZAPATA,       Hon. Susan Illston
                                         Date: June 16, 2023
18                  Petitioners,          Time: 10:00 AM

19         vs.
                                                  Ctrm: 1, 17th Floor
20  TWITTER, INC., X HOLDINGS I, INC., X
    HOLDINGS CORP, X CORP, AND ELON
21  MUSK,

22                  Respondents.

23

24

25         I, Akiva M. Cohen, declare as follows:

26         1.      I am a partner at Kamerman, Uncyk, Soniker & Klein, P.C., counsel of record for

27  Petitioners in their respective arbitrations against Twitter. I am licensed to practice in the state of

28  New York. I submit this declaration in support of Petitioners' Motion to Remand in the above-

                                              - 1 -
   MOTION TO REMAND AND FOR FEES AND COSTS – DECLARATION OF AKIVA M. COHEN

captioned case. I have personal knowledge of the facts set forth in this declaration and, if necessary, I could and would competently testify to those facts.

2.      I currently represent over a hundred former Twitter employees who are pursuing arbitration or litigation against Respondents due to Twitter's failures to pay promised compensation. We have commenced arbitrations on behalf of many of these former employees before JAMS. I have also made it a habit to monitor public filings in related court cases.

3.      Many of my clients did not opt out of the Dispute Resolution Agreements ("DRAs") that Twitter drafted and required them to execute as a condition of employment, and are therefore pursuing their claims in arbitration. Respondents, in turn, have attempted to delay the progress of the arbitration as much as possible.

4.      For example, where employees have filed court actions, Twitter has rapidly located copies of those employees' DRAs and moved to compel their cases to arbitration. And, in doing so, it has represented to the Court that it maintains an employment file for each of its former employees in which Twitter maintains a copy of the employee's DRA.

5.      Despite that, for former employees who did not personally maintain a copy of their DRA, Respondents have objected to arbitration even where Twitter *did* execute an arbitration agreement, insisting that arbitration should not proceed until the employee can obtain a copy of their DRA *from Twitter*. Attached as **Exhibit 1** is a copy of correspondence with JAMS in which Twitter raised this argument in connection with the claim of Dina Lynch Eisenberg, a client of mine who was eventually able to locate her DRA. Because Twitter could – by its own representations to this Court – easily have checked its own files to confirm the existence of the DRA, and the only practical outcome of the objection would have been the delay imposed by requiring Ms. Eisenberg (and others in her situation) to ask Twitter for copies of the DRAs from those very files, it is clear that Respondents filed that objection (and they has done so in multiple arbitrations) for no purpose *other* than delay.

6.      This is not the only delaying tactic Respondents have employed. Although JAMS issues invoices that are due upon receipt, as required by Cal. Code Civ. Proc. § 1281.97(a)(2),

MOTION TO REMAND AND FOR FEES AND COSTS – DECLARATION OF AKIVA M. COHEN

Respondents have not paid any invoice in an arbitration I am involved until at least several weeks after they received it.

7. This delays the arbitration, because under JAMS' rules, JAMS will not proceed with arbitration while fees are unpaid. In this manner, Twitter has added months to the course of arbitration for some former employees. For example, Ms. Eisenberg's arbitration, Twitter delayed payment of the initial case management fees for almost 30 full days, and then, when a fee deposit invoice was issued after the parties agreed on the arbitrator, waited another roughly 30 days to pay that invoice. The result is that an arbitration filed on February 1, 2023 is only now able to truly commence, more than three months later. Petitioners' proceedings, filed in late February, are still awaiting arbitrator selection because Respondents delayed paying the initial filing fee until early May, roughly **60** days after the claims were initially filed.

8. This pattern of delay is no accident. Twitter similarly delayed paying its share of the arbitration fees for claims filed by Shannon Liss-Riordan, another attorney representing former Twitter employees with similar claims, preventing those arbitrations from proceeding during the delay. When Ms. Liss-Riordan noted that the invoices were due on receipt and that Twitter was violating the rules of its own chosen arbitral forum by refusing to make timely payment, Twitter's counsel responded by declaring that Twitter had a statutory right to delay its payment for up to 30 days:

> Although JAMS states that the invoice is "due immediately", the deadline for payment is actually thirty (30) days from issuance . . . You may wish to impose your own unilateral "deadlines" for payment, but Twitter will comply with the actual statutory deadlines.

A true and correct copy of this email, which I obtained from the PACER system as Dkt. No. 36 in *Rodriguez v. Twitter*, N.D. Cal. Case No. 3:22-cv-07222-JD, is attached as **Exhibit 2**.

9. The only "statutory deadline" Respondents' counsel could be referring to here was the 30-day grace period of Section 1281.97 of the California Code of Civil Procedure; no other statute of which Petitioners are aware, or that Respondents have identified, provides any such "deadline." To be clear, nothing in Section 1281.97 entitles Respondents to delay payment of fees;

MOTION TO REMAND AND FOR FEES AND COSTS – DECLARATION OF AKIVA M. COHEN

that section merely provides that California courts will not *sanction* Respondents with the particular sanctions imposed by that law unless the delay is greater than 30 days.

10.     All of that said, Respondents have never contested the validity of Petitioners' arbitration agreements. To the contrary, Respondents have appeared in Petitioners' arbitrations, answered their arbitration demands, participated in an administrative conference discussing how JAMS would administer the proceedings, and now, finally, paid the case initiation fees.

11.     Attached hereto as **Exhibit 3** is the Declaration of Fidelma Callaghan in *Cornet v. Twitter, Inc.*, N.D. Cal. Case No. 3:22-cv-06857-JD, Dkt. No. 18-1.

12.     Attached hereto as **Exhibit 4** is the Notice of Removal in *Serv. Emp. Int'l Union, Loc. 1021 v. Priv. Indus. Council of Solano Cnty, Inc,.* E.D. Cal. Case No. 2:13-cv-01670-WBS-EFB, Dkt. No. 2.

13.     Attached hereto as **Exhibit 5** is the First Amended Complaint in *Serv. Emp. Int'l Union, Loc. 1021 v. Priv. Indus. Council of Solano Cnty, Inc,.* E.D. Cal. Case No. 2:13-cv-01670-WBS-EFB, Dkt. No. 12.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed this 12th day of May 2023 in Oceanside, NY.

Akiva M. Cohen

MOTION TO REMAND AND FOR FEES AND COSTS – DECLARATION OF AKIVA M. COHEN

# EXHIBIT 1

1   MORGAN, LEWIS & BOCKIUS LLP
    Eric Meckley, Bar No. 168181
2   eric.meckley@morganlewis.com
    Brian D. Berry, Bar No. 229893
3   brian.berry@morganlewis.com
    Kassia Stephenson, Bar No. 336175
4   kassia.stephenson@morganlewis.com
    One Market, Spear Street Tower
5   San Francisco, CA  94105-1596
    Tel:    +1.415.442.1000
6   Fax:    +1.415.442.1001

7   MORGAN, LEWIS & BOCKIUS LLP
    Ashlee N. Cherry, Bar No. 312731
8   ashlee.cherry@morganlewis.com
    1400 Page Mill Road
9   Palo Alto, CA  94304
    Tel:    +1.650.843.4000
10  Fax:    +1.650.843.4001

11  Attorneys for Respondent
    TWITTER, INC.

12

13                  **IN ARBITRATION BEFORE JAMS**

14

15  *Eisenberg, Dina vs. Twitter, Inc.*          JAMS Ref. No. 1345002152

16                                               **RESPONDENT TWITTER, INC.'S**
                                                 **RESPONSE TO CLAIMANT DINA**
17                                               **EISENBERG'S DEMAND FOR**
                                                 **ARBITRATION**
18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
  BOCKIUS LLP
 ATTORNEYS AT LAW
  SAN FRANCISCO

1    Respondent Twitter, Inc. ("Respondent" or "Twitter"), by and through its undersigned

2    counsel, hereby timely responds to the Demand for Arbitration submitted by Claimant Dina

3    Eisenberg ("Claimant") as follows:

4                                    **GENERAL DENIAL**

5    Pursuant to Rule 9 of the JAMS Employment Arbitration Rules & Procedures and Section

6    431.30(d) of the California Code of Civil Procedure, Twitter timely denies, generally and

7    specifically, each and every allegation in Claimant's unverified Demand for Arbitration.  Twitter

8    further denies that Claimant has been damaged in any sum or sums, or at all, or that Claimant has

9    suffered, incurred or will suffer or incur any injury, damage or loss by reason of any act, omission

10   to act, or any conduct, whether negligent, intentional, or otherwise, on the part of Twitter.

11                                       **DEFENSES**

12   Twitter has not completed its investigation of the facts of this case, has not completed

13   discovery, and has not completed its preparation for arbitration.  Twitter asserts the following

14   defenses based on its current knowledge, information, and belief at this time, and without waiver

15   of any applicable attorney-client privileges and/or work product doctrine protections.  Twitter

16   reserves the right to modify, amend, and/or supplement any defense at a later time.  Without

17   conceding that Twitter bears the burden of proof or persuasion as to any one of them, Twitter

18   asserts the following separate defenses to Claimant's Demand for Arbitration:

19                             **FIRST AFFIRMATIVE DEFENSE**

20                              **(Failure to State a Claim)**

21   1.    Claimant's Demand fails to state a cause of action upon which relief can be

22   granted.

23                            **SECOND AFFIRMATIVE DEFENSE**

24                              **(Statute of Limitations)**

25   2.    Claimant's claims are barred in whole or in part by all applicable statutes of

26   limitations, including, but not limited to California Code of Civil Procedure §§ 335.1, 337, 338,

27   339, and 343, and California Labor Code § 203, Government Code §§ 12960 and 12965, and the

28   statutes of limitation applicable under New York law, North Carolina law, and any other

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 45142750

- 2 -

RESPONSE TO DEMAND FOR ARBITRATION

1   jurisdictions in which Claimant purports to reside and/or apply.

2   <u>**THIRD AFFIRMATIVE DEFENSE**</u>

3   (***De Minimis***)

4      3.     Claimant's claims are barred, in whole or in part, by the *de minimis* doctrine.

5   <u>**FOURTH AFFIRMATIVE DEFENSE**</u>

6   **(Substantial Compliance)**

7      4.     The claimed violations as to Claimant are barred, in whole or in part, because

8   Twitter complied with its statutory obligations, if any, and to the extent it is determined that there

9   was non-compliance, Twitter substantially complied with its obligations.

10   <u>**FIFTH AFFIRMATIVE DEFENSE**</u>

11   **(Collateral Estoppel / Res Judicata)**

12      5.     Claimant's claims may be barred, in whole or in part, by the doctrine of collateral

13   estoppel and/or *res judicata*.

14   <u>**SIXTH AFFIRMATIVE DEFENSE**</u>

15   **(One Satisfaction)**

16      6.     Claimant cannot properly recover damages under multiple or different theories or

17   causes of action for the same or similar alleged acts/conduct/omissions.

18   <u>**SEVENTH AFFIRMATIVE DEFENSE**</u>

19   **(Release)**

20      7.     Claimant cannot maintain the claims against Twitter because and to the extent the

21   claims that are the subject of this matter have been settled and/or released.

22   <u>**EIGHTH AFFIRMATIVE DEFENSE**</u>

23   **(Statute of Frauds)**

24      8.     Claimant's claims are barred by the statute of frauds, including the provisions

25   contained in California Civil Code § 1624 and in the applicable laws of any other jurisdictions in

26   which Claimant purports to reside and/or apply.

27   <u>**NINTH AFFIRMATIVE DEFENSE**</u>

28   **(Lack/Failure of Consideration)**

9.      Any recovery by Claimant is barred on the ground that, as to each and every oral, implied or other contract alleged, there was a failure of consideration and/or lack of mutual consent.

## TENTH AFFIRMATIVE DEFENSE

### (Excessive Fines)

10.     To the extent Claimant seeks to recover civil penalties that are disproportionate to the actual harm suffered, if any, an award of civil penalties under the circumstances of this case would constitute an excessive fine and otherwise would be in violation of Twitter's due process and other rights under the United States and California and New York and North Carolina Constitutions and statutes.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Unforeseeable Business Circumstances)

11.     Twitter's conduct did not violate the WARN Act because any layoffs were caused by business circumstances that were not reasonably foreseeable as of the time that any notice would have been required.

## TWELFTH AFFIRMATIVE DEFENSE

### (Privileged Conduct)

12.     Twitter is not responsible for Claimant's alleged harm and damages, if any, because Twitter's conduct was permissible and privileged.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Failure to Exhaust Statutory/Administrative/Contractual Requirements)

13.     Claimant's claims are barred, in whole or in part, to the extent Claimant failed to satisfy the statutory prerequisites to suit, and/or failed to timely and/or properly exhaust administrative and/or contractual remedies including with the appropriate administrative agencies of the State of California, the State of New York, the State of North Carolina, and of the United States, as required by the California Fair Employment and Housing Act, the New York Human Rights Act, the North Carolina Equal Employment Practices Act, Title VII of the Civil Rights Act, and the California Labor Code, as well as all other applicable statutes and/or regulations.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 45142750

- 4 -

RESPONSE TO DEMAND FOR ARBITRATION

## FOURTEENTH AFFIRMATIVE DEFENSE

### (Arbitral – Judicial Comity – Stay of Proceedings)

14.     Claimant's claims should be stayed, in whole or in part, because of the existence of previously filed and pending class action lawsuits in which Claimant is a member of the alleged putative class(es) and the claims alleged (and/or defenses asserted) with respect to the putative class(es) are the same as or substantially overlap with the claims alleged by Claimant, and "[i]t is black letter law that, when a federal action has been filed covering the same subject matter as is involved in a California action, the California court [or arbitral body] has the discretion […] to stay the state court action." *Caiafa Prof. L. Corp. v. State Farm Fire & Cas. Co.*, 15 Cal. App. 4th 800, 804 (1993).  A court or arbitral body "should consider a number of factors, including . . . the importance of avoiding unseemly conflicts with the federal court." *Benitez v. Williams*, 219 Cal. App. 4th 270, 276-77 (2013) (citing *Farmland Irr. Co. v. Dopplmaier*, 48 Cal. 2d 208, 215 (1957)).  Factors include "the importance of discouraging multiple litigation . . .  ." *Farmland Irr. Co.*, 48 Cal. 2d at 215.  A stay is appropriate where similarity with pending federal litigation creates a risk of inconsistent rulings.  *See*, *e.g.*, *Caiafa Prof. L. Corp.*, 15 Cal. App. 4th at 803, 806-807.

## FIFTEENTH AFFIRMATIVE DEFENSE

### (Legitimate, Non-Discriminatory Reasons)

15.     Any and all employment actions taken with respect to Claimant were not based on any protected characteristic/trait(s), including but not limited to age, race, gender, ethnicity, ancestry, national origin, disability, involvement in any protected activity, or any other improper or illegal consideration, but rather were based solely on one or more legitimate, non-discriminatory and non-retaliatory reasons.

## SIXTEENTH AFFIRMATIVE DEFENSE

### (After-Acquired Evidence)

16.     To the extent that Twitter acquires any evidence of wrongdoing by Claimant during the course of this arbitration, which wrongdoing would have materially affected the terms and conditions of Claimant's employment or would have resulted in Claimant either being

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 45142750          RESPONSE TO DEMAND FOR ARBITRATION

demoted, disciplined, or terminated, such after-acquired evidence shall bar and/or limit the amount of damages Claimant can recover on these claims, assuming arguendo, Claimant is able to establish liability.

## SEVENTEENTH AFFIRMATIVE DEFENSE

### (Mixed-Motives/Same Decision)

17.     To the extent that discrimination and/or retaliation were a motivating factor in the employment decisions affecting Claimant's employment, which Twitter denies, Twitter alleges that legitimate reasons, standing alone, would have induced Twitter to make the same employment decisions.

## EIGHTEENTH AFFIRMATIVE DEFENSE

### (At-Will Employee)

18.     Twitter alleges that Claimant was an at-will employee of Twitter pursuant to Section 2922 of the California Labor Code and/or any other applicable state statutes and/or case law, including New York and North Carolina laws.

## NINETEENTH AFFIRMATIVE DEFENSE

### (Good Faith Defense to Violation of WARN Act)

19.     Twitter's conduct did not violate the WARN Act because Twitter had an honest intention to ascertain and follow the requirements of the WARN Act, and Twitter had reasonable grounds for believing that its conduct fully complied with the statute, and Twitter acted in good faith at all times.

## TWENTIETH AFFIRMATIVE DEFENSE

### (Accord and Satisfaction)

20.     The claimed violations as to Claimant are barred, in whole or in part, by the principles of accord and satisfaction.

**TWENTY-FIRST AFFIRMATIVE DEFENSE**

**(Failure to Mitigate / Avoidable Consequences)**

21.    Claimant's claims are barred, in whole or in part, because Claimant has not appropriately or adequately mitigated their alleged harm/damages, if any.  Further, the sought-after damages/harm and penalties, if any, as to Claimant must be reduced because Claimant failed to take advantage of any preventative or corrective safeguards or otherwise to avoid harm.

**TWENTY-SECOND AFFIRMATIVE DEFENSE**

**(No Malice/Good Faith)**

22.    At all times and places mentioned in the Demand, Twitter acted without malice and with a good faith belief in the propriety of its conduct.

**TWENTY-THIRD AFFIRMATIVE DEFENSE**

**(Unclean Hands)**

23.    The claims of Claimant are barred, in whole or in part, by the doctrine of unclean hands.

**TWENTY-FOURTH AFFIRMATIVE DEFENSE**

**(Waiver and Estoppel/Laches)**

24.    Claimant's claims are barred in whole or in part by the doctrines of waiver, estoppel (including equitable estoppel), and/or laches.

**TWENTY-FIFTH AFFIRMATIVE DEFENSE**

**(Setoff and Recoupment)**

25.    If any damages and/or penalties are recovered by Claimant, although entitlement to such is expressly denied, Twitter is entitled under the equitable doctrine of setoff and recoupment to offset all overpayments and/or all other obligations of Claimant owed to Twitter against any damages and/or penalties that may be awarded against Twitter.

**TWENTY-SIXTH AFFIRMATIVE DEFENSE**

**(Unjust, Arbitrary, and Oppressive, or Confiscatory Penalties)**

26.    Claimant is not entitled to recover any statutory penalties against Twitter.  If penalties are awarded, such penalties should be reduced because, under the circumstances of this

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 45142750                    RESPONSE TO DEMAND FOR ARBITRATION

1   case, any such recovery would be unjust, arbitrary, oppressive, and/or confiscatory.

2   **TWENTY-SEVENTH AFFIRMATIVE DEFENSE**

3   **(Outside of Scope of Authority)**

4       27.    Twitter alleges that any unlawful or other wrongful acts of any person(s) employed

5   by Twitter were outside of the scope of their authority and such acts, if any, were not authorized,

6   ratified, or condoned by Twitter, nor did Twitter know or have reason to be aware of such alleged

7   conduct.

8   **TWENTY-EIGHTH AFFIRMATIVE DEFENSE**

9   **(No Willful Violation – Bona Fide and Good Faith Belief and Dispute)**

10      28.    If Twitter is found to have failed to pay Claimant any wages due, which

11  allegations Twitter expressly denies, then Twitter acted, at all relevant times, on the basis of an

12  objectively and subjectively *bona fide* good faith and reasonable belief that it had complied fully

13  with wage-related laws.  Consequently, Twitter's conduct was not willful within the meaning of

14  any applicable statutes, including but not limited to the California Labor Code and the North

15  Carolina Wage and Hour Act and New York laws, and Twitter cannot be held liable for purported

16  liquidated damages or any extended limitations period or penalties pursuant to any applicable

17  statutes, including but not limited to California Labor Code Section 203 and North Carolina

18  General Statute Section 95-25.22 and New York law, based upon this *bona fide* and good faith

19  dispute that any wages are due to Claimant.

20  **TWENTY-NINTH AFFIRMATIVE DEFENSE**

21  **(Good Faith Reliance)**

22      29.    Claimant's claims are barred to the extent Twitter acted in good faith reliance on

23  an administrative regulation, order, ruling and/or interpretation of a state or federal government

24  agency, including but not limited to the United States Department of Labor, the North Carolina

25  Department of Labor, all New York administrative agencies, and the California Industrial

26  Welfare Commission and/or Division of Labor Standards Enforcement.

27  **THIRTIETH AFFIRMATIVE DEFENSE**

28  **(Lack of Standing)**

30.     Claimant lacks standing as to some or all of the claims alleged.

### THIRTY-FIRST AFFIRMATIVE DEFENSE

### (Contract Formation at Issue)

31.     Any recovery by Claimant is barred on the ground that, as to each and every oral, implied or other contract alleged, there are defects in the formation of the alleged contract at issue, and in fact, no enforceable contract was formed between Twitter and Claimant.

### THIRTY-SECOND AFFIRMATIVE DEFENSE

### (Ratification)

32.     Claimant's claims are barred pursuant to California Civil Code section 2310 and the doctrine of ratification under the laws of any other jurisdictions in which Claimant purports to reside and/or apply.

### THIRTY-THIRD AFFIRMATIVE DEFENSE

### (Unjust Enrichment)

33.     Claimant's claims are barred pursuant to the doctrine of unjust enrichment.

### THIRTY-FOURTH AFFIRMATIVE DEFENSE

### (Quantum Meruit)

34.     Claimant's claims are barred pursuant to the doctrine of *quantum meruit*.

### THIRTY-FIFTH AFFIRMATIVE DEFENSE

### (Parol Evidence Rule)

35.     Claimant's breach of contract-based and promissory estoppel claims are barred pursuant to the parol evidence rule, which "generally prohibits the introduction of any extrinsic evidence, whether oral or written, to vary, alter or add to the terms of an integrated written instrument." *Casa Herrera, Inc. v. Beydoun*, 32 Cal. 4th 336, 343 (2004).

### THIRTY-SIXTH AFFIRMATIVE DEFENSE

### (Comparative Fault and/or Negligence)

36.     Without admitting that Claimant suffered any damages and/or is entitled to any recovery, Twitter alleges that any recovery to which Claimant might be entitled must be reduced by reason of Claimant's own fault and/or comparative and/or contributory negligence.

1

## THIRTY-SEVENTH AFFIRMATIVE DEFENSE

2

### (Contributory Negligence and/or Comparative Fault of Third Parties)

3      37.      Without admitting that Claimant suffered any damages and/or is entitled to any

4    recovery, Twitter alleges that any recovery to which Claimant might be entitled must be reduced

5    by reason of the fault and/or negligence of third parties.

6

## THIRTY-EIGHTH AFFIRMATIVE DEFENSE

7

### (Illegality)

8      38.      Claimant's breach of contract-based and promissory estoppel claims are barred

9    pursuant to the doctrine of illegality.

10

## THIRTY-NINTH AFFIRMATIVE DEFENSE

11

### (Recission or Mutual Abandonment)

12      39.      Claimant's breach of contract-based and promissory estoppel claims are barred

13    pursuant to the doctrine of recission or mutual abandonment.

14

## RESERVATION OF RIGHTS

15    Twitter reserves the right to assert such additional defenses that may appear and prove applicable

16    during the course of this arbitration.

17

## PRAYER FOR RELIEF

18      WHEREFORE, Twitter prays for judgment as follows:

19      1.      Claimant take nothing by reason of the Demand for Arbitration;

20      2.      An arbitration award be entered in favor of Twitter and against Claimant on all

21    claims for relief;

22      3.      Twitter be awarded its costs of suit and attorneys' fees according to proof; and

23      4.      Twitter be awarded such other and further relief as the Arbitrator deems just and

24    proper.

25

26

27

28

Morgan, Lewis &
Bockius LLP
Attorneys at Law
San Francisco

DB2/ 45142750

- 10 -

RESPONSE TO DEMAND FOR ARBITRATION

1    Dated: February 16, 2023                         MORGAN, LEWIS & BOCKIUS LLP

2

3                                            By    /s/ Eric Meckley
                                                  Eric Meckley
4                                                 Brian D. Berry
                                                  Ashlee N. Cherry
5                                                 Kassia Stephenson
                                                  Attorneys for Respondent
6                                                 TWITTER, INC.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 11 -

# EXHIBIT 2

**Sender:** Shannon Liss-Riordan <sliss@llrlaw.com>
**Recipient(s):** Meckley, Eric <eric.meckley@morganlewis.com>
**CC recipient(s):** Thomas Fowler <tfowler@llrlaw.com>, Stephenson, Kassia
<kassia.stephenson@morganlewis.com>, Berry, Brian D. <brian.berry@morganlewis.com>, Cherry, Ashlee N.
<ashlee.cherry@morganlewis.com>, Doyle, Adele <adele.doyle@morganlewis.com>
**Subject:** Re: Liss-Riordan Twitter Cases - JAMS Ref No. 1601001991
**Sent datetime:** 2023-02-06T23:57:04

The agreement says that JAMS rules will be followed, so if JAMS says the fees are due upon receipt, they're due upon receipt.

There are no filing fees due for the claimants whose arbitration agreements don't specify JAMS, so there is no reason for you not to have responded yet to my suggestions for arbitrators for the claims of Camacho, Kindel, and Mehta.

------------------------------
Shannon Liss-Riordan
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116
Tel: (617) 994-5800
Fax: (617) 994-5801
sliss@llrlaw.com
www.llrlaw.com


On Feb 6, 2023, at 11:50 PM, Meckley, Eric <eric.meckley@morganlewis.com> wrote:


Shannon,
There are currently 3 of your plaintiffs for whom JAMS has issued an invoice (Cornet, De Caires and Pan).
Although JAMS states that the invoice is "due immediately", the deadline for payment is actually thirty (30) days
from issuance, which is February 22, 2023.   You may wish to impose your own unilateral "deadlines" for
payment but Twitter will comply with the actual statutory deadlines.
Thanks

**Eric Meckley**
Morgan, Lewis & Bockius LLP
One Market, Spear Street Tower | San Francisco, CA 94105
Direct: +1.415.442.1013 | Main: +1.415.442.1000 | Fax: +1.415.442.1001
eric.meckley@morganlewis.com | www.morganlewis.com
Assistant: Adele Doyle | +1.415.442.1528 | adele.doyle@morganlewis.com

**From:** Shannon Liss-Riordan <sliss@llrlaw.com>
**Sent:** Monday, February 6, 2023 7:19 AM
**To:** Meckley, Eric <eric.meckley@morganlewis.com>
**Cc:** Thomas Fowler <tfowler@llrlaw.com>; Stephenson, Kassia <kassia.stephenson@morganlewis.com>; Berry,
Brian D. <brian.berry@morganlewis.com>; Cherry, Ashlee N. <ashlee.cherry@morganlewis.com>; Doyle, Adele
<adele.doyle@morganlewis.com>
**Subject:** Re: Liss-Riordan Twitter Cases - JAMS Ref No. 1601001991

[EXTERNAL EMAIL]
Eric -

Twitter has not paid any arbitration filing fees, including those that were billed to you about two weeks ago, and
you've opposed starting arbitrations until we produce signed arbitration agreements, which we are now doing.

Also, in response to your request that I propose arbitrators for several initial cases where JAMS is not specified
and the parties are required to agree on their own to arbitrators, I gave you suggestions and asked for your
response in a week. That week passed on Friday with no response from you.

Unless you respond by tomorrow, committing that Twitter will pay this week the JAMS filing fees that are due, as
well as provide responses to my proposals for arbitrators for the cases where JAMS is not specified, I will report
to the court that Twitter is not participating in arbitration and that these cases should therefore all be able to
proceed in court.

------------------------------
Shannon Liss-Riordan
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116
Tel: (617) 994-5800

# EXHIBIT 3

MORGAN, LEWIS & BOCKIUS LLP
Eric Meckley, Bar No. 168181
eric.meckley@morganlewis.com
Brian D. Berry, Bar No. 229893
brian.berry@morganlewis.com
Ashlee N. Cherry, Bar No. 312731
ashlee.cherry@morganlewis.com
One Market
Spear Street Tower
San Francisco, CA  94105-1596
Tel:      +1.415.442.1000
Fax:     +1.415.442.1001

Attorneys for Defendant
TWITTER, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| EMMANUEL CORNET, JUSTINE DE CAIRES, GRAE KINDEL, ALEXIS CAMACHO, AND JESSICA PAN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>TWITTER, INC.,<br><br>Defendant. | Case No. 3:22-cv-06857-JD<br><br>**DECLARATION OF FIDELMA CALLAGHAN IN SUPPORT OF DEFENDANT TWITTER, INC.'S MOTION TO COMPEL INDIVIDUAL ARBITRATION AND DISMISS CLASS CLAIMS** |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DECLARATION OF FIDELMA
CALLAGHAN IN SUPPORT OF MOTION
TO COMPEL ARBITRATION 3:22-CV-
06857-JD

## DECLARATION OF FIDELMA CALLAGHAN

I, Fidelma Callaghan, do hereby state and declare as follows:

1.     I have worked at Twitter for almost two years.   Currently, I hold the title of Director of Global People Services.  I have held this position since March 2021.  Prior to that, I worked for another company in a similar capacity.

