Ethan Jacobs (SBN 291838)
Ethan Jacobs Law Corporation
ethan@ejacobslaw.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 275-0845

Akiva M. Cohen (admitted *pro hac vice*)
Kamerman, Uncyk, Soniker & Klein P.C.
acohen@kusklaw.com
1700 Broadway, 16th Floor
New York, New York 10019

Attorneys for Petitioners

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SARAH ANOKE, CATHERINE BONN, ISABELLE CANNELL, MELANIE EUSEBIO, SAMANTHA FESTEJO, CARLOS MOISES ORTIZ GOMEZ, DAWN HOSIE, WAYNE KRUG, LAURENT LUCE, PATRICK O'CONNELL, JENNIFER RYAN, JAIME SENA, JAMES SHOBE, KARYN THOMPSON, AND CRISTIAN ZAPATA, <br><br> Petitioners, <br><br> vs. <br><br> TWITTER, INC., X HOLDINGS I, INC., X HOLDINGS CORP, X CORP, AND ELON MUSK, <br><br> Respondents. | Case No.: 3:23-cv-02217-SI <br><br> **PETITIONER'S REPLY IN FURTHER SUPPORT OF PETITION TO COMPEL ARBITRATION PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE § 1281.97** |

1

2

# <u>TABLE OF CONTENTS</u>

3

INTRODUCTION ..................................................................................................................1

ARGUMENT ......................................................................................................................2

    I.   The Court Cannot Decide the Petition Unless It Determines It Has Subject Matter Jurisdiction................................................................................................................2

    II.  Respondents' Excuses for Non-Payment Are Irrelevant ....................................2

    III. Section 1281.97 Is Not Preempted by the Federal Arbitration Act ................................6

    IV. Section 1281.97 Applies to Each of Petitioners' Demands ...........................................11

CONCLUSION....................................................................................................................13

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

REPLY IN FURTHER SUPPORT OF § 1281.97 PETITION
CASE NO. 3:23-cv-02217-SI

1

## TABLE OF AUTHORITIES

2
**Page(s)**

3

**Cases**

4
*Agerkop v. Sisyphian LLC*, No. CV1910414CBMJPRX, 2021 WL 1940456
  (C.D. Cal. Apr. 13, 2021), *appeal dismissed sub nom. Tolbert v. Sisyphian, LLC*,
5    No. 21-55484, 2022 WL 16844513 (9th Cir. Sept. 13, 2022) ............................................10

6
*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) ................................................12

7
*Belyea v. GreenSky, Inc*., No. 20-CV-01693-JSC, 2022 WL 14965532
  (N.D. Cal. Oct. 26, 2022)..........................................................................................11, 12

8
*Brown v. Dillard's, Inc*., 430 F.3d 1004 (9th Cir. 2005) ............................................12, 15

9
*Chamber of Com. of the United States of Am. v. Bonta*, 62 F.4th 473 (9th Cir. 2023)...................12

10
*Costa v. Melikov*, No. CV 2:20-09467-AB-ASX, 2022 WL 18228248
11   (C.D. Cal. Oct. 21, 2022) .........................................................................................10

12
*Daimler AG v. Bauman*, 571 U.S. 117 (2014) .................................................................15

13
*Daniels v. Securitas Sec. Servs. USA, Inc.*, No. SACV1800265CJCSKX,
  2021 WL 2322938 (C.D. Cal., May 27, 2021) ...............................................................7

14
*De Leon v. Juanita's Foods,* 85 Cal. App. 5th 740 (2022) ...........................................8, 9

15
*Dekker v. Vivint Solar, Inc.,* 479 F. Supp. 3d 834 (N.D. Cal. 2020), *rev'd and remanded*
16   *on other grounds,* No. 20-16584, 2021 WL 4958856 (9th Cir., Oct. 26, 2021)....6, 7, 10, 13

17
*Diamond Multimedia Sys., Inc. v. Superior Ct.*, 19 Cal. 4th 1036 (1999)......................16

18
*Espinoza v. Super. Ct.*, 299 Cal. Rptr. 3d 751 (Cal. App. 2d Dist. 2022)......................7, 9

19
*Gallo v. Wood Ranch USA, Inc*., 81 Cal. App. 5th 621 (2022) ....................................10

20
*Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778 (9th Cir. 2001)........................15

21
*Hernandez v. Restoration Hardware, Inc.*, 4 Cal. 5th 260 (2018)................................10

22
*Kindred Nursing Centers Ltd. P'ship v. Clark*, 581 U.S. 246 (2017)............................12

23
*Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407 (2019) .....................................................12

24
*Loeffler vs. DeMars & Assocs, Ltd*., No. 30-2017-00923227-CU-BT-CJC
  (Cal. Super. Ct. Aug. 14, 2020) .............................................................................11

25
*New Hampshire v. Maine*, 532 U.S. 742 (2001)......................................................11, 15

26
*Perry v. Thomas*, 482 U.S. 483 (1987) .........................................................................12

27
*Postmates Inc. v. 10,356 Individuals,* No. CV202783PSGJEMX, 2021 WL 540155
  (C.D. Cal. Jan. 19, 2021) .................................................................................10, 13

ii.