2.     As part of my job duties, I have personal knowledge of Twitter's current processes and practices, and its historical processes and practices dating back at least to September 2017, for onboarding new employees, including how Twitter presents applicants for U.S. positions with an offer letter and a Dispute Resolution Agreement, the process for applicants to review, sign, and submit documentation relating to their prospective employment, and Twitter's record-keeping systems related to the applicant's execution of the offer letter and Dispute Resolution Agreement and submission of a request, if any, to opt out of the Agreement, all of which Twitter maintains in the ordinary course of business.   My knowledge of Twitter's practices is based on information I have learned in the course of my work, including through my review of Twitter documents and my understanding of its systems.  If called to testify regarding the facts set forth in this declaration, I could and would testify competently thereto.

3.     Since at least September 2017, when Twitter offers a job to an applicant for a position in the United States, a member of Twitter's Global People Services team prepares an offer packet in Twitter's internal OWL system, which is Twitter's system for generating onboarding documents for new employees, including an offer letter and onboarding packet. When the offer is accepted, the new hire record—which includes the offer letter and onboarding packet—is then transferred to a different system called Workday where an employee file is created. The offer packet includes the applicant's offer letter and a Dispute Resolution

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DECLARATION OF FIDELMA
CALLAGHAN IN SUPPORT OF MOTION
TO COMPEL ARBITRATION 3:22-CV-
06857-JD

Agreement, among other things. Twitter sends the applicant's offer packet to the applicant using the email address that the applicant provided during the application process, or the employee's @twitter.com email address if the offer packet was generated during the conversion from an independent contractor position to a position as a full-time employee.

4.      An applicant's offer letter explains the steps the applicant needs to take to accept the offer, which includes signing the offer letter and the other documents in the offer packet, including the Dispute Resolution Agreement, and returning them to Twitter by a specific date on which the offer expires.

5.      Based on my experience and job responsibilities at Twitter, I am familiar with how applicants use the secure electronic signature system to electronically sign documents in the offer packet. By clicking on a link in an email that the applicant receives, the internet-based Adobe Sign program launches and prompts the applicant to sign the document, allowing the applicant the choice of typing, drawing, or taking a picture of their signature. The Adobe Sign program then presents the applicant with the complete offer packet in PDF format and allows the applicant to scroll up and down to review the materials on a computer screen. The program identifies the parts of the documents that require an applicant's signature or initials, and it allows the applicant to apply their electronic signature or initials by clicking on prompts that say "Click to Sign Here" in the parts of the documents with blanks indicating that a signature or initials are required. When the applicant has completed reviewing and signing the documents, the applicant is prompted to click a button, and then a message pops up that says "you're all set. You finished signing [document title] document. We will email the agreement to all parties. You can also download a copy of what you just signed." The screen also provides a hyperlink to the document for the employee to download.

DECLARATION OF FIDELMA
CALLAGHAN IN SUPPORT OF MOTION
TO COMPEL ARBITRATION 3:22-CV-
06857-JD

6.     Based on my experience and job responsibilities at Twitter, I am familiar with how Twitter receives and maintains executed offer packets from applicants.  After the applicant submits the executed documents through Adobe Sign, an automatic email notification is sent to People Services and the recruiter.  Also, the signed letter is automatically uploaded into Twitter's OWL system.   The Adobe Sign system also sends a copy of the signed offer packet to the applicant's email address.  The system has a "hire sync" feature that refreshes every thirty-minutes and uploads any new electronic signatures into OWL and identifies people who have accepted the offer and are ready to onboard.  The feature also triggers automatic creation of new Workday profiles as well.

7.     Each of the five Plaintiffs in this lawsuit electronically signed their offer packet documents, including their offer letter and a Dispute Resolution Agreement as follows:

a.  **<u>Grae Kindel</u>**.  I have reviewed the personnel records for Plaintiff Grae Kindel, which contains a signed offer letter and a Dispute Resolution Agreement bearing Kindel's signature and dated September 14, 2017.  Attached hereto as **Exhibit A** is a true and correct copy of Kindel's signed offer letter and Dispute Resolution Agreement, which are maintained in their personnel records in the ordinary course of business.   I have also reviewed the OWL entries relating to Kindel's offer packet and the audit trail recorded to Adobe Sign when Kindel completed the offer packet.   Based on my review of those materials, on September 14, 2017, Twitter sent the offer packet to Kindel.  Kindel's offer packet included a Dispute Resolution Agreement.  On September 14, 2017, Kindel signed the documents enclosed in the offer packet, including the Dispute Resolution Agreement, via Adobe Sign.  A PDF copy of the signed offer packet, which included a signed copy of the Dispute Resolution Agreement, was sent to Kindel's personal email address.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

DECLARATION OF FIDELMA
CALLAGHAN IN SUPPORT OF MOTION
TO COMPEL ARBITRATION 3:22-CV-
06857-JD

b. **<u>Alexis Camacho</u>**. I have reviewed the personnel records for Plaintiff Alexis Camacho, which contains an offer letter and a Dispute Resolution Agreement bearing Camacho's signature and dated June 12, 2018. Attached hereto as **Exhibit B** is a true and correct copy of Camacho's signed offer letter and Dispute Resolution Agreement, which are maintained in their personnel file in the ordinary course of business. I have also reviewed the OWL entries relating to Camacho's offer packet and the audit trail recorded to Adobe Sign when Camacho completed the offer packet. Based on my review of those materials, on June 11, 2018, Twitter sent the offer packet to Camacho. Camacho's offer packet included a Dispute Resolution Agreement. On June 12, 2018, Camacho signed the documents enclosed in the offer packet, including the offer letter and Dispute Resolution Agreement, via Adobe Sign. A PDF copy of the signed offer packet, which included a signed copy of the Dispute Resolution Agreement, was sent to Camacho's personal email address.

c. **<u>Justine De Caires</u>**. I have reviewed the personnel records for Plaintiff Justine de Caires, which contains an offer letter and a Dispute Resolution Agreement bearing De Caires signature and dated October 7, 2018. Attached hereto as **Exhibit C** is a true and correct copy of De Caires' signed offer letter and Dispute Resolution Agreement, which are maintained in their personnel records in the ordinary course of business. I have also reviewed the OWL entries relating to De Caires' offer packet and the audit trail recorded to Adobe Sign when De Caires completed the offer packet. Based on my review of those materials, on October 4, 2018, Twitter sent the offer packet to De Caires. De Caires' offer packet included a Dispute Resolution Agreement. On October 7, 2018, De Caires signed the documents enclosed in the offer packet, including the Dispute Resolution Agreement, via Adobe Sign. A PDF copy of the signed offer packet, which included a signed copy of the Dispute Resolution Agreement, was sent to De

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

DECLARATION OF FIDELMA
CALLAGHAN IN SUPPORT OF MOTION
TO COMPEL ARBITRATION 3:22-CV-
06857-JD

Caires' personal email address.

       d.  **<u>Jessica Pan</u>**.  I have reviewed the personnel records for Plaintiff Jessica Pan, which contains an offer letter and a Dispute Resolution Agreement bearing Pan's signature and dated November 18, 2019.  Attached hereto as **Exhibit D** is a true and correct copy of Pan's signed offer letter and Dispute Resolution Agreement, which are maintained in their personnel records in the ordinary course of business.  I have also reviewed the OWL entries relating to Pan's offer packet and the audit trail recorded to Adobe Sign when Pan completed the offer packet.  Based on my review of those materials, on November 18, 2019, Twitter sent the offer packet to Pan.  Pan's offer packet included a Dispute Resolution Agreement.  On November 18, 2019, Pan signed the documents enclosed in the offer packet, including the Dispute Resolution Agreement, via Adobe Sign.  A PDF copy of the signed offer packet, which included a signed copy of the Dispute Resolution Agreement, was sent to Pan's personal email address.

       e.  **<u>Emmanuel Cornet</u>**.  I have reviewed the personnel records for Plaintiff Emmanuel Cornet, which contains an offer letter and a Dispute Resolution Agreement bearing Cornet's signature and dated April 23, 2021.  Attached hereto as **Exhibit E** is a true and correct copy of Cornet's signed offer letter and Dispute Resolution Agreement, which are maintained in his personnel records in the ordinary course of business.  I have also reviewed the OWL entries relating to Cornet's offer packet and the audit trail recorded to Adobe Sign when Cornet completed the offer packet.  Based on my review of those materials, on April 23, 2021, Twitter sent the offer packet to Cornet.  Cornet's offer packet included a Dispute Resolution Agreement.  On April 23, 2021, Cornet signed the documents enclosed in the offer packet, including the Dispute Resolution Agreement, via Adobe Sign.  A PDF copy of the signed offer packet, which included a signed copy of the Dispute Resolution Agreement, was sent to Cornet's personal email

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

DECLARATION OF FIDELMA
CALLAGHAN IN SUPPORT OF MOTION
TO COMPEL ARBITRATION 3:22-CV-
06857-JD

address.

8.     Based on my experience and job responsibilities at Twitter, I know that if an employee submits a Dispute Resolution Agreement Opt Out Form, it would be retained in that employee's personnel records in the ordinary course of business.  I have reviewed each of the Plaintiffs' personnel files and confirmed that none of the Plaintiffs submitted a Dispute Resolution Agreement Opt Out Form to Twitter's Human Resources department within 30 days of receiving the Dispute Resolution Agreement (or at any time thereafter).  I have also confirmed that each of them remained employed at Twitter for more than 30 days after receiving the Dispute Resolution Agreement.

I declare under penalty of perjury under the laws of California and the United States of America that the foregoing is true and correct.  Signed on November 21, 2022 in Dublin, Ireland.

_____

FIDELMA CALLAGHAN

DECLARATION OF FIDELMA
CALLAGHAN IN SUPPORT OF MOTION
TO COMPEL ARBITRATION 3:22-CV-
06857-JD

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

EXHIBIT A

September 14, 2017

Greg Kindel
23 West Street #2
Medford, MA 02155
greg.kindel@gmail.com

Dear Greg,

Twitter, Inc., a Delaware corporation (the "Company"), is pleased to offer you employment on the following terms:

1. ***Position.*** Your job title will be Sr. Software Engineer. You will report at the start of your employment to Bryan Bonczek, Manager, Software Engineering. You will be a regular, full-time employee.

2. ***Start Date.*** Your employment will commence on October 9, 2017. You will be providing services from the Company's Cambridge, MA location. (You may be required to travel as one part of your duties.)

3. ***Cash Compensation***. The Company will pay you a gross starting salary at an annualized rate of ████████████████████████████, payable in accordance with the Company's standard payroll schedule. This salary will be subject to adjustment from time to time in accordance with the employee compensation policies then in effect. This is an exempt position, and your salary is intended to cover all hours worked.

4. **Performance Bonus Plan.** You may be eligible to earn a discretionary performance bonus award in accordance with the Company's discretionary Performance Bonus Plan as it may exist and/or be amended from time to time. Currently, for the Performance Bonus Plan Year that extends from January 1, 2017 to December 31, 2017, you have been assigned a Performance Bonus Plan target of [10.00]% of your annual base salary, which will be paid pursuant to the terms and conditions in the Performance Bonus Plan.

5. ***Employee Benefits.*** As a regular employee of the Company, you will be eligible to participate in Company-sponsored benefits in accordance with the terms of the applicable benefit plans.

6. **Equity Compensation.** Subject to the approval of the Company's Board of Directors, you will be granted Fifteen Thousand [15,000] restricted stock units ("RSUs") of the Company. The RSUs will be subject to the terms and conditions set forth in the Company's 2013 equity plan. You will vest in 25% of the RSUs on the first year anniversary of the first day of the month following your start date, provided you have been continuously employed by Twitter during that time, and the balance quarterly over the next three years of continuous service, as described in the equity plan. Please note that the terms of the Company's equity plans are reviewed periodically, and subject to revision at the Company's sole discretion.

7. **Employee Invention Assignment and Confidentiality Agreement.** You will be required, as a condition of your employment with the Company, to sign the Company's standard Employee Invention Assignment and Confidentiality Agreement ("Confidentiality Agreement"). A copy of the Confidentiality Agreement is enclosed with this letter.

8. **Employment Relationship.** Employment with the Company is for no specific period of time. Your employment with the Company will be "at will," meaning that either you or the Company may terminate your employment at any time and for any reason, with or without cause. This is the full and complete agreement between you and the Company regarding the duration of the employment relationship. Although your job duties, title, compensation and benefits, as well as the Company's personnel policies and procedures may change from time to time, the "at will" nature of your employment, may only be changed through an express written agreement signed by you and the Company's Chief Executive Officer.

9. **Outside Activities.** While you render services to the Company, you will not engage in any other employment, consulting, or other business activity that would create a conflict of interest with the Company, which includes engaging in any work that is competitive in nature. While you render services to the Company, you also will not assist any person or entity in competing with the Company, in preparing to compete with the Company, or in hiring any employees or consultants of the Company. In addition, for a period of one (1) year after the termination of your services, you will not solicit either directly or indirectly, any employee of the Company to leave the Company for other employment or assist any person or entity in doing the same.

10. **Background Check.**  This offer is contingent on successful completion of a background check regarding your employment experience, educational credentials, criminal history and the like.  This offer may be withdrawn in the sole discretion of the Company based on its review of the background check results. Your acceptance of this offer of employment will be complete when you have initiated authorization to perform a background check, as instructed by our Human Resources Department.

11. **Verification of Employability.**  This offer is contingent upon your providing legal proof of your identity and authorization to work in the United States within three (3) days of the commencement of your employment.

12. **Taxes.** All forms of compensation that are subject to income or payroll taxes will be reduced to reflect applicable income tax withholding and payroll taxes.  Any form of compensation that is subject to income or payroll taxes and that is not paid in cash will result in a reduction in cash compensation to reflect applicable income tax withholding and payroll taxes.

13. **Dispute Resolution.**  We sincerely hope that no dispute will arise between us.  If a dispute should arise, it can be resolved through the Company's Dispute Resolution Policy.  A copy of the Dispute Resolution Policy is enclosed with this letter.

14. **Entire Agreement**.  This letter agreement supersedes and replaces any prior agreements, representations or understandings, whether written, oral or implied, between you and the Company.

Please do not make any change in your present living or employment circumstances until all of the conditions to this offer, including successful completion of the background check and, if applicable, acquisition of a visa, have been satisfied. Any questions regarding your satisfaction of these conditions should be directed to Sonny Yuen at sonnyyuen@twitter.com.

**By signing this letter agreement, you confirm to the Company that you have no contractual commitments or other legal obligations that would prohibit you from performing your duties for the Company.**



Page 3

We hope that you will accept our offer to join the Company. To indicate your acceptance of this offer, please initiate the authorization of your background check, and sign and date the enclosed duplicate original of this letter agreement, the enclosed Confidentiality Agreement, and the enclosed Dispute Resolution Policy and return them to Sonny. This offer will expire if the signed documents are not returned to me by the end of the day on September 20, 2017.

*Very truly yours,*

**Twitter, Inc.**

*By*

Laura Brady, VP, Total Rewards

I have read, understood and accept all the provisions of this offer of employment:

*Greg Kindel*
Greg Kindel (Sep 14, 2017)

Greg Kindel

Sep 14, 2017

Date



# DISPUTE RESOLUTION AGREEMENT

---

**This Dispute Resolution Agreement is a contract and covers important issues relating to your rights. It is your sole responsibility to read it and understand it. You are free to seek assistance from independent advisors of your choice outside the Company or to refrain from doing so if that is your choice.**

---

## 1. How This Agreement Applies

This Agreement is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. and evidences a transaction involving commerce. This Agreement applies to any dispute arising out of or related to Employee's employment with Twitter, Inc. or one of its affiliates, successor, subsidiaries or parent companies ("Company") or termination of employment and survives after the employment relationship terminates. Nothing contained in this Agreement shall be construed to prevent or excuse Employee or the Company from utilizing the Company's existing internal procedures for resolution of complaints, and this Agreement is not intended to be a substitute for the utilization of such procedures.

Except as it otherwise provides, this Agreement is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration. This Agreement requires all such disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial. Such disputes include without limitation disputes arising out of or relating to interpretation or application of this Agreement, including the enforceability, revocability or validity of the Agreement or any portion of the Agreement.

Except as it otherwise provides, this Agreement also applies, without limitation, to disputes regarding the employment relationship, trade secrets, unfair competition, compensation, breaks and rest periods, termination, or harassment and claims arising under the Uniform Trade Secrets Act, Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act (except for claims for employee benefits under any benefit plan sponsored by the Company and covered by the Employee Retirement Income Security Act of 1974 or funded by insurance), Genetic Information Non-Discrimination Act, and state statutes, if any, addressing the same or similar subject matters, and all other state statutory and common law claims.

## 2. Limitations On How This Agreement Applies

This Agreement does not apply to claims for workers compensation, state disability insurance and unemployment insurance benefits.

Regardless of any other terms of this Agreement, claims may be brought before and remedies awarded by an administrative agency if applicable law permits access to such an agency notwithstanding the existence of an agreement to arbitrate. Such administrative claims include without limitation claims or charges brought before the Equal Employment Opportunity Commission (www.eeoc.gov), the U.S. Department of Labor (www.dol.gov), the National Labor Relations Board (www.nlrb.gov), or the Office of Federal Contract Compliance Programs (www.dol.gov/esa/ofccp). Nothing in this Agreement shall be deemed to preclude or excuse a party from bringing an administrative claim before any agency in order to fulfill the party's obligation to exhaust administrative remedies before making a claim in arbitration.

Disputes that may not be subject to predispute arbitration agreement as provided by the Dodd-Frank Wall Street Reform and Consumer Protection Act (Public Law 111-203) are excluded from the coverage of this Agreement.

# DISPUTE RESOLUTION AGREEMENT

## 3. Selecting The Arbitrator

The Arbitrator shall be selected by mutual agreement of the Company and the Employee.  Unless the Employee and Company mutually agree otherwise, the Arbitrator shall be an attorney licensed to practice in the location where the arbitration proceeding will be conducted or a retired federal or state judicial officer who presided in the jurisdiction where the arbitration will be conducted. If for any reason the parties cannot agree to an Arbitrator, either party may apply to a court of competent jurisdiction with authority over the location where the arbitration will be conducted for appointment of a neutral Arbitrator. The court shall then appoint an arbitrator, who shall act under this Agreement with the same force and effect as if the parties had selected the arbitrator by mutual agreement. The location of the arbitration proceeding shall be no more than 45 miles from the place where the Employee reported to work for the Company, unless each party to the arbitration agrees in writing otherwise.

## 4. Starting The Arbitration

All claims in arbitration are subject to the same statutes of limitation that would apply in court. The party bringing the claim must demand arbitration in writing and deliver the written demand by hand or first class mail to the other party within the applicable statute of limitations period. The demand for arbitration shall include identification of the parties, a statement of the legal and factual basis of the claim(s), and a specification of the remedy sought. Any demand for arbitration made to the Company shall be provided to the attention of the Company's Legal Department, Twitter, Inc., 1355 Market Street, Suite 900, San Francisco, CA 94103. The arbitrator shall resolve all disputes regarding the timeliness or propriety of the demand for arbitration. A party may apply to a court of competent jurisdiction for temporary or preliminary injunctive relief in connection with an arbitrable controversy, but only upon the ground that the award to which that party may be entitled may be rendered ineffectual without such provisional relief.

## 5. How Arbitration Proceedings Are Conducted

In arbitration, the parties will have the right to conduct adequate civil discovery, bring dispositive motions, and present witnesses and evidence as needed to present their cases and defenses, and any disputes in this regard shall be resolved by the Arbitrator.

**You and the Company agree to bring any dispute in arbitration on an individual basis only, and not on a class, collective, or private attorney general representative action basis. Accordingly:**

**(a) There will be no right or authority for any dispute to be brought, heard or arbitrated as a class action ("Class Action Waiver").  The Class Action Waiver shall not be severable from this Agreement in any case in which (1) the dispute is filed as a class action and (2) a civil court of competent jurisdiction finds the Class Action Waiver is unenforceable. In such instances, the class action must be litigated in a civil court of competent jurisdiction.**

**(b) There will be no right or authority for any dispute to be brought, heard or arbitrated as a collective action ("Collective Action Waiver").  The Collective Action Waiver shall not be severable from this Agreement in any case in which (1) the dispute is filed as a collective action and (2) a civil court of competent jurisdiction finds the Collective Action Waiver is unenforceable. In such instances, the collective action must be litigated in a civil court of competent jurisdiction.**

**(c)  There will be no right or authority for any dispute to be brought, heard or arbitrated as a private attorney general representative action ("Private Attorney General Waiver"). The Private Attorney General Waiver shall be severable from this Agreement in any case in which a civil court of competent jurisdiction finds the Private Attorney General Waiver is unenforceable. In such instances and where the claim is brought as a private attorney**

# DISPUTE RESOLUTION AGREEMENT

**general, such private attorney general claim must be litigated in a civil court of competent jurisdiction.**

Although an Employee will not be retaliated against, disciplined or threatened with discipline as a result of his or her exercising his or her rights under Section 7 of the National Labor Relations Act by the filing of or participation in a class, collective or representative action in any forum, the Company may lawfully seek enforcement of this Agreement and the Class Action Waiver, Collective Action Waiver and Private Attorney General Waiver under the Federal Arbitration Act and seek dismissal of such class, collective or representative actions or claims. Notwithstanding any other clause contained in this Agreement, any claim that all or part of the Class Action Waiver, Collective Action Waiver or Private Attorney General Waiver is invalid, unenforceable, unconscionable, void or voidable may be determined only by a court of competent jurisdiction and not by an arbitrator.

The Class Action Waiver, Collective Action Waiver and Private Attorney General Waiver shall be severable in any case in which the dispute is filed as an individual action and severance is necessary to ensure that the individual action proceeds in arbitration.

## 6. Paying For The Arbitration

Each party will pay the fees for his, her or its own attorneys, subject to any remedies to which that party may later be entitled under applicable law. However, in all cases where required by law, the Company will pay the Arbitrator's and arbitration fees. If under applicable law the Company is not required to pay all of the Arbitrator's and/or arbitration fees, such fee(s) will be apportioned between the parties in accordance with said applicable law, and any disputes in that regard will be resolved by the Arbitrator.

## 7. The Arbitration Hearing And Award

The parties will arbitrate their dispute before the Arbitrator, who shall confer with the parties regarding the conduct of the hearing and resolve any disputes the parties may have in that regard. Within 30 days of the close of the arbitration hearing, any party will have the right to prepare, serve on the other party and file with the Arbitrator a brief. The Arbitrator may award any party any remedy to which that party is entitled under applicable law, but such remedies shall be limited to those that would be available to a party in his or her individual capacity in a court of law for the claims presented to and decided by the Arbitrator, and no remedies that otherwise would be available to an individual in a court of law will be forfeited by virtue of this Agreement. The Arbitrator will issue a decision or award in writing, stating the essential findings of fact and conclusions of law. Except as may be permitted or required by law, as determined by the Arbitrator, neither a party nor an Arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of all parties. A court of competent jurisdiction shall have the authority to enter a judgment upon the award made pursuant to the arbitration.

## 8. An Employee's Right To Opt Out Of Arbitration

**Arbitration is not a mandatory condition of Employee's employment at the Company, and therefore an Employee may submit a form stating that the Employee wishes to opt out and not be subject to this Agreement.** The Employee must submit a signed and dated statement on a "Dispute Resolution Agreement Opt Out Form" ("Form") that can be obtained from the Company's Human Resources Department at hr@twitter.com. In order to be effective, the signed and dated Form must be returned to the Human Resources Department within 30 days of the Employee's receipt of this Agreement. An Employee who timely opts out as provided in this paragraph will not be subject to any adverse employment action as a consequence of that decision and may pursue available legal remedies without regard to this Agreement. Should an Employee not opt out of this Agreement within 30 days of the Employee's receipt of this Agreement, continuing the Employee's employment constitutes mutual acceptance of the terms of this Agreement by Employee and the Company. An Employee has the right to consult with counsel of the Employee's choice concerning this Agreement.

# DISPUTE RESOLUTION AGREEMENT

## 9. Non-Retaliation

It is against Company policy for any Employee to be subject to retaliation if he or she exercises his or her right to assert claims under this Agreement. If any Employee believes that he or she has been retaliated against by anyone at the Company, the Employee should immediately report this to the Human Resources Department.

## 10. Enforcement Of This Agreement

This Agreement is the full and complete agreement relating to the formal resolution of employment-related disputes. Except as stated in paragraph 5, above, in the event any portion of this Agreement is deemed unenforceable, the remainder of this Agreement will be enforceable. If the Class Action Waiver, Collective Action Waiver or Private Attorney General Waiver is deemed to be unenforceable, the Company and Employee agree that this Agreement is otherwise silent as to any party's ability to bring a class, collective or representative action in arbitration.

**AGREED:**

Laura Brady, VP, Total Rewards

TWITTER, INC.

**AGREED:**

EMPLOYEE NAME PRINTED     Greg Kindel

EMPLOYEE SIGNATURE     *Greg Kindel*
                       Greg Kindel (Sep 14, 2017)

Date:     Sep 14, 2017

# EXHIBIT B

June 11, 2018

Alex Camacho

2691 79th Ave Oakland, CA 94605

acamacho@twitter.com

Dear Alex,

Twitter, Inc., a Delaware corporation (the "Company"), is pleased to offer you employment on the following terms:

1. ***Position.*** Your job title will be Security Engineer I. You will report at the start of your employment to Joe Stevensen, Sr. Mgr., Security Engineering. You will be a regular, full-time employee.

2. ***Start Date.*** Your employment will commence on June 18, 2018. You will be providing services from the Company's San Francisco, CA location. (You may be required to travel as one part of your duties.)

3. ***Cash Compensation***. The Company will pay you a gross starting salary at an annualized rate of ███████████████████████████████, payable in accordance with the Company's standard payroll schedule. This salary will be subject to adjustment from time to time in accordance with the employee compensation policies then in effect. This is an exempt position, and your salary is intended to cover all hours worked.

4. **Performance Bonus Plan** . If your start date is on or before September 30th of the Performance Bonus Plan year, you may be eligible to earn a discretionary performance bonus award in accordance with the Company's discretionary Performance Bonus Plan as it may exist and/or be amended from time to time. Currently, for the Performance Bonus Plan Year that extends from January 1, 2018 to December 31, 2018, you have been assigned a Performance Bonus Plan target of 10.00% of your annual base salary, which will be paid pursuant to the terms and conditions in the Performance Bonus Plan.

5. **Employee Benefits.** As a regular employee of the Company, you will be eligible to participate in Company-sponsored benefits in accordance with the terms of the applicable benefit plans.

6. **Equity Compensation.** Subject to the approval of the Compensation Committee of the Company's Board of Directors (or an authorized subcommittee), you will be granted a specified number of restricted stock units of the Company ("RSUs"). The number of RSUs that are granted to you, if approved, will be determined by dividing ███████████ ████████████ by the prevailing RSU conversion rate in effect during the month in which your employment role commences under the terms of this offer letter. (Note: for the purposes of RSU grant under this paragraph, your employment commencement date is anticipated to be your Start Date as set out above, unless delayed or deferred for any reason. In the event you have been previously engaged by the Company in any capacity under a different role or arrangement, such prior service will <u>not</u> count for the purposes of your RSU grant).

The RSUs will be subject to the terms of the Company's 2013 Equity Incentive Plan and its form of RSU agreement (the "Equity Documents"). You will vest in 25% of the RSUs on the first year anniversary of the first day of the month following your Start Date, provided you have continued to provide services to the Company until that date, and the balance will vest over your next three years of continuous service with the Company, as will be further described in the equity documents. Be advised that the calculation used to determine the number of RSUs granted is determined in the sole discretion of the Company and will not correlate to any published stock price on your date of hire and, furthermore, does not denote, nor can it predict, the future value of any RSUs. Stock price are by nature volatile, and there is no way to predict the value of your future shares, if and when they vest.

7. **Employee Invention Assignment and Confidentiality Agreement.** You will be required, as a condition of your employment with the Company, to sign the Company's standard Employee Invention Assignment and Confidentiality Agreement ("Confidentiality Agreement"). A copy of the Confidentiality Agreement is enclosed with this letter.