*Rodriguez v. Twitter*, N.D. Cal. Case No. Case 3:22-cv-07222-JD ............................................ 11, 14

*Sink v. Aden Enterprises, Inc*., 352 F.3d 1197 (9th Cir. 2003) ............................................ 10, 13, 15

*Southland Corporation v. Keating*, 465 U.S. 1 (1984) ...................................................................... 12

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998) ............................................................. 5

*Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468 (1989) ...... 12

*Wang v. OCZ Tech. Grp., Inc.*, 276 F.R.D. 618 (N.D. Cal. 2011) .................................................... 15

*Waters v. Vroom Inc.*, No. 22-CV-1191 TWR (AGS), 2023 WL 187577
    (S.D. Cal. Jan. 13, 2023) ...................................................................................................... 9

*Williams v. W. Coast Hosps., Inc*., 86 Cal. App. 5th 1054 (Cal. App. 2d Dist. 2022) .................. 7, 9

**Statutes**

9 U.S.C. § 2 ................................................................................................................................... 11

Cal. Civ. Code § 1657 .................................................................................................................... 15

Cal. Civ. Code § 1657.1 ................................................................................................................. 15

**Other Authorities**

S.B. 707(1)(f), 2019-2020 Reg. Sess. (Cal. 2019) .................................................................. 12, 13

**Rules**

Cal. Code Civ. Proc. § 1281.97 ...................................................................................... 6, 8, 12, 14

F.R.E. 201 ...................................................................................................................................... 10

### **INTRODUCTION**

Petitioners'[1] application for sanctions under Section 1281.97 established that Respondents failed to pay their case initiation fees within 30 days after the fees were due, triggering sanctions. Indeed, as shown in the Petition, Respondents adopted a pattern of deliberate delay in paying arbitration fees, specifically to delay the proceedings of former employees bringing claims against Twitter.

Respondents' opposition brief ("Opp.") effectively concedes each relevant fact. Respondents do not deny that they deliberately attempted to delay their former employees' litigations for as long as possible by slow rolling the payment of case initiation fees. And Respondents affirmatively aver that they did not pay the case initiation fees until May 5, 2023 – 60 days after they were due – unilaterally obtaining a 60-day stay of proceedings in JAMS in direct contravention of the public policy favoring arbitration as a speedy and inexpensive procedure for resolving disputes.

Unable to contest these facts, Respondents make several incorrect legal arguments. First, Respondents argue that despite missing their payment deadline, 1281.97 sanctions are unavailable either because JAMS "nulled" the original invoice and reissued it or because JAMS "represented" to Respondents that the fees had been paid. (Respondents carefully avoid saying that they believed JAMS' representations, because the facts show that they did not).[2] Neither excuse has any relevance under Section 1281.97, and therefore provides no basis for denying the required sanctions.

Second, Respondents argue Section 1281.97 is preempted by the Federal Arbitration Act ("FAA"). But not it is not preempted because, among other things, the DRA that Respondents drafted includes a provision allowing fee-shifting under 1281.97, and Respondents are estopped

---

[1] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Memorandum of Points and Authorities submitted in support of the Petition.

[2] *Compare* Declaration of Kassia Stephenson ("Stephenson Dec."), ¶ 6 (counsel checked the portal March 8 and saw the invoice marked "closed") *with* Declaration of Akiva M. Cohen in Support of Petition, Dkt. No. 1-1 at 16-19, ¶ 11 (noting that Ms. Stephenson's firm emailed JAMS on March 10 – two days later – seeking to have JAMS reissue the invoice for payment of the fees only for the fifteen Petitioners herein).

from arguing preemption because they relied on Section 1281.97 where it benefitted them. In any event, the courts that have refused to find preemption – including, as discussed below, the Ninth Circuit by implication in *Dekker v. Vivint Solar, Inc.*, No. 20-16584, 2021 WL 4958856 (9th Cir. Oct. 26, 2021) – were correct. And third, Respondents argue that 1281.97 only applies to California-based employees. Not only is that wrong – Section 1281.97 is a provision that applies to arbitration with California employers, regardless of employee location – but Respondents affirmatively relied on Section 1281.97 to delay the arbitration of non-California employees and so now are estopped from claiming that Section does not apply to them.

There is simply no defense available here that can insulate Respondents from the consequences of their delaying tactics. The Court can and should enforce Section 1281.97 and grant Petitioners' application in full.

## ARGUMENT

### I. The Court Cannot Decide the Petition Unless It Determines It Has Subject Matter Jurisdiction

On May 12, 2023, Petitioners moved to remand the Petition back to California Superior Court. (Dkt. No. 24), on the grounds that this Court lacked subject matter jurisdiction over Petitioners' claims. As such, the Court should not decide the Petition unless it first determines that it has subject matter jurisdiction. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) (court cannot reach the merits before assuring itself of jurisdiction, and that principle is "inflexible and without exception") (quotation omitted).