8. **Employment Relationship.** Employment with the Company is for no specific period of time. Your employment with the Company will be "at will," meaning that either you or



the Company may terminate your employment at any time and for any reason, with or without cause.  This is the full and complete agreement between you and the Company regarding the duration of the employment relationship.  Although your job duties, title, compensation and benefits, as well as the Company's personnel policies and procedures may change from time to time, the "at will" nature of your employment, may only be changed through an express written agreement signed by you and the Company's Chief Executive Officer.

9.  ***Outside Activities.***  While you render services to the Company, you will not engage in any other employment, consulting, or other business activity that would create a conflict of interest with the Company, which includes engaging in any work that is competitive in nature.  While you render services to the Company, you also will not assist any person or entity in competing with the Company, in preparing to compete with the Company, or in hiring any employees or consultants of the Company.  In addition, for a period of one (1) year after the termination of your services, you will not solicit either directly or indirectly, any employee of the Company to leave the Company for other employment or assist any person or entity in doing the same.

10. ***Background Check.***  This offer is contingent on successful completion of a background check regarding your employment experience, educational credentials, criminal history and the like.  This offer may be withdrawn in the sole discretion of the Company based on its review of the background check results. Your acceptance of this offer of employment will be complete when you have initiated authorization to perform a background check, as instructed by our Human Resources Department.

11. ***Acknowledgement re: Compensation.***  You acknowledge and agree that if during the recruiting process, to the extent you disclosed your current or past salary to Twitter, such disclosure was made voluntarily and without prompting.  You further acknowledge and agree that Twitter may consider and verify any such compensation information you've disclosed, including disclosure of compensation that you would forfeit by leaving your current employment.

12. ***Verification of Employability.***  This offer is contingent upon your providing legal proof of your identity and authorization to work in the United States within three (3) days of the commencement of your employment.



13. **_Taxes._** All forms of compensation that are subject to income or payroll taxes will be reduced to reflect applicable income tax withholding and payroll taxes. Any form of compensation that is subject to income or payroll taxes and that is not paid in cash will result in a reduction in cash compensation to reflect applicable income tax withholding and payroll taxes.

14. **_Dispute Resolution._** We sincerely hope that no dispute will arise between us. If a dispute should arise, it can be resolved through the Company's Dispute Resolution Policy. A copy of the Dispute Resolution Policy is enclosed with this letter.

15. **_Entire Agreement_**. This letter agreement supersedes and replaces any prior agreements, representations or understandings, whether written, oral or implied, between you and the Company.

Please do not make any change in your present living or employment circumstances until all of the conditions to this offer, including successful completion of the background check and, if applicable, acquisition of a visa, have been satisfied. Any questions regarding your satisfaction of these conditions should be directed to Valerie VanderLinden at valeriewolf@twitter.com.

**By signing this letter agreement, you confirm to the Company that you have no contractual commitments or other legal obligations that would prohibit you from performing your duties for the Company.**

We hope that you will accept our offer to join the Company. To indicate your acceptance of this offer, please initiate the authorization of your background check, and sign and date the enclosed duplicate original of this letter agreement, the enclosed Confidentiality Agreement, and the enclosed Dispute Resolution Policy and return them to Valerie. This offer will expire if the signed documents are not returned to me by the end of the day on June 13, 2018.



Very truly yours,

**Twitter, Inc.**

By

Leslie Berland, Head of People

I have read, understood and accept all the provisions of this offer of employment:

Alex Camacho (Jun 12, 2018)

_____

Alex Camacho
Jun 12, 2018

_____

Date

# DISPUTE RESOLUTION AGREEMENT

**This Dispute Resolution Agreement is a contract and covers important issues relating to your rights. It is your sole responsibility to read it and understand it. You are free to seek assistance from independent advisors of your choice outside the Company or to refrain from doing so if that is your choice.**

## 1. How This Agreement Applies

This Agreement is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. and evidences a transaction involving commerce. This Agreement applies to any dispute arising out of or related to Employee's employment with Twitter, Inc. or one of its affiliates, successor, subsidiaries or parent companies ("Company") or termination of employment and survives after the employment relationship terminates. Nothing contained in this Agreement shall be construed to prevent or excuse Employee or the Company from utilizing the Company's existing internal procedures for resolution of complaints, and this Agreement is not intended to be a substitute for the utilization of such procedures.

Except as it otherwise provides, this Agreement is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration. This Agreement requires all such disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial. Such disputes include without limitation disputes arising out of or relating to interpretation or application of this Agreement, including the enforceability, revocability or validity of the Agreement or any portion of the Agreement.

Except as it otherwise provides, this Agreement also applies, without limitation, to disputes regarding the employment relationship, trade secrets, unfair competition, compensation, breaks and rest periods, termination, or harassment and claims arising under the Uniform Trade Secrets Act, Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act (except for claims for employee benefits under any benefit plan sponsored by the Company and covered by the Employee Retirement Income Security Act of 1974 or funded by insurance), Genetic Information Non-Discrimination Act, and state statutes, if any, addressing the same or similar subject matters, and all other state statutory and common law claims.

## 2. Limitations On How This Agreement Applies

This Agreement does not apply to claims for workers compensation, state disability insurance and unemployment insurance benefits.

Regardless of any other terms of this Agreement, claims may be brought before and remedies awarded by an administrative agency if applicable law permits access to such an agency notwithstanding the existence of an agreement to arbitrate. Such administrative claims include without limitation claims or charges brought before the Equal Employment Opportunity Commission (www.eeoc.gov), the U.S. Department of Labor (www.dol.gov), the National Labor Relations Board (www.nlrb.gov), or the Office of Federal Contract Compliance Programs (www.dol.gov/esa/ofccp). Nothing in this Agreement shall be deemed to preclude or excuse a party from bringing an administrative claim before any agency in order to fulfill the party's obligation to exhaust administrative remedies before making a claim in arbitration.

Disputes that may not be subject to predispute arbitration agreement as provided by the Dodd-Frank Wall Street Reform and Consumer Protection Act (Public Law 111-203) are excluded from the coverage of this Agreement.

# DISPUTE RESOLUTION AGREEMENT

**3. Selecting The Arbitrator**

The Arbitrator shall be selected by mutual agreement of the Company and the Employee.  Unless the Employee and Company mutually agree otherwise, the Arbitrator shall be an attorney licensed to practice in the location where the arbitration proceeding will be conducted or a retired federal or state judicial officer who presided in the jurisdiction where the arbitration will be conducted. If for any reason the parties cannot agree to an Arbitrator, either party may apply to a court of competent jurisdiction with authority over the location where the arbitration will be conducted for appointment of a neutral Arbitrator. The court shall then appoint an arbitrator, who shall act under this Agreement with the same force and effect as if the parties had selected the arbitrator by mutual agreement. The location of the arbitration proceeding shall be no more than 45 miles from the place where the Employee reported to work for the Company, unless each party to the arbitration agrees in writing otherwise.

**4. Starting The Arbitration**

All claims in arbitration are subject to the same statutes of limitation that would apply in court. The party bringing the claim must demand arbitration in writing and deliver the written demand by hand or first class mail to the other party within the applicable statute of limitations period. The demand for arbitration shall include identification of the parties, a statement of the legal and factual basis of the claim(s), and a specification of the remedy sought. Any demand for arbitration made to the Company shall be provided to the attention of the Company's Legal Department, Twitter, Inc., 1355 Market Street, Suite 900, San Francisco, CA 94103. The arbitrator shall resolve all disputes regarding the timeliness or propriety of the demand for arbitration. A party may apply to a court of competent jurisdiction for temporary or preliminary injunctive relief in connection with an arbitrable controversy, but only upon the ground that the award to which that party may be entitled may be rendered ineffectual without such provisional relief.

**5. How Arbitration Proceedings Are Conducted**

In arbitration, the parties will have the right to conduct adequate civil discovery, bring dispositive motions, and present witnesses and evidence as needed to present their cases and defenses, and any disputes in this regard shall be resolved by the Arbitrator.

**You and the Company agree to bring any dispute in arbitration on an individual basis only, and not on a class, collective, or private attorney general representative action basis. Accordingly:**

**(a) There will be no right or authority for any dispute to be brought, heard or arbitrated as a class action ("Class Action Waiver").  The Class Action Waiver shall not be severable from this Agreement in any case in which (1) the dispute is filed as a class action and (2) a civil court of competent jurisdiction finds the Class Action Waiver is unenforceable. In such instances, the class action must be litigated in a civil court of competent jurisdiction.**

**(b) There will be no right or authority for any dispute to be brought, heard or arbitrated as a collective action ("Collective Action Waiver").  The Collective Action Waiver shall not be severable from this Agreement in any case in which (1) the dispute is filed as a collective action and (2) a civil court of competent jurisdiction finds the Collective Action Waiver is unenforceable. In such instances, the collective action must be litigated in a civil court of competent jurisdiction.**

**(c)  There will be no right or authority for any dispute to be brought, heard or arbitrated as a private attorney general representative action ("Private Attorney General Waiver"). The Private Attorney General Waiver shall be severable from this Agreement in any case in which a civil court of competent jurisdiction finds the Private Attorney General Waiver is unenforceable. In such instances and where the claim is brought as a private attorney**

## DISPUTE RESOLUTION AGREEMENT

**general, such private attorney general claim must be litigated in a civil court of competent jurisdiction.**

Although an Employee will not be retaliated against, disciplined or threatened with discipline as a result of his or her exercising his or her rights under Section 7 of the National Labor Relations Act by the filing of or participation in a class, collective or representative action in any forum, the Company may lawfully seek enforcement of this Agreement and the Class Action Waiver, Collective Action Waiver and Private Attorney General Waiver under the Federal Arbitration Act and seek dismissal of such class, collective or representative actions or claims. Notwithstanding any other clause contained in this Agreement, any claim that all or part of the Class Action Waiver, Collective Action Waiver or Private Attorney General Waiver is invalid, unenforceable, unconscionable, void or voidable may be determined only by a court of competent jurisdiction and not by an arbitrator.

The Class Action Waiver, Collective Action Waiver and Private Attorney General Waiver shall be severable in any case in which the dispute is filed as an individual action and severance is necessary to ensure that the individual action proceeds in arbitration.

## 6. Paying For The Arbitration

Each party will pay the fees for his, her or its own attorneys, subject to any remedies to which that party may later be entitled under applicable law. However, in all cases where required by law, the Company will pay the Arbitrator's and arbitration fees. If under applicable law the Company is not required to pay all of the Arbitrator's and/or arbitration fees, such fee(s) will be apportioned between the parties in accordance with said applicable law, and any disputes in that regard will be resolved by the Arbitrator.

## 7. The Arbitration Hearing And Award

The parties will arbitrate their dispute before the Arbitrator, who shall confer with the parties regarding the conduct of the hearing and resolve any disputes the parties may have in that regard. Within 30 days of the close of the arbitration hearing, any party will have the right to prepare, serve on the other party and file with the Arbitrator a brief. The Arbitrator may award any party any remedy to which that party is entitled under applicable law, but such remedies shall be limited to those that would be available to a party in his or her individual capacity in a court of law for the claims presented to and decided by the Arbitrator, and no remedies that otherwise would be available to an individual in a court of law will be forfeited by virtue of this Agreement. The Arbitrator will issue a decision or award in writing, stating the essential findings of fact and conclusions of law. Except as may be permitted or required by law, as determined by the Arbitrator, neither a party nor an Arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of all parties. A court of competent jurisdiction shall have the authority to enter a judgment upon the award made pursuant to the arbitration.

## 8. An Employee's Right To Opt Out Of Arbitration

**Arbitration is not a mandatory condition of Employee's employment at the Company, and therefore an Employee may submit a form stating that the Employee wishes to opt out and not be subject to this Agreement.** The Employee must submit a signed and dated statement on a "Dispute Resolution Agreement Opt Out Form" ("Form") that can be obtained from the Company's Human Resources Department at hr@twitter.com. In order to be effective, the signed and dated Form must be returned to the Human Resources Department within 30 days of the Employee's receipt of this Agreement. An Employee who timely opts out as provided in this paragraph will not be subject to any adverse employment action as a consequence of that decision and may pursue available legal remedies without regard to this Agreement. Should an Employee not opt out of this Agreement within 30 days of the Employee's receipt of this Agreement, continuing the Employee's employment constitutes mutual acceptance of the terms of this Agreement by Employee and the Company. An Employee has the right to consult with counsel of the Employee's choice concerning this Agreement.

DISPUTE RESOLUTION AGREEMENT

**9. Non-Retaliation**

It is against Company policy for any Employee to be subject to retaliation if he or she exercises his or her right to assert claims under this Agreement. If any Employee believes that he or she has been retaliated against by anyone at the Company, the Employee should immediately report this to the Human Resources Department.

**10. Enforcement Of This Agreement**

This Agreement is the full and complete agreement relating to the formal resolution of employment-related disputes. Except as stated in paragraph 5, above, in the event any portion of this Agreement is deemed unenforceable, the remainder of this Agreement will be enforceable. If the Class Action Waiver, Collective Action Waiver or Private Attorney General Waiver is deemed to be unenforceable, the Company and Employee agree that this Agreement is otherwise silent as to any party's ability to bring a class, collective or representative action in arbitration.

**AGREED:**

Leslie Berland, Head of People

TWITTER, INC.

**AGREED:**

EMPLOYEE NAME PRINTED    Alex Camacho

EMPLOYEE SIGNATURE    *Alex Camacho (Jun 12, 2018)*

Date:    Jun 12, 2018

EXHIBIT C

October 04, 2018

Justine De Caires
836 Edinburgh St, San Francisco, CA 94112
justine@minerva.kgi.edu

Dear Justine,

Twitter, Inc., a Delaware corporation (the "Company"), is pleased to offer you employment on the following terms:

1. **Position.**  Your job title will be Software Engineer I. You will report at the start of your employment to Chiao Dyi, Mgr., Software Engineering. You will be a regular, full-time employee.

2. **Start Date.**  Your employment will commence on June 10, 2019. You will be providing services from the Company's San Francisco, CA location.  (You may be required to travel as one part of your duties.)

3. **Cash Compensation**. The Company will pay you a gross starting salary at an annualized rate of ███████████████████████████████, payable in accordance with the Company's standard payroll schedule.  This salary will be subject to adjustment from time to time in accordance with the employee compensation policies then in effect. This is an exempt position, and your salary is intended to cover all hours worked.

4. **Sign-on Bonus.**   Additionally, you are eligible to receive a sign-on bonus of ████ ██████████████████, less applicable taxes, as a reward for joining and remaining with the Company ("Sign-On Bonus").  To earn the Sign-On Bonus, you must remain actively employed by the Company in good standing for twelve (12) months after your start date ("Anniversary Date").  If at any time before your Anniversary Date your employment ends for any reason, whether voluntary or involuntary, you acknowledge and agree that you are obligated to repay a pro-rata portion of the Sign-On Bonus upon Twitter's request.  You will be paid the Sign-On Bonus in a lump sum at the time of your first payroll date, subject to repayment as described in this paragraph.

5. ***Performance Bonus Plan .*** Performance Bonus Plan.  You are eligible to earn a discretionary performance bonus award in accordance with the Company's Global Discretionary Performance Bonus Plan as it may exist and/or be amended from time to time.  If your start date is on or before September 30, 2019, you are eligible to participate in the 2019 Global Discretionary Performance Bonus Plan.  Currently, for the 2019 Performance Bonus Plan year, the Performance Bonus Plan target for your position is 10.00% of annual Base Salary, paid pursuant to the terms and conditions in the applicable Performance Bonus Plan.

6. ***Employee Benefits.***  As a regular employee of the Company, you will be eligible to participate in Company-sponsored benefits in accordance with the terms of the applicable benefit plans.

7. ***Equity Compensation.*** Subject to the approval of the Compensation Committee of the Company's Board of Directors (or an authorized subcommittee), you will be granted a specified number of restricted stock units of the Company ("RSUs"). The number of RSUs that are granted to you, if approved, will be determined by dividing ██████████████ ████████████████████████ by the prevailing RSU conversion rate in effect during the month in which your employment role commences under the terms of this offer letter. (Note: for the purposes of RSU grant under this paragraph, your employment commencement date is anticipated to be your Start Date as set out above, unless delayed or deferred for any reason. In the event you have been previously engaged by the Company in any capacity under a different role or arrangement, such prior service will <u>not</u> count for the purposes of your RSU grant).

The RSUs will be subject to the terms of the Company's 2013 Equity Incentive Plan and its form of RSU agreement (the "Equity Documents"). You will vest in 25% of the RSUs on the first year anniversary of the first day of the month following your Start Date, provided you have continued to provide services to the Company until that date, and the balance will vest over your next three years of continuous service with the Company, as will be further described in the equity documents. Be advised that the calculation used to determine the number of RSUs granted is determined in the sole discretion of the Company and will not correlate to any published stock price on your date of hire and, furthermore, does not denote, nor can it predict, the future value of any RSUs.



Stock price are by nature volatile, and there is no way to predict the value of your future shares, if and when they vest.

8. ***Employee Invention Assignment and Confidentiality Agreement.*** You will be required, as a condition of your employment with the Company, to sign the Company's standard Employee Invention Assignment and Confidentiality Agreement ("Confidentiality Agreement"). A copy of the Confidentiality Agreement is enclosed with this letter.

9. ***Employment Relationship.*** Employment with the Company is for no specific period of time. Your employment with the Company will be "at will," meaning that either you or the Company may terminate your employment at any time and for any reason, with or without cause. This is the full and complete agreement between you and the Company regarding the duration of the employment relationship. Although your job duties, title, compensation and benefits, as well as the Company's personnel policies and procedures may change from time to time, the "at will" nature of your employment, may only be changed through an express written agreement signed by you and the Company's Chief Executive Officer.

10. ***Outside Activities.*** While you render services to the Company, you will not engage in any other employment, consulting, or other business activity that would create a conflict of interest with the Company, which includes engaging in any work that is competitive in nature. While you render services to the Company, you also will not assist any person or entity in competing with the Company, in preparing to compete with the Company, or in hiring any employees or consultants of the Company. In addition, for a period of one (1) year after the termination of your services, you will not solicit either directly or indirectly, any employee of the Company to leave the Company for other employment or assist any person or entity in doing the same.

11. ***Acknowledgement re: Compensation.*** You acknowledge and agree that if during the recruiting process, to the extent you disclosed your current or past salary to Twitter, such disclosure was made voluntarily and without prompting. You further acknowledge and agree that Twitter may consider and verify any such compensation information you've disclosed, including disclosure of compensation that you would forfeit by leaving your current employment.



12. **_Verification of Employability._** This offer is contingent upon your providing legal proof of your identity and authorization to work in the United States within three (3) days of the commencement of your employment.

13. **_Taxes._** All forms of compensation that are subject to income or payroll taxes will be reduced to reflect applicable income tax withholding and payroll taxes. Any form of compensation that is subject to income or payroll taxes and that is not paid in cash will result in a reduction in cash compensation to reflect applicable income tax withholding and payroll taxes.

14. **_Dispute Resolution._** We sincerely hope that no dispute will arise between us. If a dispute should arise, it can be resolved through the Company's Dispute Resolution Policy. A copy of the Dispute Resolution Policy is enclosed with this letter.

15. **_Entire Agreement_**. This letter agreement supersedes and replaces any prior agreements, representations or understandings, whether written, oral or implied, between you and the Company.

Please do not make any change in your present living or employment circumstances until all of the conditions to this offer, including successful completion of the background check and, if applicable, acquisition of a visa, have been satisfied. Any questions regarding your satisfaction of these conditions should be directed to Fariha Naveed at fnaveed@twitter.com.

**By signing this letter agreement, you confirm to the Company that you have no contractual commitments or other legal obligations that would prohibit you from performing your duties for the Company.**

We hope that you will accept our offer to join the Company. To indicate your acceptance of this offer, please initiate the authorization of your background check, and sign and date the enclosed duplicate original of this letter agreement, the enclosed Confidentiality Agreement, and the enclosed Dispute Resolution Policy and return them to Fariha. This offer will expire if the signed documents are not returned to me by the end of the day on October 08, 2018.



Very truly yours,

**Twitter, Inc.**

By

Leslie Berland, Head of People

I have read, understood and accept all the provisions of this offer of employment:

J. De Caires
Justine De Caires (Oct 7, 2018)

_____

Justine De Caires

Oct 7, 2018

_____

Date



# DISPUTE RESOLUTION AGREEMENT

> **This Dispute Resolution Agreement is a contract and covers important issues relating to your rights. It is your responsibility to read it and understand it. You are free to seek assistance from independent advisors of your choice outside the Company or to refrain from doing so if that is your choice.**

## 1. How This Agreement Applies

This Agreement is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. and evidences a transaction involving commerce. If the FAA is found not to apply, then this Agreement is enforceable under the laws of the state in which you ("Employee") are employed at the time you enter into this Agreement. This Agreement applies to any dispute arising out of or related to Employee's employment with Twitter, Inc. or one of its affiliates, successor, subsidiaries or parent companies ("Company") or termination of employment, and survives after the employment relationship terminates. It can only be revoked or modified by a writing, signed by both you and Twitter, Inc.'s Chief Executive Officer, which specifically states an intent to revoke or modify this Agreement. Nothing contained in this Agreement shall be construed to prevent or excuse Employee or the Company from using the Company's existing internal procedures for resolution of complaints.

Disputes covered by this Agreement include, without limitation, disputes arising out of or relating to interpretation or application of this Agreement, including the enforceability, revocability or validity of the Agreement or any portion of the Agreement. Except as it otherwise provides, this Agreement also applies, without limitation, to disputes regarding the employment relationship, terms and conditions of employment, trade secrets, unfair competition, compensation, breaks and rest periods, termination, discrimination, harassment, or retaliation, and claims arising under the Uniform Trade Secrets Act, Title VII of the Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act (except for claims for employee benefits under any benefit plan sponsored by the Company and covered by the Employee Retirement Income Security Act of 1974 or funded by insurance), Genetic Information Non-Discrimination Act, and state statutes, if any, addressing the same or similar subject matters, all other state statutory and common law claims, and any other employment-related claim.

Except as it otherwise provides, this Agreement is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration. This Agreement requires all covered disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial. **By entering into this Agreement, the parties are waiving a trial by jury.**

## 2. Limitations On How This Agreement Applies

This Agreement does not apply to claims for workers compensation, state disability insurance and unemployment insurance benefits.

Regardless of any other terms of this Agreement, claims may be brought before and remedies awarded by an administrative agency if applicable law permits access to such an agency notwithstanding the existence of an agreement to arbitrate. Such administrative claims include, without limitation, claims or charges brought before the Equal Employment Opportunity Commission (www.eeoc.gov), the U.S. Department of Labor (www.dol.gov), the National Labor Relations Board (www.nlrb.gov), or the Office of Federal Contract Compliance Programs (www.dol.gov/esa/ofccp). Nothing in this Agreement shall be deemed to preclude or excuse a party from bringing an administrative claim before any agency in order to fulfill the party's obligation to exhaust administrative remedies before making a claim in arbitration.

Disputes that may not be subject to predispute arbitration agreement as provided by the Dodd-Frank Wall Street Reform and Consumer Protection Act (Public Law 111-203) are excluded from the coverage of this Agreement.

## DISPUTE RESOLUTION AGREEMENT

### 3. Selecting The Arbitrator

The Arbitrator shall be selected by mutual agreement of the Company and the Employee.  Unless the Employee and Company mutually agree otherwise, the Arbitrator shall be an attorney licensed to practice in the state in which the arbitration proceeding will be conducted or a retired federal or state judicial officer who presided in the state where the arbitration will be conducted. If, however, the parties fail to agree on an arbitrator within 30 days after the initiation of arbitration, or at the request of either party, the dispute shall be heard by a neutral arbitrator chosen according to the procedures found in the then-current JAMS Employment Arbitration Rules and Procedures ("JAMS Rules"). The JAMS Rules may be accessed at: https://www.jamsadr.com/rules-employment-arbitration/.  Alternatively, an Employee may obtain a copy of the JAMS Rules from Human Resources. The location of the arbitration proceeding shall be no more than 45 miles from the place where the Employee reported to work for the Company, unless each party to the arbitration agrees in writing otherwise.

### 4. Starting The Arbitration

All claims in arbitration are subject to the same statutes of limitation that would apply in court. The party bringing the claim must demand arbitration in writing and deliver the written demand by hand or first class mail to the other party within the applicable statute of limitations period. The demand for arbitration shall include identification of the parties, a statement of the legal and factual basis of the claim(s), and a specification of the remedy sought. Any demand for arbitration made to the Company shall be provided to the attention of the Company's Legal Department, Twitter, Inc., 1355 Market Street, Suite 900, San Francisco, CA 94103. The arbitrator shall resolve all disputes regarding the timeliness or propriety of the demand for arbitration. A party may apply to a court of competent jurisdiction for temporary or preliminary injunctive relief in connection with an arbitrable controversy, but only upon the ground that the award to which that party may be entitled may be rendered ineffectual without such provisional relief.

### 5. How Arbitration Proceedings Are Conducted

Employee and the Company agree to bring any claim in arbitration before Judicial Arbitration and Mediation Services ("JAMS"), pursuant to the then-current JAMS Rules. In arbitration, the parties will have the right to conduct adequate civil discovery, bring dispositive motions, and present witnesses and evidence to present their cases and defenses, and any disputes in this regard shall be resolved by the Arbitrator. Discovery and conduct of the arbitration hearing shall be governed by the JAMS Rules applicable to discovery and arbitration hearing procedures.

**You and the Company agree to bring any dispute in arbitration on an individual basis only, and not on a class, collective, or private attorney general representative action basis.** Employee and the Company agree that any arbitration will be limited to the claims between Employee and the Company individually. Employee acknowledges and agrees that Employee and the Company are each waiving the right to participate as a plaintiff or class member in any purported class action, collective action or representative action proceeding ("Class Action Waiver"). This Class Action Waiver shall not apply to California Private Attorney General Act claims brought against the Company to the extent a Class Action Waiver is not legally enforceable as to those claims. Notwithstanding any other provision of this Agreement or the JAMS Rules, disputes regarding the scope, applicability, enforceability or validity of the Class Action Waiver may be resolved only by a civil court of competent jurisdiction and not by an arbitrator. In any case in which: (1) the claim is filed as a class, collective, or representative action and (2) there is a final judicial determination that the Class Action Waiver is unenforceable as to any claims, the class, collective, and/or representative action on such claims must be litigated in a civil court of competent jurisdiction, but the Class Action Waiver shall be enforced in arbitration on an individual basis as to all other claims to the fullest extent possible and the claims to be litigated in court shall be stayed pending the completion of the arbitration on the arbitrable claims.

# DISPUTE RESOLUTION AGREEMENT

## 6. Paying For The Arbitration

Each party will pay the fees for his, her or its own attorneys, subject to any remedies to which that party may later be entitled under applicable law. However, in all cases where required by law, the Company will pay the Arbitrator's and arbitration fees. If under applicable law the Company is not required to pay all of the Arbitrator's and/or arbitration fees, such fee(s) will be apportioned between the parties in accordance with said applicable law, and any disputes in that regard will be resolved by the Arbitrator.

## 7. The Arbitration Hearing And Award

The parties will arbitrate their dispute before the Arbitrator, who shall confer with the parties regarding the conduct of the hearing and resolve any disputes the parties may have in that regard. The Arbitrator shall apply substantive law as applicable to the claims, and may award any party any remedy to which that party is entitled under applicable law, but such remedies shall be limited to those that would be available to a party in his or her individual capacity in a court of law for the claims presented to and decided by the Arbitrator; no remedies that otherwise would be available to an individual in a court of law will be forfeited by virtue of this Agreement. Unless otherwise agreed by the parties in writing, the Arbitrator will issue a decision or award in writing, stating the essential findings of fact and conclusions of law, within 30 days after the date of closing of the arbitration hearing or the completion of post-hearing briefing, whichever is later. Except as may be permitted or required by law, as determined by the Arbitrator, neither a party nor an Arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of all parties. A court of competent jurisdiction shall have the authority to enter a judgment upon the award made pursuant to the arbitration.

## 8. An Employee's Right To Opt Out Of Arbitration

**Arbitration is not a mandatory condition of Employee's employment at the Company, and therefore an Employee may submit a form stating that the Employee wishes to opt out and not be subject to this Agreement.** The Employee must submit a signed and dated statement on a "Dispute Resolution Agreement Opt Out Form" ("Form") that can be obtained from the Company's Human Resources Department at hr@twitter.com. In order to be effective, the signed and dated Form must be returned to the Human Resources Department within 30 days of the Employee's receipt of this Agreement. An Employee who timely opts out as provided in this paragraph will not be subject to any adverse employment action as a consequence of that decision and may pursue available legal remedies without regard to this Agreement. Should an Employee not opt out of this Agreement within 30 days of the Employee's receipt of this Agreement, continuing the Employee's employment constitutes mutual acceptance of the terms of this Agreement by Employee and the Company. An Employee has the right to consult with counsel of the Employee's choice concerning this Agreement.