### II. Respondents' Excuses for Non-Payment Are Irrelevant

Faced with the reality that they did not pay the case-initiating fees for Petitioners' arbitrations until roughly 60 days after they were due, Respondents cast about for excuses they hope will rescue them from the plain language of Section 1281.97. Respondents argue that their 60-days belated payment of case initiation fees was timely because JAMS "nulled" the initial invoice for fees, and Respondents paid the fees within 30 days of JAMS issuing a *second* invoice for the same case initiating fees. Opp. at 12-13. But Section 1281.97 does not require payment of

2.

*invoices*, it requires payment of *arbitration fees*. Cal. Code Civ. Proc. § 1281.97(a)(1) (addressing the requirement of "the drafting party to pay certain fees and costs before the arbitration can proceed" and imposing sanctions for failure to pay "the fees or costs to initiate an arbitration" within 30 days of the due date). And Section 1281.97 further provides that absent contrary agreement, case initiation fees are due upon receipt of the initial invoice for those fees. *Id.*, 1281.97(a)(2). *See also Dekker v. Vivint Solar, Inc.,* 479 F. Supp. 3d 834, 840 (N.D. Cal. 2020)*,* ("Here, the JAMS invoices stated that payment was due upon receipt. …Defendants then had 30 days to pay or be in material breach, even if JAMS was willing to wait. Waiting is delay, and delay is exactly what the legislature sought to stop.") *rev'd and remanded on other grounds,* No. 20-16584, 2021 WL 4958856 (9th Cir., Oct. 26, 2021) (under parties' arbitration agreement, and where there was a factual dispute over the due date of the invoices, court should have referred that dispute to the arbitrator for resolution). The only role that the *invoice* plays in the statutory scheme is to start the running of the grace period for payment by making the fees due upon its receipt. Cal. Code Civ. Proc. § 1281.97(a)(2).

Nor did JAMS waive payment of case-opening fees when it incorrectly closed out the initial invoice, as reflected by JAMS issuing a second invoice for those same fees. Stephenson Dec. ¶ 9. Indeed, Respondents were clearly aware that the invoiced amounts remained due and owing even after JAMS marked the invoice closed, because on March 10, 2023 – two days *after* Ms. Stephenson saw the invoice marked closed – Twitter asked JAMS to decline jurisdiction over two of the claimants that had filed and *issue a new invoice* that did not include fees for those claimants. Cohen Dec., ¶ 11. JAMS "nulling" the invoice is no more effective to extend the statutory deadline than JAMS granting an extension would have been. *See Dekker.*, 479 F. Supp. 3d at 839 (arbitrator cannot extend the expiration of the grace period). Simply put: the fees were due, owing, and unpaid; Respondents knew throughout that the fees were due, owing, and unpaid; and Respondents chose to allow the fees to remain due, owing, and unpaid past the end of the statutory grace period because they believed that JAMS' error allowed them to do so. The statute is clear as to what consequences should ineluctably follow.

1    Indeed, Respondents' conduct shows that they do not understand Section 1281.97. For

2 example, in their counsel's email to Ms. Liss-Riordan, Respondents took the position that

3 Section 1281.97 set "30-days from receipt" as the "statutory deadline" for payment of invoiced

4 fees. Cohen Dec. at ¶ 18 and Ex. 5.[3] But Section 1281.97 does not set a new deadline for

5 payment; it provides for invoices that are due on receipt and discusses sanctions when fees are

6 more than 30 days *past due*. Section 1281.97 does not change the due date of the fees; it merely

7 provides a grace period – a time to cure the failure to immediately pay the amounts due – during

8 which no sanction will be imposed under that Section. *Dekker*, 479 F. Supp. 3d at 839. And once

9 that grace period expires **for any reason**, the failure to pay is sanctionable, because the breach

10 has not been cured. For that reason, bad faith or fault is irrelevant, and even where the party

11 being sanctioned actively attempted to pay the bill in advance of the expiration of the grace

12 period, the sanctions are automatic and must be enforced. *Espinoza v. Super. Ct.*, 299 Cal. Rptr.

13 3d 751, 759 (Cal. App. 2d Dist. 2022) ("the statute specifies no other required findings, such as

14 whether the nonpayment was deliberate or inadvertent, or whether the delay prejudiced the non-

15 drafting party. … the Legislature intended the statute to be strictly applied whenever a drafting

16 party failed to pay by the statutory deadline."); *Daniels v. Securitas Sec. Servs. USA, Inc.*, No.

17 SACV1800265CJCSKX, 2021 WL 2322938, at *2 (C.D. Cal., May 27, 2021) ("the clear

18 legislative intent" of § 1281.97 supports "a strict enforcement of the 30-day grace period that

19 begins upon defendants' receipt of invoice"); *Williams v. W. Coast Hosps., Inc.*, 86 Cal. App. 5th

20 1054, 1074, (Cal. App. 2d Dist. 2022) ("To further its stated purpose, the Legislature … chose to

21 neither require *nor permit* an inquiry into the reasons for a drafting party's nonpayment")

22

23 [3] Respondents' footnoted motion to strike their own email must be denied. Respondents variously object to the Court's consideration of their words as irrelevant under rules 401 and 402 (ignoring Rule 404(b)(2) and 406), not

24 based on Mr. Cohen's personal knowledge under Rule 602 (though Mr. Cohen attested to his personal knowledge of its submission in another matter, and the Court could in any event take judicial notice of the document, *see* F.R.E.