## 9. Non-Retaliation

An employee will not be subject to retaliation if he or she exercises his or her right to assert claims under this Agreement. If any Employee believes that he or she has been retaliated against by anyone at the Company, the Employee should immediately report this to the Human Resources Department.

## 10. Enforcement Of This Agreement

This Agreement is the full and complete agreement relating to the formal resolution of covered disputes. Except as stated in paragraph 5, above, in the event any portion of this Agreement is deemed unenforceable, the remainder of this Agreement will be enforceable. If the Class Action Waiver, Collective Action Waiver or Private Attorney General Waiver is deemed to be unenforceable, the Company and Employee agree that this Agreement is otherwise silent as to any party's ability to bring a class, collective or representative action in arbitration. Nothing in this Agreement modifies the at-will nature of

DISPUTE RESOLUTION AGREEMENT

Employee's employment with the Company.

**AGREED:**

Leslie Berland, Head of People

TWITTER, INC.

**AGREED:**

EMPLOYEE NAME PRINTED    Justine De Caires

EMPLOYEE SIGNATURE    J. De Caires
                      Justine De Caires (Oct 7, 2018)

Date:    Oct 7, 2018

# EXHIBIT D

November 18, 2019

Jessica Pan
1400 Carpentier St. Apt 402 San Leandro, CA 94577
jessica.sj.pan@gmail.com

Dear Jessica,

Welcome to the Flock!  We're excited to offer you employment with Twitter, Inc. (the '**Company**'), on the following terms and conditions:

1.  ***Start Date.***  Your employment will commence on December 09, 2019 ('**Start Date**'). You will be providing services from the Company's San Francisco, CA location. Your Start Date and employment are subject to the conditions set out below, in the **Conditions on Offer** section.

2.  ***Position.***  Your job title will be Sr. Software Engineer. You will report at the start of your employment to Chiao-Yen Dyi, Mgr., Software Engineering.  You will be a regular, full-time employee.

3.  ***Duties.*** You will perform the duties and have the responsibilities and authority customarily performed and held by an employee in your position or as the Company may otherwise assign to you.  Depending on the nature of your role, the Company may require you to travel from time to time.  Without limiting your obligations to the Company, during your employment you must serve the Company faithfully and diligently to the best of your ability and perform the duties the Company assigns to you to the best of your abilities and knowledge.

4.  ***Hours.***  Your normal hours of work are 40 hours each week, excluding a lunch break, to be worked primarily during the standard business hours Monday to Friday. The Company requires flexibility in your working hours, and you may be required or need to work additional hours as necessary for the performance of your role. These additional hours can include hours outside normal business hours, or on weekends and public holidays.

5.  ***Base Compensation.***  The Company will pay you a gross starting salary at an annualized rate of ▮▮▮▮▮ USD, payable in accordance with the Company's standard payroll schedule, less applicable deductions.  This salary will be subject to adjustment from time to time in accordance with the employee compensation policies then in effect. This is an exempt position, and your salary is intended to cover all hours worked.

6.  ***Performance Bonus Plan.*** You may be eligible to earn a discretionary performance bonus award in accordance with the Company's discretionary Performance Bonus Plan as it may exist and/or be amended from time to time. For the current Performance Bonus Plan year, the Performance Bonus Plan target for your position is 20% of annual eligible earnings, paid pursuant to the terms and conditions in the Performance Bonus Plan.

7. **Equity Compensation.** Subject to the approval of the Compensation Committee of the Company's Board of Directors (or an authorized subcommittee), you will be granted a specified number of restricted stock units of the Company ('**RSUs**'). The number of RSUs that are granted to you, if approved, will be determined by dividing ███████ USD by the prevailing RSU conversion rate in effect during the month in which your employment role commences under the terms of this offer letter. (Note: for the purposes of the RSU grant under this paragraph, your employment commencement date is anticipated to be your Start Date as set out above, unless delayed or deferred for any reason. In the event you have been previously engaged by the Company in any capacity under a different role or arrangement, such prior service will <u>not</u> count for the purposes of your RSU grant).

The RSUs will be subject to the terms of the Company's 2013 Equity Incentive Plan and its form of RSU agreement (the '**Equity Documents**'). You will vest in 25% of the RSUs on the first year anniversary of the first day of the month following your Start Date, provided you have continued to provide services to the Company until that date, and over your next three years of continuous service with the Company you will vest 6.25% per quarter, as will be further described in the Equity Documents. Be advised that the calculation used to determine the number of RSUs granted is determined in the sole discretion of the Company and will not correlate to any published stock price on your date of hire and, furthermore, does not denote, nor can it predict, the future value of any RSUs. Stock price are by nature volatile, and there is no way to predict the value of your future shares, if and when they vest.

8. **Employee Benefits.** As a regular employee of the Company, you will be eligible to participate in Company-sponsored benefits in accordance with the terms of the applicable benefit plans. The Company may replace, change or cease providing these benefits and remuneration and the terms on which they are provided at any time at its discretion.

9. **Conditions on this Offer.** This offer of employment and your commencement of employment with the Company is conditioned upon:

    a) Your providing legal proof of your identity and authorization to work in the United States within three days of the commencement of your employment.

    b) Your signing of the Company's standard Employee Invention Assignment and Confidentiality Agreement ('**Confidentiality Agreement**'), which includes restrictions on your ability to engage in outside activities, and other restrictions during and following your employment, as described in the Confidentiality Agreement, and the Company's approval of such outside activities. A copy of the Confidentiality Agreement is enclosed with this letter.

    c) Your disclosure, and resolution to the satisfaction of the Company, of any contractual commitments or legal obligations that would prohibit, restrict or interfere with your ability to perform your duties for the Company.

    d) Your successful completion of a background check regarding your employment experience, educational credentials, criminal history and the like. This offer may be withdrawn in the sole

discretion of the Company based on its review of the background check results. Your acceptance of this offer of employment will be complete when you have initiated authorization to perform a background check, as instructed by our Human Resources Department.

10. **Acknowledgement re: Compensation.** You acknowledge and agree that if during the recruiting process you disclosed your current or past salary to Twitter, such disclosure was made voluntarily and without prompting. You further acknowledge and agree that Twitter may consider and verify any such compensation information you've disclosed, including disclosure of compensation that you would forfeit by leaving your current employment.

11. **Taxes.** All forms of compensation that are subject to income or payroll taxes will be reduced to reflect applicable income tax withholding and payroll taxes. Any form of compensation that is subject to income or payroll taxes and that is not paid in cash will result in a reduction in cash compensation to reflect applicable income tax withholding and payroll taxes.

12. **Outside Activities.** While you render services to the Company, you will not engage in any other employment, consulting, or other business activity that would create a conflict of interest with the Company, which includes engaging in any work that is competitive in nature. While you render services to the Company, you also will not assist any person or entity in competing with the Company, in preparing to compete with the Company, or in hiring any employees or consultants of the Company.

13. **Employment Relationship.** Employment with the Company is for no specific period of time. Your employment with the Company will be "at will," meaning that either you or the Company may terminate your employment at any time and for any reason, with or without cause. This is the full and complete agreement between you and the Company regarding the duration of the employment relationship. Although your job duties, title, compensation and benefits, as well as the Company's personnel policies and procedures may change from time to time, the "at will" nature of your employment, may only be changed through an express written agreement signed by you and the Company's Chief Executive Officer.

14. **Dispute Resolution.** We sincerely hope that no dispute will arise between us. If a dispute should arise, it will be resolved through the Company's Dispute Resolution Agreement, unless you choose to opt-out of the same pursuant to its terms. A copy of the Dispute Resolution Agreement is enclosed with this letter.

15. **Entire Agreement**. This letter agreement supersedes and replaces any prior agreements, representations or understandings, whether written, oral or implied, between you and the Company.

Please do not make any change in your present living or employment circumstances until all of the conditions to this offer have been satisfied. To accept this offer, please initiate the authorization of your background check, and sign and date this offer letter, and the other documents enclosed with this letter (including the Confidentiality Agreement and Dispute Resolution Agreement) and return them via Adobesign. This offer will expire if the signed documents are not returned by November 20, 2019.

We're excited to welcome you to Twitter!

Sincerely,

**Twitter, Inc.**

By _____

    Leslie Berland

    Head of People

By signing below, I acknowledge and agree that I have read, understood and accept all the provisions of this offer of employment:

*Jessica Pan*
Jessica Pan (Nov 18, 2019)
_____

    Jessica Pan

Nov 18, 2019
_____

    Date

# DISPUTE RESOLUTION AGREEMENT

This Dispute Resolution Agreement is a contract and covers important issues relating to your rights. It is your responsibility to read it and understand it. You are free to seek assistance from independent advisors of your choice outside the Company or to refrain from doing so if that is your choice.

You can choose to opt out of this Agreement – you have 30 days to opt out.

## 1.  How This Agreement Applies

This Agreement is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. and evidences a transaction involving commerce. If the FAA is found not to apply, then this Agreement is enforceable under the laws of the state in which you ("Employee") are employed at the time you enter into this Agreement. This Agreement applies to any dispute arising out of or related to Employee's employment with Twitter, Inc. or one of its affiliates, successor, subsidiaries or parent companies ("Company") or termination of employment, and survives after the employment relationship terminates. It can only be revoked or modified by a writing, signed by both you and Twitter, Inc.'s Chief Executive Officer, which specifically states an intent to revoke or modify this Agreement. Nothing contained in this Agreement shall be construed to prevent or excuse Employee or the Company from using the Company's existing internal procedures for resolution of complaints.

Disputes covered by this Agreement include, without limitation, disputes arising out of or relating to interpretation or application of this Agreement, including the enforceability, revocability or validity of the Agreement or any portion of the Agreement. Except as it otherwise provides or required by law, this Agreement also applies, without limitation, to disputes regarding the employment relationship, terms and conditions of employment, trade secrets, unfair competition, compensation, breaks and rest periods, termination, discrimination, harassment, or retaliation, and claims arising under the Uniform Trade Secrets Act, Title VII of the Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act (except for claims for employee benefits under any benefit plan sponsored by the Company and covered by the Employee Retirement Income Security Act of 1974 or funded by insurance), Genetic Information Non-Discrimination Act, and state statutes, if any, addressing the same or similar subject matters, all other state statutory and common law claims, and any other employment-related claim.

Except as it otherwise provides, this Agreement is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration. This Agreement requires all covered disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial. **By entering into this Agreement, the parties are waiving a trial by jury.**

## 2.  Limitations On How This Agreement Applies

This Agreement does not apply to claims for workers compensation, state disability insurance and unemployment insurance benefits.

Regardless of any other terms of this Agreement, claims may be brought before and remedies awarded by an administrative agency if applicable law permits access to such an agency notwithstanding the existence of an agreement to arbitrate. Such administrative claims include, without limitation, claims or charges brought before the Equal Employment Opportunity Commission (www.eeoc.gov) the U.S. Department of Labor (www.dol.gov) the National Labor Relations Board (www.nlrb.gov), or the Office of Federal Contract Compliance Programs (www.dol.gov/esa/ofccp). Nothing in this Agreement shall be deemed to preclude or excuse a party from bringing an administrative claim before any agency in order to fulfill the party's obligation to exhaust administrative remedies before making a claim in arbitration.

Disputes that may not be subject to predispute arbitration agreement as provided by the Dodd-Frank Wall Street Reform and Consumer Protection Act (Public Law 111-203) are excluded from the coverage of this Agreement.





## 3. Selecting The Arbitrator

The Arbitrator shall be selected by mutual agreement of the Company and the Employee. Unless the Employee and Company mutually agree otherwise, the Arbitrator shall be an attorney licensed to practice in the state in which the arbitration proceeding will be conducted or a retired federal or state judicial officer who presided in the state where the arbitration will be conducted. If, however, the parties fail to agree on an arbitrator within 30 days after the initiation of arbitration, or at the request of either party, the dispute shall be heard by a neutral arbitrator chosen according to the procedures found in the then-current JAMS Employment Arbitration Rules and Procedures ("JAMS Rules"). The JAMS Rules may be accessed at: https://www.jamsadr.com/rules-employment-arbitration/. Alternatively, an Employee may obtain a copy of the JAMS Rules from Human Resources. The location of the arbitration proceeding shall be no more than 45 miles from the place where the Employee reported to work for the Company, unless each party to the arbitration agrees in writing otherwise.

## 4.  Starting The Arbitration

All claims in arbitration are subject to the same statutes of limitation that would apply in court. The party bringing the claim must demand arbitration in writing and deliver the written demand by hand or first class mail to the other party within the applicable statute of limitations period. The demand for arbitration shall include identification of the parties, a statement of the legal and factual basis of the claim(s), and a specification of the remedy sought. Any demand for arbitration made to the Company shall be provided to the attention of the Company's Legal Department, Twitter, Inc., 1355 Market Street, Suite 900, San Francisco, CA 94103. The arbitrator shall resolve all disputes regarding the timeliness or propriety of the demand for arbitration. A party may apply to a court of competent jurisdiction for temporary or preliminary injunctive relief in connection with an arbitrable controversy, but only upon the ground that the award to which that party may be entitled may be rendered ineffectual without such provisional relief.

## 5.  How Arbitration Proceedings Are Conducted

Employee and the Company agree to bring any claim in arbitration before Judicial Arbitration and Mediation Services ("JAMS"), pursuant to the then-current JAMS Rules. In arbitration, the parties will have the right to conduct adequate civil discovery, bring dispositive motions, and present witnesses and evidence to present their cases and defenses, and any disputes in this regard shall be resolved by the Arbitrator. Discovery and conduct of the arbitration hearing shall be governed by the JAMS Rules applicable to discovery and arbitration hearing procedures.

**You and the Company agree to bring any dispute in arbitration on an individual basis only, and not on a class, collective, or private attorney general representative action basis**. Employee and the Company agree that any arbitration will be limited to the claims between Employee and the Company individually. Employee acknowledges and agrees that Employee and the Company are each waiving the right to participate as a plaintiff or class member in any purported class action, collective action or representative action proceeding ("Class Action Waiver"). This Class Action Waiver shall not apply to California Private Attorney General Act claims brought against the Company to the extent a Class Action Waiver is not legally enforceable as to those claims. Notwithstanding any other provision of this Agreement or the JAMS Rules, disputes regarding the scope, applicability, enforceability or validity of the Class Action Waiver may be resolved only by a civil court of competent jurisdiction and not by an arbitrator. In any case in which: (1) the claim is filed as a class, collective, or representative action and (2) there is a final judicial determination that the Class Action Waiver is unenforceable as to any claims, the class, collective, and/or representative action on such claims must be litigated in a civil court of competent jurisdiction, but the Class Action Waiver shall be enforced in arbitration on an individual basis as to all other claims to the fullest extent possible and the claims to be litigated in court shall be stayed pending the completion of the arbitration on the arbitrable claims.

## 6.  Paying For The Arbitration

Each party will pay the fees for his, her or its own attorneys, subject to any remedies to which that party may later be entitled under applicable law. However, in all cases where required by law, the Company will pay the Arbitrator's and arbitration fees. If under applicable law the Company is not required to pay all of the Arbitrator's and/or arbitration fees, such fee(s) will be apportioned between the parties in accordance with said applicable law, and any disputes in that regard will be resolved by the Arbitrator.



*JP*
JP

## 7.  The Arbitration Hearing And Award

The parties will arbitrate their dispute before the Arbitrator, who shall confer with the parties regarding the conduct of the hearing and resolve any disputes the parties may have in that regard. The Arbitrator shall apply substantive law as applicable to the claims, and may award any party any remedy to which that party is entitled under applicable law, but such remedies shall be limited to those that would be available to a party in his or her individual capacity in a court of law for the claims presented to and decided by the Arbitrator; no remedies that otherwise would be available to an individual in a court of law will be forfeited by virtue of this Agreement. Unless otherwise agreed by the parties in writing, the Arbitrator will issue a decision or award in writing, stating the essential findings of fact and conclusions of law, within 30 days after the date of closing of the arbitration hearing or the completion of post-hearing briefing, whichever is later. Except as may be permitted or required by law, as determined by the Arbitrator, neither a party nor an Arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of all parties. A court of competent jurisdiction shall have the authority to enter a judgment upon the award made pursuant to the arbitration.

## 8.  An Employee's Right To Opt Out Of Arbitration

**Arbitration is not a mandatory condition of Employee's employment at the Company, and therefore an Employee may submit a form stating that the Employee wishes to opt out and not be subject to this Agreement.** The Employee must submit a signed and dated statement on a "Dispute Resolution Agreement Opt Out Form" ("Form") that can be obtained from the Company's Human Resources Department at hrlegaldocs@twitter.com. In order to be effective, the signed and dated Form must be returned to the Human Resources Department within 30 days of the Employee's receipt of this Agreement. An Employee who timely opts out as provided in this paragraph will not be subject to any adverse employment action as a consequence of that decision and may pursue available legal remedies without regard to this Agreement. Should an Employee not opt out of this Agreement within 30 days of the Employee's receipt of this Agreement, continuing the Employee's employment constitutes mutual acceptance of the terms of this Agreement by Employee and the Company. An Employee has the right to consult with counsel of the Employee's choice concerning this Agreement.

## 9.  Non-Retaliation

An employee will not be subject to retaliation if he or she exercises his or her right to assert claims under this Agreement. If any Employee believes that he or she has been retaliated against by anyone at the Company, the Employee should immediately report this to the Human Resources Department.

## 10.  Enforcement Of This Agreement

This Agreement is the full and complete agreement relating to the formal resolution of covered disputes. Except as stated in paragraph 5, above, in the event any portion of this Agreement is deemed unenforceable, the remainder of this Agreement will be enforceable. If the Class Action Waiver, Collective Action Waiver or Private Attorney General Waiver is deemed to be unenforceable, the Company and Employee agree that this Agreement is otherwise silent as to any party's ability to bring a class, collective or representative action in arbitration. Nothing in this Agreement modifies the at-will nature of Employee's employment with the Company.

**AGREED:**

Leslie Berland, Head of People
TWITTER, INC.

**By signing below, I acknowledge and agree to the terms of this Dispute Resolution Agreement, and confirm I am aware of my right to opt out per the terms of this Agreement:**

EMPLOYEE NAME PRINTED      Jessica Pan

EMPLOYEE SIGNATURE      *Jessica Pan*
Jessica Pan (Nov 18, 2019)

Date:      Nov 18, 2019



# EXHIBIT E

April 23, 2021

Emmanuel Cornet
2415 Van Ness Ave Apt 601, San Francisco, CA 94109
m@ma.nu

Dear Emmanuel,

Welcome to the Flock!  We're excited to offer you employment with Twitter, Inc. (the '**Company**'), on the following terms and conditions:

1.  *Start Date.*  Your employment will commence on June 29, 2021 ('**Start Date**'). You will be providing services from the Company's US - Remote US location. Your Start Date and employment are subject to the conditions set out below, in the **Conditions on Offer** section.

2.  *Position.*  Your job title will be Staff Software Engineer. You will report at the start of your employment to Bill Couch, Mgr., Software Engineering. You will be a regular, full-time employee.

3.  *Duties.* You will perform the duties and have the responsibilities and authority customarily performed and held by an employee in your position or as the Company may otherwise assign to you.  Depending on the nature of your role, the Company may require you to travel from time to time.  Without limiting your obligations to the Company, during your employment you must serve the Company faithfully and diligently to the best of your ability and perform the duties the Company assigns to you to the best of your abilities and knowledge.

4.  *Hours.*  Your normal hours of work are 40 hours each week, excluding a lunch break, to be worked primarily during the standard business hours Monday to Friday. The Company requires flexibility in your working hours, and you may be required or need to work additional hours as necessary for the performance of your role. These additional hours can include hours outside normal business hours, or on weekends and public holidays.

5.  *Base Compensation.*  The Company will pay you a gross starting salary at an annualized rate of ▮▮▮▮ USD, payable in accordance with the Company's standard payroll schedule, less applicable deductions.  This salary will be subject to adjustment from time to time in accordance with the employee compensation policies then in effect. This is an exempt position, and your salary is intended to cover all hours worked.

6.  *Sign-On Bonus.*  You are eligible to receive a one-time sign-on bonus in the gross amount of ▮▮▮▮ USD, less applicable deductions required or authorized to be deducted by the Company, as a reward for joining and remaining with the Company ('**Sign-On Bonus**'). To earn the Sign-On Bonus, you must remain actively employed by the Company in good standing for 12 months after your Start Date.  If you resign from your employment or your employment is terminated by the Company at any time within 12 months of your Start Date, you acknowledge and agree that, upon the Company's request, you are obligated to repay the Sign-On Bonus, reduced on a pro-rata basis by one-twelfth (1/12) of the Sign-On Bonus for each full month you remain employed by the Company. You will be paid the Sign-On Bonus in a lump sum at the time of your first payroll date, subject to repayment as described in this paragraph.

7.  *Performance Bonus Plan.* You may be eligible to earn a discretionary performance bonus award in accordance with the Company's discretionary Performance Bonus Plan as it may exist and/or be amended from time to time. For the current Performance Bonus Plan year, the Performance Bonus Plan target for your position is 25% of annual eligible earnings, paid pursuant to the terms and conditions in the Performance Bonus Plan.

8.  *Equity Compensation.* Subject to the approval of the Compensation Committee of the Company's Board of Directors (or an authorized subcommittee), you will be granted a specified number of restricted stock units of the Company ('**RSUs**'). The number of RSUs that are granted to you, if approved, will be determined by dividing ▮▮▮▮ USD by the prevailing RSU conversion rate in effect during the month in which your employment role commences

under the terms of this offer letter, rounded up to the nearest whole share. (Note: for the purposes of the RSU grant under this paragraph, your employment commencement date is anticipated to be your Start Date as set out above, unless delayed or deferred for any reason. In the event you have been previously engaged by the Company in any capacity under a different role or arrangement, such prior service will <u>not</u> count for the purposes of your RSU grant).

The RSUs will be subject to the terms of the Company's 2013 Equity Incentive Plan and its form of RSU agreement (the '**Equity Documents**'). You will vest in 12.5% of the RSUs on the six month anniversary of the first day of the month following your Start Date, provided you have continued to provide services to the Company until that date, and over your next three and a half years of continuous service with the Company you will vest 6.25% per quarter, as will be further described in the Equity Documents. Be advised that the calculation used to determine the number of RSUs granted is determined in the sole discretion of the Company and will not correlate to any published stock price on your date of hire and, furthermore, does not denote, nor can it predict, the future value of any RSUs. Stock prices are by nature volatile, and there is no way to predict the value of your future shares, if and when they vest.

Subject to your continued employment in an equity eligible role, you will be eligible to receive future equity grants.

9. *Employee Benefits*. As a regular employee of the Company, you will be eligible to participate in Company-sponsored benefits in accordance with the terms of the applicable benefit plans. The Company may replace, change or cease providing these benefits and remuneration and the terms on which they are provided at any time at its discretion.

10. *Conditions on this Offer*. This offer of employment and your commencement of employment with the Company is conditioned upon:

   a) Your providing legal proof of your identity and authorization to work in the United States within three days of the commencement of your employment.

   b) Your signing of the Company's standard Employee Invention Assignment and Confidentiality Agreement ('**Confidentiality Agreement**'), which includes restrictions on your ability to engage in outside activities, and other restrictions during and following your employment, as described in the Confidentiality Agreement, and the Company's approval of such outside activities. A copy of the Confidentiality Agreement is enclosed with this letter.

   c) Your disclosure, and resolution to the satisfaction of the Company, of any contractual commitments or legal obligations that would prohibit, restrict or interfere with your ability to perform your duties for the Company.

   d) Your successful completion of a background check regarding your employment experience, educational credentials, criminal history and the like. This offer may be withdrawn in the sole discretion of the Company based on its review of the background check results. Your acceptance of this offer of employment will be complete when you have initiated authorization to perform a background check, as instructed by our Human Resources Department.

11. *Acknowledgement re: Compensation*. You acknowledge and agree that if during the recruiting process you disclosed your current or past salary to Twitter, such disclosure was made voluntarily and without prompting. You further acknowledge and agree that Twitter may consider and verify any such compensation information you've disclosed, including disclosure of compensation that you would forfeit by leaving your current employment.

12. *Taxes*. All forms of compensation that are subject to income or payroll taxes will be reduced to reflect applicable income tax withholding and payroll taxes. Any form of compensation that is subject to income or payroll taxes and that is not paid in cash will result in a reduction in cash compensation to reflect applicable income tax withholding and payroll taxes.

13. *Outside Activities*. While you render services to the Company, you will not engage in any other employment, consulting, or other business activity that would create a conflict of interest with the Company, which includes

engaging in any work that is competitive in nature. While you render services to the Company, you also will not assist any person or entity in competing with the Company, in preparing to compete with the Company, or in hiring any employees or consultants of the Company.

14. *Employment Relationship.* Employment with the Company is for no specific period of time. Your employment with the Company will be "at will," meaning that either you or the Company may terminate your employment at any time and for any reason, with or without cause. This is the full and complete agreement between you and the Company regarding the duration of the employment relationship. Although your job duties, title, compensation and benefits, as well as the Company's personnel policies and procedures may change from time to time, the "at will" nature of your employment, may only be changed through an express written agreement signed by you and the Company's Chief Executive Officer.

15. *Dispute Resolution.* We sincerely hope that no dispute will arise between us. If a dispute should arise, it will be resolved through the Company's Dispute Resolution Agreement, unless you choose to opt-out of the same pursuant to its terms. A copy of the Dispute Resolution Agreement is enclosed with this letter.

16. *Entire Agreement.* This letter agreement supersedes and replaces any prior agreements, representations or understandings, whether written, oral or implied, between you and the Company.

Please do not make any change in your present living or employment circumstances until all of the conditions to this offer have been satisfied. To accept this offer, please initiate the authorization of your background check, and sign and date this offer letter, and the other documents enclosed with this letter (including the Confidentiality Agreement and Dispute Resolution Agreement) and return them via Adobesign. This offer will expire if the signed documents are not returned by April 26, 2021, unless otherwise extended by the Company.

We're excited to welcome you to Twitter!

Sincerely,

**Twitter, Inc.**

Jennifer Christie
Chief Human Resources Officer

By signing below, I acknowledge and agree that I have read, understood and accept all the provisions of this offer of employment:

*Emmanuel Cornet*

Emmanuel Cornet (Apr 23, 2021 21:49 GMT)

Emmanuel Cornet

Apr 23, 2021

Date

# DISPUTE RESOLUTION AGREEMENT

**This Dispute Resolution Agreement is a contract and covers important issues relating to your rights. It is your responsibility to read it and understand it. You are free to seek assistance from independent advisors of your choice outside the Company or to refrain from doing so if that is your choice.**

**You can choose to opt out of this Agreement – you have 30 days to opt out.**

## 1. How This Agreement Applies

This Agreement is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. and evidences a transaction involving commerce. If the FAA is found not to apply, then this Agreement is enforceable under the laws of the state in which you ("Employee") are employed at the time you enter into this Agreement. This Agreement applies to any dispute arising out of or related to Employee's employment with Twitter, Inc. or one of its affiliates, successor, subsidiaries or parent companies ("Company") or termination of employment, and survives after the employment relationship terminates. It can only be revoked or modified by a writing, signed by both you and Twitter, Inc.'s Chief Executive Officer, which specifically states an intent to revoke or modify this Agreement. Nothing contained in this Agreement shall be construed to prevent or excuse Employee or the Company from using the Company's existing internal procedures for resolution of complaints.

Disputes covered by this Agreement include, without limitation, disputes arising out of or relating to interpretation or application of this Agreement, including the enforceability, revocability or validity of the Agreement or any portion of the Agreement. Except as it otherwise provides or required by law, this Agreement also applies, without limitation, to disputes regarding the employment relationship, terms and conditions of employment, trade secrets, unfair competition, compensation, breaks and rest periods, termination, discrimination, harassment, or retaliation, and claims arising under the Uniform Trade Secrets Act, Title VII of the Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act (except for claims for employee benefits under any benefit plan sponsored by the Company and covered by the Employee Retirement Income Security Act of 1974 or funded by insurance), Genetic Information Non-Discrimination Act, and state statutes, if any, addressing the same or similar subject matters, all other state statutory and common law claims, and any other employment-related claim.