25 201), and, amazingly, under Rule 701 (apparently, Mr. Meckley's admission of Respondents' deliberate delay was improper lay opinion). Failing that, Respondents plead that it would simply be too prejudicial, under Rule 403, for

26 the Court to consider their previous admission of deliberate delay. Unsurprisingly, Respondents do not deny that the email is authentic, their own words, or reflected their actual intent and plan. Nor do Respondents suggest that any

27 alternative reason, beyond delay of the proceedings, motivated their decision to delay payment for as long as possible. There is no basis to strike that email.

(emphasis added), *review denied* (Mar. 29, 2023) (internal citations omitted); *De Leon v. Juanita's Foods,* 85 Cal. App. 5th 740, 753 (2022) (Section 1281.97 "establishes a simple bright-line rule" that applies as soon as the failure to pay exceeds 30 days). A party that wishes to avoid such sanctions has an easy alternative: pay its bills within thirty days after they are due.

For similar reasons, Respondents' complaint that JAMS "represented to them" that the fees were paid is utterly irrelevant. The statute did not authorize Respondents to offload to JAMS responsibility for keeping track of their payment obligations– whether via JAMS' invoicing "portal" or by its emails.[4] Nor did it impose any obligation on either Petitioners or JAMS to remind Respondents that their payment was due. Indeed, Respondents' decision to take a screenshot of the portal on March 8th to document the closure of Invoice #6564514, Stephenson Dec., ¶ 6 and Ex. A, confirms that Respondents were aware that something was amiss; why else take the screenshot?  And it was Respondents' obligation to pay those fees themselves that Section 1281.97 seeks to enforce; the California Assembly Judicial Committee noted specifically in its analysis that "this bill would hold that if the fees or costs required to initiate or continue an arbitration proceeding are not paid by the drafting party within 30 days of the due date, that party is in default of the agreement." Assembly Judicial Committee Analysis of SB 707, June 18, 2019, at 6, a copy of which is annexed to the Reply Declaration of Akiva M. Cohen ("Cohen Reply Dec.") as Ex. 1.[5] Section 1281.97 is a strict liability statute, and it was Respondents' responsibility to ensure that the fees were timely paid. Cal. Code. Civ. Proc. § 1281.97. *See also*

---

[4] Indeed, while it is irrelevant under the statute, Respondents notably fail to even claim they were misled by JAMS' communications or erroneously believed they had already paid the case initiation fees, and affirmatively demonstrated their knowledge – after seeing the "portal" – that they had not paid the fees. Stephenson Dec., ¶ 11. And to the extent that Respondents had questions about why JAMS was acting as though the fees had been paid when Respondents knew they had not paid those fees, they could have inquired with JAMS. Instead, Respondents let the time tick by without paying the fees they knew remained due, mistakenly secure in the belief that JAMS' error extended the deadline for that payment until 30 days after JAMS issued a new invoice.

[5] Describing the harm that even so-called "minor" impediments to procedure can cause, the Committee goes on to note, "Particularly in employment matters, the plaintiff's livelihood may be the subject of the adjudication. Although a large company may view its failure to pay a few hundred dollars for arbitration as a minor, immaterial, mistake, that mistake may delay the hearing of an employee's claims. While immaterial to the drafting party, the ensuing delay associated with this minor error could be significant to the employee, who may not be able to pay bills, rent or other expenses that could result in the loss of their residence, or damage to their credit rating, while the dispute remains unresolved." *Id.*

1   *Williams v. West Coast Hospitals, Inc.*, 86 Cal.App. 5th 1054, 1074 (2022), *petition for review*

2   *filed* (Feb. 7, 2023); *Espinoza v. Superior Court*, 83 Cal.App. 5th 761, 776 (2022). *Cf. De Leon*

3   *v. Juanita's Foods,* 85 Cal. App. 5th 740, 754 (2022); *Waters v. Vroom Inc.*, No. 22-CV-1191

4   TWR (AGS), 2023 WL 187577, at *4 (S.D. Cal. Jan. 13, 2023).[6] Not only did they fail to do so,

5   but Respondents forfeited any claim to good faith by delaying payment until May 5, 2023 even

6   after JAMS realized its error in early April. Stephenson Dec. at ¶ 12.