Except as it otherwise provides, this Agreement is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration. This Agreement requires all covered disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial. **By entering into this Agreement, the parties are waiving a trial by jury.**

## 2. Limitations On How This Agreement Applies

This Agreement does not apply to claims for workers compensation, state disability insurance and unemployment insurance benefits.

Regardless of any other terms of this Agreement, claims may be brought before and remedies awarded by an administrative agency if applicable law permits access to such an agency notwithstanding the existence of an agreement to arbitrate. Such administrative claims include, without limitation, claims or charges brought before the Equal Employment Opportunity Commission (www.eeoc.gov) the U.S. Department of Labor (www.dol.gov) the National Labor Relations Board (www.nlrb.gov), or the Office of Federal Contract Compliance Programs (www.dol.gov/esa/ofccp). Nothing in this Agreement shall be deemed to preclude or excuse a party from bringing an administrative claim before any agency in order to fulfill the party's obligation to exhaust administrative remedies before making a claim in arbitration.

Disputes that may not be subject to predispute arbitration agreement as provided by the Dodd-Frank Wall Street Reform and Consumer Protection Act (Public Law 111-203) are excluded from the coverage of this Agreement.



*EC*
EC

1

## 3. Selecting The Arbitrator

The Arbitrator shall be selected by mutual agreement of the Company and the Employee. Unless the Employee and Company mutually agree otherwise, the Arbitrator shall be an attorney licensed to practice in the state in which the arbitration proceeding will be conducted or a retired federal or state judicial officer who presided in the state where the arbitration will be conducted. If, however, the parties fail to agree on an arbitrator within 30 days after the initiation of arbitration, or at the request of either party, the dispute shall be heard by a neutral arbitrator chosen according to the procedures found in the then-current JAMS Employment Arbitration Rules and Procedures ("JAMS Rules"). The JAMS Rules may be accessed at: https://www.jamsadr.com/rules-employment-arbitration/. Alternatively, an Employee may obtain a copy of the JAMS Rules from Human Resources. The location of the arbitration proceeding shall be no more than 45 miles from the place where the Employee reported to work for the Company, unless each party to the arbitration agrees in writing otherwise.

## 4. Starting The Arbitration

All claims in arbitration are subject to the same statutes of limitation that would apply in court. The party bringing the claim must demand arbitration in writing and deliver the written demand by hand or first class mail to the other party within the applicable statute of limitations period. The demand for arbitration shall include identification of the parties, a statement of the legal and factual basis of the claim(s), and a specification of the remedy sought. Any demand for arbitration made to the Company shall be provided to the attention of the Company's Legal Department, Twitter, Inc., 1355 Market Street, Suite 900, San Francisco, CA 94103. The arbitrator shall resolve all disputes regarding the timeliness or propriety of the demand for arbitration. A party may apply to a court of competent jurisdiction for temporary or preliminary injunctive relief in connection with an arbitrable controversy, but only upon the ground that the award to which that party may be entitled may be rendered ineffectual without such provisional relief.

## 5. How Arbitration Proceedings Are Conducted

Employee and the Company agree to bring any claim in arbitration before Judicial Arbitration and Mediation Services ("JAMS"), pursuant to the then-current JAMS Rules. In arbitration, the parties will have the right to conduct adequate civil discovery, bring dispositive motions, and present witnesses and evidence to present their cases and defenses, and any disputes in this regard shall be resolved by the Arbitrator. Discovery and conduct of the arbitration hearing shall be governed by the JAMS Rules applicable to discovery and arbitration hearing procedures.

**You and the Company agree to bring any dispute in arbitration on an individual basis only, and not on a class, collective, or private attorney general representative action basis**. Employee and the Company agree that any arbitration will be limited to the claims between Employee and the Company individually. Employee acknowledges and agrees that Employee and the Company are each waiving the right to participate as a plaintiff or class member in any purported class action, collective action or representative action proceeding ("Class Action Waiver"). This Class Action Waiver shall not apply to California Private Attorney General Act claims brought against the Company to the extent a Class Action Waiver is not legally enforceable as to those claims. Notwithstanding any other provision of this Agreement or the JAMS Rules, disputes regarding the scope, applicability, enforceability or validity of the Class Action Waiver may be resolved only by a civil court of competent jurisdiction and not by an arbitrator. In any case in which: (1) the claim is filed as a class, collective, or representative action and (2) there is a final judicial determination that the Class Action Waiver is unenforceable as to any claims, the class, collective, and/or representative action on such claims must be litigated in a civil court of competent jurisdiction, but the Class Action Waiver shall be enforced in arbitration on an individual basis as to all other claims to the fullest extent possible and the claims to be litigated in court shall be stayed pending the completion of the arbitration on the arbitrable claims.

## 6. Paying For The Arbitration

Each party will pay the fees for his, her or its own attorneys, subject to any remedies to which that party may later be entitled under applicable law. However, in all cases where required by law, the Company will pay the Arbitrator's and arbitration fees. If under applicable law the Company is not required to pay all of the Arbitrator's and/or arbitration fees, such fee(s) will be apportioned between the parties in accordance with said applicable law, and any disputes in that regard will be resolved by the Arbitrator.



## 7. The Arbitration Hearing And Award

The parties will arbitrate their dispute before the Arbitrator, who shall confer with the parties regarding the conduct of the hearing and resolve any disputes the parties may have in that regard. The Arbitrator shall apply substantive law as applicable to the claims, and may award any party any remedy to which that party is entitled under applicable law, but such remedies shall be limited to those that would be available to a party in his or her individual capacity in a court of law for the claims presented to and decided by the Arbitrator; no remedies that otherwise would be available to an individual in a court of law will be forfeited by virtue of this Agreement. Unless otherwise agreed by the parties in writing, the Arbitrator will issue a decision or award in writing, stating the essential findings of fact and conclusions of law, within 30 days after the date of closing of the arbitration hearing or the completion of post-hearing briefing, whichever is later. Except as may be permitted or required by law, as determined by the Arbitrator, neither a party nor an Arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of all parties. A court of competent jurisdiction shall have the authority to enter a judgment upon the award made pursuant to the arbitration.

## 8. An Employee's Right To Opt Out Of Arbitration

**Arbitration is not a mandatory condition of Employee's employment at the Company, and therefore an Employee may submit a form stating that the Employee wishes to opt out and not be subject to this Agreement.** The Employee must submit a signed and dated statement on a "Dispute Resolution Agreement Opt Out Form" ("Form") that can be obtained from the Company's Human Resources Department at hrlegaldocs@twitter.com. In order to be effective, the signed and dated Form must be returned to the Human Resources Department within 30 days of the Employee's receipt of this Agreement. An Employee who timely opts out as provided in this paragraph will not be subject to any adverse employment action as a consequence of that decision and may pursue available legal remedies without regard to this Agreement. Should an Employee not opt out of this Agreement within 30 days of the Employee's receipt of this Agreement, continuing the Employee's employment constitutes mutual acceptance of the terms of this Agreement by Employee and the Company. An Employee has the right to consult with counsel of the Employee's choice concerning this Agreement.

## 9. Non-Retaliation

An employee will not be subject to retaliation if he or she exercises his or her right to assert claims under this Agreement. If any Employee believes that he or she has been retaliated against by anyone at the Company, the Employee should immediately report this to the Human Resources Department.

## 10. Enforcement Of This Agreement

This Agreement is the full and complete agreement relating to the formal resolution of covered disputes. Except as stated in paragraph 5, above, in the event any portion of this Agreement is deemed unenforceable, the remainder of this Agreement will be enforceable. If the Class Action Waiver, Collective Action Waiver or Private Attorney General Waiver is deemed to be unenforceable, the Company and Employee agree that this Agreement is otherwise silent as to any party's ability to bring a class, collective or representative action in arbitration. Nothing in this Agreement modifies the at-will nature of Employee's employment with the Company.

**AGREED:**

Leslie Berland, Head of People
TWITTER, INC.

**By signing below, I acknowledge and agree to the terms of this Dispute Resolution Agreement, and confirm I am aware of my right to opt out per the terms of this Agreement:**

EMPLOYEE NAME PRINTED      Emmanuel Cornet

EMPLOYEE SIGNATURE      *Emmanuel Cornet*
Emmanuel Cornet (Apr 23, 2021 21:49 GMT)

Date:      Apr 23, 2021





# EXHIBIT 4

Randal M. Barnum      State Bar No. 111287
Carrie E. Croxall        State Bar No. 190430
LAW OFFICES OF RANDAL M. BARNUM
279 East H Street
Benicia, CA  94510
Telephone:     707.745.3747
Facsimile:      707.745.4580
rbarnum@rmblaw.com
ccroxall@rmblaw.com

Attorneys for Defendant: PRIVATE INDUSTRY
COUNCIL OF SOLANO COUNTY, INC., dba
WORKFORCE INVESTMENT BOARD OF
SOLANO COUNTY (erroneously sued herein as
WORKFORCE INVESTMENT BOARD, INC.)

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 1021, | CASE NO. |
| Plaintiff/Petitioner, | **DEFENDANT'S NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441** |
| v. | **(Federal Question Jurisdiction)** |
| WORKFORCE INVESTMENT BOARD, INC. | |
| Defendant/Respondent. | |

**TO THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF/PETITIONER AND ITS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. Sections 1331, 1441(a) and 1446, Defendant/Respondent PRIVATE INDUSTRY COUNCIL OF SOLANO COUNTY, INC., dba WORKFORCE INVESTMENT BOARD OF SOLANO COUNTY (erroneously sued herein as WORKFORCE INVESTMENT BOARD, INC.) ("Defendant" or "WIB") hereby removes the above-entitled action from Solano County Superior Court to the United States District Court for the Eastern District of California.

- 1 -

## REMOVAL JURISDICTION

1.      On August 6, 2013, Plaintiff Service Employees International Union, Local 1021 ("Plaintiff" or "SEIU 1021") filed a Verified Petition to Compel Arbitration in Solano County Superior Court against WIB entitled *Service Employees International Union, Local 1021 v. Workforce Investment Board, Inc.*, Case No. FCS042119.

2.      WIB was personally served with the Petition to Compel Arbitration on August 7, 2013. A copy of the Petition and supporting papers, as well as all process, pleadings, notices and orders filed in the State Court action are attached hereto as **Exhibit "A."** Because this Notice of Removal is filed within thirty (30) days of service of the Petition on Defendant, removal is timely pursuant to 29 U.S.C. Section 1446(b).

3.      As will be demonstrated below, the subject civil action necessarily arises under Section 301 of the Labor Management Relations Act, 29 U.S.C. 185(a). ("LMRA") As such, it is a case over which this Court has original jurisdiction under 28 U.S.C. Section 1331, and removal is therefore appropriate under 28 U.S.C. Section 1441.

4.      At all relevant times, WIB has been, and is, a corporation which offers programs and services to provide employers access to qualified workers, and equip job seekers to compete in the job market. As such, it has been, and is, a corporation "in an industry affecting commerce" within the meaning of the Labor Management Relations Act ("LMRA") Sections 152(2), (6), (7), and 185(a).

5.      At all relevant times, SEIU 1021 has been, and is a labor organization in which certain employees of WIB participate and which exists for the purpose of dealing with employees' grievances, labor disputes, wages, rates of pay, hours of employment, and conditions of work. At all relevant times, SEIU 1021 has been, and is, a labor organization within the meaning of Section 2(5) and 301(a) of the LMRA, 29 U.S.C. Sections 152(5) and 185(a).

6.      At all relevant times during their employment with WIB, the employment of SEIU 1021's members with WIB was specifically governed by a Collective Bargaining Agreement ("CBA") entered into between WIB and SEUI 1021. A true and correct copy of the CBA is attached hereto as **Exhibit "B."** At all relevant times, this CBA has been and is a

DEFENDANT'S NOTICE OF REMOVAL

contract between an employer and a labor organization within the meaning of Section 301(a) of the LMRA, 29 U.S.C. Section 185(a).

7.    SEIU 1021's factual allegations include various types of conduct covered by the CBA.  For example, SEIU 1021 alleges that a dispute exists over the interpretation and/or application of the CBA (Petition, ¶ 5.)  SEIU 1021 specfically alleges that WIB is in violation of the CBA because WIB: refused to meet to initiate and to participate in the informal resolution process prior to a formal grievance being filed (Petition, ¶¶ 5 and 7); refused to process grievances (Petition ¶ 9); and failed and refuses to comply with the grievance and arbitration provisions of the CBA (Petition ¶ 12).

8.    The LMRA confers federal jurisdiction in any suit between an employer and a labor union for violation of a collective bargaining agreement.  (See 29 U.S.C. § 185(a), (b); *K.V. Mart Co. v. United Food & Commercial Workers Int'l Union, Local 324* (9th Cir. 1999) 173 F.3d 1221, 1224-1225.)  The preemptive force of Section 301 of the LMRA is such that it "converts an ordinary state law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule" and the entire Complaint is removable to federal court.  (*Caterpillar Inc. v. Willams* (1987) 482 U.S. 386, 392; *Franchise Tax Board v. Construction Laborers Vacation Trust* (1983) 463 U,S, 1m 23 ("if a federal cause of action completely preempts a state cause of action, any complaint that comes within the scope of the federal cause of action necessarily 'arises' under federal law"); *Associated Builders & Contractors, Inc. v. Local 302, IBEW* (9th Cir. 1997) 109 F. 3d 1353, 1356.)

9.    Because this lawsuit alleges a violation of a contract between an employer and a labor organization representing employees in an industry affecting commerce, it is by definition, under Section 301 of the LMRA (29 U.S.C. § 185), a suit arising under an act of Congress regulating commerce.  As such, it is an action over which this Court has original jurisdiction, without respect to the amount in controversy and without regard to the citizenship of the parties. (29 U.S.C. § 185 and 28 U.S.C. § 1331.)

/ / /

DEFENDANT'S NOTICE OF REMOVAL

10.     Since this action under 29 U.S.C. § 185 is a suit involving claims of a right arising, if at all, under the laws of the United States, it may be removed to this Court under the provisions of 28 U.S.C. Sections 1441(b) and 1446 without regard to the citizenship or residence of the parties.

**VENUE**

11.     Venue lies in the United States District Court, Eastern District of California pursuant to 28 U.S.C. Sections 1441(a) and 1391(b), because the original state court action was filed in this district and this is the jurisdictional district in which the action arose.

**INTRADISTRICT ASSIGNMENT**

12.     SEIU 1021's claims arose in Solano County.  Assignment to the Sacramento division of this Court is therefore proper under Local Rule 120(c).

**NOTICE TO STATE COURT AND TO PLAINTIFF**

13.     Written notice of the filing of this Notice of Removal will promptly be  given to SEIU 1021 and, together with a copy of the Notice of Removal and supporting papers, will promptly be filed with the Clerk of the Court for Solano County Superior Court, as required by 28 U.S.C. Section 1447(d).

WHEREFORE Defendant WIB respectfully requests that this civil action be removed from the State of California, Solano County Superior Court to the United States District Court for the Eastern District of California.

Dated: August 13, 2013                       LAW OFFICES OF RANDAL M. BARNUM

By: _____
                        Randal M. Barnum
                        Carrie E. Croxall
                        Attorneys for Defendant,
                        PRIVATE INDUSTRY COUNCIL OF
                        SOLANO COUNTY, INC., dba
                        WORKFORCE INVESTMENT BOARD
                        OF SOLANO COUNTY (erroneously sued
                        herein as WORKFORCE INVESTMENT
                        BOARD)

- 4 -

DEFENDANT'S NOTICE OF REMOVAL

# EXHIBIT 5

1   MATTHEW J. GAUGER, Bar No. 139785
    GARY P. PROVENCHER, Bar No. 250923
2   ANTHONY J. TUCCI, Bar No. 288819
    WEINBERG, ROGER & ROSENFELD
3   A Professional Corporation
    428 J Street, Suite 520
4   Sacramento, California 95814
    Telephone  (916) 443-6600
5   Fax  (916) 442-0244
    E-Mail:  mgauger@unioncounsel.net
6              gprovencher@unioncounsel.net
               atucci@unioncounsel.net
7
    Attorneys for Plaintiff/Plaintiff SERVICE EMPLOYEES
8   INTERNATIONAL UNION, LOCAL 1021

9                      UNITED STATES DISTRICT COURT

10                    EASTERN  DISTRICT OF CALIFORNIA

11

12
    SERVICE EMPLOYEES INTERNATIONAL          No. 2:13-cv-01670-WBS-EFB
13  UNION, LOCAL 1021,
                                             **FIRST CHANGED COMPLAINT TO
14                      Plaintiff/Petitioner,   COMPEL ARBITRATION**
                                             [Fed. R. Civ. P. 15(a)(1)]
15         v.
                                             Date:      October 7, 2013
16  PRIVATE INDUSTRY COUNCIL OF              Time:      2:00 p.m.
    SOLANO COUNTY, INC. D/B/A                Dept.:     Courtroom 5
17  WORKFORCE INVESTMENT BOARD OF            Judge:     Hon. William B. Shubb
    SOLANO COUNTY, a California corporation
18
19                      Defendant/Respondent.
20
21
22
23
24
25
26
27
28

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
428 J Street, Suite 520
Sacramento, California 95814
(916) 443-6600

FIRST CHANGED COMPLAINT TO COMPEL ARBITRATION
Case No. 2:13-cv-01670-WBS-EFB

1    TO:    THE HONORABLE UNITED STATES DISTRICT COURT FO THE EASTERN

2    DISTRICT OF CALIFORNIA

3            Pursuant to Federal Rule of Civil Procedure 15(a)(1), Plaintiff hereby submits this First

4    Amended Petition to Compel Arbitration, which respectfully shows:

5            1.    Jurisdiction of this Court is based upon 29 U.S.C. §185, 28 U.S.C. §1331, 28

6    U.S.C. §1337.  Venue is appropriate in this District since the dispute arose in this District and

7    Plaintiff is actively involved in representing its members with respect to their wages, hours and

8    working conditions in this District.  Furthermore, Defendant did business which is the subject of

9    this dispute in this District.

10           2.    Plaintiff SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 1021

11   ("Petitioner" or "SEIU Local 1021") is a labor organization doing business in the State of

12   California and is a voluntary, unincorporated association, existing under and pursuant to the laws

13   of the State of California.  Plaintiff exists in part for the purpose of providing standards of wages,

14   hours, and working conditions, and negotiating and executing collective-bargaining agreements

15   on behalf of employees in an appropriate collective-bargaining unit.  Plaintiff is a labor

16   organization within the meaning of the Labor–Management Relations Act of 1947, 29 U.S.C.

17   §151 et seq.

18           3.    Defendant PRIVATE INDUSTRY COUNCIL OF SOLANO COUNTY, INC.,

19   dba WORKFORCE INVESTMENT BOARD OF SOLANO COUNTY is engaged in interstate

20   commerce and is an employer within the meaning of the Labor–Management Relations Act of

21   1947, 29 U.S.C. §151 et seq.

22           4.    At all times herein mentioned, Plaintiff and Defendant have been parties to a

23   written Collective Bargaining Agreement to which each of the parties is bound.  A copy of said

24   Collective Bargaining Agreement is attached hereto, marked Exhibit A and incorporated herein

25   by reference.

26           5.    Section XIX of the Collective Bargaining Agreement provides for a grievance

27   procedure wherein the parties are bound to submit all unresolved disputes to a neutral Arbitrator.

28   The Arbitrator is empowered to make final and binding decisions.

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
428 J Street, Suite 520
Sacramento, California 95814
(916) 443-6600

1

FIRST CHANGED COMPLAINT TO COMPEL ARBITRATION
Case No. 2:13-cv-0160-WBS-EFB

1    6.    Since on or about April 25, 2013, a dispute has existed over the interpretation

2    and/or application of the Collective Bargaining Agreement in that there have been grievances and

3    continues to be grievances concerning the interpretation of various portions of the Agreement.

4    Section XIX Grievance Procedure (C) provide that the affected employee, the relevant supervisor

5    and the Executive Director or his designee should meet to attempt to work out a solution to the

6    issue prior to initiating the formal grievance process. The Collective Bargaining Agreement does

7    not prohibit the Union from being present. The Employer has refused to participate in the

8    informal process if the Union is present or requests to be present.

9    7.    On April 25, 2013, the Union initiated the grievance process in eight grievances

10   attempted to file at the informal level. A true and correct copy of the letter from the Union's

11   Field Representative, Stephen Cutty, to the Employer's Executive Director, Robert Bloom, is

12   attached as Exhibit B and incorporated herein as though fully set forth.

13   8.    On May 3, 2013, the Employer responded but refused to meet to initiate the

14   informal resolution process. A true and correct copy of the May 3, 2013 letter from Mr. Bloom to

15   Mr. Cutty is attached as Exhibit C and incorporated herein as though fully set forth.

16   9.    The Union responded on May 7, 2013 and moved the dispute to the second level

17   of the grievance procedure. A true and correct copy of the May 7, 2013 letter from Mr. Cutty to

18   Mr. Bloom is attached as Exhibit D and incorporated herein as though fully set forth.

19   10.    The Employer responded to the Union on May 15, 2013 refusing to process the

20   grievances. A true and correct copy of Mr. Bloom's May 15, 2013 letter to Mr. Cutty is attached

21   as Exhibit E and incorporated herein as though fully set forth.

22   11.    On May 23, 2013, the Union responded and requested the Employer to choose

23   arbitrators pursuant to Step 3 of the Grievance Procedure. A true and correct copy of Mr. Cutty's

24   May 23, 2013 letter to Mr. Bloom is attached as Exhibit F and incorporated herein as though fully

25   set forth.

26   12.    On May 30, 2013, the employer responded stating "please see my earlier May 15,

27   2013 letter to you (attached), as my continued response to your repetitive request now posed in

28   this latest May 23 letter."

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
428 J Street, Suite 520
Sacramento, California 95814
(916) 443-6600

2

FIRST CHANGED COMPLAINT TO COMPEL ARBITRATION
Case No. 2:13-cv-0160-WBS-EFB

13.    At all times material herein, Plaintiff Union has complied with all the terms and conditions of said Collective Bargaining Agreement, but Respondent employer has failed and refused to so comply, and still so fails and refuses to comply with the said grievance and arbitration provisions of the agreement, or to submit the dispute for resolution pursuant to the provisions of said grievance and arbitration provisions.

14.    Defendant's refusal to arbitrate the grievance pursuant to the CBA is frivolous, unjustified, and in bad faith.  Plaintiff has been forced to incur attorneys' fees to obtain compliance with the arbitration procedure.  Fees incurred to so obtain compliance with a collective bargaining agreement should be awarded.  *Sheetmetal Workers' Int'l Ass'n, Local Union No. 359 v. Madison Indus., Inc. of Ariz.*, 84 F.3d 1186, 1191 (9th Cir. 1996); *Int'l Union of Petroleum and Indus. Workers v. W. Indus. Maint., Inc.*, 707 F.2d 425 (9th Cir. 1983).

WHEREFORE, Plaintiff prays that an Order of this Court be made pursuant to 29 U.S.C. § 185 and 9 U.S.C. § 4 ordering Defendant to submit the outstanding dispute to the grievance and arbitration procedures set forth in the provisions of the collective-bargaining agreement referred to herein, and to otherwise comply with the grievance and arbitration procedures required by said agreement as set forth therein.  Plaintiff furthermore seeks reasonable attorneys' fees and its costs of suit herein; and for such other and further relief as to this Court may seem just and proper.

Dated: 9/5/13

WEINBERG, ROGER & ROSENFELD
A Professional Corporation

By: _____
MATTHEW J. GAUGER
GARY P. PROVENCHER
ANTHONY J. TUCCI

Attorneys for Plaintiff/Plaintiff SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 1021

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
428 J Street, Suite 520
Sacramento, California 95814
(916) 443-6600

3

FIRST CHANGED COMPLAINT TO COMPEL ARBITRATION
Case No. 2:13-cv-0160-WBS-EFB

# Exhibit A

# COLLECTIVE BARGAINING AGREEMENT

### Between

Admin/Program Specialist II      Admin/Program Technician III
Admin/Program Specialist I      Admin/Program Technician II
                                       Admin/Program Technician I

Represented by Service Employees International Union
Local 1021 CTW, CLC

And

## WORKFORCE INVESTMENT BOARD
## OF SOLANO COUNTY

### 2008-2013



**WORKFORCE INVESTMENT BOARD**
OF SOLANO COUNTY

COLLECTIVE BARGAINING AGREEMENT
Between

Service Employees International Union, Local 1021
And
Workforce Investment Board of Solano County, Inc.

## TABLE OF CONTENTS

| Collective Bargaining | | | Page |
|---|---|---|---|
| Agreement | | | 1 |
| Section I. | Recognition | | 1 |
| Section II. | Management Rights | | 1 |
| Section III. | Union Security | | 2 |
| | A. | Condition of Employment | 2 |
| | B. | Procedures | 2 |
| | C. | Check-off Obligation | 2 |
| | D. | Related Terminations | 2 |
| Section IV. | Authorized Agents | | 3 |
| | A. | Employer's Principal Authorized Agent | 3 |
| | B. | Union's Principal Authorized Agent | 3 |
| | C. | Notification of Changes in Person or Address | 3 |
| Section V. | Employee Classifications | | 3 |
| | A. | Regular Employees | 3 |
| | B. | Limited-Term Employees | 3 |
| | C. | Full-Time Regular Employees | 4 |
| | D. | Part-Time Regular Employees | 4 |
| | E. | Probationary Employees | 4 |
| Section VI. | Union Access | | 4 |
| Section VII. | Bulletin Boards | | 5 |
| Section VIII. | Staff Issues Committee | | 5 |
| Section IX. | Release Time | | 5 |
| Section X. | Distribution of Union Literature | | 6 |

i

|  |  |  | Page |
|---|---|---|---|
| Section XI. | | Hours of Work............................................. | 6 |
| | A. | Work Week........................................... | 6 |
| | B. | Work Schedule...................................... | 6 |
| | C. | Attendance........................................... | 7 |
| Section XII. | | Rest and Meal Periods................................... | 8 |
| | A. | Rest Breaks.......................................... | 8 |
| | B. | Off-Duty Meal or Lunch Periods................. | 8 |
| Section XIII. | | Overtime................................................... | 8 |
| Section XIV. | | Evaluations................................................ | 8 |
| | A. | Probationary Employees........................... | 9 |
| | B. | Regular Employees................................. | 9 |
| | C. | Step Increases...................................... | 9 |
| | D. | Special Evaluations................................ | 9 |
| | E. | Completion Timelines for Evaluations and Salary Adjustments............................... | 10 |
| Section XV. | | Evaluation Appeals...................................... | 10 |
| | A. | Overall Standard Evaluation...................... | 10 |
| | B. | Overall Short of Standard Evaluation............ | 10 |
| | C. | Grievance Procedure............................... | 10 |
| Section XVI. | | Layoffs.................................................... | 10 |
| | A. | Staff Reduction or Layoff......................... | 10 |
| | B. | Procedures........................................... | 11 |
| | C. | Consultation......................................... | 11 |
| | D. | Bumping.............................................. | 11 |
| | E. | Re-Employment..................................... | 12 |
| | F. | Voluntary Quits..................................... | 12 |
| Section XVII. | | Personnel File........................................... | 12 |
| | A. | Employee Personnel File.......................... | 12 |
| | B. | Status Change Notification........................ | 13 |
| | C. | Performance Material............................... | 13 |
| | D. | Disagreement Statements.......................... | 13 |
| | E. | Future Material Placed in the EPF............... | 13 |
| | F. | Confidentiality of Employee Health, Medical and/or Performance Evaluation Information................ | 13 |

ii

|  |  |  | Page |
|---|---|---|---|
| Section XVIII. | | Disciplinary Procedures............................................. | 14 |
| | A. | Expected Employee Conduct................................. ... | 14 |
| | B. | Disciplinary Procedures................................. .... | 14 |
| | C. | Reasons for Disciplinary Action................................ | 14 |
| | D. | Forms of Discipline........................................... | 15 |
| | E. | Union Representation.......................................... | 16 |
| Section XIX. | | Grievance Procedure............................................... | 16 |
| | A. | Definition.................................................... | 16 |
| | B. | Eligibility................................................... | 16 |
| | C. | Procedures................................................... | 17 |
| | D. | Time Limits.................................................. | 18 |
| | E. | Ability to Reopen Clause...................................... | 18 |
| Section XX. | | No Discrimination................................................. | 18 |
| Section XXI. | | Salary Compensation.............................................. | 19 |
| | A. | Appointment Step for New Employees..................... | 19 |
| | B. | Salary Ranges............................................... | 19 |
| | C. | Cost of Living Adjustment (COLA)........................... | 19 |
| | D. | Method for conducting Future Salary Surveys.............. | 19 |
| | E. | Specific Project Salary Adjustments (for Interim | |
| | | Project Lead Assignments).......................... | 20 |
| Section XXII. | | Employment Status Changes....................................... | 20 |
| | A. | Promotion................................................... | 20 |
| | B. | Demotion.................................................... | 21 |
| | C. | Transfer.................................................... | 21 |
| | D. | Lateral..................................................... | 21 |
| | E. | Posting of Open Functional Assignments................... | 21 |
| Section XXIII. | | Holidays/Vacation/Sick Leave and Other Leaves................... | 22 |
| | A. | Paid Leaves.................................................. | 22 |
| | B. | Unpaid Leaves............................................... | 26 |
| Section XXIV. | | Fringe Benefits.................................................. | 29 |
| | A. | Medical Benefits............................................ | 29 |
| | B. | Dental Benefits............................................. | 29 |
| | C. | Vision Benefits............................................. | 29 |
| | D. | Life Insurance.............................................. | 29 |
| | E. | Retirement.................................................. | 30 |

|                   |    |                                              | Page |
|-------------------|----|----------------------------------------------|------|
| Section XXIV.     |    | Fringe Benefits (con't)........................ | 30   |
|                   | F. | IRS Approved 125 and 129 Plan............... | 30   |
|                   | G. | Miscellaneous Benefits........................ | 30   |
|                   | H. | Tuition Reimbursement........................ | 30   |
|                   |    |                                              |      |
| Section XXV.      |    | Miscellaneous.................................. | 31   |
|                   | A. | Dress Code.................................... | 31   |
|                   | B. | Job Notices.................................... | 31   |
|                   | C. | No Strike/No Lockout.......................... | 32   |
|                   | D. | Severability................................... | 32   |
| Section XXVI.     |    | Term of Agreement............................ | 32   |
| Section XXVII.    |    | Complete Agreement........................... | 32   |
|                   |    | Signature Page................................ | 34   |
| Attachment A.     |    | Classification and Salary Ranges............... | 35   |

## COLLECTIVE BARGAINING AGREEMENT

This Collective Bargaining Agreement ("Agreement") is made and entered into by and between the Private Industry Council of Solano County, Inc, doing Business as the Workforce Investment Board (WIB) of Solano County, Inc., hereinafter referred to as the Employer and Service Employees International Union (SEIU), Local 1021, CTW, CLC hereinafter referred to as the Union.