7          Finally, there is a simple and obvious solution to Respondents' imagined parade of policy

8   horribles, in which Machiavellian claimants might first strategically pay and then demand

9   refunds for fees invoiced to respondents, in hopes of luring them into a violation of Section

10  1281.97: timely pay the arbitration fees. A respondent who is not engaging in delaying games

11  pays its fees when due and has nothing to fear from such "tactics." And a respondent determined

12  to delay the arbitration by withholding payment until the final moment before the law imposes

13  sanctions would be well-advised to keep track of its own obligations rather than rely on third

14  parties to do so for it. Faced with employers strategically delaying fee payments to make

15  arbitration more onerous for employees, the California Legislature *made* a policy choice: the

16  State would provide a grace period for payment, but direct courts to impose strict liability on

17  California employers who, for whatever reason, did not pay within that grace period. That

18  Twitter – an employer impacted by the law and engaged in the very delaying tactics California

19  legislated against – prefers a different policy choice is irrelevant. Respondents' policy concerns

20  are not a basis to refuse to enforce the law.

21  ***III. Section 1281.97 Is Not Preempted by the Federal Arbitration Act***

22         Respondents' second layer of defense – federal preemption – fares no better than the first.

23  As multiple cases have previously held, Section 2 of the FAA does not preempt Section 1281.97

24

25  [6] Petitioners cited each of these cases in their Petition. Respondents attempted to distinguish only one – *Waters v. Vroom, Inc.*, No. 22-CV-1191 TWR (AGS), 2023 WL 187577 (S.D. Cal. Jan. 13, 2023), on the purported basis that the AAA had repeatedly reminded Vroom that the fees were due. Opp. at 14. But that was irrelevant to the case's

26  holding, and in that case Vroom had repeatedly attempted to timely pay, but was stymied by an error in the AAA's payment system. *Id.*, at *2. Respondents have simply nothing to say about any of the other relevant precedents. They

27  made their bed and, as the *Vroom* court noted, "must accept the risk they took by waiting." *Id.* at *4.

of the California Code of Civil Procedure. *See Dekker,* 479 F. Supp. 3d at 838 (rejecting

preemption and noting that the Ninth Circuit "found the principle embodied in § 1281.97 is

consistent with the FAA"), *citing Sink v. Aden Enterprises, Inc*., 352 F.3d 1197, 1201 (9th Cir.

2003) (drafting party's continued failure to pay required costs of arbitration 17 days after the due

date was a material breach of the arbitration agreement); *Costa v. Melikov*, No. CV 2:20-09467-

AB-ASX, 2022 WL 18228248, at *4 (C.D. Cal. Oct. 21, 2022) (1281.97 is consistent with the

purpose of the FAA and not preempted); *Agerkop v. Sisyphian LLC*, No. CV1910414CBMJPRX,

2021 WL 1940456, at *4 (C.D. Cal. Apr. 13, 2021), *appeal dismissed sub nom. Tolbert v.

Sisyphian, LL*C, No. 21-55484, 2022 WL 16844513 (9th Cir. Sept. 13, 2022) (1281.97

encourages arbitration and is not preempted); *Postmates Inc. v. 10,356 Individuals,* No.

CV202783PSGJEMX, 2021 WL 540155, at *7 (C.D. Cal. Jan. 19, 2021) (same); *Gallo v. Wood

Ranch USA, Inc*., 81 Cal. App. 5th 621, 641 (2022) ("Critically, sections 1281.97 and 1281.99 do

not commit the additional—and, as noted above, *necessary for preemption*—sin of outright

prohibiting arbitration or more subtly discouraging arbitration.") (emphasis in original). Despite

that precedent, both federal and state, Respondents advance their preemption argument based on

a single federal district court decision, *Belyea v. Greensky*, and three unpublished – and therefore

non-citable – California trial court decisions, two of which predate *Gallo*, *Espinoza*, and *De Leon*

and the third of which is currently on appeal. Opp. at 9-10.[7]

      As an initial matter, the Court need not decide between the result in *Dekker*, *Costa*,

*Agerkop*, *Postmates*, and *Gallo* and those reached in the cases cited by Respondents, because

even under Respondents' preferred cases there would be no preemption here. In attempting to

distinguish the multiple cases rejecting preemption, *Belyea* and *Loeffler* both argued that the

---

[7] California trial court decisions are non-citable pursuant to L.R. 3-4(e), and therefore cannot be cited on this motion. Respondents ask the Court to take "judicial notice" of *Loeffler*, *Morales*, and *Ceballos*, but the California Supreme Court expressly rejected that stratagem in *Hernandez v. Restoration Hardware, Inc.*, 4 Cal. 5th 260, 269 (2018). The Court cannot take judicial notice of items that are not matters of adjudicative fact, such as legal reasoning. F.R.E. 201(a) (allowing judicial notice *only* of "an adjudicative fact, not a legislative fact"). "Adjudicative facts are simply the facts of the particular case. Legislative facts, on the other hand, are those which have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle *or ruling by a judge or court* or in the enactment of a legislative body." F.R.E. 201, advisory committee's note to proposed subdivision (a) (1972) (emphasis added).