### SECTION I. RECOGNITION

The Employer recognizes the Union as the exclusive bargaining representative for all full-time and regular part-time employees, as defined by the National Labor Relations Board (NLRB), in the classifications of Administrative/Program Specialists I, and II, and Administrative/Program Technicians I, II and III, excluding supervisory, confidential, and temporary employees.

### SECTION II. MANAGEMENT RIGHTS

Except as expressly modified or restricted by a specific provision of this Agreement, nothing in this Agreement shall be deemed to limit the Employer in any way in the exercise of regular and customary management functions, including all statutory and inherent managerial rights, prerogatives, and functions, which are retained and vested exclusively in the Employer. These include, but are not limited to, the rights in accordance with the Employer's reasonable and exclusive judgment and discretion: to evaluate the performance of employees, reprimand, suspend, discharge, or otherwise discipline employees for cause; to determine the number of employees to be employed; to hire employees, including temporary and limited term employees; determination of employee qualifications and assignment and direction of their work; to promote, demote, transfer, layoff, recall to work and retire employees; to set the standards of productivity, and the services to be rendered; to determine the amount and forms of compensation for employees with the understanding that this Agreement sets the minimum compensation for covered employees; to maintain the efficiency of operations; to determine the personnel, methods, means and facilities by which operations are conducted; the design and implementation of safety programs and plans for increased efficiency; to set the starting and quitting time and the number of hours and shifts to be worked; to use temporary or limited term employees to perform work or services; to relocate the WIB's operations to any part thereof; to expand, reduce, alter, combine, transfer, assign, or cease any job, department, operation or service; to control and regulate the use of facilities, equipment and other property of the Employer; to introduce new or improved methods, materials, machinery, and equipment; to determine the number, location and operation of departments, divisions, and all other units of the Employer; to issue, amend and revise policies, rules, regulations, and practices; and to take whatever action, which it considers necessary to determine, manage, and fulfill the mission of the Employer and to direct the Employer's employees. The Employer's failure to exercise any right, prerogative, or function hereby reserved to it, except in instances of a clearly established past-practice regarding wages, hours and working conditions shall not be considered a waiver of the Employer's right to exercise such right, prerogative, or functions or preclude it from exercising the same in another way not to conflict with the express provisions of this Agreement.

## SECTION III.  UNION SECURITY

**A.**     **Condition of Employment**

It shall be a condition of employment that all employees of the Employer covered by this Agreement who are members of the Union in good standing on the effective date of this Agreement shall remain members in good standing and those who are not members in good standing on the effective date of this Agreement shall, on the 30th day following the effective date of this Agreement, become and remain members in good standing in the Union or pay amounts required by the Union under the "Agency Shop" arrangement, which it may implement and administer.  It shall also be a condition of employment that all employees covered by this Agreement and hired on or after its effective date shall, on the 30th day following the beginning of such employment, become and remain members in good standing in the Union or contribute amounts required by the Union under an Agency Shop option under the appropriate circumstances.

**B.**     **Procedures**

The Employer will notify the Union of the name, address and telephone number of each employee hired in any of the classifications covered by this Collective Bargaining Agreement, in writing within five (5) working days of initial employment.  The Union shall then forward to said employee an authorization form advising the employee that the employer has entered into a Union Security Agreement/Agency Shop with the Union and otherwise setting forth all conditions of employment related thereto.  It shall be the Union's responsibility to provide a check-off form for the employee's signature authorizing payroll deductions of Union dues or agency fees.

The Union will provide said authorization form signed by the employee to the Business & Employment Services Manager, or his/her designee, who shall then implement it in accordance with its terms after the employee has been employed for thirty (30) calendar days.  The Union will hold the Employer harmless for any and all claims made against it by any current or former employee related to the Employer's compliance with this Union security provision, and any and all expenses incurred in its defense against any such claim, including reasonable costs and attorney fees.  In no event shall the Employer be required to pay from its own funds Union dues, service fees or charitable contributions which the employee may be obligated to pay but fail to pay regardless of the reason.

**C.**     **Check-off Obligation**

The Employer shall deduct Union dues, service fees, initiation fees, voluntary COPE deduction, or charitable contributions and premiums for approved insurance programs from an employee's pay, pursuant to a signed authorization form from the employee, in conformity with California regulations.  The Employer shall promptly pay to the designated payee all sums   so   deducted   and   shall   have   no   further   duty   on   this   subject.

**D.**     **Related Terminations**

When any employee employed in the Collective Bargaining unit described herein has failed to meet his/her obligation under this section, the Employer agrees to discharge such employees within fifteen (15) days after receiving written notice from the Union.

## SECTION IV.  AUTHORIZED AGENTS

In their capacity as the Authorized Agents for the Employer and the Union, all communications both verbally and in writing must be sent to the two named individuals below.  However, if during the effective dates of this Agreement the Authorized Agents for either party are changed those amendments must be submitted in writing and within five (5) working days of the Agent's name change. `

**A.**      **The Employer's Principal Authorized Agent Shall Be**

Mr. Robert Bloom, Executive Director
Workforce Investment Board (WIB) of Solano County, Inc.
320 Campus Lane
Fairfield, CA   94534-1400
Phone Number          707-863-3501
FAX Number            707-864-3386
Email Address rbloom@solanowib.org

**B.**      **The Union's Principal Authorized Agent Shall Be**

Stephen Cutty, Field Representative
Service Employee's International Union
(SEIU), Local 1021 CTW, CLC
2300 Boynton Avenue, Suite #200
Fairfield, CA    94533
Phone Number          707-427-7209
FAX Number            707-422-5107
Email Address Stephen.cutty@seiu1021.org

**C.**      **Notification of Changes in Person or Address**

Each party shall immediately notify the other of a change in the person or address of its principal authorized agent.

## SECTION V.  EMPLOYEE CLASSIFICATIONS

**A.**      **Regular Employees**

A regular employee is a full or part-time employee appointed to a position which has been authorized by the Employer and covered by this Agreement.

**B.**      **Limited-Term Employees**

A limited-term employee is either a full or part-time employee hired for a specific program, limited-term of employment or purpose whose position is at the time of engagement to be a finite duration and to be eliminated when such programs or need terminates and such services are no longer required.  Such employees are not covered by this Agreement.  However, the Employer will provide written notification to the Union whenever such employees are engaged.

Page  3  of   34

1. **Limited-Term Employed for More Than One (1) Year**

    An employee initially hired on a limited term basis in a classification covered by this Agreement, and has worked for one (1) day more than twelve (12) consecutive months shall, as of that date be covered by all provisions of this Agreement.

C. **Full-Time Regular Employees**

   A full-time regular employee is one that is neither a temporary or limited term employee who works at least forty (40) hours per week on a regularly scheduled basis.

D. **Part-time Regular Employees**

   A part-time regular employee is a non-temporary or limited term employee who works less than forty (40) hours per week on a regularly scheduled basis.

E. **Probationary Employees**

   Probationary employees are employees who are full or part-time regular employees during their first six (6) consecutive or aggregate months of employment, unless the probationary period has been extended for an additional three (3) months.

   1. **Probationary Period**

       The first six (6) months of employment for a newly hired and newly promoted employee shall be a probationary period. The probationary period may be extended for an additional three (3) months. A newly hired employee may be terminated at any time during his/her probationary period without a right to appeal, except for alleged discrimination. Such termination during the probationary period shall not be subject to the grievance procedure.

   2. **Rejection During A Promotional Probationary Period**

       An employee terminated during his or her probationary period in a promotional classification, covered by this Agreement, and who has passed an initial probationary period with the Employer shall have the right to return to a position in the classification and functional assignment he/she was in prior to his or her promotion if a vacancy exists in that functional assignment.

## SECTION VI. UNION ACCESS

It is agreed by both parties that for the purpose of carrying out and enforcing the terms of this Agreement, the authorized representative of the Union upon notification to the Employer shall have the right of visiting and entering the establishment of the Employer during regular business hours.

The Business & Employment Services Manager shall be given prior notification of the date and time of the visit. Access shall not be unreasonably denied. This privilege shall be exercised reasonably and shall not disrupt the work of employees, provided that the Union representative may confer with any employee and his or her supervisor or other Employer representative in connection with a complaint or problem concerning the employee during working hours. If the meeting is expected to

last in excess of fifteen (15) minutes, the steward will notify the employee's supervisor. Failure to notify that the meeting shall exceed fifteen (15) minutes shall result in termination of the meeting at fifteen (15) minutes without recourse to the grievance procedure hereunder.

The Employer will recognize one (1) duly appointed shop steward for the Vallejo office, one (1) for the Fairfield office, and one (1) for the Vacaville office. If during the term of this contract, the Employer opens an additional office, they will recognize one (1) duly appointed shop steward for each office.

## SECTION VII.  BULLETIN BOARDS

The Employer shall make space available to the Union on a bulletin board in each work location. Such postings will be the responsibility of the Union Steward(s) or Field Representative.  The Employer will have no responsibility for policing such material.  All materials posted on union bulletin boards shall be in good taste and strictly impersonal in nature and limited to the legitimate business of the Union. Prior to posting, any material posted shall be plainly and legibly initialed by an authorized representative of the Union.

## SECTION VIII.  STAFF ISSUES COMMITTEE

A Union/Management Committee consisting of three (3) members selected by the Union and three (3) members selected by the Employer, (one of whom is the Executive Director) shall meet quarterly or by mutual agreement to discuss issues that will work towards accomplishing:

1. To improve communications between representatives of labor and management;

2. To provide workers and Employers with opportunities to study and explore new and innovative joint approaches to achieving organizational effectiveness;

3. To assist workers and Employers in solving problems of mutual concern not susceptible to resolution within the Collective Bargaining process, including matters that can be addressed through the grievance procedure;

4. To bring to the Employers attention any concerns regarding workload equity; and,

5. Any action(s) taken as a result of the committee meetings will be at the sole discretion of the Executive Director, and not grievable.

## SECTION IX. RELEASE TIME

An employee has a lawful right to have a shop steward present in an interview that may reasonably lead to discipline, or a grievance meeting, or such circumstances whenever the Employer requests a shop steward be present.  The shop steward shall be granted a maximum of twenty (20) paid hours

Page  5  of  34

per calendar year to represent employees' including investigations. The Employer will make his/her representatives available to conduct said business at reasonable times so as to avoid loss of productivity of the steward and the affected employee. The steward shall not otherwise conduct Union business during working time.

Both the supervisor of the employee requesting assistance, and the Employer's Business & Employment Services Manager shall receive notification from the Union prior to the time the requested time off is to be taken.

At the Union's option and upon appropriate notice, a maximum of four (4) of the twenty (20) paid release hours per calendar year may be used for Shop Steward training. The Union must provide the Employer's Business & Employment Services Manager with a minimum of three (3) working days advanced notice before the requested training is scheduled to take place.

## SECTION X. DISTRIBUTION OF UNION LITERATURE

The Union may distribute literature (specific to this Agreement) to employees through the WIB's internal mail system, as long as this does not disrupt the conduct of the Employer's business. The Union also agrees to provide a copy of all distributed literature to the Business & Employment Services Manager.

## SECTION XI. HOURS OF WORK

A.   **Work Week**
The work week is seven (7) consecutive calendar days, beginning on Sunday at 12:00 a.m., and ending on Saturday at 11:59 p.m.

B.   **Work Schedule**
The basic work hours and work week are eight (8) hours per day and forty (40) hours within a work week, Monday through Friday, or possibly to include a Saturday but not to exceed a five (5) day work week, 8:00 a.m. to 5:00 p.m. The Employer shall have sole discretion as to whether or not to permit an employee to work a flexible work schedule. Flexible work schedules must be between 7:30 a.m. and 9:30 p.m.

   1.   **Process for Requesting a Flexible Work Schedule**
      a.   If an employee is interested in working a flexible work schedule he/she must submit a written request to their immediate supervisor expressing their interest in flexing their work schedule, and the eight (8) hour schedule they would like to have.

      b.   The supervisor will be responsible for recommending approval/denial of the request and forwarding it to the Division Manager within three (3) working days. A brief explanation of why the supervisor denies a request is also necessary.

Page 6 of 34

     c.      The Division Manager will be responsible for recommending approval or denial of the employee request to the Executive Director within three (3) working days of receipt of the request. A brief explanation of why the Division Manager denies a request is also necessary.

     d.      The Executive Director will have the sole discretion of approving or disapproving the flexible work schedule request. The Executive Director will notify the Division Manager and Business & Employment Services Manager of his/her decision to approve/deny the request within three (3) working days.

The Business & Employment Services Manager or designee will be responsible for providing the employee with a copy of the approved/denied request and placing the original in the employee's official personnel file.

## C.    Attendance

Regular attendance and punctuality are part of all employees' job responsibilities. It is the Employer's expectation that all employees are present and on time every day.

### 1.    Absence

     a.      An absence is any time lost from work regardless of reason, including sickness and tardiness. An absence excludes time off scheduled in advance using FMLA/CFRA/Medical leave, ADA leave, personal leave of absence, bereavement, jury duty, witness duty, workers compensation time, military duty, and any other allowable absence that has been pre-approved.

     b.      Excessive absenteeism will be considered to be when the number of an employee's unapproved absences exceeds twelve (12) days in any twelve (12) month period and/or three (3) days in the three (3) month period prior to an employee's most recent absence. Excessive absenteeism may result in disciplinary action up to and including termination.

     c.      No call is when an employee fails to report to work and fails to speak directly to his/her supervisor within the first hour of the first scheduled work day of such absence. No call may result in disciplinary action up to and including termination.

     d.      No show is when an employee fails to report to work and fails to notify his/her supervisor for three (3) consecutive scheduled work days, (i.e., three (3) consecutive no call days). No show employees will be considered to have voluntarily resigned from WIB employment.

### 2.    Tardiness

     a.      Tardiness is when an employee arrives at his/her work station ready to work at

a time later than the scheduled commencement work time (include return from breaks and/or meal periods).

    b.    Excessive tardiness is when an employee is late more than three (3) times within any thirty (30) day period. Tardiness has been defined as reporting 10 minutes late for either the commencement of work and/or returning from breaks as well as meal periods. This standard of excessive tardiness will be applied uniformly. Excessive tardiness may result in disciplinary action up to and including termination.

## XII. REST AND MEAL PERIODS

Rest and meal periods are scheduled by each supervisor.

A.    **Rest Breaks**

Each employee shall be permitted two (2) fifteen minute rest breaks, one in the morning between 10:00 and 11:00 and one in the afternoon between 2:30 and 3:30. These morning and afternoon breaks will be amended by the bargaining unit member's supervisor if an adjusted work day has been approved. These breaks may not be combined or added to an employee's lunch period.

B.    **Off-Duty Meal or Lunch Periods**

A scheduled sixty (60) minute off-duty meal or lunch period will be observed during the hours 11:30 a.m. and 2:30 p.m., each working day; unless the employee is on an approved adjusted work schedule in which his/her work day begins before or after 8:00 a.m. or ends before or after 5:00 p.m. In those cases an amended off-duty meal period will be scheduled by the bargaining unit member's supervisor to occur before 11:30 a.m. or extend beyond the 2:30 p.m. standard timeframes.

## XIII. OVERTIME

Employees who are caused to work more than eight (8) hours in a day or forty(40) hours in a work week, or in excess of the number of hours in a scheduled workday under an alternative work week plan, shall receive time and one-half of their regular hourly rate of pay for each overtime hour or portion thereof worked. Double time shall be paid for work in excess of twelve (12) hours in a day or past eight (8) hours on the seventh day of a work week.

## SECTION XIV. EVALUATIONS

**General Principles**

A supervisor's evaluation of an employee should be as objective as possible. Individual ratings on an evaluation should be supported by written comments. All written comments should be specific and

Page 8 of  34

include examples that occurred within the period covered by the evaluation. This should be done for both positive and negative ratings and comments.

A.    **Probationary Employees**

A probationary employee shall receive an evaluation prior to the completion of three (3) months and six (6) months employment as either a new, transferred, demoted or promotional employee. An employee who has had his/her probationary period extended shall receive an evaluation prior to completing the first forty-five (45) days of the extension and by the end of the three (3) months extension. If the Employer fails to give a probationary employee his/her evaluation by the completion of the six (6) months probationary period or by the end of the nine (9) months extended probationary period, the employee shall be deemed to have completed probation and gained regular status.

The Employer reserves the right to terminate a probationary employee at any time during the six (6) months or extended nine (9) months probationary period. Such termination can be made without notice, without cause, and except for alleged discrimination, is not subject to the grievance procedures.

B.    **Regular Employees**

Regular employees shall receive an evaluation annually, on the anniversary date of the completion of their probationary period, or as soon thereafter as practicable.

C.    **Step Increases**

1.    **Probationary Period**

Performance evaluations will be used as the primary basis for determining if an employee is eligible to receive a salary increase at the successful completion of six (6) months or if the probationary period is extended nine (9) months of employment.

2.    **Annual Anniversary Date**

Performance evaluations will be used as the primary basis for determining if an employee is eligible to receive a salary increase at the successful completion of their annual review date within a specific functional assignment.

If either a probationary or annual evaluation results in a wage increase it will be retro-active to the employee's anniversary date. The Executive Director based on the overall rating of the probationary or annual evaluation will determine the salary adjustment for the employee.

D.    **Special Evaluations**

The Executive Director, at any time, may place an employee on a special evaluation period. This special evaluation period can not be for less than 30 days nor be longer than 90 days.

Employees that successfully complete a special evaluation period are not necessarily eligible to receive any type of salary adjustment.

**E.**   **Completion Timelines for Evaluations and Salary Adjustments**

1.   Completed evaluations, (signed by the Executive Director), must be issued to the employee within thirty (30) calendar days of his/her probationary completion date or anniversary date.  If the employee indicates a desire to meet with the Executive Director and discuss his/her evaluation, this timeline may be extended up to an additional thirty (30) days.  This procedure presumes that the employee will be available to participate in the evaluation process.

2.   Any salary adjustment must be implemented within 2 pay periods from the date the Executive Director signed the employee evaluation.

Failure to adhere to these time-lines will be subject to the grievance procedures.

## SECTION XV.  EVALUATION APPEALS

**A.**   **Overall *"Standard"* Evaluation**

An employee at his/her discretion may submit a written comment to an overall satisfactory evaluation.  The Employer's response or non-response to the employee's comment on an overall satisfactory evaluation shall not be subject to the grievance procedure.

**B.**   **Overall "Unacceptable Performance" or *"Short of Standard"* Evaluation**

An employee may submit a written response and/or request to meet with the Executive Director regarding an overall unsatisfactory evaluation.  The Executive Director's written decision on the evaluation is final and binding and is not itself subject to the grievance procedure, unless the evaluation results in a reduction in wages, demotion, or discipline.

**C.**   **Grievance Procedure Not Available for Evaluation Process**

The evaluation process and the evaluation itself is not subject to the grievance procedure.  Any reduction in wages, demotion, or discipline resulting from an evaluation is subject to the grievance procedure.

## SECTION XVI.  LAYOFFS

**A.**   **Staff Reduction or Layoff**

Staff reduction or layoff may be necessary based on the following circumstances:

1.   Budgetary, funding, or programmatic problems which require the deletion of positions or programs, or the consolidation or reclassification of positions or a workforce reduction.

2.    A WIB reorganization for purposes of economy, effectiveness, efficiency, or other reasons or purposes.

3.    Seniority shall be defined as the total length of service with the Employer, excluding unpaid leaves of absence.

**B.    Procedures**

If the Employer considers it necessary to reduce its workforce, it will determine the functional assignments within classifications and number of bargaining positions to be reduced. Such layoffs may be necessary based on budgetary, funding or program problems which require the deletion of program assignments or the consolidation or reclassification of assignments, or a workforce reduction. The Employer will layoff the least senior employee in the functional assignment subject to a work reduction and not on a classification wide basis; additional layoffs in the same functional assignment will occur in relative order of seniority. On that basis, employees who have previously performed satisfactorily or can otherwise demonstrate the knowledge, skills and abilities to perform in a position which will be retained, may "bump" back into that functional assignment. However, when the employee desiring to "bump" back has not served in the functional assignment to which he/she desires to be "bumped" back to, that employee shall serve on a probationary basis in that functional assignment. This probationary basis shall be distinguished from that accorded to newly hired employees and will not affect that employee's obligation to meet the requirements of the Union security provision hereof. The Employer's determination of that employee's skills and abilities and fitness for the desired assignment shall be final and binding and not subject to the grievance procedure. Notwithstanding their qualifications, an employee currently under a plan of correction may be laid off prior to other employees in the same functional assignment and classification. Probationary employees in bargaining unit functional assignments within a classification shall be laid off before any regular bargaining unit employees. Regular employees scheduled for lay off shall be given written notice of such layoff at least fourteen (14) calendar days prior to the effective date of the layoff. Staff being laid off on an emergency basis shall be given at least seven (7) calendar days notice.

**C.    Consultation**

Concurrent with sending notice to affected employee(s), if not sooner, the Employer shall notify the Union of impending layoffs. Such notice shall constitute an offer to consult with the Union to determine if any feasible alternatives to layoff exist. The Union may request, and the Employer shall grant consultation thereon, provided said request is made within seven (7) days of notification. Failure to make a timely request shall be deemed a waiver of the right to consult regarding the noticed layoff.

**D.    Bumping**

In lieu of being laid off, an employee who is not on a plan of correction may:

1.    Request to move to a vacant functional assignment in a classification with a lower pay

Page 11 of  34

rate if the employee has performed in the vacant functional assignment, or can otherwise demonstrate that he/she is qualified to perform the duties of that functional assignment; or

2.    An employee not on a plan of correction may bump or displace another employee with less seniority in a same classification in which he/she has previously served a successful probationary period with the Employer, or can otherwise demonstrate that he/she is qualified to perform the duties of that functional assignment.

E.    **Re-Employment**

If a vacancy occurs in a functional assignment in which there is a layoff, within eighteen (18) months of the layoff, the employer shall first resort to the re-employment list before filling said vacancy through recruitment. If a laid-off employee on the re-employment list has been previously qualified for a vacant functional assignment, that employee will be offered, in reverse order of layoff, an opportunity to fill that functional assignment before it is filled through recruitment other than from the re-employment list.

Laid off employees who have not previously been qualified for a vacant functional assignment, and who are not on a plan of correction, and who are on the re-employment list shall be notified and given an opportunity to apply for vacant positions on the same basis as recruited employees. Copies of said notification(s) shall be mailed by the Employer to the last known address of laid off employees on the re-employment list. The Employer shall have no other obligation to notifying such employees.

If an employee on the re-employment list does not respond within three (3) working days from receipt of the notice of vacancy, or if the notice is returned as undeliverable or if the employee declines the opportunity, his/her name shall remain on the re-employment list for eighteen (18) months from the date of his/her layoff. Only after the eighteen months have been exhausted, will the employees name be removed from the re-employment list.

F.    **Voluntary Quits**

Any employee who proposes to resign shall give two (2) weeks notice to the Employer.


**SECTION XVII. PERSONNEL FILE**

A.    **Employee Personnel File**

An Employee Personnel File ("EPF") containing all materials pertinent to the employment and performance of each employee, but not the Employer's internal communications with its counsel, shall be maintained by the Employer's Business & Employment Services Manager. Non-confidential material contained in this file will consist of 1) items reviewed and/or issued to the employee; and 2) that are either signed by the employee or have a place for the

employee to sign signifying that the material has been provided.  Should an employee refuse to sign any document that is to be placed in this file, the supervisor and Business & Employment Services Manager will make such a notation and date and initial the form. This EPF shall be available upon the employee's or the Union's request at reasonable times for inspection in the presence of the Employer's designated representative. Under this provision, each person inspecting the EPF shall sign a log which the Employer will maintain.

**B.**    **Status Change Notification**

It is the employee's obligation to notify the Employer in writing of any change in the employee's name address, telephone number, tax status, marital status (for benefit and tax withholding purposes only), addresses and telephone numbers of dependents and spouse or former spouse (for insurance purposes only), beneficiary designations for insurance, disability, and pension plans, person(s) to be notified in case of emergency, and any factors that affect the employee's ability to carry out his/her duties.

**C.**    **Performance Material**

All material relating to an employee's performance shall be signed by the Employer's designated representative and a copy of such material shall be provided to the employee. The employee shall acknowledge receipt of a copy of such material by signing the copy to be filed in the EPF.  The employee's signature thereon signifies that the employee has been provided the material and has read it.

**D.**    **Disagreement Statements**

An employee may have placed in his/her EPF a written statement of disagreement to any material in the EPF and this statement shall be attached to the material in question.  The employee, upon request, shall be given a copy of any material in the EPF.

**E.**    **Future Material Placed in the EPF**

After the effective date of this Agreement, all future material placed in the EPF that the Employer and employee agree is incorrect, will be corrected or removed.

**F.**    **Confidentiality of Employee Health, Medical and/or Performance Evaluation Information**

The Union and Employer agree that in the interest of protecting all employees' right to privacy, any information concerning an employee's health/medical situation, job performance and/or formal personnel evaluations, which the employee does not make public, will be maintained as private information, except to the extent required by this Agreement.

## SECTION XVIII. DISCIPLINARY ACTION

**A.**   **Expected Employee Conduct**

All employees are expected to perform their assigned work in a competent manner, to cooperate with their supervisors and their fellow employees, to conduct themselves in a manner which brings no discredit upon the WIB, and to abide by these rules. Failure to do so will be cause for disciplinary action as set forth in this section. The Employer reserves the right to commence disciplinary action at whatever step it considers appropriate.

**B.**   **Disciplinary Procedures**

Regular full-time and part-time employees who have passed probation and are covered by this Agreement shall not be disciplined except for just cause. Prior to termination, suspension or demotion, the employee's immediate supervisor will provide counseling and a written evaluation of performance, including a statement of action required to remove the deficiency. The employee will be given a reasonable period of time to improve performance, no less than forty-five (45) days, unless the employee's conduct constitutes or creates the clear possibility of a hazard to clients, to himself/herself or to fellow employees, is considered detrimental to clients, or involves dishonesty or gross misconduct.

Notice of disciplinary action shall be promptly served to the employee either in person or by certified mail, return receipt requested. The notice shall include the following information:

1.   Effective date of the disciplinary action;

2.   Statement of the nature of disciplinary action;

3.   Statement of the cause for disciplinary action;

4.   Statement advising the employee of his/her right to appeal and the right of Union representation; and,

5.   A Plan of Correction - if the Employer requires corrective action by the employee.

A copy of said notice will be sent to the Union by facsimile transmission concurrently with the notice to the employee.