1  FAA could only preempt Section 1281.97 if the parties had not agreed to incorporate 1281.97 in

2  their arbitration agreement. *Belyea v. GreenSky, Inc*., No. 20-CV-01693-JSC, 2022 WL

3  14965532, at *9 (N.D. Cal. Oct. 26, 2022); *Loeffler vs. DeMars & Assocs, Ltd*., No. 30-2017-

4  00923227-CU-BT-CJC at *2 (Cal. Super. Ct. Aug. 14, 2020)**.** But here, the Parties' DRA

5  specifically allows for fee shifting under applicable law, which includes Section 1281.97. Cohen

6  Reply Dec. Ex 2 at § 6 ("Each party will pay the fees for [their] own attorneys, *subject to any*

7  *remedies to which that party may later be entitled under applicable law*") (emphasis added).

8  Indeed, though Respondents *now* argue that the DRA is governed *only* by the FAA, and that

9  Section 1281.97's provisions are entirely inapplicable to the parties' agreements, Opp. at 10,

10 they previously argued the opposite in successfully opposing other ex-employees' argument that

11 Twitter had waived its right to compel arbitration by delaying payment of case initiating fees.

12 *See Rodriguez v. Twitter*, N.D. Cal. Case No. Case 3:22-cv-07222-JD, Dkt. No. 46, at Page 10

13 n.2[8] (identifying Section 1281.97 as the "applicable statutory deadline" for payment of JAMS

14 fees). Respondents are thus judicially estopped from denying that the applicable DRA

15 incorporates Section 1281.97's provisions, and have therefore forfeited any claim that such fee-

16 shifting is preempted by the FAA. *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("absent

17 any good explanation, a party should not be allowed to gain an advantage by litigation on one

18 theory, and then seek an inconsistent advantage by pursuing an incompatible theory") (quotation

19 omitted).

20        Moreover, the cases Respondents cite are inapposite for another reason: Petitioners are

21 ***not*** seeking to revoke or avoid enforcement of their arbitration agreements, as would be required

22 for preemption under Section 2 of the FAA. Section 2 of the FAA provides that agreements "to

23 settle by arbitration a controversy" are "valid, irrevocable, and enforceable, save upon such

24 grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. As the

25 Supreme Court explained in *Southland Corporation v. Keating*, Section 2 of the FAA "withdrew

26 the power of the states to require a judicial forum for the resolution of claims which the

27 _____

[8] For the Court's convenience, Respondents' brief in *Rodriguez* is annexed to the Cohen Reply Dec. as Ex. 3.

1 contracting parties agreed to resolve by arbitration." 465 U.S. 1, 10 (1984). *See also Perry v.*

2 *Thomas*, 482 U.S. 483, 489 (1987) ("Section 2, therefore, embodies a clear federal policy of

3 requiring arbitration …"). The FAA does not, however, preempt the entire field of arbitration

4 regulation, and states may regulate arbitration in ways that do not conflict with the FAA. *Volt*

5 *Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 477 (1989)

6 (ruling that FAA did not preempt Section 1281.2(c) of the California Code of Civil Procedure).

7 Here, in response to evidence that employers like Twitter were delaying arbitration by strategic

8 refusal to pay fees, and to encourage arbitrations to proceed swiftly, California's legislature

9 enacted Section 1281.97. S.B. 707(1)(f), 2019-2020 Reg. Sess. (Cal. 2019), *citing*, *inter alia*,

10 *Brown v. Dillard's, Inc*., 430 F.3d 1004, 1009 (9th Cir. 2005) (employer's failure to pay case

11 initiation fees for 37 days constituted breach of the arbitration agreement)**.** That law imposes two

12 potential sanctions on parties that engage in such delay, at the non-breaching party's election: the

13 wronged party can either avoid arbitration entirely or, if they wish to proceed with arbitration,

14 can shift their attorneys' fees to the party engaged in delay. Cal. Code Civ. Proc. § 1281.97(b).

15 Regardless of whether the former sanction would be preempted under the FAA, the latter

16 sanction – fee shifting – clearly is not: it does not "require a judicial forum for the resolution of"

17 the dispute between the parties. *Southland*, 465 U.S. at 10.[9]  To the contrary, a party invoking

18 the fee-shifting sanction of Section 1281.97 must also explicitly confirm that the dispute be

19 resolved in arbitration. Cal. Code. Civ. P. § 1281.97(b)(2). And the California Legislature also

20 expressly noted that the provisions of Section 1281.97 were severable, such that the preemption

21

22 [9] Each of the preemption cases cited by Respondents involved the preemption of a state statute that would have
allowed a party to refuse to arbitrate despite the presence of an arbitration agreement covering the dispute or

23 prevented the parties from agreeing to arbitrate in the first instance. *See Kindred Nursing Centers Ltd. P'ship v.
Clark*, 581 U.S. 246, 251 (2017) (FAA prevented Kentucky law from imposing barrier to entry of arbitration

24 agreements); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 336 (2011) (finding that the FAA preempted law
conditioning enforceability of arbitration agreements on availability of class arbitration); *Chamber of Com. of the*

25 *United States of Am. v. Bonta*, 62 F.4th 473, 484 (9th Cir. 2023) (statute preempted where it prohibited employers
from requiring employees to agree to arbitrate and thereby "invalidated" them within meaning of FAA); *Belyea*,

26 2022 WL 14965532, at *7 (statute preempted because it "makes the arbitration agreement unenforceable"). *Lamps
Plus*, like *Concepcion* and *Stolt-Nielson* before it, held that states could not impose class arbitration procedures on

27 unwilling parties who had not clearly agreed to class arbitration, because the distinction between class- and
individual-arbitration was "fundamental" to arbitration. *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1418 (2019).