**C.**   **Reasons for Disciplinary Action**

An employee may be disciplined for various reasons, including but not limited to the following:

1.   Absence without proper authorization;

2.   Tardiness;

3.   Dishonesty;

Page  14  of  34

4.     Conviction of a crime of a serious nature: a crime of a serious nature means conviction of a felony or misdemeanor involving moral turpitude.  A plea or verdict of guilty for a charge of a felony or any offense involving moral turpitude is deemed to be a conviction within the meaning of this section;

5.     Inefficiency;

6.     Insubordination;

7.     Violation of any of the provisions of the WIB Personnel Policy or WIB authorized standard operating procedures;

8.     Violation of the WIB computer network procedures;

9.     Incompetence;

10.    Intoxication on the job;

11.    Unless authorized legally to do so, taking, possessing, being under the influence of, being addicted to, offering for sale, any controlled substance while on duty.  The term "controlled substance" shall have the meanings that the term has in the California Health & Safety Code, division 10;

12.    On-the-job, non-work related interference with other workers;

13.    Fraud in securing employment;

14.    Discourteous, offensive, or other inappropriate behavior during work hours (relating to WIB functions) toward fellow employees, supervisors, clients, students, or members of the public;

15.    Use of sick leave in a manner not authorized by the Personnel rules;

16.    Negligence or willful misconduct resulting in damage to WIB property or waste of supplies while on duty; and,

17.    Neglect of duties, failure to perform duties.


**D.**     **Forms of Discipline**
The forms of discipline which may be used by supervisors to redress employee conduct falling within any of the categories listed here above shall consist of the following:


Page  15  of   34

- Verbal reprimand
- Demotion
- Suspension without pay
- Written reprimand
- Reduction in pay
- Dismissal

The Executive Director may suspend an employee from his/her position with pay at any time pending disciplinary action. Written notice of suspension shall be given to an employee within three (3) working days of such action.

The Executive Director may dismiss any employee. The dismissed employee's salary, and any accrued vacation leave will be paid upon termination.

**E.     Union Representation**
An employee covered by this Agreement shall have the right to have a Union representative present at any meeting with supervisors or management representatives, which is investigatory and potentially disciplinary in nature under the National Labor Relations Act's definition of such in the United States Supreme Court's Weingarten decision. The Employer will advise the employee of such rights (i.e., whether the interview may result in discipline) before any such meeting. If the employee chooses to not have a Union representative present, the right to do so is deemed waived. If the Employer has notified the employee that the meeting will not result in discipline, there shall be no requirement of Union representation.

Disciplinary actions as defined herein may be appealed by using the grievance procedure. Unless specifically set forth in this Agreement, no other Personnel actions are subject to the grievance procedure.

## SECTION XIX.  GRIEVANCE PROCEDURE

**A.     Definition**
A grievance is defined as a claim or complaint by a regular or probationary employee, other than newly hired employees in their initial probationary period, covered by this Agreement, the Union, or the Employer, concerning the interpretation or application of this Agreement regarding any action of the employer pertaining to wages, hours or working conditions.

**B.     Eligibility**
Any regular or probationary employee covered by this Agreement may use this procedure to the extent permitted by this Agreement. Newly hired probationary employees shall not have the right to use this grievance procedure regarding termination or other disciplinary action taken against them by the Employer, and a promoted probationary employee shall not have the right to use this procedure regarding his/her termination or demotion by the Employer, except when the action is alleged to have occurred as a result of discrimination as defined in the Agreement.

Page  16  of   34

C.    **Procedures**
      **Informal Resolution Process**
      Grievances shall initially be taken up verbally by the employee and the immediate supervisor in an attempt to settle the matter on an informal basis. The Employer's Business and Employment Services Manager, or his/her designee, shall be advised of such meetings at least three (3) days prior and shall attend them. The parties consider it most desirable to settle grievances informally and promptly. If this process does not resolve the matter the employee may proceed to the formal process described herein.

      **Formal Resolution Process**

Step 1          If the grievance is not resolved through the Informal Process it may be submitted in writing to the Executive Director or his/her designee within seven (7) working days after the Informal Process is completed. In order to be valid, the grievance must contain all disputed elements and particulars specified in the Informal Process. The Executive Director or his/her designee shall schedule a meeting to hear the grievance within the (10) working days after receiving it, and will provide the grievant and Union a written response within (10) working days after the meeting. The Employer and Union may agree to extend these time deadlines and the party making the request shall document the extension in writing and provide it to the other party.

Step 2          If the grievance is not resolved at Step 1, the Union or Employer may submit a written request for an Adjustment Board within ten (10) working days after Step 1 is completed. The Adjustment Board shall consist of one (1) representative (not a WIB employee) selected by the Union, one (1) representative selected by Management, and a mediator from the State Mediation Service. The Adjustment Board shall convene within twenty-five (25) working days of the timely request to the Executive Director. The Adjustment Board shall conduct an informal hearing, including testimony of witness(es) and relevant document(s). A majority vote by the Adjustment Board shall result in a written advisory opinion, which shall include a brief rationale, and issued to the parties. Either party may appeal the grievance to Step 3 - Arbitration, by providing written notice to the other party within fifteen (15) working days from the date the Adjustment Board's written recommendation is received.

Step 3          If the grievance is not resolved at the 2nd step, it may be submitted as a written Request for Arbitration to the Executive Director, or Union within fifteen (15) working days after the 2nd step is completed. Failure to request Arbitration in a timely manner, shall result in the grievance being considered dropped and the right to arbitrate waived. The Employer and Union may agree to extend this time deadline and the party requesting extension shall document the extension in writing and provide it to the other party. Upon receipt of a

Page 17 of 34

written request for arbitration of a grievance under this procedure, the Employer and the Union shall attempt to select a mutually acceptable, impartial arbitrator.

In the event that the parties cannot agree on an impartial arbitrator within fifteen (15) days after receipt of the written request for arbitration, either party may request the American Arbitration Association to submit a list of five (5) representative arbitrators. Each alternate party shall alternately scratch two (2) names from the list, the first scratch being selected by lot and the person remaining shall be the arbitrator. The Arbitration expenses, excluding costs of representation shall be paid equally by the Employer and the Union. The decision of the arbitrator shall be final and binding upon the parties and shall be issued in writing within thirty (30) days of the Arbitration hearing. The arbitrator shall have no authority to alter, adjust or modify the terms of this Agreement.

**D.** **Time Limits**
1. Time limits may be extended or waived by mutual written agreement of the parties.

2. Failure of the Employer to reply to a grievance within the specified time limits automatically grants the grievant the right to process the grievance to the next step.

3. If the grievant fails to refer the grievance from one step to the next step within the specified time limits, the grievance shall be considered settled on the basis of the last decision.

**E.** **Ability to Reopen Clause**
The Employer reserves the right to notify the Union in writing no less than one-hundred and twenty (120) days before July 1st, 2009, 2010, and 2011 of their desire to re-open negotiations to discuss Sub-section C-Procedures, Formal Resolution Process – Step 2 under Section XIX – Grievance Procedure of this Agreement.

## SECTION XX.  NO DISCRIMINATION

**A.** Neither the Employer nor the Union shall discriminate against any employee or applicant for employment on account of race, color, creed, or religion, national origin, gender, age, sexual preference, marital status, physical or mental handicap, HIV/Aids status, or political affiliation.

**B.** The Employer agrees not to discriminate against any employee because of membership in the Union or because of any activities on behalf of the Union. The Union agrees not to discriminate against any employee because of lack of Union membership or lack of activities on behalf of the Union.

## SECTION XXI.  SALARY COMPENSATION

**A.**     **Appointment Step for New Employees**

Normally new and/or promoted employees will be appointed to the initial step of the salary range in effect for the particular classification in which the appointment is made.  When circumstances warrant, the Executive Director may authorize the filling of the position at a step which is higher than the initial recruiting step in the salary range.

**B.**     **Salary Ranges**

1.     The ten (10) step salary ranges for classifications represented by the Union are listed in Attachment A of this Agreement.

2.     These salary ranges agreed to by the Union and the Employer will be in effect for the period July 1, 2008 through June 30, 2009 and will reflect an across the board three point seven percent (3.7%) increase as shown on Attachment A.

3.     Attachment A will be revised and replaced each year to reflect the annual Cost of Living Adjustments (COLA) awarded  on July 1st of 2009, 2010, and 2011.

**C.**     **Cost of Living Adjustment (COLA)**

Effective July 1, 2009 through June 30, 2012, all classifications covered by this Collective Bargaining Agreement will receive a Cost of Living Adjustment as determined by the U.S. Department of Labor Bureau of Labor Statistics "Western A Urban Wage Earnings and Clerical Worker Index" as reported between March and March of each year, with a minimum (floor) of one point six percent (1.6%), and no more than a maximum (ceiling) adjustment of four point six percent (4.6%), inclusive.  These adjustments will occur on July 1st of each year of the Agreement beginning 2009.

The agreement to and use of an annual COLA adjustment within this Collective Bargaining Agreement is not binding nor precedent setting for future contracts.

**D.**     **Method for Conducting Future Salary Surveys**

In order to ensure the WIB remains financially competitive in the competing and surrounding markets, the following process and classifications will be used to conduct a survey:

1.     The Employer and the Union will meet and agree on the survey tool to be used for the Program Year 2012 Salary Survey.  The survey for each program year will be limited to the Admin/Program Specialist II classification and the Admin/Program Technician II classification.  The Union and the WIB will meet at least 120 days prior to the end of this Agreement and determine the comparable agencies to be included in the Salary Survey.  It is agreed that the comparable agencies used for this survey will be as follows:

The Employer and the Union will each select two Workforce Development Agencies to be included in the survey as well as the County of Solano.

Page  19 of  34

2.     The Employer's Business & Employment Services Manager and/or designee will be responsible for conducting the survey among the agreed to comparable agencies.

3.     The Business & Employment Services Manager and/or designee will be responsible for analyzing the results of the surveys and preparing a comparison chart.   The comparison chart, as well as the overall and individual survey results will be shared with the Union.

**E.     Specific Project Salary Adjustments (for Interim Project Lead Assignments)**
1.     At the sole discretion of the Executive Director, and based on the need of the agency, interim Project Lead Assignments may be created in the Admin/Program Specialist II classification.   These assignments would provide the designated employee an opportunity to lead a specific project within the division or unit of the agency, and would also provide the employee with an opportunity to develop/enhance their coordination skills, and/or supervisory abilities.

2.     Employees appointed to these interim assignments, will receive a 5% upward salary adjustment over their regular salary for the period they are performing the lead functions.   Once the temporary assignment is completed, they will return to their regular salary.

3.     Employees designated to a interim project lead assignment must receive prior written notification from the Executive Director, via the Business & Employment Services Manager. This official notification will confirm the employee's appointment to the project, the start and end date of the project as well as the employee's interim salary adjustment.   A copy of this notification will also be placed in the employee's Personnel file.   Under no circumstances can anyone other than Executive Director (i.e., employee Supervisor or Division Manager) assign an individual to an interim project lead assignment.   The appointment or non-appointment to an interim  lead assignment is at the sole discretion of the Executive Director and is not subject to the grievance procedure.


## SECTION XXII.  EMPLOYMENT STATUS CHANGES

**A.     Promotion**

Promotion from within is advancement from one classification covered by this Agreement to another classification covered by this Agreement with a higher salary range.   An employee who is promoted shall be placed on the wage schedule applicable to the new position, but in no event shall he/she receive an increase of  less than five percent (5%) in compensation.

Incumbent employees promoted to new classifications covered by this Agreement will be required to serve a new probationary period as described in Section V of this Agreement.

Page 20 of  34

Promotion to positions not covered by this Agreement are not subject to this Agreement, including the grievance procedure.

**B.**   **Demotion**
Demotion is movement from one job classification covered by this Agreement to a classification covered by this Agreement with a lower salary range. A demotion may occur as a voluntary request by the employee to move to a vacant functional assignment with the approval of the Executive Director, as well as based on the result of disciplinary action or as a result of bumping due to layoff. Demotion from a functional assignment not covered by this Agreement is not subject to this Agreement including the grievance procedure. Incumbent employees who are demoted to a lower classification in which they have not demonstrated their ability to adequately perform the essential functions of the functional assignment, must serve a six (6) month probationary period in the new functional assignment.

**C.**   **Transfer**
Transfer is movement of an employee from one functional assignment in a classification covered by this Agreement to a different functional assignment within the same classification. Incumbent employees who transfer to a new functional position in which they have not previously demonstrated their ability to adequately perform the essential functions of the functional assignment must serve a six (6) month probationary period in the new functional assignment. Employees who transfer prior to completing an initial six (6) month probationary period with the Employer will begin a new six (6) month probationary period at the time of the transfer. Should there be a budgeted vacancy, an employee who transfers to a new functional assignment and does not pass probation, for reasons other than gross misconduct or placed on a plan of correction, may return to their former functional assignment.

**D.**   **Lateral**
A lateral is movement of an employee in the same functional assignment covered by this Agreement to a different program or project operated by the Employer. Since there is no significant difference between the functional assignments no additional probationary period is required at the time the lateral takes place.

**E.**   **Posting of Open Functional Assignments**
The Employer has the right to choose which employee, if any, will be transferred, lateraled, or promoted into any vacant functional assignment. The Employer will post an internal and/or external recruitment notice for at least five (5) working days or longer at the Employers discretion, on official Employer designated bulletin boards of all functional assignments occurring in classifications covered by this Agreement. The postings shall specify the classification, functional assignment, unit (if relevant), current work location of the vacancy, and time deadlines for employees to submit a complete application package and cover letter to the Business & Employment Services Manager expressing their interest in one or all of the posted vacancies. Employees who are on any kind of disciplinary status are not eligible for transfer or promotion into posted functional assignments.

## SECTION XXIII.  HOLIDAYS/VACATION/SICK LEAVE
## AND OTHER LEAVES

**A.**  **Paid Leaves**

    **1.**  **Holidays:**  The following federal and agency authorized days shall be recognized as paid holidays:

| | | |
|---|---|---|
| a. | New Year's Day | January 1st |
| b. | Martin Luther King's Birthday | Third Monday in January |
| c. | Washington's Birthday | Third Monday in February |
| d. | Cesar Chavez Holiday | Last Monday in March |
| e. | Memorial Day | Last Monday in May |
| f. | Independence Day | July 4th |
| g. | Labor Day | First Monday in September |
| h. | Veteran's Day | November 11th |
| i. | Thanksgiving Day | Fourth Thursday in November |
| j. | Friday after Thanksgiving | Fourth Friday in November |
| k. | Christmas Day | December 25th |
| l. | Floating Holidays | Beginning January 1, 2002 and annually thereafter, regular full-time employees will receive four (4) Floating Holidays which must be taken in the calendar year or lost. Part-time employees receive prorated Floating Holidays. New hires will receive prorated Floating Holidays, based on their hire date. Under this Agreement, Floating Holidays can not be carried over from year to year, nor are they cashed out at the time of termination. |

If a recognized holiday, (non-floating), falls on a Saturday, it will be observed on the preceding Friday.  If such a holiday falls on a Sunday, it will be observed on the next Monday.  Recognized holidays are not considered time worked in the computation of overtime.  An employee whose regularly scheduled day off falls on a recognized holiday shall be credited with accrued holiday leave equivalent to the number of hours they would have been scheduled to work that day.

    **2.**  **Vacation**

        a.  Regular full-time employees will accumulate vacation leave based on the following schedule:

| Length of Employment | Annual Accrued Vacation Time | Hours Accrued Each Bi-Weekly Pay Period |
|---|---|---|
| 0 through 2 Years | 80 hours | 3.08 hours |
| 3 through 5 Years | 120 hours | 4.62 hours |
| 6 through 10 Years | 168 hours | 6.46 hours |
| 11 through 15 Years | 192 hours | 7.38 hours |
| 16 Years and Above | 200 hours | 7.69 hours |

b.  Regular employees shall accrue vacation at the above rate or at a prorated level, beginning with the first day of employment with the Employer. Employees may begin to use accrued vacation leave after having successfully completed their initial six (6) month probationary period of employment. An employee who voluntarily quits, is terminated, or is laid off with an accrued vacation leave balance shall be paid said balance in his/her final pay check.

c.  During years one (1) through seven (7) an employee ceases to accrue additional vacation time, once they have reached a vacation balance of 200 hours. Beginning year eight (8) and thereafter an employee ceases to accrue additional vacation time, once they have reached a vacation balance of 224 hours.

d.  Regular part-time employees will accrue vacation based on a proration of the actual number of non-overtime hours worked in the pay period.  Thus, an employee whose regular work schedule is one-half (1/2) the normal full-time schedule shall accrue vacation at one-half (1/2) the full time rate upon completing the initial probationary period.

e.  Vacation leave must have prior approval from the employee's immediate supervisor. Supervisors shall respond to an employee's request for vacation leave, within ten (10) working days of the request being submitted in writing to the supervisor providing the request is no more than 150 days in advance and the employee has or will have the accrued time available.

f.  Vacation requests will not be denied solely based on the duration of the time requested by the employee.

3.  **Sick Leave**
Sick leave shall apply only to instances wherein an employee or family member

Page 23 of  34

because of illness or injury is unable to report to work to perform his/her regular duties. Illness is defined as any pronounced deviation from a healthy state or exposure to contagious disease, which makes it disadvantageous to the employee and/or the Employer for the employee to report to work.

a.  Regular employees will accrue sick leave at a rate of one (1) day or eight (8) hours per month or at a prorated level beginning with the first day of employment.

b.  Sick leave may accumulate from year-to-year to a maximum equivalent of two and a half (2 ½) years' accrual. Sick leave may be used only for illness or injury, medical and/or dental appointments of the employee, or a family member as defined by this section and are subject to the approval of the employee's immediate supervisor.  Leave requests in excess of five (5) working days require the approval of the Business & Employment Services Manager.

c.  Sick leave is also available for employee use due to illness or injury of a family member. "Family" for purposes of this provision is defined as parents, legal guardian, children (including adopted, foster and stepchildren), spouse, siblings, and/or a person permanently residing in the employee's household as a dependent or person assuming the role of spouse.

d.  Regular part-time employees will accrue sick leave proportionate to the number of hours scheduled work.  Overtime work is not included in the calculation of sick leave.

e.  If an employee has been absent on sick leave for more than (5) consecutive work days, he/she must provide a medical practitioner's release to return to work to the Business & Employment Services Manager when he/she returns to work.  The employee will not be returned to work without such a release and the failure to return such an employee to work absent a release shall not be subject to the grievance procedure.

f.  If the Employer has a reasonable suspicion for believing that an employee is abusing sick leave, the employee may be put on notice that medical verification will be required for all future uses of sick leave, for a specific period of time not to exceed one (1) year.

g.  Employees who engage in any type of gainful business or employment activities while on sick leave during their scheduled WIB work hours will be discharged.

Page 24 of  34

4.    **Bereavement Leave**

    a.    Employees shall be entitled to four (4) days of paid bereavement leave, not chargeable to vacation or sick leave in the event of the death of one of the following members of the employee's family; parent, grandparent, natural, step, adopted children and grandchildren of the employee; natural and step brothers and sisters of the employee; present spouse or person assuming the role of spouse of the employee; ex-spouse who is a natural parent of a minor child in the custody of the employee; natural parents and grandparents of the employee's spouse; natural brothers and sisters of the employee's spouse; present spouses of the employee's natural brothers and sisters; son-in-law and daughter-in-law of the employee.

    b.    Such leave shall be a maximum of thirty-two (32) hours paid leave which can be used over a 10 day period, whether services are within or outside of the State of California.   Employees desiring more time off under these circumstances may request vacation or other appropriate leaves, which may or may not be granted at the sole discretion of the immediate supervisor, and that the additional leave does not pose a hardship for the Employer.   If the requested additional leave is denied, that denial is not subject to the grievance procedure.

5.    **Jury Duty**

When an employee covered by this Agreement is summoned to jury duty by proper judicial authorities, he/she shall be granted "other paid time off" not to exceed thirty (30) calendar days. The employee will receive his/her regular salary less the payment received for jury duty, except travel pay.  The employee shall be expected to report to work before or after jury duty, if one (1) hour or more of the work day remains, excluding travel time from the courthouse to the employee's assigned work location. If an employee is absent from work due to a jury summons, the employee must provide the court documentation demonstrating that jury service has been ordered and that the employee participated in the jury selection process or served on a jury.

This provision is not applicable to an employee's appearance in litigation as a litigant or witness.   However, if an employee is required within the scope of his/her employment to appear in litigation as a witness on behalf of the Workforce Investment Board of Solano County, he she will be paid his/her regular salary.

6.    **Military Leave**

    a.    Any employee ordered into the armed forces of the United States by virtue of draft or reserve obligations shall be granted an unpaid leave of absence for the duration of the military assignment. Upon completion of military service, the

employee will be reinstated with full seniority to his/her former position or to a comparable position if application for re-employment is made within ninety (90) calendar days of release from the service. This provision is not applicable to employees who voluntarily enlist in the armed services. Such enlistment shall be considered a voluntary quit/resignation.

b.　　An employee who is a member of the National Guard or of a reserve component of the armed forces shall, upon furnishing a copy of their official orders or instructions, be granted an unpaid military training leave. Upon presentation of military pay vouchers, employees will be reimbursed the difference between their normal compensation and the pay they receive while on military duty. Such compensation will be limited to fifteen (15) days per year.

c.　　Employees on military leave will continue to accrue service time, vacation and sick leave benefits for up to fifteen (15) working days within a calendar year.

## B.　Unpaid Leave
### 1.　Statement of Policy
It is the policy of the WIB to consider and possibly grant an unpaid leave of absence (maternity/paternity, medical/personal) to regular employees in good standing who meet the requirements.

### 2.　General Provisions
Unless required by statute, regular employees on unpaid leaves of absence do not accrue service time, or vacation and sick leave benefits while on unpaid leave. Eligibility for benefits, and the calculation of service time, resumes immediately upon return from the leave.

a.　　An employee requesting a leave of absence must submit the request in writing to his/her supervisor, and Division Manager at least 30 days prior to the desired commencement of the requested leave. If the request is agreed to by the supervisor, and Division Manager, it will be forwarded to the Executive Director for consideration and approval/denial. The employee will be notified within seven (7) working days of the submission of their leave request if it has been approved/denied by the Executive Director.

In cases of sudden illness or emergency, the leave request may be initiated by the employee's immediate supervisor and/or Division Manager. The supervisor or Division Manager must indicate on the form their recommendation as to whether the request should be approved, denied or

modified. The supervisor/Division Manager are responsible for ensuring the form is forwarded to the Business & Employment Services Manager immediately.

Authorization of an unpaid leave of absence is the sole discretion of the Executive Director or a person designated by the Employer and is not subject to the Grievance Procedure. Employees released to return to work must report to the agency Human Resources staff office upon the start of their normal work schedule, on the day-of-return, and provide a Doctor's documentation of release to return and any required employment limitations/accommodations. Where applicable, all leave without pay options will be combined and run concurrently.

b.   All leaves of absence must have a specific duration and return-to-work date determined at the time the leave is granted. Failure to return to work on the determined return-to-work day will be considered as a resignation by the employee. NOTED EXCEPTION: a women's timely return from pregnancy disability leave entitles her to her same job.

An employee who is on an authorized leave of absence and returns to work on their scheduled return to work date will be reinstated to his/her former functional assignment or to a similar functional assignment.

c.   Unless required by statute, the maximum medical, or maternity/paternity leave of absence is 4 months, and personal leaves are limited to no more than 30 days in a calendar year.

d.   All original requests for a leave without pay, as well as any subsequent correspondence regarding the leave, will be forwarded to the Employer's Business & Employment Services Manager and placed in a confidential employee file.

e.   Employees on an unpaid leave of absence who have automatic dependent health care payroll deductions, are responsible for submitting the monthly premiums to the Fiscal department no later than the 1st working day of each month. Failure to do so will result in the termination of all applicable dependent health care coverage.

3.   **Allowable Leaves and Leave Durations**
   a.   **Personal Leave**
      A personal leave without pay up to a maximum of thirty (30) calendar days may be granted by the Executive Director, via the immediate supervisor, or Division Manager.

Page 27 of  34

b.     **CFRA/FMLA Leave**

Under the California Family Rights Act of 1993, and the federal Family Medical Leave Act of 1992, if you have more than 12 months of service with this Employer and have worked at least 1,250 hours in the 12-month period before the date you want to begin your leave, you may have a right to an unpaid family care or medical leave. This leave may be up to 12 workweeks in a 12-month period for the birth, adoption, or foster care placement of your child; your own serious health condition or that of your child, parent or spouse. This unpaid leave of absence will run concurrently with any paid leave or other unpaid medical or maternity and paternity leave allowed under this Agreement.

In compliance with the National Defense Authorization Act, Public Law 110-181 signed into effect on January 28, 2008, the Family Medical Leave Act of 1993 is being amended to include the following two new qualifying categories and leave durations.

1.  Eligible employees are entitled to up to 12 weeks of leave because of a qualifying exigency arising out of the fact the spouse, son, daughter, or parent of the employee is on active duty or has been notified of an impending call to active duty status in support of a contingency operation.

2.  An eligible employee who is the spouse, son, daughter, parent or next of kin of a covered servicemember who is recovering from a serious illness or injury sustained in the line of duty on active duty is entitled to up to 26 weeks of leave in a single 12 month period to care for the service member.

c.     **Maternity and Paternity Leave**

1.     An employee who is the natural parent of a newborn child or a recently adoptive parent of an infant child under the age of one (1) is eligible for this unpaid leave.  Any employee with at least twelve (12) months of continuous employment with the Workforce Investment Board of Solano County is eligible for maternity or paternity leave.

2.     Before a female employee can return to work following a maternity leave, a physician must provide certification advising that the employee is able to resume her work.  The employee must notify the Business & Employment Services Manager in writing of her intention to return to work at least ten (10) days prior to the expiration of the leave.

Page 28 of  34

    d.    **Medical Leave**

        1.    An employee with at least (12) months of continuous employment with the Workforce Investment Board of Solano County may be granted a medical leave of absence without pay.

        2.    Before an employee can return to work following a medical leave, a physician must provide certification advising that the employee is able to resume his/her work.  An employee must notify the Business & Employment Services Manager in writing of his/her intention to return to work at least ten (10) days prior to the expiration of the leave. The employee must also provide a physician's statement clearly indicating any type of accommodation or modified work schedule the employee may require upon their return.  The anticipated length of the accommodation/modified work schedule must also be specified.

## SECTION XXIV.  FRINGE BENEFITS

A.    **Medical Benefits**

Medical insurance coverage is available to all regular employees at the time of hire. Once the plan required waiting period is satisfied, coverage begins. The WIB pays 100% of the cost for the employee premium only.  Employee dependent coverage is optional under the medical insurance plan, and if selected, is paid by the employee through appropriate payroll deductions. Employees have 30 calendar days from the time of hire to enroll with one of the two providers available or they must wait until the next new open enrollment period.

B.    **Dental Benefits**

Dental insurance coverage is available to all regular employees at the time of hire. The WIB pays 100% of the premium cost for dental insurance for the employee, and if requested fifty percent (50%) of the employee's dependents premium.  Once the plan required waiting period is satisfied, coverage begins. Employees have 30 calendar days from the time of hire to enroll with the WIB dental provider or they must wait until the next open enrollment period.

C.    **Vision Benefits**

Vision insurance coverage is available to all regular employees at the time of hire. Once the plan required waiting period is satisfied, coverage begins.  The WIB pays 100% of the employee only premium cost.  Employee dependent coverage is available under the vision insurance plan, and if selected, is paid by the employee through appropriate payroll deductions. Employees have 30 calendar days from the time of hire to enroll with the WIB vision provider or they must wait until the next new open enrollment period.

D.    **Life Insurance**

Life insurance is available to all regular employees once they complete their initial six month introductory period of employment with the WIB. The WIB pays 100% of the premium cost for the $15,000 life insurance policy.  This policy does not allow a dependent coverage option.

**E.**   **Retirement**

The WIB provides a Tax Deferred Annuity (or 403(b)) Retirement Plan. In compliance with the retirement plan guidelines, all qualified and interested employees are eligible to participate.

**F.**   **IRS approved 125 and 129 Plan**

Upon appointment, employees are immediately eligible to participate in the premium deduction portion of the 125 IRS plan. After an employee has completed their six (6) month introductory period with the WIB they are eligible to participate in the flexible spending portions of both the 125 and 129 Plans.