1  of § 1281.97(b)(1) would not be a basis to invalidate § 1281.97(b)(2). S.B. 707(1)(f), 2019-2020

2  Reg. Sess. (Cal. 2019) Because Section 1281.97(b)(2) does not invalidate, revoke, or render

3  unenforceable an agreement to arbitrate, Section 2 preemption is entirely inapplicable.

4         Finally, even were that not so, and with the greatest of respect for Magistrate Judge

5  Corley, the *Belyea* court's analysis of Section 1281.97 and preemption was incorrect, and the

6  contrary conclusions reached by Judge Gutierrez in *Postmates*, Judge Marshall in *Agerkop*, and

7  the California Court of Appeal in *Espinosa, De Leon*, and *Gallo* were correct. The decision in

8  *Postmates* is instructive. As the Court noted in finding Section 1281.97 not preempted by the

9  FAA, Section 1281.97 does not invalidate, revoke, or render unenforceable any arbitration

10 agreement, and it does not pose an obstacle to arbitration. *Postmates Inc. v. 10,356 Individuals*,

11 No. CV202783PSGJEMX, 2021 WL 540155, at *7 (C.D. Cal. Jan. 19, 2021) ("SB 707 is pro-

12 arbitration … Instead of nullifying arbitration agreements, the law ensures a speedy resolution

13 under their terms by preventing parties such as Postmates from holding hostage employees' or

14 consumers' validly arbitrable claims"). The rule of Section 1281.97 merely establishes that delay

15 in paying arbitration fees that prevents the arbitration from proceeding[10] is a material breach of

16 the arbitration agreement, a rule entirely consistent with the fundamental purpose of arbitration.

17 *Id.* (Section 1281.97 is pro-arbitration "because it makes arbitration more effective and efficient"

18 and. "ensures a speedy resolution under the [agreement's] terms"). Indeed, the Ninth Circuit has

19 held that a party that "scuttled" its own right to arbitration by "non-payment of costs" has no

20 claim to enforce arbitration under the FAA. *Sink*, 352 F.3d at 1201. And while the Ninth Circuit

21 did not directly address preemption, it implicitly rejected the preemption argument when, in

22 reversing Judge Alsup's decision in *Dekker*, it held that the parties' agreement required the

23 arbitrator to determine whether Vivint Solar had violated Section 1281.97. *Dekker*, 2021 WL

24 4958856, at *2 (9th Cir. Oct. 26, 2021).  Federal preemption was Vivint's lead argument on

---

[10] Respondents' representation to the Court that their delayed payment did not prevent Petitioners' arbitrations from
proceeding is false. JAMS expressly informed the parties that the reason it had not proceeded to appoint arbitrators
in Petitioners' arbitrations – months after their initiation – was that it was waiting on Respondents' payment of the
past-due arbitration fees. Cohen Reply Dec. Ex. **4.** Petitioners do not understand the basis on which Respondents,
whose counsel were included as recipients of that email, asserted otherwise.

appeal in *Dekker*, Brief of Defendant-Appellant at 3-4, Dekker v. Vivint 2021 WL 4958856 (No. 20-16584) (9th Cir. November 25, 2020), Reply Brief of Defendant-Appellant at 3-4, Dekker v. Vivint 2021 WL 4958856 (No. 20-16584) (9th Cir. June 16, 2021),[11] and had the Ninth Circuit believed that the FAA preempted Section 1281.97, it would have reversed the trial court on that basis and precluded any reliance on its provisions, not vacated in favor of allowing the arbitrator to decide whether the statute had in fact been violated and its mandatory sanctions triggered.

For all of these reasons, Respondents' preemption argument must be rejected.

### IV. Section 1281.97 Applies to Each of Petitioners' Demands

Finally, Respondents argue that the non-California Petitioners cannot enforce Section 1281.97 against them. As an initial matter, Respondents are estopped from taking that position. Respondents did not distinguish between California and non-California arbitration claimants; they took the same statutory 30-day period before paying case-initiation fees for any of them. Cohen Dec at ¶ 18 and Ex. 5; *see also Rodriguez v. Twitter*, N.D. Cal. Case No. Case 3:22-cv-07222-JD Dkt. No. 46, Page 10 at FN 2 ("Notably, Twitter has paid and continues to pay all invoices within all applicable statutory deadlines. *See* Cal. Code of Civ. Proc. § 1281.97 (requiring drafting party to the arbitration agreement to pay all fees or costs to initiate an arbitration within 30 days after the due date)."). Respondents did not disaggregate the 15 Petitioners, paying the fees for the 13 non-California citizens when due and taking advantage of Section 1281.97's "statutory deadline" for only the California-based Petitioners; they delayed payment for *all* of the Petitioners. Cohen Dec Ex. 3**.** Nor was that choice driven by JAMS' issuance of a single invoice covering all 15 Petitioners; Twitter took the same 30-day delay in paying the case initiation fees for Dina Lynch Eisenberg, a claimant residing and arbitrating in North Carolina whose case initiation fees were invoiced to Twitter individually. Cohen Reply Dec, ¶ 5. Respondents cannot adopt Section 1287.91 for Twitter's non-California employees when that statute benefits them, as they did when they argued that they were fully complying with § 1281.97 in their successful efforts to compel arbitration in a different case, Cohen Reply

---

[11] Copies of these briefs are annexed to the Cohen Reply Dec. as Exs. 5 and 6 respectively.