**G.**   **Miscellaneous Benefits**

Required State and federal benefits and or tax deductions such as, workers compensation, state disability insurance, unemployment insurance, social security, etc. will continue to be paid by the Employer or payments will continue to be deducted from employee pay checks.

**H.**   **Tuition Reimbursement**

1.   Employees who have been employed by the Employer for at least twelve (12) consecutive months of active employment may submit written requests for tuition, books and fees reimbursement for pre-approved and completed courses that will upgrade the employee's skills and knowledge and will be beneficial to the Employer. After submitting proof to the Employer of successful completion of the previously approved course(s), an employee may receive up to One Hundred Dollars ($100.00) reimbursement for tuition, books and fees not to exceed $300.00 per calendar year for completed courses with a grade of "C" or better.

Whether the training is considered beneficial to the Employer is within the Employer's sole discretion and is not subject to the grievance procedure.

2.   Reimbursement will only be made upon the employee's submission of:

a.   A written request for professional development reimbursement including an identification of the class(es) to be attended and where, as well as a description of the job-relatedness of the class(es) and how knowledge of the subject area will both enhance the employee's performance and benefit the agency. This request must be submitted prior to the commencement of the class and approved by the employee's immediate supervisor, Division Manager, and authorized by the Executive Director.

b.   Evidence of class enrollment.

    c.      A grade report or other formally issued transcript reflecting no less than a "C" grade in the class(es) attended.

    d.      Evidence of payment of tuition, books and/or fees by the employee.

    e.      All original documents requesting the professional development authorization as well as copies of the tuition reimbursement will be maintained by the Employer's Business & Employment Services Manager and placed in the employees Personnel File. The Business & Employment Services Manager or his/her designee will be responsible for forwarding all original reimbursement requests to the Fiscal Department for payment within ten (10) working days of their receipt.

3.    Unpaid release time from work up to a maximum of six (6) hours per week including travel time may also be granted to employees who meet the following criteria:

    a.      Have been employed for a minimum of two (2) continuous years with the WIB;

    b.      Are performing their job at a satisfactory level and have not been on a plan of correction for at least one full year;

    c.      There is a direct professional applicability of class(es) attended to employee's current functional job description, job cluster or vocational training area; and

    d.      The release time is recommended by the employee's immediate supervisor and Division Manager.

## SECTION XXV.  MISCELLANEOUS

**A.**    **<u>DRESS CODE</u>**

In the interest of presenting a professional image to Board clients, partners and the community, all employees of the WIB are required to observe good habits of grooming and personal hygiene. Employees are expected to dress conservatively and professionally in an appropriate manner for the business office.

**B.**    **<u>JOB NOTICES</u>**

The Employer will send the Union a copy of all recruiting job notices for classifications represented by the Union in this Agreement.

Page  31  of  34

**C.**   **NO STRIKE/NO LOCKOUT**

Under no circumstances will the Union or its agents cause, sanction, or permit its members to cause any strike, slowdown, stoppage of work, or other economic action directed at any activity of the Employer during the term of this Agreement.  An employee who withholds services without the approval, permission or sanction of the Union shall be considered a voluntary quit, without recourse through the grievance procedure.  Under no circumstances will the Employer engage in a lockout during the term of this Agreement.

**D.**   **SEVERABILITY**

If any provision of the Agreement should be held invalid by operation of law or by any tribunal of competent jurisdictions, or if compliance with or enforcement of any such revisions shall be restrained, the remainder of this Agreement shall not be affected thereby.

## SECTION XXVI.  TERM OF AGREEMENT

This Agreement shall remain in full force and effect to and including September 30, 2013.   The annual salary adjustment as described in Section XXI. C. Cost of Living Adjust (COLA) shall remain in effect through June 30, 2012.  This Agreement may be reopened by either party for the purpose of only negotiating the Grievance Procedure - Formal Resolution Step 2 as provided in Section XIX. E. Thereafter, it shall automatically renew itself and continue in full force and effect from year to year unless written notice of intention to terminate or modify any provision of this Agreement is given by either party and received by the other no later than one hundred and twenty (120) days prior to its termination date on the close of business of September 30, 2013.

## SECTION XXVII. COMPLETE AGREEMENT

During the negotiations culminating in this Agreement, the Employer and the Union each enjoyed and exercised the unlimited right and opportunity to make demands and proposals, counter-demands and counter proposals, with respect to any subject matter as to which the National Labor Relations Act imposes an obligation to bargain.

Unless specifically set forth elsewhere in this Agreement, no further negotiations shall take place on any subject within the scope of bargaining during the term of the Agreement.  Consequently, the Employer expressly waives its right to require the Union to bargain collectively and the Union expressly waives its right to require the Employer bargain collectively over all matters as to which the National Labor Relations Act imposes an obligation to bargain, with respect to: (a) matters which are specifically referred to in this Agreement; or (b) matters which were discussed between the Employer and the Union during the negotiations which resulted in this Agreement; or (c) matters which were within the contemplation or knowledge of the Employer or the Union at the time this Agreement was negotiated and executed.  The waiver of the right to "bargain collectively" includes the waiver of the right to require the other party to negotiate, and the right to obtain information from the other party, except to the extent required to enforce the terms of this Agreement or to obtain information required

Page 32 of  34

to prepare to bargain for a successor Agreement in a manner and at a time which is timely with respect to such negotiations. Nothing in the Agreement precludes the parties from mutually agreeing to re-open negotiations on any subject. The Employer and Union agree that notwithstanding this provision, either party may require negotiations concerning events that were outside the knowledge of both parties at the time the Agreement was signed.

This Agreement contains the entire understanding, undertaking, and agreement of the Employer and the Union, after exercise of their right and opportunity, and finally determines all matters of collective bargaining for its term.

Changes in this Agreement, whether by addition, waiver, deletion, amendment, or modification, must be reduced to writing and executed by both the Employer and the Union.

Page 33 of 34

IN WITNESS THEREOF, the parties have executed this Agreement.

**FOR THE Employer**
Workforce Investment Board of Solano County, Inc.

By:   Robert Bloom, Executive Director _____
                                              Signature

                                              1/18/13
                                              Date

Cheryl Joseph, Business & Employment Services Manager        1/18/13
                                                             Date

Kitt Lee, Fiscal & Information Services Manager              1/18/13
                                                             Date


**FOR THE Union**
Service Employees International Union (SEIU), Local, 1021,CTW, CLC

By:   Stephen Cutty, Field Representative _____
                                              Signature

                                              1-18-13
                                              Date

Twuanya Gibbons, Negotiation Team Member                     1.18.2013
                                                             Date

Vallarie Henderson, Negotiation Team Member                  1.18.13
                                                             Date

Scotty Sanderson, Negotiation Team Member                    1/18/13
                                                             Date

Pete Castelli, Executive Director                            1/18/13
Field and Programs                                           Date
SEIU Local 1021

Brian Lee, Area Director                                     1-18-13
SEIU Local 1021                                              Date


Page 34  of   34

ATTACHMENT A

## Workforce Investment Board of Solano County

SEIU Covered
Classifications and Salary Ranges
Program Year 2012-13

| Classification | Step 1 | Step 2 | Step 3 | Step 4 | Step 5 | Step 6 | Step 7 | Step 8 | Step 9 | Step 10 |
|---|---|---|---|---|---|---|---|---|---|---|
| Admin/Program Specialist II | $45,921 | $47,069 | $48,246 | $49,452 | $50,688 | $51,955 | $53,254 | $54,586 | $55,950 | $57,349 |
| Admin/Program Specialist I | $41,329 | $42,362 | $43,421 | $44,507 | $45,619 | $46,760 | $47,929 | $49,127 | $50,355 | $51,614 |

| Classification | Step 1 | Step 2 | Step 3 | Step 4 | Step 5 | Step 6 | Step 7 | Step 8 | Step 9 | Step 10 |
|---|---|---|---|---|---|---|---|---|---|---|
| Admin/Program Technician III | $38,665 | $39,632 | $40,622 | $41,638 | $42,679 | $43,746 | $44,840 | $45,961 | $47,110 | $48,287 |
| Admin/Program Technician II | $35,150 | $36,029 | $36,929 | $37,853 | $38,799 | $39,769 | $40,763 | $41,782 | $42,827 | $43,898 |
| Admin/Program Technician I | $31,634 | $32,425 | $33,235 | $34,066 | $34,918 | $35,791 | $36,686 | $37,603 | $38,543 | $39,507 |

Effective 7/01/12

# Exhibit B



**LOCAL 1021**

**SEIU**

**Stronger Together**

**Sin Yee Poon**
Chief Elected Officer

**Roxanne Sanchez**
President

**Gary Jimenez**
1st Vice President

**Crawford Johnson**
2nd Vice President

**Larry Bradshaw**
3rd Vice President

**Pamela Holmes-Morton**
Secretary

**Kathy O'Neil**
Treasurer

**Alysabeth Alexander**
Political Action Committee

**Mary S. Tucker**
Organizing Committee Chair

**Executive Board**
Saul Almanza
Nancy Atwell
Harry Baker
Kathy Basconcillo
Akbar Bibb
Karen Bishop
Ken Blomberg
· Gina Castillano
Gayle Chadwick
Gregory Correa
Sheila Darvell
Amy Dooha
David Fleming
John Gales
Dolores Dawson Gholar
Gladys M. Gray
David Hight
Karen Joubert
Andrea Longoria
Jim Nebel
Michelle Rodrigues
Jacqueline Sowers
Eric Stern
Ken Tam
Oliver Tarap
Renita Terry
Mynette Theard
Celeste Thompson
David Turner
Denis Villanueva

April 25, 2013

Mr. Robert Bloom
Executive Director
Workforce Investment Board
320 Campus Lane
Fairfield, CA 94534

Dear Mr. Bloom:

Please consider this letter as initiating the **Formal Resolution Process** for the below listed grievances. The Collective Bargaining Agreement requires you or your designated representative to schedule a meeting to hear the grievance within the ten (10) working days after receiving it, Section XIX Grievance Procedure (C) Step 1. I am available at the following times and dates within the next 10 working days: April 26, 2013 at 9:00 am, 1 pm or 3 pm; April 29, 2013 at 9:00 am, 1 pm or 3 pm;  April 30, 2013 at 9:00 am, 1 pm or 3 pm; May 1, 2013 at 9:00 am; May 2, 2013 at 9:00 am, 1 pm or 3 pm; May 3, 2013 at 9:00 am, 1 pm or 3 pm; May 6, 2013 at 9:00 am, 1 pm or 3 pm; May 7, 2013 at 9:00 am, 1 pm or 3 pm; May 8, 2013 at 9:00 am, 1 pm or 3 pm; May 9, 2013 at 9:00 am, 1 pm or 3 pm; May 10, 2013 at 9:00 am, 1 pm or 3 pm. Please contact me with the date/time that is convenient for your agency.

As you are well aware of, the Union has attempted to resolve these grievances by the Informal Resolution process on numerous occasions with your agency but you have maintained communications are to be sent only to the Executive Director or an employee must initiate the grievance in order for it to be valid. We are in disagreement with your interpretation and application of the grievance procedure in the Collective Bargaining Agreement. The intent of the grievance language of the Collective Bargaining Agreement is for "the parties... to settle grievances informally and promptly." The position your agency has taken, with respect to informal grievances, has not been productive for either party and should cease immediately.

**Formal Grievance #1: Job Placement Coach-LaShunda Norris**

The Union contends Workforce Investment Board has violated the Collective Bargaining Agreement Section XXII Employment Status Changes (E.) "Posting of Open Functional Assignments," Section XXV (B.) "Job Notices and Section II. Management Rights by not posting internal or an external recruitment notice for at least five (5) working days on official Employer Designated bulletin boards of all functional assignments occurring in classifications covered by the collective bargaining agreement and failed to notify the Union of Job Notices. The Employer has effectively waived its rights to handling the grievance through the "informal resolution process" by refusing to process the informal request on or about April 22, 2013.The remedy sought by the Union is reassignment of Ms. Norris to her previous position of Workshop Specialist II, posting of "Job Placement Coach" as required by the Collective Bargaining Agreement for all employees to have ample opportunity to apply for the newly created position, provide proper notice to the Union of the Job opening and to

**Budget & Finance Committee**
Peggy La Rossa  Mary Jane Logan  Mercedes Riggleman  Nadeen Roach  Dann Solomon  Michael Tong
2300 Boynton Avenue, Suite 200 • Fairfield, CA 94533 • 707-422-9464 • Fax 707-422-5107
Service Employees International Union CtW, CLC • www.seiu1021.org

make whole any/all employees who were affected by Workforce Investment Board violation of the
Collective Bargaining Agreement.

**Formal Grievance #2: Change in Work Hours-Disparate Treatment**

The Union contends Workforce Investment Board has violated the Collective Bargaining Agreement
Section XI Hours of Work (B.), Section XX (B.) No Discrimination and Section II. Management Rights by
restricting certain employees from entering premises prior to their shift while allowing other employees
unrestricted access to the same facilities. Additionally, the
Employer has not negotiated changes of past practices in reporting time by employees. The Employer
has effectively waived its rights to handling the grievance through the "informal resolution process" by
refusing to process the informal request on or about April 22, 2013. The remedy sought by the Union is
standard and uniformed language applicable to all employees covered by the Collective Bargaining
Agreement and uniformed application of reporting times.

**Formal Grievance #3: Employer Paid Medical Benefits Loretta Dawson**

The Union contends Workforce Investment Board has violated the Collective Bargaining Agreement
Section XXIV Fringe Benefits (A.) Medical Benefits and Section II. Management Rights by failing to pay
medical insurance premium of Loretta Dawson while on a Worker's Compensation Injury and placing Ms.
Lawson on "Unpaid Leave" status while receiving compensation. The Employer has effectively waived its
rights to handling the grievance through the "informal resolution process" by refusing to process the
informal request on or about April 22, 2013. The remedy sought by the Union is the reimbursement of
any/all payments made by Ms. Dawson to Workforce Investment Board to maintain her health insurance
while on worker's compensation.

**Formal Grievance #4: Job Placement Coach –April Zolmek-Portillo**

The Union contends Workforce Investment Board has violated the Collective Bargaining Agreement
Section XXII Employment Status Changes (E.) "Posting of Open Functional Assignments," Section XXV
(B.) "Job Notices and Section II. Management Rights by not posting internal or an external recruitment
notice for at least five (5) working days on official Employer Designated bulletin boards of all functional
assignments occurring in classifications covered by the collective bargaining agreement and failed to
notify the Union of Job Notices. The Employer has effectively waived its rights to handling the grievance
through the "informal resolution process" by refusing to process the informal request on or about April 22,
2013. The remedy sought by the Union is reassignment of Ms. Zolmek-Portillo to her previous position of
Business Services Representative, posting of "Job Placement Coach" as required by the Collective
Bargaining Agreement for all employees to have ample opportunity to apply for the newly created
position, provide proper notice to the Union of the Job opening and to make whole any/all employees who
were affected by Workforce Investment Board violation of the Collective Bargaining Agreement.

**Formal Grievance #5: Sheryl Cutler's Personnel File**

The Union contends Workforce Investment Board has violated the Collective Bargaining Agreement
Section XVII (A.) Personnel File and Section II. Management Rights by not allowing the Union access to
file for inspection and copying in a timely manner in order to process grievance related to adverse
employment action by Workforce Investment Board. The remedy sought is the production of the
personnel file of Sheryl Cutler.

**Formal Grievance #6: Loretta Dawson's Personnel File**

The Union contends Workforce Investment Board has violated the Collective Bargaining Agreement
Section XVII (A.) Personnel File and Section II. Management Rights by not allowing the Union access to
file for inspection and copying in a timely manner in order to process grievance related to adverse

employment action by Workforce Investment Board. The remedy sought is the production of the
personnel file of Loretta Dawson.

### Formal Grievance #7: Informal Grievance Process

The Union contends Workforce Investment Board has violated the Collective Bargaining Agreement
Section XIX Grievance Procedure (A) Definition, (B) Eligibility, (C) Procedures-Informal Resolution
Process, Section XX (B.) No Discrimination and Section II Management Rights by refusing to process
grievances on an "informal basis" in a timely manner to resolve issues at the lowest possible level. The
remedy sought by the Union is the recognition by Workforce Investment Board of the rights of Union
Representative to present grievances to management by the "Informal Resolution Process" as specified
in the Collective Bargaining Agreement.

### Formal Grievance #8: Sheryl Cutler's Adverse Employment Action

The Union contends Workforce Investment Board has violated the Collective Bargaining Agreement
Section XVIII (B.) Disciplinary Procedures, Section XVI (A) & (B) Staff Reduction or Layoff and
Procedures, and Section II Management Right's by misclassifying Ms. Cutler's disciplinary action as
"detrimental to clients," and "entailing gross misconduct" thus depriving Ms. Cutler a reasonable time to
improve her performance under the terms and conditions of the Collective Bargaining Agreement. The
remedy sought by the Union is the reinstatement of Ms. Cutler as an Employability Specialist II, to be
made whole for any/all economic losses including benefits minus interim wages received by Ms. Cutler
and to provide 45 work day plan of correction as outlined in the Collective Bargaining Agreement.

If you have any questions concerning the above grievances please contact me immediately at
stephen.cutty@seiu1021.org or by phone at (707) 427-7209.

Sincerely,

Stephen Cutty
Field Representative
SEIU Local 1021

Cc:    Ms. Sonja Rockwall-Jackson, Chief Steward WIB
       Ms. Antoinette Smith, Steward WIB

SJC (cwa 9404)

# Exhibit C

## WORKFORCE INVESTMENT BOARD
### OF SOLANO COUNTY

May 3, 2013


RECEIVED
MAY 0 6 2013
BY: ........................

Mr. Stephen Cutty
Field Representative
Service Employees International Union, Local 1021
2300 Boynton Avenue, Suite 200
Fairfield, CA 94533

SUBJECT:  1) **Forthcoming Response to Your April 25, 2013 Letter; and**
2) **Need to Redirect Your Communication Contained in April 29, 2013 Letter**

Dear Mr. Cutty,

I wish to provide you an update on the follow-up steps necessary to be taken with each of the above referenced letters (which are attached.)

**April 25, 2013 Letter**
Our agency attorney Mr. Randall Barnum is preparing a response to this letter that will be provided to both you and your attorney – putting in to proper perspective the various issues you continue to repetitively raise in: a) requests to me; b) attempts at filing formal grievances; and c) direct NLRB filings.

You will be receiving a copy of this correspondence shortly.

**April 29, 2013 Letter**
In accordance with the current Collective Bargaining Agreement (CBA) I have no role in helping with an issue an SEIU-covered employee may have regarding work-related issues or any purported violation of the CBA at this stage - based on the information you briefly raise in this 4/29/13 letter.

Should you know of a covered employee with a concern please direct that individual to contact his/her supervisor to discuss the matter and seek clarification and hoped-for resolution.

If that employee has concern for a possible violation of any provision of the CBA then the prescribed Section XIX. C. Procedures – Informal Resolution Process would be undertaken. This specifically-crafted, negotiated, and mutually-agreed-to/signed-off-upon controlling language of the CBA only calls for the matter to be brought up verbally; the employee, supervisor, and Business and Employment Services Manager (Ms. Cheryl Joseph) would then meet in an attempt to settle the matter on an informal basis.

☐ **North-county Office**
320 Campus Lane
Fairfield, CA 94534
(707) 864-3370   FAX (707) 864-3386

☐ **South-county Office**
1440 Marin Street
Vallejo, CA 94590
(707) 649-3604   FAX (707) 649-3619

*L i n k i n g     E m p l o y e r s     w i t h     E m p l o y e e s*

Mr. Stephen Cutty                                        Page 2
May 3, 2013

Failure to resolve the matter at that level could then prompt a written communication to
me as Executive Director (within 7 working days of completion of this prescribed
Informal Resolution Process), thus elevating the issue to the next prescribed step in the
CBA (under Section XIX.C.  Procedures - Formal Resolution Process.)  Only at the
Formal Resolution stage would I be allowed to become directly involved, to carry out
various prescribed obligations from that point forward.

To my knowledge no part of this Informal Resolution Process has been initiated (for the
issue you raise in this 4/29 letter) and no case can be made that "the grievance is not
resolved" via this prescribed initial process.  Thus it is premature for any party to start
issuing written communications and getting additional parties involved.  Parties should
simply follow the clear language of the CBA and not in any way attempt to side-step or
overlook applicable steps in the grievance procedures.

Again, I have no allowable direct role in the Informal Resolution Process under written
terms of the CBA. Further, I have no intention to violate terms of the CBA by becoming
directly involved in the prescribed three-party meeting/discussions at the informal stage.

A direct parallel exists here. There is similarly no allowable role for an agency SEIU
Steward or you as an SEIU Field Representative to sit in upon or participate in the CBA-
prescribed three-party meeting to attempt informal resolution.

Please advise your SEIU-covered employee of these critical guiding sections of the CBA.

Sincerely,

Robert L. Bloom
President

Attachments

cc      Cheryl Joseph
        Randall Barnum

# Exhibit D



**LOCAL 1021**

# SEIU

## Stronger Together

**Sin Yee Poon**
Chief Elected Officer

**Roxanne Sanchez**
President

**Gary Jimenez**
1st Vice President

**Crawford Johnson**
2nd Vice President

**Larry Bradshaw**
3rd Vice President

**Pamela Holmes-Morton**
Secretary

**Kathy O'Neil**
Treasurer

**Alysabeth Alexander**
Political Action Committee

**Mary S. Tucker**
Organizing Committee Chair

**Executive Board**
Saul Almanza
Nancy Atwell
Harry Baker
Kathy Basconillos
Akbar Bibb
Karen Bishop
Ken Blomberg
Gina Castillano
Gayle Chadwick
Gregory Correa
Sheila Darvell
Amy Dooha
David Fleming
John Gales
Dolores Dawson Gholar
Gladys M. Gray
David Hight
Karen Joubert
Andrea Longoria
Jim Nebel
Michelle Rodrigues
Jacqueline Sowers
Eric Stern
Ken Tam
Oliver Tarap
Renita Terry
Mynette Theard
Celeste Thompson
David Turner
Denis Villanueva



May 7, 2013

Mr. Robert Bloom
Executive Director
Workforce Investment Board
320 Campus Lane
Fairfield, CA 94534

Dear Mr. Bloom:

I am in receipt of your May 3, 2013 letter responding to my letter of April 29, 2013 concerning the first step of the grievance process for several unresolved issues. It is my belief your letter satisfies the requirement as a step 1 response to the formal grievance procedure.

It is obvious the several disputes have not been resolved through the grievance process. I am requesting the appointment of an "Adjustment Board" as defined in step 2 of the grievance process to hear the matter and issue a "written advisory opinion." The Collective Bargaining Agreement states "the adjustment shall convene within twenty-five (25) working days of the timely request to the Executive Director. I believe this request is timely and appropriate as the next step in the formal process.

If you disagree or wish to deny this step of the grievance process, please notify me immediately of your decision so I may take appropriate actions in another venue.

If you have any questions concerning the above grievances please contact me immediately at stephen.cutty@seiu1021.org or by phone at (707) 427-7209.

Sincerely,

Stephen Cutty
Field Representative
SEIU Local 1021

Cc:    Ms. Sonja Rockwall-Jackson, Chief Steward WIB
       Ms. Antoinette Smith, Steward WIB

SJC (cwa 9404)

**Budget & Finance Committee**
Peggy La Rossa  Mary Jane Logan  Mercedes Riggleman  Nadeen Roach  Dann Solomon  Michael Tong
2300 Boynton Avenue, Suite 200 • Fairfield, CA 94533 • 707-422-9464 • Fax 707-422-5107
Service Employees International Union CtW, CLC • www.seiu1021.org

# Exhibit E



**WORKFORCE INVESTMENT BOARD**
OF SOLANO COUNTY

May 15, 2013

Mr. Stephen Cutty, Field Representative
Service Employees International Union, Local 1021
2300 Boynton Avenue, Suite 200
Fairfield, CA 94533

SUBJECT:     **1) Rejection of Your May 8, 2013 Request to Join In on Violations of
the Current Collective Bargaining Agreement; and
2) Notice Given: Plan to Reject all Future Such Requests**

Dear Mr. Cutty,
I am once more in receipt of a letter from you (dated May 8, 2013 – attached) which: a)
proposes violations to the terms of our current Collective Bargaining Agreement (CBA);
and b) asks me to be a co-conspirator in such a violation. This is to state unequivocally
that I will <u>not</u> be a party to such violations.

On a number of occasions now you have sent me correspondence asking for me
personally to get involved in the "Informal Resolution Process" step of the grievance
procedures. Further you have laid out an expectation that both you and an agency union
steward would likewise be involved in the Informal Resolution process.

As you are fully aware the freely negotiated, agreed-to, and signed-off-upon language of
the CBA prescribes what is involved in the Informal Process step for the grievance
procedures. There is simply no role for you, a steward, or me in that Informal step.

It must be noted that you personally agreed to the language of this current CBA, as
attested to with your signature of January 18, 2013. And yet now you refuse to live with
what you contractually bound yourself to.

It will continue to be my practice to fully comply with all provisions of the CBA. All
future requests from you for me to violate the CBA, on any basis, will be summarily
rejected for that cited reason.

Sincerely,

Robert L. Bloom
President

Attachment

cc      Cheryl Joseph
        Randall Barnum

☐ **North-county Office**
320 Campus Lane
Fairfield, CA 94534
(707) 864-3370   FAX (707) 864-3386

☐ **South-county Office**
1440 Marin Street
Vallejo, CA 94590
(707) 649-3604   FAX (707) 649-3619

*L i n k i n g      E m p l o y e r s      w i t h      E m p l o y e e s*

# Exhibit F



**LOCAL 1021**

## SEIU

### Stronger Together

**Sin Yee Poon**
Chief Elected Officer

**Roxanne Sanchez**
President

**Gary Jimenez**
1st Vice President

**Crawford Johnson**
2nd Vice President

**Larry Bradshaw**
3rd Vice President

**Pamela Holmes-Morton**
Secretary

**Kathy O'Neil**
Treasurer

**Alysabeth Alexander**
Political Action Committee

**Mary S. Tucker**
Organizing Committee Chair

**Executive Board**
Saul Almanza
Nancy Atwell
Harry Baker
Kathy Basconcillo
Akbar Bibb
Karen Bishop
Ken Blomberg
Gina Castillano
Gayle Chadwick
Gregory Correa
Sheila Darvell
Amy Dooha
David Fleming
John Gales
Dolores Dawson Gholar
Gladys M. Gray
David Hight
Karen Joubert
Andrea Longoria
Jim Nebel
Michelle Rodrigues
Jacqueline Sowers
Eric Stern
Ken Tam
Oliver Tarap
Renita Terry
Mynette Theard
Celeste Thompson
David Turner
Denis Villanueva

May 23, 2013

Mr. Robert Bloom
Executive Director
Workforce Investment Board
320 Campus Lane
Fairfield, CA 94534

Dear Mr. Bloom:

I am in receipt of your May 15th, 2013 letter which I consider it another refusal by your agency to process outstanding grievances as required by the Collective Bargaining Agreement. It is my belief your letter satisfies the requirement as a step 2 response to the formal grievance procedure on all outstanding grievances your agency now has in its possession.

I am requesting Step 3 Arbitration for all grievances. The Collective Bargaining Agreement states "Upon receipt of a written request for arbitration of a grievance under this procedure, the Employer and the Union shall attempt to select a mutually acceptable impartial arbitrator. In the event that the parties cannot agree on an impartial arbitrator within fifteen (15) days after receipt of the written request, either party may request the American Arbitration Association to submit a list of five (5) representative arbitrators." I am available on the following dates and times to pick an impartial arbitrator: May 24, 2013 9 am; May 28, 2013 9 am or 1 pm; May 29, 2013 9 am or 1pm; May 30, 2013 9 am or 1 pm; May 31, 2013 9 am or 1 pm; June 3, 2013 9 am or 1 pm; June 4, 2013 9 am or 1 pm; June 5, 2013 9 am or 1 pm; June 7, 2013 9 am or 1 pm. Please let me know which date is convenient to pick an impartial arbitrator.

If you disagree or wish to deny this step of the grievance process, please notify me immediately of your decision so I may take appropriate actions in another venue.

If you have any questions concerning the above grievances please contact me immediately at stephen.cutty@seiu1021.org or by phone at (707) 427-7209.

Sincerely,

Stephen Cutty
Field Representative
SEIU Local 1021

Cc:    Ms. Sonja Rockwall-Jackson, Chief Steward WIB
       Ms. Antoinette Smith, Steward WIB

SJC