Dec. Ex. 3, at 10 n.2, but disclaim its application when it burdens them, as it does here.[12] *See generally, e.g., New Hampshire*, 532 U.S. at 749-50 (judicial estoppel's "purpose is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment") (cleaned up); *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001) (judicial estoppel is invoked to "protect against a litigant playing fast and loose with the courts") (cleaned up).

Beyond that, it is not an extraterritorial application of Section 1281.97 to enforce it against a California corporation subject to the general jurisdiction of the California courts, such as Twitter. Because Twitter is a California-headquartered corporation, an employee seeking to compel Twitter to arbitration can always bring a petition against Twitter in California state court. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (corporation is subject to general jurisdiction in the state where it maintains its principal place of business). Neither the parties' DRA nor their employment offer letters contain any forum selection clause requiring petitions to compel arbitration to be brought anywhere other than California. Cohen Reply Dec ¶ 3 and Ex. 2. And it is beyond dispute that California courts may apply the provisions of the California Code of Civil Procedure to the disputes before them. In any event, because Respondents' decision to delay payment of the case initiating fees emanated from California, the non-California Petitioners may seek relief under California law. *Wang v. OCZ Tech. Grp., Inc.*, 276 F.R.D. 618, 629 (N.D. Cal. 2011) ("State remedies may extend to out-of-state parties, however, when the parties are harmed

---

[12] Ironically, were it not for the protection of the 30-day period afforded by Section 1291.97, Respondents would **already** be in material breach of their agreements to arbitrate with each of the thousands of former employees for whom they delayed payment, invalidating the entire Dispute Resolution Agreement, arbitration provision, class action waiver, and all. As Respondents point out in their brief, Opp. at 7, Cal. Civ. Code § 1657.1 states that "[a]ny time specified in a contract of adhesion for the performance of an act required to be performed shall be reasonable." But the preceding section states that "[i]f the act is in its nature capable of being done instantly – as, for example, if it consists in the payment of money only – it must be performed immediately upon the thing to be done being exactly ascertained," Cal. Civ. Code § 1657, and indeed, in *these* contracts of adhesion, the time specified for the performance of the fees is "upon receipt of the invoice." Cohen Reply Dec. Ex. 2 at 5 (parties agree to bring claim "pursuant to the then-current JAMS rules"); Cohen Dec. Ex. 2 ("Payment is due upon receipt."). Respondents did not pay these fees until **sixty days** since that due date had elapsed, putting them at far greater delay than the 17 days in *Sink* and the 37 days in *Brown* – and the 9th Circuit held both of those delays sufficient to find breach. *Cf.* Brown, 430 F.3d at 1012 ("Dillard's breached the arbitration agreement itself by refusing to arbitrate."); *Sink*, 352 F.3d at 1200 ("We affirm the district court's conclusion that Aden defaulted in the arbitration.").

by wrongful conduct occurring in California"). *See also Diamond Multimedia Sys., Inc. v. Superior Ct.*, 19 Cal. 4th 1036, 1060, n.20 (1999) ("The presumption against extraterritoriality is one against an intent to encompass *conduct* occurring in a foreign jurisdiction in the prohibitions and remedies of a domestic statute") (emphasis in original).

## CONCLUSION

Respondents deliberately delayed payment of Petitioners' case initiating fees – and thereby the progress of their arbitrations – by nearly 60 days. They did so in reliance on Section 1281.97, and their own misreading of that law as permitting late payment if an invoice was marked closed. Respondents demonstrated their bad faith by delaying the payments – and thereby the arbitrations –for an additional 30 days after JAMS issued its new invoice, and none of Respondents' arguments on this motion can rescue them from the statutory consequences of that choice. The Petition should be granted, and Respondents directed to pay reasonable attorneys' fees and costs for Petitioners' arbitrations.[13]

Dated:      May 19, 2023

By: /s/ Ethan Jacobs
Ethan Jacobs
ETHAN JACOBS LAW CORPORATION
100 Pine Street, Suite 1250
San Francisco, California 94111
ethan@ejacobslaw.com

Akiva M. Cohen
KAMERMAN, UNCYK, SONIKER &
  KLEIN P.C.
1700 Broadway, 16th Floor
New York, New York 10019
acohen@kusklaw.com

*Attorneys for Petitioners*

---

[13] Respondents will make a separate fee application for the fees incurred in making this Petition to the appropriate court after a ruling that they are entitled to those fees.

13.