Ethan Jacobs (SBN 291838)
Ethan Jacobs Law Corporation
ethan@ejacobslaw.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 275-0845

Akiva M. Cohen  (admitted  *pro  hac  vice*)
Kamerman, Uncyk, Soniker & Klein P.C.
acohen@kusklaw.com
1700 Broadway, 16th Floor
New York, New York 10019
Attorneys for Petitioners

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARAH ANOKE, CATHERINE BONN, ISABELLE CANNELL, MELANIE EUSEBIO, SAMANTHA FESTEJO, CARLOS MOISES ORTIZ GOMEZ, DAWN HOISE, WAYNE KRUG, LAURENT LUCE, PATRICK O'CONNELL, JENNIFER RYAN, JAIME SENA, JAMES SHOBE, KARYN THOMPSON, AND CRISTIAN ZAPATA,<br><br>Petitioners,<br><br>vs.<br><br>TWITTER, INC., X HOLDINGS I, INC., X HOLDINGS CORP, X CORP, AND ELON MUSK,<br><br>Respondents. | Case No.: 3:23-cv-02217-SI<br><br>**DECLARATION OF AKIVA M. COHEN IN FURTHER SUPPORT OF PETITION TO COMPEL ARBITRATION PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 1281.97**<br><br>Hon. Susan Illston<br>Date: June 16, 2023<br>Time: 10:00 AM<br><br>Ctrm: 1, 17th Floor |

I, Akiva M. Cohen, declare as follows:

1.      I am counsel to Petitioners in this action and submit this Declaration in further

support of their Petition for sanctions under Section 1281.97 of the California Code of Civil

Procedure. I have personal knowledge of the facts set forth herein and could and would testify

competently thereto if required to do so.

- 1 -

2.      Annexed hereto as **Exhibit 1** is a true and correct copy of the Assembly Judicial Committee Analysis of SB 707, dated June 18, 2019.

3.      Annexed hereto as **Exhibit 2** is a true and correct copy of the Dispute Resolution Agreement ("DRA") signed by Petitioner Sarah Anoke. I am fully familiar with the DRAs and offer letters signed by Petitioners, and Ms. Anoke's DRA is representative in all relevant respects of the DRAs signed by each Petitioner. As reflected therein, Respondents' form DRA did not require that motions to compel arbitration or require Respondents to pay arbitration fees be brought in any particular forum. Petitioners' offer letters likewise had no such provision.

4.      Annexed hereto as **Exhibit 3** is a true and correct copy of the Reply Brief submitted by Respondent X corp. f/k/a Twitter, Inc. in *Rodriguez v. Twitter*, N.D. Cal. Case No. Case 3:22-cv-07222-JD, in further support of their motion to compel arbitration, in which Respondent affirmatively (and successfully) argued that their delay in paying arbitration fees was not a breach of the arbitration agreements allowing denial of their motion to compel arbitration, because the agreements and delay were governed by Section 1281.97.

5.      *Rodriguez* is not the only other dispute in which Respondents have taken advantage of the grace period afforded by Section 1281.97, and Respondents have not limited their reliance on it to claims filed by California-based former employees. Respondents have imposed the same 30-day delay (by delaying payment of invoices) on *each* of our clients, *regardless* of where that client was located. For example, in the arbitration filed by Ms. Lynch-Eisenberg, Respondents effectively delayed the arbitration by 60 days – first by delaying payment of the case initiating fees by roughly 30 days, and then by delaying for 30 days payment of a subsequent invoice for arbitrator fees. In that particular arbitration, the result is that a motion my client filed in late April after appointment of the arbitrator remains pending 28 days later, without so much as a briefing schedule, because Respondents waited roughly 30 days before paying the arbitrator fees that had been invoiced on

April 13.

6.     Annexed hereto as **Exhibit 4** is a true and correct copy of an email from Sarah Nevins dated May 4, 2023.

7.     Annexed hereto as **Exhibit 5** is a true and correct copy of the Brief of Defendant-Appellant, Dekker v. Vivint 2021 WL 4958856 (No. 20-16584) (9th Cir. November 25, 2020).

8.     Annexed hereto as **Exhibit 6** is a true and correct copy of the Reply Brief of Defendant-Appellant, Dekker v. Vivint 2021 WL 4958856 (No. 20-16584) (9th Cir. June 16, 2021).

9.     Finally, while this is not relevant to the outcome of the Petition and therefore not addressed in the Reply Brief, Respondents complain in their opposition that Petitioners' "meet and confer efforts" were insufficient. Opposition Brief at 5. Petitioners had no obligation to meet and confer in advance of seeking the automatic sanctions provided in Section 1281.97 for Respondents' failure to timely pay case initiation fees, and did not reach out to Respondents' counsel for purposes of seeking their "response" to that fact. We reached out to Respondents' counsel, in order to learn their availability for hearing before noticing the Petition as returnable on something other than a mutually convenient date.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed this 19th day of May 2023 in Oceanside, NY.


Akiva M. Cohen

REPLY IN FURTHER SUPPORT OF PETITION TO COMPEL ARBITRATION – DECLARATION OF AKIVA M. COHEN

# EXHIBIT 1

Date of Hearing:  June 18, 2019

ASSEMBLY  COMMITTEE  ON JUDICIARY
Mark Stone, Chair
SB 707 (Wieckowski) – As Amended May 20, 2019

**SENATE VOTE**: 29-8

**SUBJECT**:  ARBITRATION  AGREEMENTS:  BREACH BY DRAFTING PARTY:
ENFORCEMENT

**KEY ISSUES**:

1)  SHOULD THE DRAFTING PARTY OF AN EMPLOYMENT OR CONSUMER
    RELATED  ARBITRATION  AGREEMENT  THAT FAILS TO PAY FOR A
    SUBSEQUENT ARBITRATION  PROCEEDING BE SUBJECT TO SANCTIONS?

2)  SHOULD THE FAILURE OF A DRAFTING PARTY TO PAY THE REQUIRED COSTS
    AND FEES ASSOCIATED WITH THE ARBITRATION  PROCEEDING PERMIT AN
    EMPLOYEE OR CONSUMER OTHERWISE REQUIRED TO ARBITRATE  THEIR
    CLAIMS TO SEEK REDRESS  IN COURT?

3)  SHOULD ARBITRATION  COMPANIES BE REQUIRED TO PUBLISH SPECIFIED
    DEMOGRAPHIC  INFORMATION REGARDING  ARBITRATORS?

## SYNOPSIS

*Arbitration is a controversial form of alternative dispute resolution held outside of courts where
a third-party, typically a retired judge, makes a binding determination in favor of one party to
the proceeding.  Proponents of arbitration highlight that arbitration can be a more efficient and
somewhat lower cost alternative to litigation.  Opponents of arbitration contend that decisions
can frequently favor the more powerful drafting party, and that rules of evidence or civil
procedure can be limited or waived.  Despite the ongoing debate over the merits of arbitration,
the United States Supreme Court has liberally interpreted the Federal Arbitration Act to preempt
state laws regarding arbitration, resulting in arbitration provisions becoming a dominant
feature of nearly every employment and consumer contract, contracts that frequently are take-it-
or-leave-it contracts of adhesion.  Recognizing that arbitration is frequently foisted on
consumers and employees by the party drafting these contracts of adhesion, courts have
generally required the drafting party to pay for the cost and fees associated with the arbitration
as a matter of basic fairness.  While case law requires such payment in California, the existing
law remains unclear about what remedies an employee or consumer has if a drafting party failed
to pay for the arbitration in a timely manner.*

*Seeking to provide employees and consumers with a clear set of alternatives in the event a
drafting party fails to pay for arbitration, this bill offers several remedies.  First, this bill
provides that if a drafting party fails to pay any costs or fees associated with the arbitration
within 30 days of the passing of the due date, the consumer or employee is free to remove the
matter to court, or continue with arbitration and seek the recovery of the costs and fees.
Additionally, to deter drafting parties from reneging on their obligation to pay the arbitration-
related costs and fees, this bill imposes mandatory monetary sanctions on drafting parties and*

*permits the adjudicatory body to impose additional evidentiary or related sanctions on the drafting party. Finally, recognizing that there is currently little information on the demographics of arbitrators, this bill would require arbitration companies to publish self-reporting demographic data voluntarily collected from the arbitrators they employ.*

*This bill is sponsored by the California Employment Lawyers Association and the Consumer Attorneys of California and is supported by several other labor or consumer protection organizations. The support coalition, representing the parties most likely to find themselves trapped in an unfunded arbitration proceeding, argue that this bill provides employees and consumers with clear remedies in the event that a drafting parties fails to live up to its clear obligations under state law. This measure is opposed by the California Chamber of Commerce and a coalition of business organizations who believe that the current provisions of the bill providing that any failure to pay for arbitration, even a small non-payment, subjects the drafting party to significant sanctions, go too far.*

**SUMMARY:** Provides that the drafting party of a commercial or employment related arbitration agreement is in material breach of the arbitration agreement if the drafting party fails to pay, as required by existing law, specified costs and fees associated with the arbitration proceeding. Specifically, **this bill**:

1) Adds the following definitions to the California Arbitration Act:

   a) "Consumer" means an individual who seeks, uses, or acquires, by purchase or lease, any goods or services for personal, family, or household purposes;

   b) "Drafting party" means the company or business that included a predispute arbitration provision in a contract with a consumer or employee. The term includes any third party relying upon, or otherwise subject to the arbitration provision, other than the employee or consumer; and

   c) "Employee" means any current employee, former employee, or applicant for employment. The term includes any person who is, was, or who claims to have been misclassified as an independent contractor or otherwise improperly placed into a category other than employee or applicant for employment.

2) Provides that in an employment or consumer arbitration that requires, either expressly or through application of state or federal law or the rules of the arbitration administrator, the drafting party to pay certain fees and costs before the arbitration can proceed, if the fees or costs to initiate an arbitration proceeding are not paid within 30 days after the due date, the drafting party is in material breach of the arbitration agreement, is in default of the arbitration, and waives its right to compel arbitration pursuant to existing law.

3) Provides that in the event of a material breach of an arbitration agreement pursuant to 2), an employee or consumer may do the following:

   a) Withdraw the claim from arbitration and proceed in a court of appropriate jurisdiction; or

   b) Compel arbitration in which the drafting party shall pay reasonable attorney's fees and costs related to the arbitration.

4) Provides that if an employee or consumer withdraws a claim from arbitration pursuant to 3), the statute of limitations with regard to all claims brought or that relate back to any claim brought in arbitration shall be tolled as of the date of the first filing of a claim in any court, arbitration forum, or other dispute resolution forum.

5) Provides that if the employee or consumer proceeds with an action in a court of appropriate jurisdiction, pursuant to 3), the court shall impose sanctions on the drafting party in accordance with 10) and 11).

6) Provides that in an employment or consumer arbitration that requires, either expressly or through application of state or federal law or the rules of the arbitration provider, that the drafting party pay certain fees and costs during the pendency of an arbitration proceeding, if the fees or costs required to continue the arbitration proceeding are not paid within 30 days after the due date, the drafting party is in material breach of the arbitration agreement, is in default of the arbitration, and waives its right to compel employee or consumer to proceed with that arbitration as a result of the material breach.

7) Provides that in the event of a material breach of an arbitration agreement pursuant to 6), an employee or consumer may unilaterally elect to do any of the following:

   a) Withdraw the claim from arbitration and proceed in a court of appropriate jurisdiction, and provides that the statute of limitations with regard to all claims brought or that relate back to any claim brought in arbitration shall be tolled as of the date of the first filing of a claim in any court, arbitration forum, or other dispute resolution forum;

   b) Continue the arbitration proceeding, if the arbitration company agrees to continue administering the proceeding, notwithstanding the drafting party's failure to pay fees or costs and permit the neutral arbitrator or arbitration company to commence a collection action at the conclusion of the arbitration proceeding against the drafting party that is in default of the arbitration for payment of all fees associated with the employment or consumer arbitration proceeding, including the cost of administering any proceedings after the default.

   c) Petition the court for an order compelling the drafting party to pay all arbitration fees that the drafting party is obligated to pay under the arbitration agreement or the rules of the arbitration company; or

   d) Pay the drafting party's fees and proceed with the arbitration proceeding and permit, as part of the award, the employee or consumer to recover all arbitration fees paid on behalf of the drafting party without regard to any findings on the merits in the underlying arbitration.

8) Provides that if an employee or consumer withdraws a claim from arbitration pursuant to 7) both of the following shall apply:

   a) The employee or consumer may bring a motion, or a separate action, to recover all attorney's fees and all costs associated with the abandoned arbitration proceeding, and the eventual recovery of arbitration fees, interest, and related attorney's fees shall be without regard to any findings on the merits in the underlying action or arbitration; and

b)  The court shall impose sanctions on the drafting party in accordance with 10) and 11).

9) Provides that if the employee or consumer continues in arbitration pursuant to 7), the arbitrator may pose appropriate sanctions on the drafting party, including monetary sanctions, issue sanctions, evidence sanctions, or terminating sanctions.

10) Requires the court to impose a monetary sanction against a drafting party that materially breaches an arbitration agreement pursuant to 2) or 6) by ordering the drafting party to pay the reasonable expenses, including attorney's fees and costs, incurred by the employee or consumer as a result of the material breach.

11) Permits the court, in addition to the monetary sanctions imposed pursuant to 10) to impose any of the following sanctions against a drafting party that materially breaches an arbitration agreement pursuant 2) or 6), unless the court finds that the drafting party subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust:

a)  An evidence sanction by an order prohibiting the drafting party from conducting discovery in the civil action;

b)  A terminating sanction that strikes out the pleadings, or parts thereof, by the drafting party or rendering a judgment by default against the drafting party; or

c)  A contempt sanction by an order treating the drafting party as in contempt of court.

12) Requires an arbitration company that administers, or is otherwise involved in a consumer arbitration, to also include in the required report the demographic data relative to ethnicity, race, disability, veteran status, gender, gender identity, and sexual orientation of all arbitrators as provided by the arbitrators.

13) Makes various findings and declarations providing that existing state and federal case law, generally, holds that the drafting party in an employment or consumer arbitration agreement is obligated to pay for the fees and costs associated with arbitration and that a failure to do so renders the arbitration agreement in breach. Provides that the intent of this bill is to affirm the existing case law into statute.

14) Adopts a severability clause.

**EXISTING LAW**:

1) Governs arbitrations in California, pursuant to the California Arbitration Act (CAA), including the enforcement of arbitration agreements, rules for neutral arbitrators, the conduct of arbitration proceedings, and the enforcement of arbitration awards. (Code of Civil Procedure Section 1280 *et seq.*)

2) Provides that on petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless the court determines specified grounds exist. (Code of Civil Procedure Section 1281.2.)

3) Provides that if a court of competent jurisdiction has ordered arbitration of a controversy which is an issue involved in an action or proceeding before a court of this state, the court in which such action or proceeding is pending shall, upon a motion of a party, stay the action or proceeding until an arbitration is conducted. (Code of Civil Procedure Section 1281.4.)

4) States that if an arbitration agreement provides a method of appointing an arbitrator, that method shall be followed. Additionally states that if an arbitration agreement does not provide a method for appointing an arbitrator, the parties to the agreement who seek arbitration and against whom arbitration is sought may agree on a method of appointing an arbitrator and that method shall be followed. (Code of Civil Procedure Section 1281.6.)

5) Prohibits, generally, a private arbitration company from administering a consumer arbitration if the company has, within the previous year, had a financial interest in any party to the case, or representative thereof. (Code of Civil Procedure Section 1281.92.)

6) Requires an arbitration company that administers or is otherwise involved in a consumer arbitration to publish and make available to the public, as specified, a single cumulative report that contains certain information, including the name of the arbitrator, the arbitrator's fee for the case, the percentage of the fee the arbitrator collected, and whether a fee waiver was granted. (Code of Civil Procedure Section 1281.96.)

7) Provides that, among other behaviors, it is a misuse of the discovery process to utilize tactics that result in unwarranted annoyance, embarrassment, or oppression, or undue burden and expense. (Code of Civil Procedure Section 2023.010.)

8) Provides that the court may impose monetary sanctions on any person engaging in the misuse of the discovery process, or any attorney advising that conduct, or both pay the reasonable expenses, including attorney's fees, incurred by anyone as a result of that conduct. (Code of Civil Procedure Section 2023.030 (a).)

9) Provides that the court may impose an evidentiary sanction by an order prohibiting any party engaging in the misuse of the discovery process from introducing designated matters in evidence. (Code of Civil Procedure Section 2023.030 (c).)

10) Requires the Governor, the State Bar, and the Administrative Office of the Courts to collect and release each year, on an aggregate statewide basis, specified information regarding the demographic data relative to ethnicity, race, disability, veteran status, gender, gender identity, and sexual orientation of judicial applicants, judicial appointees, or judicial nominees, as provided by them, and the percentage of respondents who declined to respond. (Government Code Section 12011.5 (n).)

**FISCAL EFFECT**: As currently in print this bill is keyed non-fiscal.

**COMMENTS**: Recognizing that many arbitration agreements are placed into contracts of adhesion, this bill seek to protect employees and consumers by ensuring that the party that drafts the arbitration agreement cannot delay adjudication of a dispute by refusing to participate in, or pay for, arbitration. Specifically, building on an existing body of case law, this bill would hold that if the fees or costs required to initiate or continue an arbitration proceeding are not paid by the drafting party within 30 days of the due date, that party is in default of the agreement and the

employee or consumer may seek to pursue their claims in court and trigger sanctions on the drafting parties. In support of this bill, the author states:

> SB 707 ensures that individuals who have been forced to submit to mandatory arbitration to resolve an employment or consumer dispute would be provided with procedural options and remedies under this bill when a company stalls or obstructs the arbitration proceeding by refusing to pay the required fees.

***As arbitration provisions have become ubiquitous in employment and consumer contracts, the parties drafting these adhesion contracts have gained significant advantages.*** Arbitration is a form of alternative dispute resolution held outside of courts where a third-party, rather than a judge, makes a binding decision regarding a potential award that is rarely appealable. Arbitration can pose significant difficulties for the party forced to adjudicate its claims outside of court. Existing law permits arbitration agreements to contain limits on evidence presented and the claims that can be considered. Arbitration can also save employers and providers of consumer goods and services significant time and costs when compared to court, thus there is little question why the more powerful signatory to a contract would demand arbitration.

Most arbitration agreements are contained within a broader contract, usually a contract that is adhesive or take-it-or-leave-it. The arbitration agreement will lay-out the procedures that will be followed during the arbitration hearing. For example, the terms of the arbitration agreement may stipulate that the award need not be written or justified, unlike in court, and that the entire process be kept in secret. Arbitrators do not need to be lawyers, nor do they need to be trained in the law. Arbitrators who issue favorable awards to a particular company can be repeatedly-hired by that same company to serve as the arbitration-neutral without ever notifying the public about that award-history. It's easy to predict the calls if you can hire the umpire.

Over the past twenty years, federal courts have significantly expanded the validity of arbitration provisions in contracts of adhesion and considerably infringed on state's ability to regulate such agreements. (*See, e.g.*, *AT&T Mobility LLC v. Concepcion* (2011) 562 U.S. 333.) Recognizing that many arbitration agreements are contained within contracts of adhesion, courts have sought to add some modicum of fairness to the process by holding that in such contracts, especially when statutory rights are being arbitrated, the agreements cannot require the employee or consumer to "pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum." (*Cole v. Burns International Security Services* (1997) 105 F.3d 1465, 1482.) In California, both state and federal courts have adopted the standard utilized by the United States Court of Appeals for the District of Columbia Circuit in the *Cole* decision. Accordingly, any time an employment or consumer contract requires arbitration, the drafting party should be paying the associated fees.

Given that employees and consumers frequently possess little if any choice in agreeing to arbitrate claims, the requirement that a drafting party pay for the cost of the arbitration is wholly reasonable. However, when the drafting party fails to properly pay for the arbitration, existing law does not provide the employee and customer with a clear means to redress their harms. Although courts have held that such failures to pay for arbitration may be grounds to invalidate an arbitration agreement, state law does not provide clear guidance for courts and litigants in the event a drafting party fails to properly pay to commence arbitration in a timely manner.

***While existing case law requires the drafting party to pay for arbitration, some companies fail to comply with these requirements.*** As remedies for employees and consumers have narrowed,

the rate of arbitration filings has increased significantly. For example, after Uber won the right to prohibit its drivers from contesting wage claims as a class, the company was forced to arbitrate the claims of over 12,500 drivers. (*O'Connor v. Uber Techs.* (2018) 904 F.3d 1087.) Similarly, the burrito chain Chipotle was forced to arbitrate over 2,800 wage theft claims in recent years. While proponents of arbitration continue to argue that it is a cheaper, faster, more efficient way to resolve disputes in comparison to the overburdened court system, arbitration requirements can quickly burdensome for companies facing significant numbers of claims.

Though there is a significant degree of irony that many company's strident instance on inserting class action waivers into arbitration agreements is now burdening their corporate legal departments with thousands of individual claims in arbitration, the side effect of such actions are now being felt by employees and consumers as well as the companies. For example, of the 12,500 demands for arbitration filed by Uber drivers, the company has only paid its initial filing fee in 296 cases. (Frankel, Alison, *Forced into arbitration, 12,500 drivers claim Uber won't pay fees to launch cases*, Reuters (Dec. 6, 2018).) As a result, only 47 arbitrators have been appointed to handle the Uber disputes; of those, Uber has only paid the $1,500 retention fee in six cases. (*Ibid.*) Paradoxically, by refusing to pay the arbitration costs and fees as required by law, Uber and other similarly situated companies are managing to delay the adjudication of claims and postpone the payment of any potential judgments against the company in the name of a process that is supposed to be cheaper and easier for the parties. Because existing case law forces companies to pay for arbitration, but does not provide clear remedies for employees or consumers who are caught in limbo by unpaid arbitration fees, this lack of clarity means that a drafting party can avoid the consequences of their behavior by not paying for the dispute to be arbitrated.

***This bill.*** Recognizing that the failure of a drafting party to pay arbitration fees in a timely manner can inflict significant harm on consumer and employees, this bill adds several provisions to existing law to enable employees and consumers to seek redress of their claims in a timely manner, and establishes disincentives to ensure that such behavior does not occur in the first place.

First, this bill provides that any drafting party that fails to pay the fees necessary to commence or continue arbitration, within 30 days after such fees being due to be tendered to the arbitrator, the drafting party is held to have materially breached the arbitration and is in default of the agreement.

Second, this bill provides consumers or employees several remedies in the event a drafting party breaches the arbitration agreement by failing to pay the arbitration costs and fees. The bill would permit, should the drafting party fail to pay the costs necessary to commence arbitration, the employee or consumer to remove the matter to court or move to compel the arbitration. In the event that the drafting party fails to pay the fees or costs necessary to continue an arbitration currently in progress, the bill enables the employee or consumer to move the matter to court, seek a court order compelling the payment of the fees, continue the arbitration and permit the arbitrator to seek collection of their fees, or pay the costs and fees and seek those fees from the drafting party at the conclusion of the arbitration regardless of the ultimate outcome.

Finally, to deter drafting parties from failing to pay arbitration costs and fees in a timely manner, this bill imposes mandatory monetary sanctions on any drafting party found to be in default of an

arbitration agreement for failure to pay costs and fees, and permits the imposition of additional evidentiary, terminating, or contempt sanctions, as the court or arbitrator sees fit.

Furthermore, recognizing that the state has very little information regarding the demographics of those serving as arbitrators, this bill would require arbitration companies to report demographic data, on an aggregate basis, regarding the ethnicity, race, disability status, veteran status, gender, gender identity, and sexual orientation of all arbitrators. The bill would permit this information to be provided on a self-reporting basis by arbitrators and would require the arbitration company to disclose the percentage of arbitrators who declined to respond.

***Justice delayed is justice denied.*** As noted above, employees and consumers forced to arbitrate claims against large companies are at a distinct disadvantage. Should the ambiguity in existing statutes permit companies that draft arbitration agreements to delay the adjudication of claims, these drafting parties can simply deny claimants any semblance of justice by simply refusing to pay for the arbitration they contracted for. Indeed, if such a system were permitted to continue, courts have suggested this would create a, "perverse incentive scheme" whereby "employers… would have an incentive to refuse to arbitrate claims brought by employees in the hope that the frustrated employees would simply abandon them." (*Brown v. Dillards, Inc.* (2005) 430 F.3df 1004, 1012.)

To ensure that a drafting party cannot unilaterally prevent a party from adjudicating their claims in the forum that the drafting party unilaterally foisted onto the claimant, this bill would provide employees and consumers remedies if a drafting party refuses to pay. Most importantly, this bill provides employees and consumers to get their claim adjudicated in the venue of their choice in a timely manner.

***The sanctions provided in this bill are intended to deter bad actors.*** In opposition to this measure, the California Chamber of Commerce, and a coalition of business organizations, object to the provisions of this bill providing that failure to pay arbitration costs and fees in a timely manner constitutes a material breach of a contract. A material breach is typically viewed as a breach of contract so serious as to permit the non-breaching party to excuse additional performance of the contract, in this case remain in arbitration. Not only would this bill excuse the performance of the contract in the case of a material breach, but it would also impose sanctions on the breaching party. The California Chamber of Commerce notes that these provisions may impose sanctions even if, "the drafting party paid a majority of the fees and costs, but yet a small, minor portion was not paid." The opposition appears to argue that a relative small non-payment of arbitration fees or costs should not constitute a material breach of the contract.

The opposition is not incorrect in stating that a failure to pay the required costs and fees in full would expose a company to significant monetary penalties and potentially serious evidentiary sanctions or a contempt holding. However, this risk should also be viewed in light of the harm that the drafting party's breach of contract could impose on employees or consumers who are in limbo, with no avenue to pursue their legal rights. Particularly in employment matters, the plaintiff's livelihood may be the subject of the adjudication. Although a large company may view its failure to pay a few hundred dollars for arbitration as a minor, immaterial, mistake, that mistake may delay the hearing of an employee's claims. While immaterial to the drafting party, the ensuing delay associated with this minor error could be significant to the employee, who may not be able to pay bills, rent or other expenses that could result in the loss of their residence, or

damage to their credit rating, while the dispute remains unresolved.  For example, when chastising Chipotle's request to delay the filing of arbitration claims on the grounds that the claims were overwhelming the company, the court stated that the company's attempt to delay and obfuscate the adjudication of claims was "unseemly."  (Order Denying Defendant Chipotle Mexican Grill, Inc's Motion for Entry of Judgement Pursuant to Fed. R. Civ. P. 54(B) (ECF No. 202) and Motion to Reinstate Stay (ECF No. 203), Kane, J., Case No. 1-14-cv-02612-JLK, Document 212, (Nov. 20, 2018), U.S.D.C. Colorado.)  Furthermore, as noted in the *Dillard's* case, a failure to stop such conduct would establish a perverse incentive for drafting parties to demand arbitration in a contract of adhesion and then refuse to pay the arbitrator when a claim was made.  In light of the extreme hardship that needlessly delaying arbitration may cause to plaintiffs, the material breach and sanction provisions of this bill would seem to be a strict yet reasonable method to ensure the timely adjudication of employee and consumer claims that are subject to arbitration.

***This bill appears to narrowly target those who are most at risk from predatory arbitration delays.***  In keeping this bill in line with much of the existing case law, the author focuses on arbitration involving employment and consumer disputes.  After negotiations between the stakeholders, the definition of consumer was narrowed in the Senate to only include persons who "purchase or lease" good and services.  The bill currently defines an employee as, "any current employee, former employee, or applicant for employment" and includes any person who "is, was, or who claims to have been misclassified as an independent contractor," or otherwise misclassified in their employment.

Beyond the opposition to this bill stated by the California Chamber of Commerce and their associated coalition, the San Gabriel Valley Economic Partnership contends that the definition of employee provided by this bill is too broad.  In particular, the Partnership objects to the inclusion of employees who allege they are misclassified as independent contractors.  This objection appears to encompass many of the "gig economy" employees who have fought for years in courts and in arbitration to be properly classified under the law.  The Partnership contends that, "under the proposed definition, this individual could request the company pay for the arbitrator…even if the actual contract between a company and independent contractor provides otherwise.  If the company refuses to pay within 30 days on the basis that the individual is not an employee…this would be a material breach."

Ironically, many of the "independent contractors" that the San Gabriel Valley Economic Partnership would like to see pay their share of the fees actually involve employees misclassified as independent contractors.  For example, entwined within the wage claims against Uber, discussed above, included allegations of employee misclassification.  It should be noted that nothing in this bill would preclude an arbitrator from subsequently requiring a plaintiff to reimburse a drafting party for arbitration costs and fees should the arbitrator determine the plaintiff was in fact an independent contractor.  Furthermore, the intent of the case law requiring the drafting party to pay for arbitration reflects the general belief that fairness dictates that the law "places the cost of arbitration on the party that imposes it."  (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal. 83, 111.)  The case law notes that in the absence of such a rule there is "significant risk that employees will have to bear large costs to vindicate their statutory right."  (*Id.*at p. 110.)  Many of the independent contractors in the "gig economy" face similar economic hardships as employees.  Recognizing that the intent of the case law this bill seeks to codify is to protect the economically vulnerable party in an arbitration, including

misclassified workers, incorporating such plaintiffs into the definition of employee seems wholly consistent with the case law and is a reasonable component this bill.

***Changes in corporate circumstances and the burdens of arbitration.*** The entire coalition opposing this bill also notes that the strict provisions surrounding the breach of the contract and associated sanctions are unfair to companies who no longer possess the "same financial means" at the time arbitration is demanded as the company did when they drafted the contract providing arbitration as the only venue for consumers or employees to adjudicate issues. While they concede that such a circumstance may warrant moving the dispute to court they contend imposing sanctions in such a case would be unwarranted.

The concerns of the business community are not wholly unjustified. For example, should a recession drive a company to the brink of bankruptcy, the company may truly have no ability to pay for arbitration through no fault of their own. Nevertheless, regardless of a company's situation, a business that finds itself stuck in an arbitration it cannot afford can easily trace its own choice – perhaps motivated by corporate America's zealous insistence on placing binding arbitration provisions in nearly every contract of adhesion it signs with employees or consumers – to require arbitration. Furthermore, regardless of a company's finances, it should be noted that existing binding arbitration agreements leave employees and consumers with few remedies. While a company is attempting to determine its ability to afford arbitration, the existing law is leaving employee and consumer claims in limbo. Accordingly, the sanctions, while unforgiving, seem justified regardless of the present economic status of the drafting party. Perhaps, in order to lessen their risk of sanctions, drafting parties should reconsider their liberal use of binding arbitration provisions in contracts, or at a minimum, consider drafting these agreement in a manner that provides all parties increased access to the court system in the event circumstances arise that warrant adjudicating disputes in court.

***Presently the legal profession is attempting to study and address its struggle to diversify, however, despite their critical role in the legal system, very little data exists regarding the diversity of arbitrators.*** Last month, this Committee held an informational hearing examining the legal profession's striking lack of diversity. As a part of the background for that hearing the Committee highlighted data from the State Bar of California that noted that 80 percent of California attorneys were white, compared with just 37 percent of the state's population as a whole. The Committee also expressed a concern that the present lack of diversity found within the bar and on the bench may translate into the ranks of arbitrators, especially given that most arbitrators are typically retired attorneys or judges. Notably, iconic music mogul Jay-Z raised this concern when he challenged the American Arbitration Association's purported lack of qualified African Americans on its roster of arbitrators. Jay-Z stated, "It would stand to reason that prospective litigants – which undoubtable include minority owned and operated business – expect there to be the possibility that the person who stands in the shoes of both judge and jury reflect the diverse population." (Dan Packel, *Jay-Z, Quinn Emanuel Say AAA Offers Only "Token" Black Arbitrators,* The Recorder (Nov. 28, 2018), quoting Jay-Z.)

A 2015 survey of arbitrators nationwide would seem to justify the concerns of both Jay-Z and this Committee, finding that a staggering 92 percent of arbitrators were white and 74 percent were male. (Colvin & Stone, *The Arbitration Epidemic- Mandatory arbitration deprives workers and consumers of their rights,* Economic Policy Institute (Dec. 7, 2015).) The proponents of this measure note that although California collects significant information regarding arbitration companies' behavior, as well as significant demographic data about judges

and attorneys, the state does not collect demographic data regarding arbitrators. Accordingly, this bill seeks to impose a modest, self-reporting demographic data requirement on arbitration companies. In support of these provisions the author states:

> SB 707 will also require arbitration companies to report the same kind of demographic information that our judiciary is required to report (including gender, race and ethnicity). The purpose of this is to hopefully galvanize some better recruitment and hiring practices by the arbitration companies and highlight the fact that arbitration cannot be a fair process when the arbitrators do not remotely reflect the diverse experiences and backgrounds of the people who are bringing their claims before them, or are forced to bring their claims before them, which is very often the case.

It should be noted that none of the opposition to this measure objects to the demographic data collection provisions.

*ARGUMENTS IN SUPPORT:* This bill is co-sponsored by the Consumer Attorneys of California and the California Employment Lawyers Association who represent many of the parties in the arbitration proceedings in which the drafting party may fail to pay for the costs of the proceedings. In support of the bill the California Employment Lawyers Association states:

> SB 707 bill addresses two distinct problems in arbitration. First, the procedural limbo and delay workers and consumers face when they submit to arbitration, pursuant to a mandatory arbitration agreement, but the employer fails or refuses to pay their share of the arbitration fees. Second, the alarming lack of diversity in the arbitration industry, which calls into question the ability of the industry to fairly adjudicate claims brought by an increasingly diverse workforce in California.

*ARGUMENTS IN OPPOSITION:* This bill is opposed by the California Chamber of Commerce and a coalition of affiliated business organizations. Writing for the coalition, the Chamber of Commerce states:

> The main remaining concern is the actions or omissions that qualify as a "material breach" and trigger loss of opportunity to arbitrate, monetary damages/sanctions, and possibly more severe sanctions such as evidentiary or terminating sanctions. For example, we are concerned that, even if the drafting party paid a majority of the fees and costs, but yet a small, minor portion was not paid, SB 707 would deem that nominal amount a "material breach," thereby subjecting the employer or company to the same list of punishments as an employer or company who intentionally withheld the entire payment in an effort to delay the arbitration.

**REGISTERED SUPPORT / OPPOSITION**:

**Support**

California Employment Lawyers Association (co-sponsor)
Consumer Attorneys of California (co-sponsor)
California Labor Federation
California Professional Firefighters
Conference of California Bar Associations
Equal Rights Advocates

SEIU California
United Food and Commercial Workers, Western States Council

**Opposition**

Allied Managed Care and Acclamation Insurance Management Services
California Apartment Association
California Association of Joint Powers Authorities
California Association of Winegrape Growers
California Chamber of Commerce
California Hospital Association
California League of Food Producers
California Manufacturers and Technology Association
California Restaurant Association
California Retailers Association
California Trucking Association
CSAC – Excess Insurance Authority
Flasher Barricade Association
Official Police Garages of Los Angeles
San Gabriel Valley Economic Partnership
Securities Industry and Financial Markets Association

**Analysis Prepared by**: Nicholas Liedtke / JUD. / (916) 319-2334

# EXHIBIT 2

# DISPUTE RESOLUTION AGREEMENT

This Dispute Resolution Agreement is a contract and covers important issues relating to your rights. It is your responsibility to read it and understand it. You are free to seek assistance from independent advisors of your choice outside the Company or to refrain from doing so if that is your choice.

You can choose to opt out of this Agreement – you have 30 days to opt out.

## 1.  How This Agreement Applies

This Agreement is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. and evidences a transaction involving commerce. If the FAA is found not to apply, then this Agreement is enforceable under the laws of the state in which you ("Employee") are employed at the time you enter into this Agreement. This Agreement applies to any dispute arising out of or related to Employee's employment with Twitter, Inc. or one of its affiliates, successor, subsidiaries or parent companies ("Company") or termination of employment, and survives after the employment relationship terminates. It can only be revoked or modified by a writing, signed by both you and Twitter, Inc.'s Chief Executive Officer, which specifically states an intent to revoke or modify this Agreement. Nothing contained in this Agreement shall be construed to prevent or excuse Employee or the Company from using the Company's existing internal procedures for resolution of complaints.

Disputes covered by this Agreement include, without limitation, disputes arising out of or relating to interpretation or application of this Agreement, including the enforceability, revocability or validity of the Agreement or any portion of the Agreement. Except as it otherwise provides or required by law, this Agreement also applies, without limitation, to disputes regarding the employment relationship, terms and conditions of employment, trade secrets, unfair competition, compensation, breaks and rest periods, termination, discrimination, harassment, or retaliation, and claims arising under the Uniform Trade Secrets Act, Title VII of the Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act (except for claims for employee benefits under any benefit plan sponsored by the Company and covered by the Employee Retirement Income Security Act of 1974 or funded by insurance), Genetic Information Non-Discrimination Act, and state statutes, if any, addressing the same or similar subject matters, all other state statutory and common law claims, and any other employment-related claim.

Except as it otherwise provides, this Agreement is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration. This Agreement requires all covered disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial. **By entering into this Agreement, the parties are waiving a trial by jury.**

## 2.  Limitations On How This Agreement Applies

This Agreement does not apply to claims for workers compensation, state disability insurance and unemployment insurance benefits.

Regardless of any other terms of this Agreement, claims may be brought before and remedies awarded by an administrative agency if applicable law permits access to such an agency notwithstanding the existence of an agreement to arbitrate. Such administrative claims include, without limitation, claims or charges brought before the Equal Employment Opportunity Commission (www.eeoc.gov) the U.S. Department of Labor (www.dol.gov) the National Labor Relations Board (www.nlrb.gov), or the Office of Federal Contract Compliance Programs (www.dol.gov/esa/ofccp). Nothing in this Agreement shall be deemed to preclude or excuse a party from bringing an administrative claim before any agency in order to fulfill the party's obligation to exhaust administrative remedies before making a claim in arbitration.

Disputes that may not be subject to predispute arbitration agreement as provided by the Dodd-Frank Wall Street Reform and Consumer Protection Act (Public Law 111-203) are excluded from the coverage of this Agreement.



## 3. Selecting The Arbitrator

The Arbitrator shall be selected by mutual agreement of the Company and the Employee.  Unless the Employee and Company mutually agree otherwise, the Arbitrator shall be an attorney licensed to practice in the state in which the arbitration proceeding will be conducted or a retired federal or state judicial officer who presided in the state where the arbitration will be conducted. If, however, the parties fail to agree on an arbitrator within 30 days after the initiation of arbitration, or at the request of either party, the dispute shall be heard by a neutral arbitrator chosen according to the procedures found in the then-current JAMS Employment Arbitration Rules and Procedures ("JAMS Rules"). The JAMS Rules may be accessed at: https://www.jamsadr.com/rules-employment-arbitration/. Alternatively, an Employee may obtain a copy of the JAMS Rules from Human Resources. The location of the arbitration proceeding shall be no more than 45 miles from the place where the Employee reported to work for the Company, unless each party to the arbitration agrees in writing otherwise.

## 4.  Starting The Arbitration

All claims in arbitration are subject to the same statutes of limitation that would apply in court. The party bringing the claim must demand arbitration in writing and deliver the written demand by hand or first class mail to the other party within the applicable statute of limitations period. The demand for arbitration shall include identification of the parties, a statement of the legal and factual basis of the claim(s), and a specification of the remedy sought. Any demand for arbitration made to the Company shall be provided to the attention of the Company's Legal Department, Twitter, Inc., 1355 Market Street, Suite 900, San Francisco, CA 94103. The arbitrator shall resolve all disputes regarding the timeliness or propriety of the demand for arbitration. A party may apply to a court of competent jurisdiction for temporary or preliminary injunctive relief in connection with an arbitrable controversy, but only upon the ground that the award to which that party may be entitled may be rendered ineffectual without such provisional relief.

## 5.  How Arbitration Proceedings Are Conducted

Employee and the Company agree to bring any claim in arbitration before Judicial Arbitration and Mediation Services ("JAMS"), pursuant to the then-current JAMS Rules. In arbitration, the parties will have the right to conduct adequate civil discovery, bring dispositive motions, and present witnesses and evidence to present their cases and defenses, and any disputes in this regard shall be resolved by the Arbitrator. Discovery and conduct of the arbitration hearing shall be governed by the JAMS Rules applicable to discovery and arbitration hearing procedures.

**You and the Company agree to bring any dispute in arbitration on an individual basis only, and not on a class, collective, or private attorney general representative action basis.** Employee and the Company agree that any arbitration will be limited to the claims between Employee and the Company individually. Employee acknowledges and agrees that Employee and the Company are each waiving the right to participate as a plaintiff or class member in any purported class action, collective action or representative action proceeding ("Class Action Waiver"). This Class Action Waiver shall not apply to California Private Attorney General Act claims brought against the Company to the extent a Class Action Waiver is not legally enforceable as to those claims. Notwithstanding any other provision of this Agreement or the JAMS Rules, disputes regarding the scope, applicability, enforceability or validity of the Class Action Waiver may be resolved only by a civil court of competent jurisdiction and not by an arbitrator. In any case in which: (1) the claim is filed as a class, collective, or representative action and (2) there is a final judicial determination that the Class Action Waiver is unenforceable as to any claims, the class, collective, and/or representative action on such claims must be litigated in a civil court of competent jurisdiction, but the Class Action Waiver shall be enforced in arbitration on an individual basis as to all other claims to the fullest extent possible and the claims to be litigated in court shall be stayed pending the completion of the arbitration on the arbitrable claims.

## 6.  Paying For The Arbitration

Each party will pay the fees for his, her or its own attorneys, subject to any remedies to which that party may later be entitled under applicable law. However, in all cases where required by law, the Company will pay the Arbitrator's and arbitration fees. If under applicable law the Company is not required to pay all of the Arbitrator's and/or arbitration fees, such fee(s) will be apportioned between the parties in accordance with said applicable law, and any disputes in that regard will be resolved by the Arbitrator.





## 7.  The Arbitration Hearing And Award

The parties will arbitrate their dispute before the Arbitrator, who shall confer with the parties regarding the conduct of the hearing and resolve any disputes the parties may have in that regard. The Arbitrator shall apply substantive law as applicable to the claims, and may award any party any remedy to which that party is entitled under applicable law, but such remedies shall be limited to those that would be available to a party in his or her individual capacity in a court of law for the claims presented to and decided by the Arbitrator; no remedies that otherwise would be available to an individual in a court of law will be forfeited by virtue of this Agreement. Unless otherwise agreed by the parties in writing, the Arbitrator will issue a decision or award in writing, stating the essential findings of fact and conclusions of law, within 30 days after the date of closing of the arbitration hearing or the completion of post-hearing briefing, whichever is later. Except as may be permitted or required by law, as determined by the Arbitrator, neither a party nor an Arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of all parties. A court of competent jurisdiction shall have the authority to enter a judgment upon the award made pursuant to the arbitration.

## 8.  An Employee's Right To Opt Out Of Arbitration

**Arbitration is not a mandatory condition of Employee's employment at the Company, and therefore an Employee may submit a form stating that the Employee wishes to opt out and not be subject to this Agreement.** The Employee must submit a signed and dated statement on a "Dispute Resolution Agreement Opt Out Form" ("Form") that can be obtained from the Company's Human Resources Department at hrlegaldocs@twitter.com. In order to be effective, the signed and dated Form must be returned to the Human Resources Department within 30 days of the Employee's receipt of this Agreement. An Employee who timely opts out as provided in this paragraph will not be subject to any adverse employment action as a consequence of that decision and may pursue available legal remedies without regard to this Agreement. Should an Employee not opt out of this Agreement within 30 days of the Employee's receipt of this Agreement, continuing the Employee's employment constitutes mutual acceptance of the terms of this Agreement by Employee and the Company. An Employee has the right to consult with counsel of the Employee's choice concerning this Agreement.

## 9.  Non-Retaliation

An employee will not be subject to retaliation if he or she exercises his or her right to assert claims under this Agreement. If any Employee believes that he or she has been retaliated against by anyone at the Company, the Employee should immediately report this to the Human Resources Department.

## 10.  Enforcement Of This Agreement

This Agreement is the full and complete agreement relating to the formal resolution of covered disputes. Except as stated in paragraph 5, above, in the event any portion of this Agreement is deemed unenforceable, the remainder of this Agreement will be enforceable. If the Class Action Waiver, Collective Action Waiver or Private Attorney General Waiver is deemed to be unenforceable, the Company and Employee agree that this Agreement is otherwise silent as to any party's ability to bring a class, collective or representative action in arbitration. Nothing in this Agreement modifies the at-will nature of Employee's employment with the Company.

**AGREED:**

Leslie Berland, Head of People
TWITTER, INC.

**By signing below, I acknowledge and agree to the terms of this Dispute Resolution Agreement, and confirm I am aware of my right to opt out per the terms of this Agreement:**

EMPLOYEE NAME PRINTED    Sarah Anoke

EMPLOYEE SIGNATURE    *Sarah Anoke*
Sarah Anoke (Jul 8, 2020 16:54 CDT)

Date:    Jul 8, 2020



# EXHIBIT 3

1  MORGAN, LEWIS & BOCKIUS LLP
   Eric Meckley, Bar No. 168181
2  eric.meckley@morganlewis.com
   Brian D. Berry, Bar No. 229893
3  brian.berry@morganlewis.com
   Kassia Stephenson, Bar No. 336175
4  kassia.stephenson@morganlewis.com
   One Market, Spear Street Tower
5  San Francisco, CA  94105-1596
   Tel:    +1.415.442.1000
6  Fax:    +1.415.442.1001

7  MORGAN, LEWIS & BOCKIUS LLP
   Ashlee N. Cherry, Bar No. 312731
8  ashlee.cherry@morganlewis.com
   1400 Page Mill Road
9  Palo Alto, CA  94304
   Tel:    +1.650.843.4000
10 Fax:    +1.650.843.4001

11 Attorneys for Defendant
   TWITTER, INC.

12

13                UNITED STATES DISTRICT COURT

14                NORTHERN DISTRICT OF CALIFORNIA

15                    SAN FRANCISCO DIVISION

16

17 FRANCISCO RODRIGUEZ, on behalf of        Case No. 3:22-cv-07222-JD
   himself and all others similarly situated,
18                                           **DEFENDANT TWITTER, INC.'S**
               Plaintiff,                    **REPLY IN SUPPORT OF**
19                                           **SUPPLEMENTAL MOTION TO**
          vs.                                **COMPEL ARBITRATION OF**
20                                           **PLAINTIFF'S INDIVIDUAL PAGA**
   TWITTER, INC. and PRO UNLIMITED,          **CLAIM AND DISMISS PLAINTIFF'S**
21 INC.,                                     **REPRESENTATIVE PAGA CLAIM**

22             Defendants.                   Date:      April 6, 2023
                                             Time:      10 a.m.
23                                           Judge:     Honorable James Donato

24

25

26

27

28

MORGAN, LEWIS &
 BOCKIUS LLP
 ATTORNEYS AT LAW
 SAN FRANCISCO

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   ARGUMENT ...................................................................................................... 2

A.    Plaintiff Concedes Enforceability of the Arbitration Agreement. .......................... 2

B.    Plaintiff's Individual PAGA Claim Must Be Compelled to Arbitration. ............... 3

C.    Plaintiff's Non-Individual/Representative PAGA Claim Must Be Dismissed. .......................................................................................................... 4

1.    Plaintiff Lacks Standing Under Viking River. .......................................... 4

2.    The California Supreme Court's Decision in Kim v. Reins Int'l California, Inc. Does Not Change This Result. ......................................... 5

3.    Plaintiff's Cited Authorities Do Not Compel a Different Result. ............. 6

D.    At a Minimum, This Court Must Stay Plaintiff's Non-Individual PAGA Claims Pending Arbitration of His Individual PAGA Claim. ............................... 9

E.    Plaintiff's Inappropriate References to Unrelated, Separately Pending Arbitration Proceedings Should Be Disregarded. ............................................... 9

III.  CONCLUSION ................................................................................................. 10

TWITTER'S REPLY IN SUPPORT OF SUPP.
MTC ARBITRATION RE: PAGA CLAIM
CASE NO. 4:22-CV-07222-JD

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*ABC Servs. Grp. v. Health Net. of Cal., Inc.*,
No. SA CV 19-00243-DOC-DFM, 2020 WL 2121372 (C.D. Cal. May, 4,
2020) .............................................................................................................................. 2

*Adolph v. Uber Technologies, Inc.*,
No. G059860, 2022 WL 1073583 (Cal. Ct. App., Apr. 11, 2022), review
granted (Cal. July 20, 2022) ....................................................................................... 6, 9

*Ardente, Inc. v. Shanley*,
No. C 07-4479 MHP, 2010 WL 546485 (N.D. Cal. Feb. 10, 2010) ............................ 2

*Arizona Elec. Power Co-op, Inc., v. Berkley*,
59 F.3d 988 (9th Cir. 1995) ........................................................................................ 6

*Callahan v. Paychex North America Inc.*,
No. 21-CV-05670-CRB, 2022 WL 11902205 (N.D. Cal. Oct. 20, 2022) ............... 2, 8

*Camreta v. Green*,
563 U.S. 692 (2011) ..................................................................................................... 8

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) .................................................................................... 1

*Conservation Force v. Salazar*,
677 F.Supp.2d 1203 (N.D. Cal. 2009), *aff'd*, 646 F.3d 1240 (9th Cir. 2011) ............ 2

*Dimidowich v. Bell & Howell*,
803 F.2d 1473 (9th Cir. 1986) .................................................................................... 6

*Dominguez v. Sonesta Int'l Hotels Corp.*,
No. 22-CV-03027-JCS, 2023 WL 25707 (N.D. Cal. Jan. 3, 2023) ............................ 9

*DW Aina Le'a Dev., LLC v. State of Haw. Land Use Comm'n*,
918 F.3d 602 (9th Cir. 2019)...................................................................................... 6

*Galarsa v. Dolgen California, LLC*,
88 Cal. App. 5th 639, 305 Cal. Rptr. 3d 15 (2023)................................................. 7, 8

*Hadley v. Kellogg Sales Co.*,
243 F. Supp. 3d 1074 (N.D. Cal. 2017) ..................................................................... 2

*Hansber v. Ulta Beauty Cosmetics, LLC*,
No. 121CV00022AWICDB, 2022 WL 15836627 (E.D. Cal. Nov. 9, 2022) ........... 2, 8

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

TWITTER'S REPLY IN SUPPORT OF SUPP.
MTC ARBITRATION RE: PAGA CLAIM
CASE NO. 4:22-CV-07222-JD

*Hart v. Massanari,*
    266 F.3d 1155 (9th Cir. 2001).................................................................................. 6

*Henson v. Santander Consumer USA Inc.,*
    137 S. Ct. 1718 (2017) ........................................................................................... 7

*Huell v. Bevmo Holdings, LLC, et al.,*
    No. 22CV01394WBSAC, 2023 WL 1823611 (E.D. Cal. Feb. 8, 2023) ............... 2, 8

*Johnson v. Lowes Home Centers LLC,*
    No. 221CV00087TLNJDP, 2022 WL 4387796 (E.D. Cal. Sept. 22, 2022) ......... 2, 8

*Johnson v. Macy,*
    145 F. Supp. 3d 907 (C.D. Cal. 2015) ................................................................... 3

*Johnson v. Maxim Healthcare Servs.,*
    66 Cal. App. 5th 924 (2021) .................................................................................. 6

*Kim v. Reins Int'l Cal., Inc.,*
    9 Cal. 5th 73 (2020) ................................................................................... 4, 5, 6, 7

*Marchese v. Shearson Hayden Stone, Inc.,*
    734 F.2d 414 (9th Cir. 1984), *aff'd* 822 F.2d 876 (1987) ..................................... 3

*Martinez-Gonzalez v. Elkhorn Packing Co., LLC,*
    --- F.Supp.3d ---, 2022 WL 10586178 (N.D. Cal. Oct. 18, 2022) ........................ 9

*Montana v. United States,*
    440 U.S. 147 (1979) ............................................................................................... 5

*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.,*
    460 U.S. 1 (1983) ................................................................................................... 4

*Piplack v. In-N-Out Burgers,*
    --- Cal. Rptr. 3d ---, 2023 WL 2384502 (March 7, 2023)...................................... 7

*Radcliff v. San Diego Gas & Electric Company,*
    No. 20CV1555HMSB, 2022 WL 4229305 (S.D. Cal. Sept. 12, 2022) ............... 2, 8

*Reyes v. Macy's Inc.,*
    202 Cal. App. 4th 1119 (2011)............................................................................... 5

*Reyes v. SN SoCal, LLC,*
    No. 22STCV03511, 2022 Cal. Super. LEXIS 84036 (L.A. Sup. Ct. Dec. 5,
    2022) ....................................................................................................................... 3

*Robinson v. S. Ctys. Oil Co.,*
    53 Cal. App. 5th 476 (2020)................................................................................... 5

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

*Rodriguez de Quijas v. Shearson/Am. Express, Inc.*,
   490 U.S. 477 (1989) ................................................................................................ 8

*Shams v. Revature LLC*,
   --- F. Supp. 3d ---, 2022 WL 3453068 (N.D. Cal. Aug. 17, 2022) ........................... 8

*Tatum v. Schwartz*,
   No. S-06-01440 DFL EFB, 2007 U.S. Dist. LEXIS 10225, 2007 WL 419463
   (E.D. Cal. Feb. 5, 2007) ........................................................................................... 3

*United States v. Weiland*,
   420 F.3d 1062 (9th Cir. 2005) .................................................................................. 8

*Viking River Cruises, Inc. v. Moriana*,
   142 S.Ct. 1906 (2022) ..................................................................................... *passim*

*Villacres v. ABM Indus. Inc.*,
   189 Cal. App. 4th 562 (2010) ................................................................................... 5

*Ziober v. BLB Res., Inc.*,
   839 F.3d 814 (9th Cir. 2016) .................................................................................... 9

**Statutes**

Cal. Code of Civ. Proc. § 1281.97 ................................................................................... 10

Cal. Lab. Code § 2699(a) ......................................................................................... 4, 7, 8

FAA § 3 ............................................................................................................................. 9

Federal Arbitration Act ..................................................................................................... 1

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

TWITTER'S REPLY IN SUPPORT OF SUPP.
MTC ARBITRATION RE: PAGA CLAIM
CASE NO. 4:22-CV-07222-JD

## I.     INTRODUCTION

Plaintiff does not dispute that the Federal Arbitration Act governs here and therefore this Court must answer two questions: (1) does a valid arbitration agreement exist; and, if it does, (2) does the agreement encompass the dispute or claims at issue?  *Chiron Corp. v. Ortho Diagnostic Sys., Inc*., 207 F.3d 1126, 1130 (9th Cir. 2000).  Here, Plaintiff does not dispute that he is subject to a valid and enforceable arbitration agreement with Defendant PRO Unlimited, Inc. dba Magnit ("Magnit"), nor does he dispute that Defendant Twitter, Inc. ("Twitter") may enforce the arbitration agreement as an express third-party beneficiary.  As a result, the only question for this Court to decide is whether the agreement encompasses his PAGA claim.

Here, the plain language of the agreement makes clear that Plaintiff must arbitrate "claims for violation of any law, statute, regulation, ordinance or common law, including . . . the California Labor Code[.]" Plaintiff's individual PAGA claim is predicated on alleged violations of *the California Labor Code* and thus falls within the scope of arbitrable claims.  While the agreement contains language excluding PAGA claims from arbitrability, such exclusion applies only "to the extent required by law.*"*  This limiting language is the key to resolving Defendant's Motion and requires an examination of the applicable law.  That law is found in the United States Supreme Court decision in *Viking River Cruises, Inc. v. Moriana*, 142 S.Ct. 1906 (2022), which explained that a PAGA claim consists of an individual component and a representative component and that the individual PAGA claim may be compelled to arbitration.  As a result, Plaintiff's individual PAGA claim is subject to arbitration pursuant to the terms of his agreement.

Because Plaintiff's individual PAGA claim must be compelled to arbitration, the Court separately must address the non-individual/representative PAGA claim.  The Supreme Court in *Viking River* also addressed that issue, holding that a representative PAGA claim must be dismissed because the plaintiff lacks standing to maintain such claim after the individual PAGA claim has been compelled to arbitration.  *Viking River*, 142 S.Ct. at 1925.  Plaintiff wants this Court to disregard *Viking River* and instead follow contrary California appellate court and federal district court decisions.  Defendant contends that this Court cannot disregard *Viking River's* holding based on non-binding California state court decisions, and instead should join the better-

1   reasoned decisions of the several federal district courts that have followed *Viking River* and

2   dismissed the non-individual/ representative PAGA claim.  *See Callahan v. Paychex North*

3   *America Inc.*, No. 21-CV-05670-CRB, 2022 WL 11902205, at *4 (N.D. Cal. Oct. 20, 2022);

4   *Hansber v. Ulta Beauty Cosmetics, LLC*, No. 121CV00022AWICDB, 2022 WL 15836627, at *7

5   (E.D. Cal. Nov. 9, 2022); *Johnson v. Lowes Home Centers LLC*, No. 221CV00087TLNJDP, 2022

6   WL 4387796, at *4 (E.D. Cal. Sept. 22, 2022); *Huell v. Bevmo Holdings, LLC, et al.*, No.

7   22CV01394WBSAC, 2023 WL 1823611, at *1 (E.D. Cal. Feb. 8, 2023); *Radcliff v. San Diego*

8   *Gas & Electric Company*, No. 20CV1555HMSB, 2022 WL 4229305, at *4 (S.D. Cal. Sept. 12,

9   2022).  This Court should compel Plaintiff to submit his claims, including his individual PAGA

10  claim, to arbitration on an individual basis and dismiss his non-individual/representative PAGA

11  claim based on his lack of standing to maintain such claim, as required under *Viking River*.

12  **II.    ARGUMENT**

13          **A.    Plaintiff Concedes Enforceability of the Arbitration Agreement.**

14          Plaintiff does not dispute that he is subject to a valid and enforceable arbitration

15  agreement with Defendant Magnit, nor does he dispute that Defendant Twitter may enforce the

16  arbitration agreement as an express third-party beneficiary or that the putative class claims must

17  be dismissed or stricken based on the class action waiver in the agreement.  Indeed, Plaintiff

18  failed to address these issues at all in his opposition briefings (*see*, *e.g.*, ECF Nos. 35 and 44),

19  thus conceding that (1) the agreement is valid and enforceable, (2) Twitter may enforce it as a

20  third-party beneficiary, and (3) the putative class claims must be dismissed.  *See Hadley v.*

21  *Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1100 (N.D. Cal. 2017) (citing *Conservation Force v.*

22  *Salazar*, 677 F.Supp.2d 1203, 1211 (N.D. Cal. 2009), *aff'd*, 646 F.3d 1240 (9th Cir. 2011))

23  ("Where plaintiffs fail to provide a defense for a claim in opposition, the claim is deemed

24  waived."); *Ardente, Inc. v. Shanley*, No. C 07-4479 MHP, 2010 WL 546485, at *6 (N.D. Cal.

25  Feb. 10, 2010) ("Plaintiff fails to respond to this argument and therefore concedes it through

26  silence"); *ABC Servs. Grp. v. Health Net. of Cal., Inc.*, No. SA CV 19-00243-DOC-DFM, 2020

27  WL 2121372, at *18-19 (C.D. Cal. May, 4, 2020) ("Courts in this district, and many others, have

28  found that a failure to address an argument in opposition briefing constitutes a concession of that

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

TWITTER'S REPLY IN SUPPORT OF SUPP.
MTC ARBITRATION RE: PAGA CLAIM
CASE NO. 4:22-CV-07222-JD

1  argument."); *see also Johnson v. Macy*, 145 F. Supp. 3d 907, 918 (C.D. Cal. 2015) (citing *Tatum*

2  *v. Schwartz*, No. S-06-01440 DFL EFB, 2007 U.S. Dist. LEXIS 10225, 2007 WL 419463, at *3

3  (E.D. Cal. Feb. 5, 2007)) (a plaintiff "tacitly concedes this claim by failing to address defendants'

4  argument in her opposition").

5        **B.**     **Plaintiff's Individual PAGA Claim Must Be Compelled to Arbitration.**

6        Plaintiff misinterprets the terms of his arbitration agreement when arguing that his

7  individual PAGA claim should remain in court.  First, he points to the PAGA-exclusion language

8  in the agreement, yet glosses over the language that limits such exclusion only "*to the extent*

9  *required by law*."  *See* ECF No. 26-1, § 3 (emphasis).  *Viking River* clarified what "to the extent

10  required by law" means under the FAA, specifically, that an individual PAGA claim *is arbitrable*

11  under the FAA.  *Viking River*, 142 S.Ct. at 1925.  As a result, the PAGA-exclusion language does

12  not apply to Plaintiff's individual PAGA claim.  *See Reyes v. SN SoCal, LLC*, No.

13  22STCV03511, 2022 Cal. Super. LEXIS 84036, at *3-4 (L.A. Sup. Ct. Dec. 5, 2022) (concluding

14  that PAGA-exclusion language in an arbitration agreement was implemented "to the extent

15  required by applicable law" and, as such, an individual PAGA claim was arbitrable post-*Viking*

16  *River*).  Plaintiff argues that omitting the word "PAGA" from Section 2 of the agreement (entitled

17  "Claims Covered by this Agreement") is evidence the parties did not "affirmatively agree[] to

18  arbitrate PAGA claims in the first place."  Opp., 6:3-4.  Such argument does not persuade given

19  the strong FAA policy in favor of arbitration, which requires arbitration of a claim "unless it may

20  be said with positive assurance that the arbitration clause is not susceptible of an interpretation

21  that covers the asserted dispute."  *Marchese v. Shearson Hayden Stone, Inc.*, 734 F.2d 414, 419

22  (9th Cir. 1984), *aff'd* 822 F.2d 876 (1987).  Here, Plaintiff agreed to arbitrate "all claims or

23  causes of action that the Employee may have against the Company or any of its clients for whom

24  Employee performed work," including, but not limited to "claims for violation of any law, statute,

25  regulation, ordinance or common law, including . . . the California Labor Code[.]" ECF No. 26-1

26  § 2.  Plaintiff's individual PAGA claim is based upon alleged violations of the Labor Code.

27  Labor Code violations are expressly mentioned in Section 2 of the agreement, thus Plaintiff's

28  individual PAGA claim is a "Claim Covered by this Agreement."  In addition, the Class and

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO
  3  
TWITTER'S REPLY IN SUPPORT OF SUPP.
MTC ARBITRATION RE: PAGA CLAIM
CASE NO. 4:22-CV-07222-JD

1    Collective Action Waiver in the agreement provides that "[t]he arbitrator may not consolidate

2    more than one individual's claims, and may not otherwise preside over any form of . . .

3    representative proceeding." ECF No. 26-1 § 4. Though this provision does not explicitly

4    mention PAGA, it clearly applies to "representative proceedings," which includes representative

5    PAGA claims. The plain language of the arbitration agreement therefore encompasses a PAGA

6    claim. To the extent this Court were to find any ambiguity exists as to whether Plaintiff's

7    individual PAGA claim should be arbitrated, "any doubts concerning the scope of arbitrable

8    issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Const.*

9    *Corp.*, 460 U.S. 1, 24 (1983).

10       **C.      Plaintiff's Non-Individual/Representative PAGA Claim Must Be Dismissed.**

11              **1.      Plaintiff Lacks Standing Under *Viking River*.**

12       Plaintiff argues that his "representative claim [] cannot be compelled to arbitration

13   because that would not be allowed by governing law." Opp., 6:16-17. Twitter does not seek to

14   arbitrate the representative PAGA claim (which is not permitted under the agreement); Twitter

15   seeks to dismiss the representative PAGA claim consistent with *Viking River*, which compels

16   dismissal of a non-individual PAGA claim based on lack of standing. *See Viking River*, 142 S.

17   Ct. at 1925 (stating an employee "lack[s] statutory standing to continue to maintain her non-

18   individual claims in court, and the correct course was to dismiss her remaining claims"). In

19   *Viking River*, the Supreme Court explained that "PAGA provides no mechanism to enable a court

20   to adjudicate non-individual PAGA claims once an individual claim has been committed to a

21   separate proceeding" since "[u]nder PAGA's standing requirement, a plaintiff can maintain non-

22   individual PAGA claims in an action only by virtue of also maintaining an individual claim in

23   that action." *Id*. Thus, a plaintiff "lacks statutory standing to continue to maintain [his] non-

24   individual claims in court," and "the correct course [is] to dismiss [his] remaining claims." *Id*.

25       The holding in *Viking River* is consistent with the plain language of the PAGA statute. A

26   plaintiff must bring a PAGA claim "on behalf of himself or herself and other current or former

27   employees." *See* Cal. Lab. Code § 2699(a); s*ee also Kim v. Reins Int'l Cal., Inc.*, 9 Cal. 5th 73,

28   88 (2020) (concluding PAGA claims can be pursued only by an aggrieved employee on his or her

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

TWITTER'S REPLY IN SUPPORT OF SUPP.
MTC ARBITRATION RE: PAGA CLAIM
CASE NO. 4:22-CV-07222-JD

own behalf and on behalf of other aggrieved employees); *Robinson v. S. Ctys. Oil Co.*, 53 Cal. App. 5th 476, 484, (2020) (dismissing PAGA claim where plaintiff sought to recover civil penalties solely on behalf of others and not his own behalf after his individual PAGA claim had been resolved); *Reyes v. Macy's Inc.*, 202 Cal. App. 4th 1119, 1123 (2011) ("A plaintiff asserting a PAGA claim may not bring the claim simply on his or her own behalf but must bring it as a representative action and include 'other current or former employees'").  Given the statute's use of the conjunctive word "and," after an individual PAGA claim is compelled to arbitration, the statutory language forecloses a plaintiff's ability to pursue any non-individual PAGA claims.

The *Viking River* decision is also consistent with due process requirements that prohibit a plaintiff from pursuing the same claim in two different forums.  *See Montana v. United States*, 440 U.S. 147, 153-154 (1979) ("a right, question or fact distinctly put in issue and directly determined … cannot be disputed in a subsequent suit between the same parties or their privies ... To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions"); *Villacres v. ABM Indus. Inc.*, 189 Cal. App. 4th 562, 575 (2010) (applying the doctrine of claim preclusion to a PAGA-only lawsuit following a settlement in a separate lawsuit alleging Labor Code violations upon which the PAGA claim was predicated); *Robinson v. S. Counties Oil Co.*, 53 Cal. App. 5th 476, 481 (2020) (same).

Once Plaintiff's individual PAGA claim is severed from his non-individual PAGA claim—as it must be pursuant to *Viking River*—his PAGA claim is split into two distinct actions. Allowing Plaintiff's individual and non-individual PAGA claims to proceed in two separate forums would violate both the plain language of the PAGA statute's standing requirements and due process.  Accordingly, this Court must dismiss Plaintiff's non-individual PAGA claim.

## 2. The California Supreme Court's Decision in *Kim v. Reins Int'l California, Inc.* Does Not Change This Result.

Despite Plaintiff's arguments to the contrary, the California Supreme Court's decision in *Kim v. Reins Int'l Cal., Inc.*, 9 Cal. 5th 73 (2020) is not inconsistent with *Viking River*.  *Kim*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

TWITTER'S REPLY IN SUPPORT OF SUPP.
MTC ARBITRATION RE: PAGA CLAIM
CASE NO. 4:22-CV-07222-JD

1  addressed an entirely different issue. In *Kim*, the plaintiff settled his underlying Labor Code

2  Claims but *not* his claim for PAGA penalties. *Id.* at 82. *Kim* ultimately determined that a

3  plaintiff is not precluded from pursuing a PAGA claim following his settlement of the individual

4  Labor Code claims upon which his PAGA claim is premised. *Kim*, 9 Cal. 5th at 86-87. This is

5  because a PAGA claim is "legally and conceptually different from an employee's own suit for

6  damages and statutory penalties." *Johnson v. Maxim Healthcare Servs.*, 66 Cal. App. 5th 924,

7  928 (2021). *Kim* only really addressed the impact of settling non-PAGA Labor Code claims on

8  "aggrieved employee" status for purposes of PAGA standing. *Kim* did not address how an

9  employee's attempt to pursue a PAGA claim in two different forums would impact the PAGA

10  statute's standing requirements.

11                **3.        Plaintiff's Cited Authorities Do Not Compel a Different Result.**

12         Although Plaintiff urges this Court to ignore the holding in *Viking River*, this Court has no

13  discretion to do so:

14         A district judge may not respectfully (or disrespectfully) disagree with his learned
           colleagues on his own court of appeals who have ruled on a controlling legal issue,
15         or with Supreme Court Justices writing for a majority of the Court. Binding
           authority within this regime cannot be considered and cast aside; it is not merely
16         evidence of what the law is. Rather, caselaw on point is the law. If a court must
           decide an issue governed by a prior opinion that constitutes binding authority, the
17         later court is bound to reach the same result, even if it considers the rule unwise or
           incorrect. Binding authority must be followed unless and until overruled by a
18         body competent to do so.

19  *Hart v. Massanari*, 266 F.3d 1155, 1170 (9th Cir. 2001).

20         This Court is not bound to follow California Court of Appeal decisions. *Arizona Elec.*

21  *Power Co-op, Inc., v. Berkley*, 59 F.3d 988, 991 (9th Cir. 1995) ("[w]hen interpreting state law,

22  federal courts are bound by decisions of the state's *highest* court) (emphasis); *see also*

23  *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1482 (9th Cir. 1986) (holding same); *see also DW*

24  *Aina Le'a Dev., LLC v. State of Haw. Land Use Comm'n*, 918 F.3d 602, 607 (9th Cir. 2019) ("we

25  are not bound by decisions of a state's intermediate appellate court when deciding an unresolved

26  issue of state law"). Because the California Supreme Court has not yet ruled in *Adolph v. Uber*

27  *Technologies, Inc.*, No. G059860, 2022 WL 1073583 (Cal. Ct. App., Apr. 11, 2022), review

28  granted (Cal. July 20, 2022), this Court is compelled to follow *Viking River* and it is not permitted

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

TWITTER'S REPLY IN SUPPORT OF SUPP.
MTC ARBITRATION RE: PAGA CLAIM
CASE NO. 4:22-CV-07222-JD

1    to substitute its own (or Plaintiff's) interpretation of California state law in place of the United

2    States Supreme Court.

3    　　　　Plaintiff assigns unjustified persuasive value to *Piplack* and *Galarsa*. The *Piplack* court

4    reasoned (incorrectly) that "absent some means of harmonizing *Viking River* with *Kim*, we must

5    follow *Kim*."  *Piplack v. In-N-Out Burgers*, --- Cal. Rptr. 3d ---, 2023 WL 2384502, at *7 (March

6    7, 2023).  As described *supra*, however, *Kim* did not address the specific situation at issue in

7    *Viking River* (and in the present case) and thus did not need to be "harmonized"; as a result,

8    *Piplack*'s reliance on *Kim* was misplaced.  Also, this Court is not bound to follow *Piplack* and, in

9    any event, should not follow it given its flawed reasoning and failure to adhere to *Viking River*.

10   In the *Galarsa*, the Court of Appeal "predicted" how the California Supreme Court would rule on

11   the question of whether a plaintiff can pursue representative PAGA claims in court after the

12   individual PAGA claims were ordered to arbitration.  *Galarsa v. Dolgen California, LLC*, 88 Cal.

13   App. 5th 639, 305 Cal. Rptr. 3d 15, 26 (2023), as modified on denial of reh'g (Feb. 24, 2023),

14   review filed (Mar. 13, 2023).  However, this "prediction" is based on flawed rationale.  First,

15   *Galarsa* reasoned that allowing a non-individual PAGA claim to proceed after an individual

16   PAGA claim is compelled to arbitration "is the best interpretation of PAGA that best effectuates

17   the statute's purpose, which is to ensure effective code enforcement."  *Id.*  But the *Galarsa* court

18   cannot circumvent the plain language of the PAGA statute by attempting to interpret what it

19   presumes to be the goal of the statute.  *See* Cal. Lab. Code § 2699(a); *see also Henson v.

20   Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1725 (2017) ("[W]e will not presume with

21   petitioners that any result consistent with their account of the statute's overarching goal must be

22   the law but will presume more modestly instead "that [the] legislature says . . . what it means and

23   means . . . what it says") (citations omitted).  Second, the *Galarsa* court reasoned that individual

24   and non-individual PAGA claims "are not based on the same primary right" because an

25   "[individual PAGA] claim is based on Labor Code violations suffered by the plaintiff employee

26   and [non-individual PAGA] claims are based on Labor Code violations suffered by employees

27   other than the plaintiff."  *Id.*  This concession by the *Galarsa* court—that individual and non-

28   individual PAGA claims involve different primary rights—is consistent with the standing

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

TWITTER'S REPLY IN SUPPORT OF SUPP.
MTC ARBITRATION RE: PAGA CLAIM
CASE NO. 4:22-CV-07222-JD

1   requirements set forth in the PAGA statute and is an implicit endorsement of the holding in

2   *Viking River*.  *See* Cal. Lab. Code § 2699(a); *see also Viking River*, 142 S. Ct. at 1925.  Yet,

3   inexplicably, the *Galarsa* court nonetheless rejected *Viking River*.  This Court should not follow

4   the flawed logic of *Galarsa*.

5          Plaintiff also relies on the federal district court decision in *Shams v. Revature LLC*, ---

6   F. Supp. 3d ---, 2022 WL 3453068 (N.D. Cal. Aug. 17, 2022).  However, "[a] decision of a

7   federal district court judge is not binding precedent in either a different judicial district, the same

8   judicial district, or even upon the same judge in a different case."  *Camreta v. Green*, 563 U.S.

9   692, 709 n. 7 (2011).  Indeed, each of the district court decisions that Twitter cited in its Motion

10  that dismissed a non-individual PAGA claim after compelling the individual PAGA claim to

11  arbitration post-dated the *Shams* decision, and implicitly rejected its reasoning.  *See Callahan v.

12  Paychex North America Inc.*, No. 21-CV-05670-CRB, 2022 WL 11902205, at *4 (N.D. Cal. Oct.

13  20, 2022); *Hansber v. Ulta Beauty Cosmetics, LLC*, No. 121CV00022AWICDB, 2022 WL

14  15836627, at *7 (E.D. Cal. Nov. 9, 2022); *Johnson v. Lowes Home Centers LLC*, No.

15  221CV00087TLNJDP, 2022 WL 4387796, at *4 (E.D. Cal. Sept. 22, 2022); *Huell v. Bevmo*

16  *Holdings, LLC, et al.*, No. 22CV01394WBSAC, 2023 WL 1823611, at *1 (E.D. Cal. Feb. 8,

17  2023); *Radcliff v. San Diego Gas & Electric Company*, No. 20CV1555HMSB, 2022 WL

18  4229305, at *4 (S.D. Cal. Sept. 12, 2022).

19         Though a smattering of courts have departed from *Viking River*, this Court is compelled to

20  follow the Supreme Court's holding.  *See also United States v. Weiland*, 420 F.3d 1062, 1079 n.

21  16 (9th Cir. 2005) (Even if "recent Supreme Court jurisprudence has perhaps been called into

22  question the continuing viability of [its precedent], we are bound to follow a controlling Supreme

23  Court precedent until it is explicitly overruled by that Court"); *see also Rodriguez de Quijas v.*

24  *Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct

25  application in a case, yet appears to rest on reasons rejected in some other line of decisions, the

26  Court of Appeals should follow the case which directly controls…").

27  / / /

28  / / /

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

TWITTER'S REPLY IN SUPPORT OF SUPP.
MTC ARBITRATION RE: PAGA CLAIM
CASE NO. 4:22-CV-07222-JD

1

2

**D.    At a Minimum, This Court Must Stay Plaintiff's Non-Individual PAGA Claims Pending Arbitration of His Individual PAGA Claim.**

3      Twitter maintains that *Viking River* requires dismissal of Plaintiff's non-individual PAGA

4    claim.  However, even if this Court does not dismiss the non-individual/representative PAGA

5    claim, the Court must stay such claim pending a final resolution in the arbitration of Plaintiff's

6    individual claims.  Such result is compelled by Section 3 of the FAA, which "specifically directs

7    federal district courts to stay proceedings and compel arbitration of 'any issue referable to

8    arbitration under an agreement in writing for such arbitration,'" as well as the parties' arbitration

9    agreement.  9 U.S.C.A. § 3.  *See also Ziober v. BLB Res., Inc.*, 839 F.3d 814, 817 (9th Cir. 2016);

10   ECF No. 26-1, § 4 ("[i]n the event it is determined that a dispute between the Parties involves

11   both arbitrable claims and non-arbitrable claims…, the Parties agree that any arbitrable claims

12   shall be resolved first and that any non-arbitrable claim(s) shall be stayed pending resolution of

13   the arbitrable claim(s)").[1]

14

15

**E.    Plaintiff's Inappropriate References to Unrelated, Separately Pending Arbitration Proceedings Should Be Disregarded.**

16      Plaintiff improperly argues that this Court should consider alleged conduct in separate,

17   unrelated arbitration proceedings when ruling on Twitter's pending Motion.  Plaintiff's argument

18   is entirely specious for multiple reasons.  First, Plaintiff Rodriguez was an employee of Magnit.

19   Magnit has moved to enforce its arbitration agreement with Plaintiff.  Twitter contracts with

20   Magnit and, in turn, has moved to enforce Magnit's arbitration agreement as an express third-

21   party beneficiary.  The terms of Magnit's arbitration agreement are different than Twitter's

22   agreement.  For example, Magnit must pay for the costs of arbitration, not Twitter.  As another

23   example, the Magnit agreement designates the American Arbitration Association ("AAA") as the

24   arbitration provider.  In contrast, the Twitter arbitration agreements either designate JAMS as the

25

26   _____

[1] Twitter acknowledges that some courts have chosen to stay the non-individual PAGA claim
27   through the time of a ruling from the California Supreme Court in *Adolph v. Uber*.  *See, e.g.,*
*Dominguez v. Sonesta Int'l Hotels Corp.*, No. 22-CV-03027-JCS, 2023 WL 25707, at *9 (N.D.
Cal. Jan. 3, 2023); *Martinez-Gonzalez v. Elkhorn Packing Co., LLC*, --- F.Supp.3d ---, 2022 WL
28   10586178, at *12 (N.D. Cal. Oct. 18, 2022).  However, Ninth Circuit precedent and the FAA
require that a stay remain in place through the conclusion of the arbitration proceedings.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9                                    TWITTER'S REPLY IN SUPPORT OF SUPP.
MTC ARBITRATION RE: PAGA CLAIM
CASE NO. 4:22-CV-07222-JD

1    arbitration provider or are silent regarding a specific provider and instead outline a process for

2    arbitrator selection.  Second, Plaintiff cites no statutory or case law support for the argument that

3    alleged conduct in entirely separate proceedings has any relevance whatsoever to the present

4    Motion, which involves different parties, a different arbitration agreement, and different

5    applicable arbitration procedures.  Third, Plaintiff counsel's assertions regarding Twitter's alleged

6    conduct in the separate pending arbitration proceedings are simply false.  In those other

7    proceedings, Twitter has acted in complete good faith and adhered fully to the terms of the

8    arbitration agreements that govern those proceedings, the JAMS rules (to the extent applicable),

9    and statutory authority.[2]  Finally, this Court should impose consequences for Plaintiff counsel's

10   inappropriate attempt to use the briefing on the present Motion as a vehicle to make entirely false

11   accusations regarding separate and unrelated matters that are irrelevant to this case.  Plaintiff

12   counsel has a track record of playing fast and loose with the Court's rules and making frivolous

13   and/or premature arguments to the Court.  Their latest attempt to inject false claims about entirely

14   unrelated matters into the present briefing has no purpose other than to harass, cause unnecessary

15   delay, or needlessly increase the cost of litigation, and Twitter requests that the Court take all

16   action towards Plaintiff's counsel for their conduct that the Court deems appropriate.

17   **III.    CONCLUSION**

18           The Court should grant Twitter's motion to compel Plaintiff's individual claims to

19   arbitration and dismiss Plaintiff's non-individual PAGA claims for lack of standing based upon

20   *Viking River* or, in the alternative, stay such claims until resolution of arbitration.

21   Dated: March 28, 2023                          MORGAN, LEWIS & BOCKIUS LLP

22
                                                    By   */s/ Eric Meckley*
23                                                       Eric Meckley
                                                         Ashlee Cherry
24
                                                         Attorneys for Defendant
25                                                       TWITTER, INC.

26   _____
     [2] Notably, Twitter has paid and continues to pay all invoices within all applicable statutory
27   deadlines.  *See* Cal. Code of Civ. Proc. § 1281.97 (requiring drafting party to the arbitration
     agreement to pay all fees or costs to initiate an arbitration within 30 days after the due date).  In
28   particular, Twitter timely paid the January 23, 2023 JAMS invoices for claimants Cornet, De
     Caires, and Pan that Plaintiff's counsel had submitted with the opposition briefing.

TWITTER'S REPLY IN SUPPORT OF SUPP.
MTC ARBITRATION RE: PAGA CLAIM
CASE NO. 4:22-CV-07222-JD

# EXHIBIT 4

**From:** Sarah Nevins
**Sent:** Thursday, May 4, 2023 12:57 PM
**To:** Akiva Cohen; Meckley, Eric; Dylan Schmeyer; Mike Dunford; Berry, Brian D.; Wallace, Thomas Cullen; Cherry, Ashlee N.; Stephenson, Kassia; Michael Kornbluth
**Cc:** Kathryn Tewson; Doyle, Adele
**Subject:** RE: Kamerman Twitter Cases - JAMS Ref No. 1601002006


Good Afternoon Mr. Cohen.

Thank you for your email.  I have been awaiting the remainder of the filing fee from Respondents prior to proceedings as JAMS cannot commence the remaining 17 filings until that fee has been paid.  Due to the increase of mass filings, I would prefer to ask my IT department to replicate these 37 cases.  Otherwise I will need to have my team enter them by hand and we may be delayed.

If Respondent could please advise as to the status of payment I would appreciate it.


Thank you,
Sarah



**Sarah Nevins**
Arbitration Practice Manager – East/Central

**JAMS - *Local Solutions. Global Reach.*TM**
P: 313.209.8851
**www.jamsadr.com**

Manage your case anytime, anywhere.
**Register now for JAMS Access.**
Follow us on **LinkedIn** and **Twitter**.

**From:** Akiva Cohen <acohen@kusklaw.com>
**Sent:** Thursday, May 4, 2023 9:49 AM
**To:** Sarah Nevins <snevins@jamsadr.com>; Meckley, Eric <eric.meckley@morganlewis.com>; Dylan Schmeyer <dschmeyer@kusklaw.com>; Mike Dunford <mdunford@kusklaw.com>; Berry, Brian D. <brian.berry@morganlewis.com>; Wallace, Thomas Cullen <cullen.wallace@morganlewis.com>; Cherry, Ashlee N. <ashlee.cherry@morganlewis.com>; Stephenson, Kassia <kassia.stephenson@morganlewis.com>; Michael Kornbluth <mkornbluth@KGLAWNC.COM>
**Cc:** Kathryn Tewson <ktewson@kusklaw.com>; Doyle, Adele <adele.doyle@morganlewis.com>
**Subject:** RE: Kamerman Twitter Cases - JAMS Ref No. 1601002006

**Caution:** This email originated from outside JAMS. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Ms. Nevins,

Just following up regarding arbitrator appointment in the other cases. Should we be expecting strike lists? Are there other filed cases where JAMS is having difficulty locating potential arbitrators? An update would be deeply appreciated.

Best,

Akiva M. Cohen
Kamerman Uncyk Soniker & Klein
1700 Broadway
New York, NY 10019
212-400-4930

---

**From:** Sarah Nevins
**Sent:** Wednesday, March 29, 2023 9:19 AM
**To:** Meckley, Eric; Akiva Cohen; Dylan Schmeyer; Mike Dunford; Berry, Brian D.; Wallace, Thomas Cullen; Cherry, Ashlee N.; Stephenson, Kassia; Michael Kornbluth
**Cc:** Kathryn Tewson; Doyle, Adele
**Subject:** RE: Kamerman Twitter Cases - JAMS Ref No. 1601002006

Good Morning Counsel.

I will be sending a calendar invite for a call on Monday, April 2 at 2:00 PM (Eatern).

Regarding North Carolina, Judge Allyson K. Duncan (Ret.) sat in North Carolina. I am inquiring if I have any attorneys who are currently licensed there.

Thank you,
Sarah



**Sarah Nevins**
Arbitration Practice Manager – East/Central

**JAMS - *Local Solutions. Global Reach.*™**
P: 313.209.8851
**www.jamsadr.com**

Manage your case anytime, anywhere.
**Register now for JAMS Access.**
Follow us on **LinkedIn** and **Twitter**.

---

**From:** Meckley, Eric <eric.meckley@morganlewis.com>
**Sent:** Wednesday, March 29, 2023 12:37 AM
**To:** Akiva Cohen <acohen@kusklaw.com>; Sarah Nevins <snevins@jamsadr.com>; Dylan Schmeyer

<dschmeyer@kusklaw.com>; Mike Dunford <mdunford@kusklaw.com>; Berry, Brian D.
<brian.berry@morganlewis.com>; Wallace, Thomas Cullen <cullen.wallace@morganlewis.com>; Cherry,
Ashlee N. <ashlee.cherry@morganlewis.com>; Stephenson, Kassia
<kassia.stephenson@morganlewis.com>; Michael Kornbluth <mkornbluth@KGLAWNC.COM>
**Cc:** Kathryn Tewson <ktewson@kusklaw.com>; Doyle, Adele <adele.doyle@morganlewis.com>
**Subject:** RE: Kamerman Twitter Cases - JAMS Ref No. 1601002006

> **Caution:** This email originated from outside JAMS. Do not click links or open attachments unless you
> recognize the sender and know the content is safe.

Ms. Nevins,
Respondent is available for the administrative call on Monday, April 3 anytime between 2 and 3:30 PM
(Eastern) or Tuesday, April 2 between 3 – 3:30 PM (Eastern).

Respondent previously stated its position that, pursuant to the arbitrator agreement signed by
Eisenberg, the arbitrator must be licensed in the state where Eisenberg resides and is pursuing her
claims (North Carolina).  JAMS apparently does not maintain an office in North Carolina.  It is unclear
whether JAMS has any arbitrators on its roster anywhere in the US who are licensed in North
Carolina.  Can you please let us know the answer to that question?  Obviously, Respondent has not
agreed to the two arbitrators referenced by Claimants' counsel below, neither of whom are associated
with JAMS.

Thank you

**Eric Meckley**
**Morgan, Lewis & Bockius LLP**
One Market, Spear Street Tower | San Francisco, CA 94105
Direct: +1.415.442.1013 | Main: +1.415.442.1000 | Fax: +1.415.442.1001
eric.meckley@morganlewis.com | www.morganlewis.com
Assistant: Adele Doyle | +1.415.442.1528 | adele.doyle@morganlewis.com

---

**From:** Akiva Cohen <acohen@kusklaw.com>
**Sent:** Tuesday, March 28, 2023 6:51 AM
**To:** Sarah Nevins <snevins@jamsadr.com>; Dylan Schmeyer <dschmeyer@kusklaw.com>; Mike Dunford
<mdunford@kusklaw.com>; Berry, Brian D. <brian.berry@morganlewis.com>; Meckley, Eric
<eric.meckley@morganlewis.com>; Wallace, Thomas Cullen <cullen.wallace@morganlewis.com>;
Cherry, Ashlee N. <ashlee.cherry@morganlewis.com>; Stephenson, Kassia
<kassia.stephenson@morganlewis.com>; Michael Kornbluth <mkornbluth@KGLAWNC.COM>
**Cc:** Kathryn Tewson <ktewson@kusklaw.com>; Doyle, Adele <adele.doyle@morganlewis.com>
**Subject:** Re: Kamerman Twitter Cases - JAMS Ref No. 1601002006

[EXTERNAL EMAIL]
Ms. Nevins,

Will this encompass the Eisenberg case as well? If so, please note our position that Twitter has
consented by silence to the appointment of either

Jon Harkavy https://www.pathlaw.com/attorneys/jonathan-r-harkavy/ or Reagan
Weaver  https://www.ncmediators.org/reagan-weaver
as arbitrator. We suggested those two potential arbitrators in correspondence with Twitter's counsel on
February 2, 2023. To date, Twitter has not responded to those suggestions or proposed any alternative
arbitrators. As the parties' arbitration agreement put a 30-day limit on the parties reaching agreement
on arbitrators, and Twitter would otherwise necessarily be in breach by refusing to participate in
arbitrator selection, their silence should be deemed consent to either of the two possibilities we
proffered.

Sent from my T-Mobile 5G Device
Get Outlook for Android

**From:** Akiva Cohen <acohen@kusklaw.com>
**Sent:** Tuesday, March 28, 2023 5:51:21 AM
**To:** Sarah Nevins <snevins@jamsadr.com>; Dylan Schmeyer <dschmeyer@kusklaw.com>; Mike Dunford
<mdunford@kusklaw.com>; brian.berry@morganlewis.com <brian.berry@morganlewis.com>;
eric.meckley@morganlewis.com <eric.meckley@morganlewis.com>; cullen.wallace@morganlewis.com
<cullen.wallace@morganlewis.com>; ashlee.cherry@morganlewis.com
<ashlee.cherry@morganlewis.com>; kassia.stephenson@morganlewis.com
<kassia.stephenson@morganlewis.com>
**Cc:** Kathryn Tewson <ktewson@kusklaw.com>; adele.doyle@morganlewis.com
<adele.doyle@morganlewis.com>
**Subject:** Re: Kamerman Twitter Cases - JAMS Ref No. 1601002006

Thank you Ms. Nevins.

We have a conflict on 3/29 at 3 Eastern but I believe we are otherwise available that day. @Dylan
Schmeyer please confirm.

3/30 any time after noon Eastern.

3/31, 4/2 & 4/3 all day

Sent from my T-Mobile 5G Device
Get Outlook for Android

**From:** Sarah Nevins <snevins@jamsadr.com>
**Sent:** Tuesday, March 28, 2023, 5:47 AM
**To:** Akiva Cohen <acohen@kusklaw.com>; Dylan Schmeyer <dschmeyer@kusklaw.com>; Mike Dunford
<mdunford@kusklaw.com>; brian.berry@morganlewis.com <brian.berry@morganlewis.com>;
eric.meckley@morganlewis.com <eric.meckley@morganlewis.com>; cullen.wallace@morganlewis.com
<cullen.wallace@morganlewis.com>; ashlee.cherry@morganlewis.com
<ashlee.cherry@morganlewis.com>; kassia.stephenson@morganlewis.com
<kassia.stephenson@morganlewis.com>
**Cc:** Kathryn Tewson <ktewson@kusklaw.com>; adele.doyle@morganlewis.com

<adele.doyle@morganlewis.com>
**Subject:** Kamerman Twitter Cases - JAMS Ref No. 1601002006

Good Morning Counsel.

The initial filing fees in the above referenced matters have now been paid.  I am writing to set an administrative call in these matters.  Kindly reply to this email asto your availability for a call on:

Wednesday, March 29 anytime between 9:00 and 3:30 PM (Eastern)
Thursday, March 30 anytime between 9:00 and 3:30 PM (Eastern)
Friday, March 31 anytime between 9:00 and 3:30 PM (Eastern)
Monday, April 3 anytime between 9:00 and 3:30 PM (Eastern)
Tuesday, April 2 between 9:00 and 1:30 PM or 3:00 – 3:30 PM (Eastern)

Thank you,
Sarah



**Sarah Nevins**
Arbitration Practice Manager – East/Central

**JAMS - *Local Solutions. Global Reach.*^TM**
P: 313.209.8851
**www.jamsadr.com**

Manage your case anytime, anywhere.
**Register now for JAMS Access**.
Follow us on **LinkedIn** and **Twitter**.

# EXHIBIT 5

Case 3:23-cv-02217-SI   Document 29-1   Filed 05/19/23   Page 44 of 74

Karen BARAJAS as executor of the Estate of Thompson..., 2020 WL 7132552...

2020 WL 7132552 (C.A.9) (Appellate Brief)
United States Court of Appeals, Ninth Circuit.

Karen BARAJAS as executor of the Estate of Thompson Bryson, Marlene Rogers, Marci Hulsey, Cindy
Piini, and Gennie Hilliard, individually and on behalf of all others similarly situated, Plaintiffs-Appellees,

v.

VIVINT SOLAR, INC., Vivint Solar Holdings, Inc., Vivint Solar Developer, LLC
and Vivint Solar Provider, LLC, Does 1 through 50, inclusive, Defendants-Appellants.

No. 20-16584.

November 25, 2020.

On Appeal from the United States District Court for the Northern District of California in No. 3:19-Cv-07918-Wha
The Honorable William Alsup

**Defendants-Appellants' Opening Brief**

George C. Harris, Fred Norton, Bree Hann, The Norton Law Firm PC, 299 Third Street, Suite 106, Oakland, CA 94607,
Telephone: (510) 906-4900, GHarris @nortonlaw.com, FNorton@nortonlaw.com, BHann@nortonlaw.com, for defendants-
appellants Vivint Solar, Inc., Vivint Solar Holdings, Inc., Vivint Solar Developer, LLC, and Vivint Solar Provider, LLC.

**\*ii** *TABLE OF CONTENTS*

| | |
|---|---|
| INTRODUCTION .................................................................................................................. | 1 |
| JURISDICTIONAL STATEMENT .......................................................................................... | 5 |
| ISSUES PRESENTED FOR REVIEW .................................................................................... | 6 |
| STATEMENT OF THE CASE ................................................................................................ | 7 |
| 1. Appellees Enter into Arbitration Agreements with Vivint Solar ....................................... | 7 |
| 2. The District Court Grants Vivint Solar's Motion to Compel Arbitration Under the FAA .......................... | 9 |
| 3. JAMS Sends Correspondence to the Parties Stating When Filing Fees Are Due ....................... | 10 |
| 4. Vivint Solar's Payment of Filing Fees ............................................................................. | 11 |
| 5. JAMS Confirms That Vivint Solar Paid All Required Fees Within Thirty Days of the Applicable Due Dates ............. | 12 |
| 6. The District Court Grants Appellees' Motion to Vacate Its Prior Arbitration Order ................... | 13 |
| SUMMARY OF THE ARGUMENT ........................................................................................ | 14 |
| STANDARD OF REVIEW ..................................................................................................... | 16 |
| ARGUMENT ......................................................................................................................... | 16 |
| I. The District Court Erred in Finding § 1281.97 Applicable to Motions to Compel Arbitration Brought Under the FAA | 16 |
| II. To the Extent It Is Intended to Apply to the Right to Compel Arbitration Under the FAA, § 1281.97 Is Preempted by the FAA | 22 |
| III. The District Court Erred in Disregarding JAMS' Interpretation of its Rules and Payment Due Dates ...... | 27 |
| IV. The District Court Erred As a Matter of Law In Holding That Vivint Solar Had Not Paid Its Arbitration Initiation Fees Within Thirty Days of the "Due Dates." | 31 |
| V. The District Court's Vacate Arbitration Order Is Fundamentally Unfair ................................... | 36 |
| **\*iii** CONCLUSION ........................................................................................................ | 37 |

**\*iv** *TABLE OF AUTHORITIES*

**Cases**

| | |
|---|---|
| *Adams v. Postmates, Inc.*, 414 F. Supp. 3d 1246 (N.D. Cal. 2019) ................................................... | 30 |
| 🏳 *American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, (2013) ................................................... | 25 |

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) .. 22, 23, 25, 26

*Blair v. Rent-A-Ctr., Inc.*, 928 F.3d 819 (9th Cir. 2019) ...... 23, 24

*Brennan v. Opus Bank*, 796 F.3d 1125 (9th Cir. 2015) ........ 29

*Brunner v. Lyft, Inc.*, Case No. 19-cv-04808-VC, 2019 WL 6001945 (N.D. Cal. Nov. 14, 2019) ....................................... 30

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126 (9th Cir. 2000) .............................................................. 20

*Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985) ... 25, 26, 27

*Dunn v. Baca*, Case No. 3:19-cv-00702-MMD-WGC, 2020 WL 2525772 (D. Nev. May 18, 2020) ............................ 36

*Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612 (2018) .............. 25

*Greenspan v. LADT, LLC*, 185 Cal. App. 4th 1413 (2010) . 29, 30

*Harris v. Harris*, 935 F.3d 670 (9th Cir. 2019) ...................... 17

*v *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524 (2019) ............................................................... 28

*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002) ...................................................................................... 28

*In re Gardenhire*, 209 F.3d 1145 (9th Cir. 2000) .............. 17

*Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052 (9th Cir. 2013) ..................................................................................... 16

*Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407 (2019) ............ 23

*Lifescan, Inc. v. Premier Diabetic Services, Inc.*, 363 F.3d 1010 (9th Cir. 2004) ............................................................ 29, 30

*Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52 (1995) .............................................................................. 19, 20

*Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1 (1983) .................................................................. 20, 22

*Perry v. Thomas*, 482 U.S. 483 (1987) ............................. 24, 26

*Postmates Inc. v. 10,356 Individuals*, No. CV 20-2783 PSG (JEMx), 2020 WL 1908302 (C.D. Cal. Apr. 15, 2020) ............ 31, 33, 34

*Sink v. Aden Enterprises, Inc.*, 352 F.3d 1197 (9th Cir. 2003) ...................................................................................... 16, 20, 21, 31, 35

*Southland Corp. v. Keating*, 465 U.S. 1 (1984) ............. 24

*Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266 (9th Cir. 2002) ..................................................................................... 19, 20

*United States v. Tucor Int'l, Inc.*, 189 F.3d 834 (9th Cir. 1999) ..................................................................................... 17

*vi *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 469 (1989) ................... 26

*Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205 (9th Cir. 1998) ..................................................................................... 18, 19

*Worldwide Film Productions, LLC v. JPMorgan Chase Bank, N.A.*, CV 19-10337-DSF (JPRx), 2020 WL 2730926 (C.D. Cal. Mar. 13, 2020) ........................................................... 29

**Statutes**

9 U.S.C. § 4 .......................................................................... 5, 8

Karen BARAJAS as executor of the Estate of Thompson..., 2020 WL 7132552...

Case 3:23-cv-02217-SI   Document 29-1   Filed 05/19/23   Page 46 of 74

9 U.S.C. § 16(a)(1)(B) ............................................................... 5
28 U.S.C. §§ 1331 and 1343 ................................................... 5
🚩 42 U.S.C. § 1981 ...................................................................... 5
Cal. Civ. Proc. Code § 1281.97 ............................................. passim
🚩 Cal. Civ. Proc. Code § 1281.2(c) ....................................... 18, 19
**Rules**
Rule 4(a)(1)(A) of the Federal Rules of Appellate Procedure .. 5

**\*1** Defendants-Appellants Vivint Solar, Inc., Vivint Solar Holdings, Inc., Vivint Solar Developer, LLC, and Vivint Solar Provider, LLC (collectively, "Vivint Solar") respectfully submit this Opening Brief in support of their appeal from an order, pursuant to California Code of Civil Procedure § 1281.97 ("§ 1281.97"), which vacated a previous order compelling Plaintiffs-Appellees Karen Barajas, Marlene Rogers, Marci Hulsey, Cindy Piini and Gennie Hilliard (collectively, "Appellees") to arbitrate their claims.

## INTRODUCTION

Appellees entered into contracts with Vivint Solar for the installation of solar panels on their roofs. Appellees later sued Vivint Solar, alleging that termination fees in their contracts constituted unlawful liquidated damages. Based on arbitration clauses in each contract, the district court granted Vivint Solar's motion to compel Appellees to arbitrate their claims under the Federal Arbitration Act ("FAA"). In April 2020, Appellees then filed separate demands for arbitration with JAMS, and Vivint Solar filed answers to each demand for arbitration in May 2020.

Subsequently, however, Appellees withdrew their demands for arbitration and filed a motion in the district court to vacate the court's order compelling arbitration on June 24, 2020. The motion was based on California Code of Procedure § 1281.97, a newly enacted amendment to the California Arbitration Act ("CAA"), which went into effect on January 1, 2020. It provides, in relevant part, that "if the fees or costs to **\*2** initiate an arbitration proceeding are not paid within 30 days after the due date, the drafting party is in material breach of the arbitration agreement, is in default of the arbitration, and waives its right to compel arbitration under 🚩 Section 1281.2 [of the California Code of Civil Procedure]." The district court granted the motion, applying § 1281.97 and holding that Vivint Solar had waived its right to arbitration under the FAA by failing to pay JAMS initiation fees within thirty days of the "due dates."

It is undisputed that Vivint Solar paid its fees within thirty days of the due dates JAMS set in case-specific correspondence to the parties sent before or around the same time that JAMS issued invoices. Indeed, after Appellees asserted that Vivint Solar had violated § 1281.97, **JAMS itself** confirmed that Vivint Solar had paid its fees within thirty days of the due dates.

Nevertheless, overruling JAMS' interpretation of its own deadlines, the district court held that payment was due on the day an invoice was issued - regardless of the due dates set by JAMS in its letters accompanying the invoices - because each invoice said "payment due upon receipt" in small print at the bottom. Because Vivint Solar paid its fees slightly more than thirty days after the invoice dates, though within 30 days of the due dates set by JAMS in correspondence, the district court held under § 1281.97 that Vivint Solar had waived its right to compel arbitration.

The district court's decision is wrong for multiple reasons:

**\*3** **First**, the district court erred in holding that § 1281.97 - which is part of the CAA - applies to a motion to compel to compel arbitration under the FAA. On its face, § 1281.97 only provides for waiver of "the right to compel arbitration **under Section 1281.2**" of the California Code of Civil Procedure - **not** the right to compel arbitration under the FAA. Moreover, this Court's controlling precedent holds that the FAA displaces any California arbitration rule that determines whether a matter will be decided in court or arbitration. Under the plain language of the statute and Ninth Circuit precedent, § 1281.97 has no application to Vivint Solar's motion to compel arbitration here, which was brought and granted under the FAA.

Case 3:23-cv-02217-SI   Document 29-1   Filed 05/19/23   Page 47 of 74

Karen BARAJAS as executor of the Estate of Thompson..., 2020 WL 7132552...

**Second,** assuming *arguendo* that § 1281.97 was intended to apply to the right to compel arbitration under the FAA, it would be preempted by the FAA because (i) it is not a generally applicable contract defense that applies equally to arbitration and non-arbitration agreements and (ii) by modifying the parties' agreement to an arbitration according to JAMS Rules, it would be an obstacle to accomplishment of the FAA's primary objective to strictly enforce arbitration agreements.

**Third,** even if § 1281.97 applied to a motion to compel arbitration under the FAA and was not preempted by the FAA, whether fees were paid within 30 days of the due date set by the arbitration administrator would be a procedural matter for final determination by the arbitration provider or arbitrator. Here, JAMS is the ultimate arbiter of its own rules. Controlling case law provides that an arbitrator's interpretation **\*4** of its rules and deadlines is final and unreviewable and cannot be second-guessed by the court. Moreover, in their consumer contracts, the parties here agreed to delegate arbitrability decisions to the arbitrator. JAMS not only communicated exact, case-specific due dates for fees, but ***expressly rejected Appellees' position*** that Vivint Solar was more than thirty days late. The district court's decision to overrule JAMS' interpretation of its own rules was wrong as a matter of law.

**Fourth,** the district court erred on the merits in concluding that payments of JAMS' invoices were due the same day each invoice was sent. JAMS set ***actual deadlines*** when payments were due in correspondence that, in most cases, preceded the issuance of the invoices. Vivint Solar reasonably understood that the fees were due on the date stated by JAMS in case-specific correspondence, regardless of any boilerplate language in the invoice. For example, with respect to Appellee Barajas, on May 14, 2020, JAMS sent the parties a letter stating that the due date for filing fees was May 28, 2020. Upon receipt of this letter, Vivint Solar reasonably believed that was the operative due date - not May 15, 2020, the date an invoice was sent with the statement "payment due upon receipt."

**Finally,** the district court's decision is fundamentally unfair. Vivint Solar reasonably relied on communications from JAMS expressly stating the due dates for fee payments. In the middle of a global pandemic, with its offices shut down, Vivint Solar paid its arbitration fees shortly after the deadlines set by JAMS (and well within

**\*5** thirty days of those deadlines). Vivint Solar at all times kept the parties and JAMS apprised of its intended timing of payment and neither Appellees nor JAMS raised any objection. Vivint Solar also sought to move the arbitrations forward by timely serving answers to each demand for arbitration. In this context, the district court's decision to ignore JAMS' due date letters and interpretation of its own rules is particularly unjustified.

**JURISDICTIONAL STATEMENT**

Appellees allege that the district court had subject matter jurisdiction because their claims arise under ⚑ 42 U.S.C. § 1981, conferring jurisdiction on the district court pursuant to 28 U.S.C. §§ 1331 and 1343. 2-ER:135. [1]

This Court has jurisdiction based upon 9 U.S.C. § 16(a)(1)(B), which permits appeal of "an order ... denying a petition under [9 U.S.C. § 4] to order arbitration to proceed." The district court vacated its original order compelling arbitration on August 14, 2020. 1-ER:12 (the "Vacate Arbitration Order"). Vivint Solar filed a notice of appeal on August 17, 2020. 2-ER:306. The appeal is timely under Rule 4(a)(1)(A) of the Federal Rules of Appellate Procedure.

**\*6 ISSUES PRESENTED FOR REVIEW**

1. Did the district court err in finding that § 1281.97 in the CAA applies to this action under the FAA given (a) § 1281.97's express language that a failure to pay within thirty days only waives the "right to compel arbitration under Section 1281.2" of

Karen BARAJAS as executor of the Estate of Thompson..., 2020 WL 7132552...

Case 3:23-cv-02217-SI   Document 29-1   Filed 05/19/23   Page 48 of 74

the CAA - not the right to compel arbitration under the FAA and (b) controlling Ninth Circuit precedent holding that the CAA does not apply to motions brought under the FAA?

2. If § 1281.97 were interpreted to apply to the right to compel arbitration under the FAA, would it be preempted by the FAA because it is not a generally applicable contract defense that applies equally to arbitration and non-arbitration agreements and/or would be an obstacle to accomplishment of the FAA's objectives by modifying the parties' agreement to an arbitration according to JAMS Rules?

3. Did the district court err in disregarding JAMS' determination that Vivint Solar had paid its arbitration fees within thirty days of the due dates set by JAMS, in light of controlling precedent that an arbitration provider's interpretation of its own rules and deadlines is final and unreviewable and the parties' agreement to delegate questions of arbitrability to the arbitrator?

 **\*7**  4. Did the district court err in holding that the operative "due dates" for purposes of § 1281.97 were the dates invoices were sent with a statement "due upon receipt" rather than the case-specific due dates stated in letters from JAMS?

5. Was the district court's ruling that Vivint Solar waived the right to compel arbitration fundamentally unfair in light of Vivint Solar's reliance on JAMS' case-specific correspondence as to the due dates and its good faith efforts to timely pay its arbitration fees in the midst of a global pandemic? [2]

### STATEMENT OF THE CASE

#### 1. Appellees Enter into Arbitration Agreements with Vivint Solar.

Vivint Solar is an American solar energy company headquartered in Utah. It is a residential solar provider that designs, installs, and maintains photovoltaic systems. Appellees separately entered into "Power Purchase Agreements" (or "PPAs") with Vivint Solar for the installation of solar panels on their roofs. 2-ER:136-139 (First Amended Complaint) ¶¶ 16-17, 20-21, 23.

 **\*8**  The PPAs included arbitration agreements that broadly required arbitration of all disputes, claims, and controversies arising out of or relating to "any aspect of the relationship" between the parties or the PPA. 2-ER:186-188; 2-ER:212-214; 2-ER:238-240 (Rogers, Piini, and Barajas PPAs § 6(e)). The PPAs delegated any questions of arbitrability to the arbitrator. *See id.* (scope of arbitration provision includes "the interpretation, validity, or enforceability of this Agreement, including the determination of the scope of applicability of this [arbitration clause]"); *see* 2-ER:255-256 (Hulsey PPA § 5); 2-ER:261 (Hilliard PPA § 4). The PPAs designated JAMS as the arbitration provider and incorporated its Streamlined Arbitration Rules and Procedures ("JAMS Rules"). 2-ER:186-188; 2-ER:212-214; 2-ER:238-240 (Rogers, Piini, and Barajas PPAs § 6(e)) ("The arbitration shall be administered by JAMS pursuant to its Streamlined Arbitration Rules and Procedures ...."); *see* 2-ER:255-256 (Hulsey PPA § 5) (incorporating Streamlined JAMS Rules); 2-ER:261 (Hilliard PPA § 4) (same); JAMS Rule 1(b) ("The parties shall be deemed to have made these Rules a part of their Arbitration agreement.").

The JAMS Rules incorporated in the arbitration agreements entered into by Appellees include provisions regarding the payment of JAMS fees. They provide that "[i]f, at any time, any Party has failed to pay fees or expenses in full, JAMS may order the suspension or termination of the proceedings." JAMS Rule 6(c); *see also* JAMS Rule 26 (Fees). The JAMS Rules also provide that "the Arbitrator  **\*9**  shall resolve disputes about the interpretation and applicability of these Rules and the conduct of the Arbitration Hearing. The resolution of the issue by the Arbitrator shall be final." JAMS Rule 8(a).

#### 2. The District Court Grants Vivint Solar's Motion to Compel Arbitration Under the FAA.

On December 3, 2019, ten plaintiffs, including Appellees, commenced this putative class action against Vivint Solar, alleging that early termination fees in their contracts constituted unlawful liquidated damages. 2-ER:275. On January 17, 2020, Vivint

Karen BARAJAS as executor of the Estate of Thompson..., 2020 WL 7132552...

Case 3:23-cv-02217-SI   Document 29-1   Filed 05/19/23   Page 49 of 74

Solar moved under the FAA to compel arbitration against the five Appellees and four other plaintiffs (the tenth plaintiff had not entered into an arbitration agreement with Vivint Solar). *See* 2-ER:265.[3] On March 24, 2020, the district court, expressly applying the FAA and federal case law interpreting the FAA, granted Vivint Solar's motion to compel arbitration with respect to Appellees, as well as three other plaintiffs. 2-ER:162-174.


**\*10   3. JAMS Sends Correspondence to the Parties Stating When Filing Fees Are Due.**

Each of Appellees' five cases then proceeded before JAMS. On April 29, 2020, Appellees filed arbitration demands in each case. 2-ER:129. On May 14, 2020, Vivint Solar filed timely answers to each of the arbitration demands. 2-ER:126. JAMS communicated with Vivint Solar about due dates for payment of filing fees as follows:

• *Barajas*: On May 14, 2020, JAMS sent Vivint Solar a Notice of Intent To Initiate Arbitration letter ("NOI Letter") providing that "Respondent must pay the remaining $1500.00 Filing Fee by no later than May 28, 2020." 2-ER:96. On May 15, 2020, JAMS sent Vivint Solar an invoice, which stated that "[p]ayment is due upon receipt." 2-ER:98-99.

• *Hilliard*: On May 20, 2020, JAMS sent Vivint Solar an NOI letter stating, "Please submit payment by ***Friday, June 5, 2020***." 2-ER:82 (bold and underline in original). On May 21, 2020, JAMS sent an invoice with the same "due upon receipt" statement. 2-ER:83-84.

• *Hulsey*: On May 20, 2020, JAMS sent Vivint Solar an NOI letter stating that "Respondent must pay the remaining $1500.00 by no later than June 3, 2020." 2-ER:64. On May 22, 2020, JAMS sent Vivint **\*11** Solar an invoice with the same "due upon receipt" statement. 2-ER:65-66.

• *Piini*: On May 16, 2020, JAMS sent Vivint Solar an invoice with the same "due upon receipt" statement. 2-ER:53-54. However, on June 11, 2020, JAMS sent an NOI letter providing that "Respondent must pay the remaining $1,500 by no later than June 17, 2020." 2-ER:56.

• *Rogers*: On May 22, 2020, JAMS sent Vivint Solar an invoice. 2-ER:38-39. Vivint Solar paid this invoice before JAMS sent an NOI letter. 2-ER:48-50.

**4. Vivint Solar's Payment of Filing Fees.**

Over the next several weeks, Vivint Solar worked diligently to process and pay the filing fees, despite the presence of a global pandemic that had shuttered its offices, resulted in layoffs and furloughs, and slightly delayed its ability to pay these and other bills. 2-ER:122-123. (Declaration of Jeffrey R. Makin in Opposition to Motion to Vacate Order Compelling Arbitration) ¶ 2. On June 4, 2020, Vivint Solar advised JAMS and Appellees that the payment of the initial filing fees was "currently being processed by Vivint Solar." 2-ER:43. On June 10, 2020, less than a week later, Vivint Solar advised JAMS and Appellees that, due to the pandemic, payment was "taking a little longer than usual with nobody in the office," but that JAMS would receive payment "in a week or two." 2-ER:114. **\*12** Neither JAMS nor Appellees raised any objection. 2-ER:117-119 (Declaration of Chet A. Kronenberg In Support to Defendants' Opp. to Motion to Vacate) ¶ 8.

On June 24, 2020 at 11:54 a.m., Vivint Solar advised JAMS and Appellees that Vivint Solar's checks would be mailed the next day. 2-ER:103. After having raised no objection, and without notice, Appellees wrote to JAMS in each case at 10:52 p.m. ***that night*** purporting to withdraw their claims from arbitration under § 1281.97 on the ground that Vivint Solar had failed to pay its fees within thirty days of each invoice. 2-ER:47; 2-ER:57; 2-ER:73; 2-ER:89; 2-ER:104. About an hour later, Appellees filed a motion in the district court to vacate the arbitration order. *See* D. Ct. Dkt. 68.

As it had promised, Vivint Solar paid all required fees on June 25, 2020, which JAMS received on June 26, 2020. 2-ER:48-50.

Karen BARAJAS as executor of the Estate of Thompson..., 2020 WL 7132552...

Case 3:23-cv-02217-SI Document 29-1 Filed 05/19/23 Page 50 of 74

**5. JAMS Confirms That Vivint Solar Paid All Required Fees Within Thirty Days of the Applicable Due Dates.**

In response to Appellees' emails withdrawing their arbitration demands and asserting that Vivint Solar had failed to pay within thirty days of the purported due dates, JAMS advised the parties that Appellees' interpretation of the deadlines was wrong. For example, on June 29, 2020, the case manager in the *Barajas* arbitration wrote to all parties:

JAMS has received the parties' correspondence with regard to Claimant's withdrawal of the Arbitration Demand pursuant to CCP Section 1281.97. JAMS **\*13** received Claimant's demand for arbitration on May 11, 2020. ***Fees were originally due on May 28, 2020*** [*i.e.*, the date set forth in the NOI Letter, not the invoice date]. JAMS received Respondent's payment on June 26, 2020.

2-ER:109 (emphasis added). The same day, the case manager in the *Hulsey* arbitration sent a substantively identical letter stating that "[f]ees were originally due June 3, 2020. "JAMS received Respondent's payment on June 26, 2020." 2-ER:78.

**6. The District Court Grants Appellees' Motion to Vacate Its Prior Arbitration Order.**

Between June 24 and July 15, 2020, the parties briefed Appellees' motion to vacate the district court's prior arbitration order. On July 28, 2020, the district court requested supplemental briefing addressing the meaning of the phrase "due date" in § 1281.97, which the parties submitted on July 31, 2020. D. Ct. Dkt. 75-77.

On August 14, 2020, the district court granted Appellees' motion to vacate and ordered Vivint Solar to pay Appellees' attorney's fees and costs in connection with the motion (the "Vacate Arbitration Order"). 1-ER:4. [4] While acknowledging that the meaning of "due date" in § 1281.97 is unclear, 1-ER:9-10, the district court held that, because "the JAMS invoices [here] stated that payment was due upon **\*14** receipt," payment was due the same day each invoice was received (thereby starting the clock on the 30-day grace period), not on the case-specific deadlines set by JAMS in correspondence to Vivint Solar. 1-ER:11-12. The district court also rejected Vivint Solar's argument that § 1281.97 is inapplicable to a motion to compel arbitration under the FAA, holding that § 1281.97 "modifies a substantive right" under California law and is consistent with the FAA in furthering the timely payment of arbitration fees. 1-ER:7-9.

On August 17, 2020, Vivint Solar timely filed a notice of appeal. 2-ER:306. On August 18, 2020, Vivint Solar moved in the district court to stay pending appeal further district court proceedings with respect to the five Appellees. D. Ct. Dkt. 87. The district court denied that motion on September 15, 2020, simultaneously vacating the remaining district court case schedule in light of the pandemic and setting the next case management conference for April 22, 2021. D. Ct. Dkt. 95.

On October 1, 2020, Vivint Solar moved in this Court to stay district court proceedings pending appeal with respect to Appellees. Dkt. 5. The Court denied that motion on November 18, 2020. Dkt. 9.

**SUMMARY OF THE ARGUMENT**

The district court erred in finding that Vivint Solar had waived the right to arbitrate Appellees' claims under the FAA for at least five independent reasons.

**\*15** ***First***, § 1281.97 - which is part of the CAA - does not apply to a motion to compel arbitration under the FAA. Section 1281.97 expressly provides only for waiver of "the right to compel arbitration under Section 1281.2" of the California Code of Civil Procedure. The motion here was brought and granted under the FAA - not under the CAA. Moreover, under this Court's controlling precedent, California's arbitration rules do not apply in determining whether a matter is arbitrable under the FAA.

Karen BARAJAS as executor of the Estate of Thompson..., 2020 WL 7132552...

Case 3:23-cv-02217-SI   Document 29-1   Filed 05/19/23   Page 51 of 74

**Second**, even if § 1281.97 were intended to apply to motions to compel arbitration under the FAA, it would be preempted by the FAA. Section 1281.97 is not a generally applicable contract defense that applies equally to arbitration and non-arbitration agreements, and its application would be an obstacle to accomplishment of the FAA's objectives by modifying the parties' agreement to an arbitration according to JAMS Rules.

**Third**, even if § 1281.97 applied to Vivint Solar's motion to compel arbitration and was not preempted, the district court erred in disregarding JAMS' interpretation of its Rules. Under controlling precedent, JAMS' interpretation of its own rules, deadlines, and procedures is final and cannot be second-guessed by the court. In addition, the parties agreed by contract to delegate questions of arbitrability to the arbitrator. Vivint Solar's fee payments were within 30 days of the due dates as determined by JAMS.

**\*16  Fourth**, the district court erred as a matter of law in holding that Vivint Solar failed to pay the fees within 30 days of the operative "due dates." Vivint Solar paid its fees within thirty days of the "due dates" expressly set by JAMS in case-specific correspondence. Vivint Solar reasonably believed that those due dates were the operative dates - not the dates invoices were sent with a standard statement "due upon receipt."

**Finally**, the district court's decision is fundamentally unfair given that Vivint Solar paid its fees well within thirty days of the due dates provided by JAMS, which it relied on, even in the midst of a global pandemic with its offices shut down.

**STANDARD OF REVIEW**

This Court reviews *de novo* a district court's determination as to the arbitrability of a dispute. *See generally* 🚩 *Sink v. Aden Enterprises, Inc.*, 352 F.3d 1197, 1200 (9th Cir. 2003) (appeal of decision vacating arbitration order); 🚩 *Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1057 (9th Cir. 2013) (en banc) (appeal of decision declining to compel arbitration).

**\*I  CORPORATE DISCLOSURE STATEMENT**

This disclosure is made pursuant to Federal Rule of Appellate Procedure 26.1.
(i) On October 8, 2020, Vivint Solar, Inc. was acquired by Sunrun Inc., a publicly traded company, in a stock-for-stock acquisition. The combined entity trades on The Nasdaq Global Select Market under the ticker symbol RUN;

(ii) Vivint Solar Holdings, Inc., Vivint Solar Developer, LLC, and Vivint Solar Provider, LLC are privately owned companies that are now indirectly wholly owned by Sunrun Inc.;

(iii) No other entity owns more than 10% of Vivint Solar, Inc.'s stock.

Date: November 25, 2020

George C. Harris

*Attorney for Defendants-Appellants*

**\*16  ARGUMENT**

**I. The District Court Erred in Finding § 1281.97 Applicable to Motions to Compel Arbitration Brought Under the FAA.**

Karen BARAJAS as executor of the Estate of Thompson..., 2020 WL 7132552...

Case 3:23-cv-02217-SI    Document 29-1    Filed 05/19/23    Page 52 of 74

The district court applied the waiver provision in California Code of Civil Procedure § 1281.97 to vacate its own prior order compelling arbitration. **\*17** Section 1281.97 amended the CAA effective January 1, 2020. This CAA provision does not apply, however, to the motion to compel arbitration here, which was brought and granted under the FAA, not the CAA.

By its plain terms, § 1281.97's waiver provision applies only to the right to compel arbitration under the CAA. It provides that failure to pay fees within thirty days of the due date "waives [the party's] right to compel arbitration **under Section 1281.2**" of the California Code of Civil Procedure, which is part of the CAA. Cal. Civ. Proc. Code § 1281.97(a) (emphasis added).

Vivint Solar moved to compel arbitration under the FAA - not the CAA. *See* 2-ER:265-269; 1-ER:8 (Vacate Arbitration Order) ("defendants correctly recognize that they compelled arbitration under the FAA, not the California Arbitration Act"). Therefore, by its unambiguous, plain terms § 1281.97 does not apply to Vivint Solar's right to compel arbitration in this case. *See, e.g.*, *Harris v. Harris*, 935 F.3d 670, 674 (9th Cir. 2019) (first rule of statutory interpretation is that court "must apply the statute as written"); *In re Gardenhire*, 209 F.3d 1145, 1152 (9th Cir. 2000) ("As judges, of course, we must apply statutes as written, not as they should have been written with the benefit of hindsight."); *United States v. Tucor Int'l, Inc.*, 189 F.3d 834, 837 (9th Cir. 1999) ("since the language of the statute is clear, we need look no further than the language itself to determine the statute's meaning").

**\*18** Nor can the parties' arbitration agreements be construed as incorporating this new CAA provision. Under this Court's controlling precedent, a provision for choice of state law does not displace the FAA and incorporate a state statute that, like § 1281.97, would determine whether a matter will proceed in court or arbitration.

For example, in *Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205 (9th Cir. 1998), the district court denied a motion to compel arbitration based on California Code of Civil Procedure § 1281.2(c), which grants a court discretion to stay arbitration where a related matter is pending in court. *Id.* at 1210. This Court reversed. Rejecting the argument that a California choice of law provision required the application of § 1281.2(c), the Court held that the FAA displaces California rules unless they relate **only** to substantive rights and obligations and **not** to the allocation of power between courts and arbitrators:

[T]he Development Agreement ... should not be read to incorporate Cal. Civ. Proc. Code § 1281.2(c) .... [T]he Development Agreement contains an arbitration clause and a general choice-of-law clause, but does not contain a specific reference to the state arbitration rule at issue. Therefore ... the relevant question is whether section 1281.2(c) is a "substantive principle that [California] courts would apply" or is instead "a special rule[ ] limiting the authority of arbitrators' ..... That is, it is necessary to determine whether section 1281.2(c) affects "**only [California's] substantive rights and obligations,**" or whether it also affects "[California's] **allocation of power between alternative tribunals**" .... Section 1281.2(c) allows courts to stay arbitration proceedings **\*19** where a party to the arbitration agreement is also a party to a pending court action with a third party arising out of the same transaction. Such a rule assuredly does affect California's "allocation of power between alternative tribunals."

*Id.* at 1212 (emphasis added) (quoting *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 64 (1995)). The Court concluded that, because "general choice-of-law clauses **do not incorporate state rules that govern the allocation of authority between courts and arbitrators**, the district court erred in applying Cal. Civ. Proc. Code § 1281.2(c) to deny [the] motion to compel arbitration." *Id.* at 1213 (emphasis added).

Karen BARAJAS as executor of the Estate of Thompson..., 2020 WL 7132552...

Case 3:23-cv-02217-SI    Document 29-1    Filed 05/19/23    Page 53 of 74

Since *Wolsey*, this Court has consistently held that state arbitration rules, including waiver provisions such as that in § 1281.97, have no application to motions to compel arbitration under the FAA. In 🚩 *Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266 (9th Cir. 2002), the Court rejected an argument that state law providing for waiver of the right to compel arbitration (because of a successful motion to dismiss an earlier complaint) should be applied based on the arbitration agreement's choice of law provision. [W]e will interpret the choice-of-law clause as simply supplying state substantive, decisional law, ***and not state law rules for arbitration***.... We further conclude that ***waiver of the right to compel arbitration is a rule for arbitration, such that the FAA controls***. Rules for arbitration include principles that affect the "allocation of power between alternative tribunals." Waiver, in the arbitration context, involves the circumstances under **\*20** which a party is foreclosed from electing an arbitration forum. Therefore, the question of whether a party has waived its right to compel arbitration directly concerns the allocation of power.

🚩 *Id.* at 1270 (emphasis added; quoting 🚩 *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 60 (1995); citations omitted); *see also* 🚩 *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000) ("In light of *Mastrobuono* and *Wolsey*, the district court correctly found that the federal law of arbitrability under the FAA governs the allocation of authority between courts and arbitrators," including issues of "'waiver, delay, or a like defense to arbitrability'") (quoting 🚩 *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983)).

The district court here reasoned that "§ 1281.97 modifies a substantive right" because it "*is* outcome determinative (on the breach issue), and significantly so: its application (or not) decides whether the parties must resolve their dispute in arbitration versus court." 1-ER:7-9. But that is exactly why, under this Court's controlling precedent, §1281.97 "affect[s] the 'allocation of power between alternative tribunals,'" 🚩 *Sovak*, 280 F.3d at 1270, and therefore does not apply to a motion to compel arbitration under the FAA.

In erroneously holding that § 1281.97 applies to Vivint Solar's motion to compel arbitration under the FAA, the district court relied on 🚩 *Sink v. Aden Enterprises, Inc.*, 352 F.3d 1197 (9th Cir. 2003), which was referenced by the **\*21** California legislature when it enacted §1281.97. The district court reasoned that "our court of appeals has found the principle embodied in § 1281.97 is consistent with the FAA." 1-ER:8.

But *Sink* provides no support for the proposition that § 1281.97's waiver provision applies to Vivint Solar's right to compel arbitration under the FAA. In *Sink*, the arbitration provider "informed the parties that it was cancelling the scheduled arbitration due to non-payment of fees," and the arbitrator entered a default order. 🚩 *Sink*, 352 F.3d at 1199. This Court held, first, that it was not clearly erroneous for the district court to confirm the default; and then, analyzing the applicable FAA provisions, held that the FAA did "not require the district court to order the parties to return to arbitration" in light of the default. 🚩 *Id.* at 1201-02. In reaching those holdings, *Sink* did not consider or rely in any way on state law or incorporation of state law rules.

Moreover, the facts in *Sink* were the reverse of those here. In *Sink*, the district court denied a motion for return to arbitration based on the rulings of the arbitration provider (cancelling the scheduled arbitration due to non-payment of fees) and the arbitrator (entering a default order). Here, when Appellees withdrew their demand for arbitration in reliance on § 1281.97, the arbitration provider informed the parties that Vivint Solar ***had*** paid the fees within 30 days of the due date. The district court, nonetheless, vacated its order compelling arbitration in **\*22** disregard of the arbitration provider's interpretation of its own rules and procedures.

Based on this Court's controlling law and its plain language, § 1281.97 does not apply to Vivint Solar's right to compel arbitration under the FAA. For that reason alone, this Court should reverse the district court's order vacating its earlier order to compel arbitration.

Case 3:23-cv-02217-SI   Document 29-1   Filed 05/19/23   Page 54 of 74

Karen BARAJAS as executor of the Estate of Thompson..., 2020 WL 7132552...

### II. To the Extent It Is Intended to Apply to the Right to Compel
### Arbitration Under the FAA, § 1281.97 Is Preempted by the FAA.

As demonstrated above, § 1281.97 does not apply to the right to compel arbitration under the FAA. However, if interpreted to apply, it would be preempted by the FAA.

"Section 2 [of the FAA] is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *see AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) ("We have described this provision [FAA Section 2] as reflecting both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract.") (internal quotations omitted).

**\*23** As a result of the federal preference for arbitration, "courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." *Concepcion*, 563 U.S. at 339. Section 2 contains a "savings clause," that "permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Concepcion*, 563 U.S. at 339. "Although § 2's saving clause preserves generally applicable contract defenses, nothing in it suggests an intent to preserve state-law rules that stand as an obstacle to the accomplishment of the FAA's objectives." *Id.* at 343.

In light of these principles, this Court has recognized that a state-law rule can be preempted by the FAA in two ways. First, the rule may be preempted if it is not a "generally applicable contract defense" that applies "equally to arbitration and non-arbitration agreements." *Blair v. Rent-A-Ctr., Inc.*, 928 F.3d 819, 825 (9th Cir. 2019) (citations omitted). Second, "even a generally applicable rule may be preempted if it 'stand[s] as an obstacle to the accomplishment of the FAA's objectives.'" *Id.* (quoting *Concepcion*, 563 U.S. at 341). That a rule is "generally applicable" will not save it from preemption if the rule defeats the purpose of the FAA by manipulating a mutual arbitration agreement without the consent of the parties. *See Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1418 (2019) ("The **\*24** general applicability of the rule did not save it from preemption under the FAA with respect to arbitration agreements, because it had the consequence of allowing any party to a consumer arbitration agreement to demand class proceedings 'without the parties' consent.'").

If interpreted to apply to the right to compel arbitration under the FAA, § 1281.97 would be preempted by the FAA on both grounds.

*First*, § 1281.97 is not a "generally applicable contract defense" that applies "equally to arbitration and non-arbitration agreements." *Blair*, 928 F.3d at 825. It is targeted specifically at cases that are in arbitration pursuant to arbitration agreements and applies only to those cases. It promulgates a rule that requires a finding of default in the arbitration proceeding and a waiver of the contractual right to compel arbitration with the result that a case otherwise in arbitration must be brought in court. It is therefore preempted by the FAA. *See Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984) (preempting provision of California Franchise Investment Law that California courts had interpreted to require judicial consideration of claims arising under the law; "[i]n enacting § 2 of the federal Act, Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agree to resolve by arbitration."); *Perry v. Thomas*, 482 U.S. 483, 490 (1987) (finding that the FAA preempted **\*25** § 229 of the California Labor Code, which provided that wage collections could be maintained irrespective of any private agreement to

Karen BARAJAS as executor of the Estate of Thompson..., 2020 WL 7132552...

Case 3:23-cv-02217-SI   Document 29-1   Filed 05/19/23   Page 55 of 74

arbitrate, because it was in conflict with the intention of the FAA that arbitration agreements be "rigorously enforce[d]") (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)).

*Second*, applying § 1281.97 to the right to compel arbitration under the FAA would be "an obstacle to the accomplishment of the FAA's objectives." *Concepcion*, 563 U.S. at 343. The FAA does not permit state law to modify the terms of an arbitration agreement. Instead, it instructs that courts must "enforce arbitration agreements according to their terms, including terms that specify with whom the parties choose to arbitrate their disputes and the ***rules under which that arbitration will be conducted.***" *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612 at 1621 (2018) (citing *American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 233, (2013)) (emphasis added).

Application of § 1281.97 to the FAA arbitration in this case would modify the parties' agreement to an arbitration conducted according to JAMS Rules, imposing a new rule regarding default for late payment of fees. The parties here agreed that "[t]he arbitration shall be administered by JAMS pursuant to its Streamlined Arbitration Rules and Procedures." 2-ER:186-188; 2-ER:212-214; 2-ER:238-240 (Rogers, Piini, and Barajas PPAs § 6(e)); *see* 2-ER:255-256 (Hulsey PPA § 5) (incorporating Streamlined JAMS rules); 2-ER:261 (Hilliard PPA § 4) **\*26** (same); *see* JAMS Rule 1(b) ("The parties shall be deemed to have made these Rules a part of their Arbitration agreement."). Those Rules include provisions for the payment of fees and the consequences of failure to pay fees. They expressly provide that "[i]f, at any time, any Party has failed to pay fees or expenses in full, JAMS may order the suspension or termination of the proceedings." JAMS Rule 6(c). Application of § 1281.97 would modify the parties' agreement - which was for an arbitration administered by JAMS according to JAMS rules - by adding a requirement for a finding of default and waiver of the right to compel arbitration as a result of failure to pay fees within 30 days of their "due date."

By displacing the parties' agreement, application of § 1281.97 would create an "obstacle to the accomplishment of the FAA's objectives." *Concepcion*, 563 U.S. at 343. "The preeminent concern of Congress in passing the [FAA] was to enforce private agreements into which parties had entered." *Byrd*, 470 U.S. at 221; *accord* *Perry*, 482 U.S. at 490. The FAA reflects the "fundamental principle that arbitration is a matter of contract" and requires that arbitration agreements be "enforced ... according to their terms." *Concepcion*, 563 U.S. at 339 (citations omitted); *see* *Perry*, 482 U.S. at 490 (quoting *Byrd*, 470 U.S at 221) ("We have accordingly held that these agreements must be that these agreements must be rigorously enforce[d]."); *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 469 (1989) ("[T]he FAA's principal purpose is to **\*27** ensure that private arbitration agreements are enforced according to their terms."). [5]

Application of § 1281.97 would rewrite the terms of the parties' agreement and create an obstacle to the right to compel arbitration. For this additional reason, if intended to apply to FAA arbitrations, § 1281.97 would be preempted by the FAA.

### III. The District Court Erred in Disregarding JAMS' Interpretation of its Rules and Payment Due Dates.

Even assuming *arguendo* that § 1281.97 limits Vivint Solar's right to compel arbitration under the FAA, and is not preempted by the FAA, the district court erred as a matter of law by disregarding JAMS' interpretation of its rules and payment due dates. Under controlling legal principles and the terms of the arbitration agreements, these procedural questions were for the arbitration provider and the arbitrator, not the court, to decide.

The Supreme Court has held that: "[P]rocedural questions which grow out of **\*28** the dispute and bear on its final disposition are presumptively *not* for the judge, but for the arbitrator to decide. So too, the presumption is that the arbitrator should decide allegation[s] of waiver, delay, or a like defense to arbitrability." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (citations and quotation marks omitted).

Case 3:23-cv-02217-SI   Document 29-1   Filed 05/19/23   Page 56 of 74

Karen BARAJAS as executor of the Estate of Thompson..., 2020 WL 7132552...

Moreover, here, the arbitration agreements expressly delegated even substantive questions of arbitrability to the arbitrator. *See* 2-ER:186-188; 2-ER:212-214; 2-ER:238-240 (Rogers, Piini, and Barajas PPAs § 6(e)) (scope of arbitration provision includes "the interpretation, validity or enforceability of this [Arbitration] Agreement") [6]; 2-ER:255-256 (Hulsey PPA § 5) (delegating questions of "interpretation, validity, or enforceability of this Agreement, including the determination of the scope or applicability" of the arbitration provision); 2-ER:261 (Hilliard PPA § 4) (same); *see also* Henry Schein, Inc. v. Archer & White Sales, Inc., 139 S. Ct. 524, 529 (2019) ("[w]hen the parties' contract delegates the arbitrability question to an arbitrator ... a court possesses no power to decide the arbitrability issue").

**\*29** And the parties also agreed that the JAMS Rules would govern. 2-ER:186-188; 2-ER:212-214; 2-ER:238-240 (Rogers, Piini, and Barajas PPAs § 6(e)) ("The arbitration shall be administered by JAMS pursuant to its Streamlined Arbitration Rules and Procedures ...."); 2-ER:255-256 (Hulsey PPA § 5) (incorporating Streamlined JAMS Rules); 2-ER:261 (Hilliard PPA § 4) (same); *see* Brennan v. Opus Bank, 796 F.3d 1125, 1130 (9th Cir. 2015) ("we hold that incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability."); *Worldwide Film Productions, LLC v. JPMorgan Chase Bank, N.A.*, CV 19-10337-DSF (JPRx) 2020 WL 2730926 at \*2-3 (C.D. Cal. Mar. 13, 2020) (finding language stating that "[t]he arbitration shall be administrated by JAMS pursuant to its JAMS' comprehensive Arbitration Rules and Procedures" was "clear and unmistakable evidence" of the parties intent to arbitrate arbitrability.).

Cases applying these principles have held that an arbitration provider's interpretation of its own rules and procedural deadlines is unreviewable by the court. *See, e.g.,* Greenspan v. LADT, LLC, 185 Cal. App. 4th 1413, 1451, 1458 (2010) (quoting *Howsam* at length and holding that procedural disputes concerning arbitration deadlines are "vested solely in the arbitrator under JAMS rules," should be "decided by the arbitrator as a final matter," and are "unreviewable on the merits"); **\*30** Lifescan, Inc. v. Premier Diabetic Services, Inc., 363 F.3d 1010, 1011-13 (9th Cir. 2004) (holding that the district court had no authority to issue an order regarding the apportionment of fees in arbitration; "[t]he agreement between [the parties] is not silent because it incorporates the rules of the AAA, which do cover the apportionment of fees: They leave it up to the arbitrators."); D. Brunner v. Lyft, Inc., Case No. 19-cv-04808-VC, 2019 WL 6001945, at \*2 (N.D. Cal. Nov. 14, 2019) ("the arbitrator ... is well positioned to decide in the first instance whether the non-payment of fees justifies the termination of arbitral proceedings"); Adams v. Postmates, Inc., 414 F. Supp. 3d 1246, 1248, 1255 (N.D. Cal. 2019) (rejecting request "to compel Postmates to pay the arbitrator's fee within a prescribed time-period" because, under the AAA Commercial Arbitration Rules, "the payment of arbitration fees, including related expenses, is a procedural condition precedent to be decided by the arbitrator").

When payment of Vivint Solar's fees was due is a procedural matter that was vested "solely in the arbitrator under JAMS Rules," and was "unreviewable" by the district court. Greenspan, 185 Cal. 4th at 1455, 1458; *see Adams*, 414 F. Supp. 3d at 1455 (holding that dispute about fee payments was "within the arbitrator's exclusive authority" under AAA rules); Lifescan, 363 F.3d at 1013 (holding that fee disputes within the scope of incorporated arbitration rules are for the arbitrator alone). The authority relied upon by the district court acknowledges this same principle - that determinations regarding payment of fees are for the **\*31** arbitrator when so delegated in the agreement between the parties. *See* Sink, 352 F.3d at 1201-1202 (affirming the district court's ***confirmation of the arbitrator's determination of default***); Postmates Inc. v. 10,356 Individuals, No. CV 20-2783 PSG (JEMx), 2020 WL 1908302 at \*4 (C.D. Cal. Apr. 15, 2020) (deferring to payment deadlines set by AAA with regard to potential default under § 1281.97.).

When Appellees informed JAMS that they were withdrawing from arbitration based on Vivint Solar's purported failure to pay fees within 30 days of their due dates, JAMS rejected Appellees' position and confirmed that Vivint Solar ***had*** paid its fees within thirty days of the operative due dates. *See, e.g.,* 2-ER:109 (Stating that in the Barajas matter, "Fees were originally due on May 28, 2020 [*i.e.*, the date in the NOI Letter, not the invoice date]. JAMS received Respondent's payment on June 26,

Case 3:23-cv-02217-SI   Document 29-1   Filed 05/19/23   Page 57 of 74

Karen BARAJAS as executor of the Estate of Thompson..., 2020 WL 7132552...

2020."); 2-ER:78 (same, regarding Hulsey). The district court erred as matter of law by disregarding JAMS' determination of the due dates for fee payments.

### IV. The District Court Erred As a Matter of Law In Holding That Vivint Solar Had Not Paid Its Arbitration Initiation Fees Within Thirty Days of the "Due Dates."

Assuming *arguendo* that § 1281.97 is applicable with respect to a motion to compel arbitration under the FAA and not preempted by the FAA, and that the district court was not bound by JAMS' interpretation of its payment due dates, the **\*32** district court still erred as a matter of law in finding that Vivint Solar did not pay its arbitration filing fees withing 30 days of the due dates. Section 1281.97 states, in relevant part:

In an employment or consumer arbitration ... if the fees or costs to initiate an arbitration proceeding are not paid within 30 days after the *due date*, the drafting party is in material breach of the arbitration agreement, is in default of the arbitration, and waives its right to compel arbitration under 📁 Section 1281.2.

Cal. Civ. Proc. Code § 1281.97(a) (emphasis added). The issue on the merits is the operative due dates for Vivint Solar's payment of initiation fees - the dates of the invoices or the case-specific due dates stated by JAMS in correspondence with Vivint Solar.

The district court's holding that the "due date" should run from the date of JAMS' invoice, irrespective of the fact that JAMS' NOI Letters provided later due dates, disregards common sense and Vivint Solar's reasonable reliance on the NOI Letters. For example, in the *Barajas* matter, when Vivint Solar received the May 14, 2020 NOI Letter from JAMS stating that the due date for filing fees was May 28, 2020 (2-ER:95-96), it was reasonable for Vivint Solar to conclude that was the operative due date - not May 15, 2020, the date JAMS sent Vivint Solar an invoice with the boilerplate statement "payment due upon receipt."

Indeed, that is what JAMS intended, as demonstrated by its letters to counsel in response to Appellees' withdrawal of their demands for arbitration; those letters **\*33** confirmed that the due dates were those stated in the NOI letters and that payment had been received within 30 days of that date. *See* 2-ER:109; 2-ER:78. The district court's holding that Vivint Solar was in default and waived its right to compel arbitration because it relied on *the case-specific deadlines set by JAMS* defies common sense and requires reversal.

Moreover, the cases the district court cited in the Vacate Arbitration Order demonstrate conclusively that the "due date" for arbitration filing fees is when the arbitration provider states payment is due - not the date the arbitration provider issues its invoices.

For example, in *Postmates Inc. v. 10,356 Individuals*, thousands of food delivery drivers filed arbitration demands on February 15, 2020, and the American Arbitration Association ("AAA") issued its version of an NOI letter on February 24, 2020. *Postmates*, 2020 WL 1908302, at \*4. Similar to this case, the AAA issued two invoices the same day stating in capital letters, "BILLS ARE PAYABLE UPON RECEIPT." *Postmates, Inc. v. 10,356 Individuals*, Case 2:20-cv-02783-PSG-JEM, Dkt 57-34, 57-35 (June 29, 2020). [7] But the AAA also set an express payment deadline of March 16, 2020, about three weeks later, adding that "the demands are subject to [§ 1281.97] and that 'payment must be received by April **\*34** 15, 2020 [*i.e.*, 30 days after March 16, 2020] or the AAA may close the parties' cases.'" *Id.* Unsurprisingly, the *Postmates* court *accepted AAA's own deadline* and AAA's statement that payment was required under § 1281.97 by April 15, 2020 - not thirty days after the invoices were issued - despite the "PAYABLE UPON RECEIPT" invoice language. *Postmates*, 2020 WL 1908302, at \*4. [8]

The district court's Vacate Arbitration Order, which relied heavily on the *Postmates* decision (1-ER:10-11), got the facts of that case wrong. The district court's order states that *Postmates* "points toward a strict enforcement of the 30-day grace period that begins *upon defendants' receipt of invoice*." 1-ER:11. (emphasis added). In actuality, however, as explained above, the

Karen BARAJAS as executor of the Estate of Thompson..., 2020 WL 7132552...

Case 3:23-cv-02217-SI Document 29-1 Filed 05/19/23 Page 58 of 74

*Postmates* court treated the March 16, 2020 deadline set by AAA as the "due date," even though the AAA issued its invoices three weeks earlier. [9]

**\*35** This Court's decision in *Sink*, relied on by the district court, also does not support the court's conclusion that Vivint Solar should have disregarded JAMS' letters with explicit, case-specific due dates when determining when payment of arbitration filing fees was due. In *Sink*, the defendant failed to pay its arbitration fees after numerous warnings from the arbitrator that the defendant would be held in default - based on the deadline stated by the arbitrator, and the defendant offered no indication of its willingness or ability to pay. *Sink*, 352 F.3d at 1198-99. Eventually, the arbitrator issued a default order, and the plaintiff sought to return to the district court. *Id.* Significantly, in *Sink*, the "due date" this Court relied on in affirming the vacating of the prior arbitration order was the date ***set by the arbitrator*** "in a letter," *id.* at 1198, 1201, not the date the invoice issued.

Moreover, unlike in *Sink*, the arbitration provider here made no finding of default. To the contrary, JAMS - the arbitration organization whose rules the parties agreed they would abide by - agreed with Vivint Solar that Vivint Solar had paid its fees on time. *See* Part III *supra.*

**\*36 V. The District Court's Vacate Arbitration Order Is Fundamentally Unfair.**

Vivint Solar reasonably relied on case-specific due dates communicated by JAMS in the midst of a global pandemic. Courts in this Circuit and around the country have recognized that "the COVID-19 pandemic is an extraordinary circumstance that is preventing parties from meeting deadlines." *Dunn v. Baca*, Case No. 3:19-cv-00702-MMD-WGC, 2020 WL 2525772, at *2 (D. Nev. May 18, 2020). Yet the district court effectively found that JAMS had no discretion here to impose any deadline later than the date of its invoice, concluding that, otherwise, "the arbitrator could postpone time and again, delaying the 30-day grace period for as long as the arbitrator wished." 1-ER:10.

Vivint Solar respectfully submits that the district court's Vacate Arbitration Order is fundamentally unfair as well as legal error. Neither Vivint Solar nor JAMS "postpone[d]" any deadlines. Nor did Vivint Solar delay the arbitrations in any material way. To the contrary, JAMS set its deadlines once, and despite practical obstacles, Vivint Solar paid its fees within thirty days of JAMS' due dates (in reasonable reliance on the correspondence from JAMS) and submitted timely answers to all of the demands for arbitration.

The district court recognized that the purpose of § 1281.97 is to "ensur[e] that the party that drafts the arbitration agreement *cannot delay* adjudication of a dispute by refusing to participate in, or pay for, arbitration." 1-ER: 8 (emphasis in **\*37** original). Those concerns are not present here. [10]

**CONCLUSION**

For all of the foregoing reasons, Vivint Solar respectfully requests that this Court reverse the district court's Vacate Arbitration Order and direct the district court to reinstate its prior order compelling arbitration of Appellees' claims. Dated: November 25, 2020

THE NORTON LAW FIRM PC

By

THE NORTON LAW FIRM PC

George C. Harris

GHarris@nortonlaw.com

Fred Norton

FNorton@nortonlaw.com

Bree Hann

BHann@nortonlaw.com

299 Third Street, Suite 106

Oakland, CA 94607

Telephone: (510) 906-4900

*Attorneys for Defendants Vivint Solar, Inc., Vivint Solar Holdings, Inc., Vivint Solar Developer, LLC, and Vivint Solar Provider, LLC*

**Appendix not available.**


### Footnotes

1      "__-ER:__" denotes the Excerpts of Record volume and page number; "D. Ct. Dkt." denotes entries on the district court's docket.

2      Pursuant to Ninth Circuit Rule 28-2.7, Appellants have included an Addendum bound with this brief containing the statutes and rules pertinent to the issues raised in this appeal.

3      Three of the arbitration agreements expressly provided that "[t]his arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act ('*FAA*')." 2-ER:186-188; 2-ER:212-214; 2-ER:238-240 (Barajas, Rogers, and Piini PPAs) § 6(e)).

4      The parties subsequently stipulated to $25,000 in costs and fees, to be returned should Vivint Solar prevail in this appeal. D. Ct. Dkt. 92.

5      Though not addressing preemption, the district court reasoned that § 1281.97 is not contrary to federal policy because "it was the intent of the [California] legislature to better *enforce* the federal policy of fast and inexpensive dispute resolution." 1-ER:8. The Supreme Court has rejected this reasoning. *See* 🚩*Byrd,* 470 U.S. at 219 ("The legislative history of the Act establishes that the purpose behind its passage was to ensure judicial enforcement of privately made agreements to arbitrate. We therefore reject the suggestion that the overriding goal of the Arbitration Act was to promote the expeditious resolution of claims.").

6      The JAMS Rules further provide that "the Arbitrator shall resolve disputes about the interpretation and applicability of these Rules .... *The resolution of the issue by the Arbitrator shall be final.*" JAMS Rule 8(a) (emphasis added). The JAMS Rules include provisions addressing failure to pay fees. *See* JAMS Rule 6(c) ("If , at any time, any Party has

Karen BARAJAS as executor of the Estate of Thompson..., 2020 WL 7132552...

Case 3:23-cv-02217-SI   Document 29-1   Filed 05/19/23   Page 60 of 74

failed to pay fees or expenses in full, JAMS may order the suspension or termination of the proceedings."); JAMS Rule 26 (governing arbitration fees, without specifying a deadline for payment).

7    "Payable upon receipt" is synonymous with "due upon receipt." *See, e.g.*, 1-ER:11 (Vacate Arbitration Order) (using terms interchangeably).

8    In *Postmates*, plaintiff Postmates, Inc. filed an action in federal district court seeking to enjoin the defendants from proceeding with what it described as "de facto class arbitration" before AAA and from enforcing § 1281.97. Plaintiff's complaint alleged that if defendants brought a claim under § 1281.97, plaintiff "would show the claim is preempted by the FAA and/or violates the Contracts Clauses of the federal and state constitutions." *Id.* at *6. The court did not address those issues but noted, in finding that plaintiff had not shown irreparable harm in support of its motion for a preliminary injunction, that "[i]f Plaintiff is correct in its arguments, and the court or tribunal concludes that SB 707 [which included § 1281.97 when codified] is preempted or unconstitutional, it will not face any penalties at all." *Id.* at *8.

9    Nor was the district court correct in finding that, in this case, "[i]t is true that JAMS, perhaps in order to keep the business, was willing to let payment slide for a few weeks, ...." 1-ER:11. ***JAMS set the original deadlines*** in its NOI Letters and never granted any extension or "let payment slide." *See* 2-ER:96; 2-ER:82; 2-ER:64; 2-ER:56 (NOI Letters).

10   Indeed, it is Appellees themselves who have injected months-long delays by returning their cases to the district court, where all dates have been vacated for about the next six months due to the pandemic. D. Ct. Dkt. 95 at 2:21-23. Ironically, the three cases that remained in arbitration have moved forward quickly, with one already nearing the end of fact discovery.

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT 6

Case 3:23-cv-02217-SI Document 29-1 Filed 05/19/23 Page 62 of 74

Karen BARAJAS as executor of the Estate of Thompson..., 2021 WL 2604204...

2021 WL 2604204 (C.A.9) (Appellate Brief)
United States Court of Appeals, Ninth Circuit.

Karen BARAJAS as executor of the Estate of Thompson Bryson, Marlene Rogers, Marci Hulsey, Cindy
Piini, and Gennie Hilliard, individually and on behalf of all others similarly situated, Plaintiffs-Appellees,

v.

VIVINT SOLAR, INC., Vivint Solar Holdings, Inc., Vivint Solar Developer, LLC
and Vivint Solar Provider, LLC, Does 1 through 50, inclusive, Defendants-Appellants.

No. 20-16584.
June 16, 2021.

On Appeal from the United States District Court for the Northern District of California in No. 3:19-cv-07918-WHA
The Honorable William Alsup

**Defendants-Appellants' Reply Brief**

George C. Harris, Fred Norton, Bree Hann, The Norton Law Firm PC, 299 Third Street, Suite 106, Oakland, CA 94607,
Telephone: (510) 906-4900, GHarris @nortonlaw.com, FNorton@nortonlaw.com, BHann@nortonlaw.com, for defendants-
appellants Vivint Solar, Inc., Vivint Solar Holdings, Inc., Vivint Solar Developer, LLC, and Vivint Solar Provider, LLC.

### *ii *TABLE OF CONTENTS*

INTRODUCTION ......................................................................... 1
ARGUMENT ................................................................................ 2
I. The District Court Erred in Finding § 1281.97 Applicable to FAA Motions to Compel Arbitration .......... 2
II. To the Extent It Is Intended to Apply to the Right to Compel Arbitration Under the FAA, § 1281.97 is Preempted ................................................................................... 12
III.The District Court Erred By Reversing Its Arbitration Order Despite the Parties' Delegation of Arbitrability to the Arbitration Provider .......................................... 17
A. Plaintiffs' Filing of Their Motion Before an Arbitrator Had Been Appointed Did Not Empower the District Court to Decide a Question of Arbitrability ....................... 18
B. The District Court Erroneously Decided the § 1281.97 Issue Despite the Fact that It Is a Matter of Arbitrability Delegated to the Arbitration Provider ...................... 21
IV. The District Court Erred As a Matter of Law In Holding Vivint Solar Did Not Pay Arbitration Initiation Fees Within Thirty Days of the "Due Dates." ............................ 22
V. The District Court's Interpretation of § 1281.97 Is Inconsistent With Its Legislative Purpose ................... 27
CONCLUSION .............................................................................. 29

### *iii *TABLE OF AUTHORITIES*

**Cases**

*Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228 (2013) .................. 16
*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) .................... 12, 14, 17
*Baccei v. United States*, 632 F.3d 1140 (9th Cir. 2011) ........................ 14
*Beeman v. Anthem Prescription Mgmt., LLC*, 689 F.3d 1002 (9th Cir. 2012) ............................................................................ 25
*BioMagic, Inc. v. Dutch Bros. Enterprises, LLC*, 729 F. Supp. 2d 1140 (C.D. Cal. 2010) ...................................................................... 10, 11, 12
*Blair v. Rent-A-Ctr., Inc.*, 928 F.3d 819 (9th Cir. 2019) ....................... 12
*Borden, Inc. v. Meiji Milk Prods. Co.*, 919 F.2d 822 (2d Cir. 1990) ...... 15

Case 3:23-cv-02217-SI   Document 29-1   Filed 05/19/23   Page 63 of 74

Karen BARAJAS as executor of the Estate of Thompson..., 2021 WL 2604204...

*Bradley v. Gen. Motors Corp.*, 512 F.2d 602 (6th Cir. 1975) .................... 25

*Brown v. Dillard's, Inc.*, 430 F.3d 1004 (9th Cir. 2005) .......................... 5, 6, 7

*Brunner v. Lyft, Inc.*, 2019 WL 6001945 (N.D. Cal. Nov. 14, 2019) ......... 7

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126 (9th Cir. 2000) .................................................................................................................. 4

*Comm'r v. Bosch's Est.*, 387 U.S. 456 (1967) ...................................... 25

*Cronus Invs., Inc. v. Concierge Servs.*, 35 Cal. 4th 376 (2005) ............. 8, 9, 11, 12

**\*iv** *Emp'rs Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214 ... 25

*Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612 (2018) ................................. 16

*Gilchrist v. Jim Slemons Imports, Inc.*, 803 F.2d 1488 (9th Cir.1986) ... 13

*Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524 (2019) .................................................................................................................. 18, 22

*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002) ................. 22

*Intel Corp. v. Hartford Acc. & Indem. Co.*, 952 F.2d 1551 (9th Cir. 1991) .................................................................................................................. 28

*Johnson v. Armored Transp. of California, Inc.*, 813 F.2d 1041 (9th Cir. 1987) .................................................................................................................. 13

*Marsh & McLennan Companies, Inc. v. United States*, 50 Fed. Cl. 140 (2001) .................................................................................................................. 26, 27

*Mastick v. TD Ameritrade, Inc.*, 209 Cal. App. 4th 1258 (2012) .......... 9

*Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52 (1995) .... 3, 4

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983) .................................................................................................................. 5, 9

*Perry v. Thomas*, 482 U.S. 483 (1987) ................................................ 16

*Postmates Inc. v. 10,356 Individuals*, 2020 WL 1908302 (C.D. Cal. Apr. 15, 2020) .......................................................................................................... 23, 24

*Postmates, Inc. v. 10,356 Individuals*, 2021 WL 540155 (C.D. Cal. Jan. 19, 2021) .......................................................................................................... 5, 15

**\*v** *Shulman v. Kaplan*, 2020 WL 2748022 (C.D. Cal. Jan. 28, 2020) ...... 10

*Singleton v. Wulf*, 428 U.S. 106 (1976) ................................................ 13

*Sink v. Aden Enterprises, Inc.*, 352 F.3d 1197 (9th Cir. 2003) .............. 24

*Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266 (9th Cir. 2002) ............... 3, 4

*Tami Sportswear, Inc. v. United States*, 1974 WL 639 (N.D. Cal. Aug. 13, 1974) .......................................................................................................... 27

*Tapia v. Braifrom Enterprises, Inc.*, 2020 WL 5167740 (C.D. Cal. July 17, 2020) .......................................................................................................... 5

*Vincent v. Trend W. Tech. Corp.*, 828 F.2d 563 (9th Cir. 1987) ............. 13

*Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468 (1989) .......................................................................................... 7

*Williby v. Aetna Life Ins. Co.*, 867 F.3d 1129 (9th Cir. 2017) ............... 13

*Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205 (9th Cir. 1998) ........... 3, 4, 7, 8

**Statutes**

Cal. Code Civ. P. § 1281.97 ..................................................................... *passim*

Cal. Code Civ. P. § 631 ............................................................................ 26

**Rules**

Karen BARAJAS as executor of the Estate of Thompson..., 2021 WL 2604204...

Case 3:23-cv-02217-SI   Document 29-1   Filed 05/19/23   Page 64 of 74

Cal. Rule of Court 977(a) ............................................................. 25

Cal. Rule of Court 8.548 ............................................................. 11

**\*1  INTRODUCTION**

The district court erred in applying Cal. Code Civ. P. § 1281.97 to vacate its prior order compelling arbitration for five separate reasons:

1. Section 1281.97 is a state law rule affecting the allocation of power between courts and arbitrators that was not incorporated in the parties' agreements and, under this Court's controlling precedent, therefore does not apply to Vivint Solar's motion to compel arbitration under the Federal Arbitration Act ("FAA");

2. If interpreted to apply to FAA arbitrations, § 1281.97 would be preempted by the FAA because it is not a generally-applicable contract defense that applies equally to arbitration and non-arbitration agreements and would replace the parties' contractual choice of arbitration according to JAMS rules;

3. Even assuming *arguendo* that § 1281.97 applies to a motion to compel arbitration under the FAA and is not preempted, its application presents an arbitrability issue that the parties delegated to the arbitration provider;

4. Even assuming further that the district court was correct to decide this issue of arbitrability, it erred as a matter of law by disregarding the  **\*2**  arbitration provider's case-specific statements of the applicable "due dates"; and

5. The district court's interpretation of § 1281.97 - to disallow Vivint Solar's reliance on the arbitrator's case-specific due date statements despite no material delay or failure to participate in the arbitration process - is inconsistent with its legislative purpose.

Plaintiffs-Appellees' Answering Brief fails to rebut any of these independent grounds for reversal. Instead, mischaracterizing the issue as whether § 1281.97 is substantive or procedural, it does not even address the applicable standards established by controlling Supreme Court and Ninth Circuit precedent. Those standards compel reversal.

## ARGUMENT

### I. The District Court Erred in Finding § 1281.97 Applicable to FAA Motions to Compel Arbitration.

Section 1281.97, a recently enacted addition to the California Arbitration Act ("CAA"), provides that a party who drafts an arbitration agreement "waives its right to compel arbitration under Section 1281.2 [of the CAA]" if it fails to pay arbitration initiation fees "within 30 days after the due date." Cal. Civ. Proc. Code § 1281.97(a). Though it expressly applies only to motions to compel arbitration under the CAA, the district court here applied § 1281.97 to vacate its prior order compelling arbitration under the FAA. *See* 1-ER:8 ("defendants correctly  **\*3**  recognize that they compelled arbitration under the FAA, not the California Arbitration Act").

Under this Court's controlling precedent, state law rules apply to an FAA arbitration only if the parties "clearly evidence their intent to be bound by such rules." *Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1269 (9th Cir. 2002). Applying *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52 (1995), this Court has held that "general choice-of-law-clauses do not incorporate state rules that govern the allocation of authority between courts and arbitrators." *Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1212-13 (9th Cir. 1998). Directly on point here, "whether a party has waived its right to compel arbitration directly concerns the allocation of power," and "waiver of the right to compel arbitration is a rule for arbitration, such that the FAA controls." *Sovak*, 280 F.3d at 1270.

Case 3:23-cv-02217-SI   Document 29-1   Filed 05/19/23   Page 65 of 74

Karen BARAJAS as executor of the Estate of Thompson..., 2021 WL 2604204...

The parties' arbitration agreements "[do] not contain a specific reference to the state arbitration rule at issue," *Wolsey*, 144 F.3d at 1212; indeed, § 1281.97 was not added to the CAA until 2020, long after the parties had entered into the arbitration agreements. The agreements have general choice-of-law provisions, [1] but these "general choice-of-law clauses do not incorporate state rules that govern **\*4** the allocation of authority between courts and arbitrators," *Wolsey*, 144 F.3d at 1213, including "whether a party has waived its right to compel arbitration," *Sovak*, 280 F.3d at 1270. Section 1281.97 therefore does not apply to whether Vivint Solar waived its right to compel arbitration.

Plaintiffs argue the district court correctly applied § 1281.97 because its "material breach and remedy provisions created substantive rights and obligations," AB:27; they characterize Vivint Solar's argument as "section 1281.97 is merely a non-substantive procedural rule that federal courts need not apply," AB:32. This misconstrues the applicable standard under controlling precedent and Vivint Solar's argument.

The issue under this Court's precedent is not whether the state law provision is substantive or procedural but whether it "affects '**only** [California's] substantive rights and obligations,' or whether it **also affects** '[California's] allocation of power between alternative tribunals.'" *Wolsey*, 144 F.3d at 1212 (emphasis added) (quoting *Mastrobuono*, 514 U.S. at 64). By expressly providing a rule for when a drafting party "waives its right to compel arbitration under [the CAA]," § 1281.97 affects "the allocation of power between courts and arbitrators." *Id.* at 1213. And this Court has held that "the question of **whether a party has waived its right to compel arbitration directly concerns the allocation of power**." *Sovak*, 280 F.3d at 1270 (emphasis added); *see also* **\*5** *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000) ("allocation of authority between courts and arbitrators" under *Mastrobuono* includes issues of "'waiver, delay, or a like defense to arbitrability'") (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)). [2]

Citing *Brown v. Dillard's, Inc.*, 430 F.3d 1004 (9th Cir. 2005), Plaintiffs incorrectly argue § 1281.97 should be treated as merely substantive breach of contract law rather than a CAA rule regarding waiver of the right to compel arbitration. In *Brown*, an employer refused to participate in arbitration proceedings initiated by an employee and then, after the employee filed suit in state court, removed to federal court and sought to compel arbitration. 430 F.3d at 1005-06. The Court held that "when an employer enters into an arbitration with its **\*6** employees, it must itself participate in properly initiated arbitration proceedings or forego its right to compel arbitration." *Id.* at 1006.

*Brown* did not consider whether the parties' agreement incorporated CAA rules, let alone § 1281.97, enacted 15 years after *Brown* was decided. Deciding the case under the FAA, *Brown* relied on "general principles of California contract law" to conclude the employer's "breach of its obligations under the arbitration agreement deprive[d] it of the right to enforce that agreement." *Id.* at 1010. It explained that:

> [A] party seeking to avoid enforcement of an arbitration agreement can only invoke a defense that would be available to a party seeking to avoid enforcement of any contract. Stated differently, under the FAA, an arbitration agreement cannot be avoided by a defense that is only applicable to arbitration agreements.

*Id.*

Karen BARAJAS as executor of the Estate of Thompson..., 2021 WL 2604204...

Case 3:23-cv-02217-SI   Document 29-1   Filed 05/19/23   Page 66 of 74

Section 1281.97, a newly-enacted CAA rule, is not a generally applicable California contract law principle. By its terms, it is "only applicable to arbitration agreements." *Id.* It provides that a drafting party "is in material breach of the arbitration agreement, is in default of the arbitration, and waives its right compel arbitration under Section 1281.2 [of the CAA]" if it fails to pay arbitration initiation fees within 30 days of their due date. Cal. Civ. Proc. Code § 1281.97(a). **\*7** It is not a defense "available to a party seeking to avoid enforcement of any contract." *Brown*, 430 F.3d at 1010.[3]

Plaintiffs' invocation of PPA provisions "that either party could seek remedies in court to assist with arbitration" (AB:34-36) is also unavailing. *See* 2ER-187, 213, 239 ("Nothing in this arbitration provision shall preclude You or Us from seeking provisional remedies in aid of arbitration from a court of competent jurisdiction."). Those provisions do not incorporate CAA rules such as § 1281.97 under the standard enunciated by this Court in *Wolsey*, *Sovak*, and *Chiron*. Ignoring the specific PPA provisions, Plaintiffs cite *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.,* 489 U.S. 468, 469 (1989), for the proposition that "specific contractual language incorporating a state rule will be honored regardless if it is substantive or procedural." AB:36. But that is exactly **\*8** what is lacking here. There is no specific contractual language in the PPAs incorporating CAA rules generally or § 1281.97 in particular. This Court has held that, in the absence of "specific reference to the state arbitration rule at issue," "general choice-of-law clauses do not incorporate state rules that govern the allocation of authority between courts and arbitrators." *Wolsey*, 144 F.3d 1212-13. Nor was Plaintiffs' district court motion "in aid of arbitration." 2ER-187, 213, 239. That motion, granted by the district court, was to vacate the court's prior order compelling arbitration and return Plaintiffs' claims to the district court.

Relying on *Cronus Invs., Inc. v. Concierge Servs.*, 35 Cal. 4th 376 (2005), Plaintiffs incorrectly argue that whether § 1281.97 applies is a choice of law issue on which this Court should follow state precedent rather than its own precedent. *Cronus* found the choice of law clause in that case "incorporate [d] California's rules of arbitration into the contract." *Id.* at 387. It provided "'[t]his agreement shall be construed *and enforced* in accordance with and governed by the laws of the State of California ....'" *Id.* (emphasis added). The court reasoned that "explicit reference to enforcement reasonably includes such matters as whether proceedings to enforce the agreement shall occur in courts or before an arbitrator." *Id.* Purporting to apply *Mastrobuono* but expressly declining to follow *Wolsey*, *Cronus* held that Cal. Civ. Proc. Code § 1281.2(c), which permits a trial court to **\*9** stay arbitration pending the outcome of related litigation, "does not conflict with the applicable provisions of the FAA." *Id.* at 393-94 & n.8.

Plaintiffs' reliance on *Cronus* is misplaced for two reasons: (1) whether the agreement in this case incorporates California arbitration rules including § 1281.97 is a question of federal law under the FAA on which this Court's precedent controls; and (2) the choice of law provision here is not parallel to that in *Cronus*.

*Cronus* recognized that whether an arbitration agreement governed by the FAA incorporates state law rules is a question of federal law.[4] *Cronus* based its holding on its own interpretation of federal precedent. *Cronus*, 35 Cal. 4th at 391, 391-94 ("the procedural rules of the FAA clearly applied to those federal court proceedings"); *see also Mastick v. TD Ameritrade, Inc.*, 209 Cal. App. 4th 1258, 163 (2012) (following *Cronus* and stating: "The FAA governs arbitration **\*10** provisions in contracts that involve interstate commerce."). The issue here is whether under federal law, the parties agreed to be governed by the CAA generally or § 1281.97 in particular. California precedent, including *Cronus*, does not control this question.

One federal district court considering exactly this issue explained that *Wolsey* is not only more persuasive than *Cronus* but binding on this issue of federal law:

*Wolsey* is both controlling and more persuasive than *Cronus*. While the California Supreme Court generally has the final word on issues of California's law of contract interpretation, the Ninth Circuit binds this Court on issues of federal law. In *Wolsey*, the Ninth Circuit correctly found that a generic choice of law clause does not incorporate Section 1281.2(c) because it "limits

Karen BARAJAS as executor of the Estate of Thompson..., 2021 WL 2604204...

Case 3:23-cv-02217-SI   Document 29-1   Filed 05/19/23   Page 67 of 74

the authority of arbitrators" and "allocates authority between arbitrators and courts." [...] It did so by relying on *Mastrobuono's* instruction that a contrary finding would impinge parties' federally-protected right to arbitrate disputes where they have agreed to do so.

🚩 *BioMagic, Inc. v. Dutch Bros. Enterprises, LLC,* 729 F. Supp. 2d 1140, 1148 (C.D. Cal. 2010). The court further explained that "as a practical matter, inclusion of a generic choice of law clause in a contract does not reflect intent to be bound by specific state procedural rules on arbitration that differ from the FAA." *Id*; *see also* *Shulman v. Kaplan,* 2020 WL 2748022, at *6 (C.D. Cal. Jan. 28, 2020)* ("[T]he Ninth Circuit diverges from California courts in how to interpret  **\*11**  agreements containing potentially conflicting choice-of-law and procedural arbitration rules.... *Wolsey* is both controlling and more persuasive than *Cronus*."). As in *BioMagic* and *Shulman*, this Court's precedent in *Wolsey* - not the California Supreme Court's decision in *Cronus* - controls here. [5]

*BioMagic* also found *Cronus* factually distinguishable, as it is here, because the *Cronus* agreement provided that it "'shall be construed *and enforced* in accordance with and governed by the laws of the state of California....'" 🚩*BioMagic,* 729 F. Supp. 2d at 1147-48. *Cronus* reasoned that "[t]he explicit reference to enforcement reasonably includes such matters as whether proceedings to enforce the agreement shall occur in court or before an arbitrator." 🚩*Cronus,* 35 Cal. 4th at 387. In *BioMagic* by contrast, "the parties did not agree to 'enforce' the agreement under California law. They agreed only that the License Agreement 'shall be construed and the legal relations between the parties [t]hereto shall be determined, in accordance with the law of the State of California ....'" 🚩*BioMagic, Inc.,* 729 F. Supp. 2d at 1147-48. The same is true here. As in *BioMagic* and  **\*12**  unlike in *Cronus*, the parties here did not agree to "enforce" the agreement according to California law. Parallel to the agreement in *BioMagic*, each of the choice-of-law provisions provides: "This agreement, and any instrument or agreement required hereunder, shall be governed by, and construed under, the internal laws of the state where the Property is located." 2-ER:188, 214, 240, 258, 262.

Under this Court's controlling precedent, the parties' arbitration agreements did not incorporate § 1281.97. The district court therefore erred in applying § 1281.97 to hold that Vivint Solar waived its right to compel arbitration.

### II. To the Extent It Is Intended to Apply to the Right to Compel Arbitration Under the FAA, § 1281.97 is Preempted.

As demonstrated in Vivint Solar's opening brief, § 1281.97, if interpreted to apply to arbitrations governed by the FAA, would be preempted for two reasons. First, it is not a "generally applicable contract defense" that applies "equally to arbitration and non-arbitration agreements," 🚩*Blair v. Rent-A-Ctr., Inc.,* 928 F.3d 819, 825 (9th Cir. 2019) (citations omitted); it applies only to cases in arbitration pursuant to arbitration agreements. Second, applying it to the right to compel arbitration under the FAA would be "an obstacle to the accomplishment of the FAA's objectives," 🚩*AT&T Mobility LLC v. Concepcion,* 563 U.S. 333, 343 (2011); it would displace the parties' contractual choice of arbitration according to JAMS rules, including determination of whether a party is in default.

 **\*13**  Plaintiffs argue that Vivint Solar waived its preemption argument by failing to raise it in the district court. AB:43-44. This Court has held, however, that "a preemption argument that affects the choice of forum rather than the choice of law is not waivable; thus, it can be raised for the first time on appeal." 🚩*Gilchrist v. Jim Slemons Imports, Inc.,* 803 F.2d 1488, 1497 (9th Cir.1986); *accord* 🚩*Johnson v. Armored Transp. of California, Inc.,* 813 F.2d 1041, 1043 (9th Cir. 1987); *see also* 🚩*Vincent v. Trend W. Tech. Corp.,* 828 F.2d 563, 566 (9th Cir. 1987) (addressing NLRA preemption claim raised for first time on appeal because it affected whether claim must be brought before NLRB rather than court). Here, whether § 1281.97 is preempted by

Karen BARAJAS as executor of the Estate of Thompson..., 2021 WL 2604204...

Case 3:23-cv-02217-SI   Document 29-1   Filed 05/19/23   Page 68 of 74

the FAA "affects choice of forum" - whether Plaintiffs must bring their claims in arbitration rather than in court. It is, therefore, properly presented for the first time on appeal.

The cases cited by Plaintiffs (*see* AB:43-44) do not address whether a preemption argument affecting the choice of forum can be raised for the first time on appeal. [6] Under *Gilchrist*, it can. But even applying general principles, this Court would have discretion to consider preemption here. *Singleton v. Wulf*, 428 U.S. 106, 121 (1976), cited by Plaintiffs, "announce [d] no general rule" and noted **\*14** that "[c]ertainly there are circumstances in which a federal appellate court is justified in resolving an issue not passed on below." This Court noted in *Baccei v. United States*, 632 F.3d 1140, 1149 (9th Cir. 2011), that it has discretion to consider an argument made for the first time on appeal, including "when the issue is purely one of law." Whether § 1281.97 is preempted by the FAA is a pure question of law that can be decided by this Court based on the terms of the statute and federal case law.

On the merits, Plaintiffs rely primarily on *Postmates*, an unpublished district court opinion that denied a motion for declaratory judgment on the pleadings that § 1281.97 is preempted by the FAA. In *Postmates*, the party asking for a declaratory judgment of preemption was opposing a motion to compel arbitration. Section 1281.97's waiver provision - that a drafting party "waives its right to compel arbitration under [the CAA]" - was not at issue.

Controlling Supreme Court precedent holds that the FAA does not permit "defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Concepcion*, 563 U.S. at 339 (internal quotation omitted). This principle applies directly to § 1281.97, which creates a rule for "default of the arbitration" and "waive[r of the] right to compel arbitration." Cal. Civ. Proc. Code § 1281.97.

 **\*15** Plaintiffs rely on *Postmates*' characterization of § 1281.97 as not subject to this principle because "rather than render arbitration agreements invalid or unenforceable, [it] *encourages* arbitration by changing the remedies available to non-drafting parties when drafting parties delay the process and refuse to pay required fees," "mak[ing] arbitration more effective and efficient." *Postmates*, 2021 WL 540155 at \*7. Citing *Borden, Inc. v. Meiji Milk Prods. Co.*, 919 F.2d 822 (2d Cir. 1990), *Postmates* characterizes § 1281.97 as a law "that make[s] arbitration *more effective* by providing targeted remedies *in aid* of arbitration." *Id.* at \*8.

This analysis ignores the reality of how § 1281.97 can be and was in this case used not to aid arbitration but to invalidate the parties' agreement to arbitrate. In *Borden*, the Second Circuit held the district court properly exercised subject matter jurisdiction to enter a preliminary injunction compelling arbitration. *Borden*, 919 F.2d at 826. It found that "far from trying to bypass arbitration, Borden sought to have the court *compel* arbitration." *Id.* Here, by contrast, the district court applied § 1281.97 to vacate its prior order compelling arbitration. The district court's application of § 1281.97 allowed Plaintiffs to terminate pending arbitrations in favor of court proceedings despite no default finding by the arbitration provider and no showing Vivint Solar was not fully participating in the arbitration proceedings.

 **\*16** The Answering Brief also attempts to avoid controlling Supreme Court precedent, including *Perry v. Thomas*, 482 U.S. 483 (1987), on the basis that it does "not hold that states are precluded from legislating on the topic of arbitration." AB:46. But as *Perry* explained:

> [S]tate law, whether of legislative or judicial origin, is applicable *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally. A state-law principle that

Karen BARAJAS as executor of the Estate of Thompson..., 2021 WL 2604204...

Case 3:23-cv-02217-SI    Document 29-1    Filed 05/19/23    Page 69 of 74

takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with this requirement of [FAA] § 2.

482 U.S. at 492 n.9. Section 1281.97 has no application to "the validity, revocability, or enforceability of contracts generally" and has meaning only with regard to "a contract to arbitrate." *Id.* Its rule for default on an agreement to arbitrate and waiver of the right to compel arbitration is preempted to the degree it is intended to apply to FAA arbitrations.

Application of § 1281.97 also effectively modifies the terms of the parties' arbitration agreements contrary to controlling FAA authority. *See Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (citing *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013)) (under the FAA, courts must "enforce arbitration agreements according to their terms, including terms that specify *with whom* the parties choose to arbitrate their disputes and the rules under which that arbitration will be conducted"). The parties designated JAMS as the arbitration provider and **\*17** incorporated its Streamlined Arbitration Rules and Procedures ("JAMS Rules"). *See* 2-ER:186-188, 212-214, 238-240, 255-256, 261. Those Rules include provisions for the payment of fees and the consequences of failure to pay fees. *See* JAMS Rule 6(c) ("If, at any time, any Party has failed to pay fees or expenses in full, JAMS may order the suspension or termination of the proceedings."). Application of § 1281.97 would modify the parties' agreement - for an arbitration administered according to JAMS rules - by adding a requirement for a finding of default and waiver of the right to compel arbitration as a result of failure to pay fees within 30 days of their "due date." Section 1281.97 would thus displace the parties' agreement and create an "obstacle to the accomplishment of the FAA's objectives." *Concepcion*, 563 U.S. at 341.

Plaintiffs argue that § 1281.97 is merely a provisional remedy in aid of arbitration as permitted by the parties' arbitration agreements. AB:48. But unlike a court action to compel arbitration, as was at issue in *Borden*, § 1281.97 is a state law rule that applies only to arbitration agreements and limits the right to compel arbitration. Therefore, if intended to apply to FAA arbitrations, § 1281.97 is preempted by the FAA.

### III. The District Court Erred By Reversing Its Arbitration Order Despite the Parties' Delegation of Arbitrability to the Arbitration Provider.

Plaintiffs do not contest that the parties delegated all matters of arbitrability to the arbitration provider - JAMS. The PPAs define the "*Scope of this Arbitration* **\*18** *Provision*" to include "any breach, default or termination of this Agreement" and "the interpretation, validity or enforceability of this Agreement, including the determination of the scope or applicability of this *Section 6(e)* [Arbitration of Disputes]." 2-ER:187, 213, 239; *see Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) ("[w]hen the parties' contract delegates the arbitrability question to an arbitrator ... a court possesses no power to decide the arbitrability issue").

Nonetheless, Plaintiffs incorrectly argue the district court properly intervened to vacate its order compelling arbitration, applying § 1281.97, because (1) JAMS had not yet appointed an arbitrator who could decide the issue and (2) § 1281.97 is substantive law that trumps JAMS rules as to timely payment of fees and arbitration default. AB:51-59. Both arguments are without merit. Neither provides a basis for the district court to disregard the parties' delegation of arbitrability to the arbitration provider.

### A. Plaintiffs' Filing of Their Motion Before an Arbitrator Had Been Appointed Did Not Empower the District Court to Decide a Question of Arbitrability.

Karen BARAJAS as executor of the Estate of Thompson..., 2021 WL 2604204...

Case 3:23-cv-02217-SI   Document 29-1   Filed 05/19/23   Page 70 of 74

Plaintiffs argue that "authority regarding deference to an *arbitrator*'s decision-making misses the mark because an arbitrator was never assigned to the matter due to Vivint Solar's failure to make a payment. Therefore, there was no arbitrator to even defer to." AB:51.

 **\*19**  First, an arbitrator was never assigned not because Vivint Solar failed to make payments but because Plaintiffs precipitously withdrew their claims from arbitration and filed their district court motion. Vivint Solar advised JAMS and Plaintiffs on June 24, 2020, at 11:54 a.m. that Vivint Solar's payments would be made the next day. 2-ER:103. Eleven hours later the same day, Plaintiffs purported to withdraw their claims from arbitration. 2-ER:47, 57, 73, 89, 104. They then filed their district court motion to vacate the arbitration order about an hour later. *See* 1-SER:2. As promised, Vivint Solar paid all required fees on June 25, 2020. 2-ER:48-50. No arbitrator was appointed to decide matters of arbitrability, including alleged breach and waiver of the right to compel arbitration under § 1281.97, only because Plaintiffs, in violation of JAMS rules, claimed to have withdrawn their claims. *See* JAMS Rule 10(a) ("No Party may terminate or withdraw from an Arbitration after the issuance of the Commencement Letter ..., except by written agreement of all Parties to the Arbitration.").

Second, nothing prevented the district court from enforcing the parties' agreement to delegate matters of arbitrability rather than vacating its prior order compelling arbitration. The court's prior order correctly held that all matters of arbitrability had been delegated to the arbitrator. *See* CR, Dist. Ct. Dkt. 17 at 5-7 ("**Arbitrability is Delegated to the Arbitrator**") ("Vivint's arbitration agreements delegate the arbitrability - 'the interpretation, validity, or enforceability' - of the  **\*20**  agreements to the arbitrator [citing Section 6(e) regarding 'Arbitration of Disputes']."). Nothing had changed in that regard. And whether Vivint Solar had defaulted or waived its right to compel arbitration, under § 1281.97 or otherwise, is clearly a matter concerning "breach, default or termination" and "interpretation, validity or enforceability" of the parties' arbitration agreements, which the parties delegated to the arbitration provider. 2-ER:187, 213, 239.

Third, Plaintiffs' assumption JAMS could not decide issues regarding payment of fees and whether Vivint Solar was in default prior to appointment of an arbitrator is incorrect. The JAMS Rules provide that the "[t]he authority and duties of JAMS as prescribed in the Agreement of the Parties and in these Rules shall be carried out by the JAMS National Arbitration Committee ("NAC") or the office of the General Counsel or their designees." JAMS Rule 1(c). The NAC, in addition to individual Arbitrators, thus possesses the power to enforce JAMS rules and policies. [7]  The JAMS Rules also provide: "If, *at any time*, any Party has failed to pay fees or expenses in full, JAMS may order the suspension or termination of the proceedings." JAMS Rule 6(c) (emphasis added). Nothing prevented Plaintiffs from presenting their § 1281.97 default and waiver claims to JAMS, whether to the NAC or to an  **\*21**  Arbitrator once appointed, rather than withdrawing from the arbitration.

### B. The District Court Erroneously Decided the § 1281.97 Issue Despite the Fact that It Is a Matter of Arbitrability Delegated to the Arbitration Provider.

The Answering Brief advances several arguments to the effect that § 1281.97 is substantive law that should apply to determine whether Vivint Solar breached the arbitration agreement and waived its right to compel arbitration and therefore trumps JAMS rules. AB:53-59. These arguments miss the point of the parties' delegation of questions of arbitrability to the arbitration provider. As demonstrated in Parts I and II above, § 1281.97 does not apply here because (1) it is a CAA provision that was not incorporated by the parties' agreement and (2) would be preempted by the FAA if interpreted to nonetheless apply. *But even assuming arguendo that § 1281.97 does apply*, *its application to the facts of this case is a question of arbitrability that was delegated to the arbitration provider by the parties' agreements*. Therefore, Plaintiffs should have presented their § 1281.97 breach and waiver arguments to JAMS rather than purporting to withdraw from the arbitration, and the district court should have denied Plaintiffs' motion to vacate the order compelling arbitration because it presented an arbitrability issue delegated to the arbitration provider.

Section 1281.97 provides that "*[i]f* the drafting party materially breaches the arbitration agreement and is in default under subdivision (a) [for failure to pay initiation fees within 30 days of the due date], the employee or consumer may ...  **\*22**  [w]ithdraw the claim from arbitration and proceed in a court of appropriate jurisdiction." Cal. Civ. Proc. Code § 1281.97(b).

Karen BARAJAS as executor of the Estate of Thompson..., 2021 WL 2604204...

Case 3:23-cv-02217-SI   Document 29-1   Filed 05/19/23   Page 71 of 74

But *whether* the drafting party has breached the arbitration agreement and is in default under § 1281.97(a) is a question of arbitrability - "breach, default or termination" and "enforceability" of the arbitration agreement - that the parties here delegated to the arbitration provider. 2-ER:187, 213, 239; *see* *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) ("the presumption is that the arbitrator should decide allegation[s] of waiver, delay, or a like defense to arbitrability") (citations and quotation marks omitted). Plaintiffs were obligated therefore to present that question to JAMS, not to the district court. And the district court was obligated to deny Plaintiffs' motion until they had done so. *See* *Schein*, 139 S. Ct. at 529 ("[w]hen the parties' contract delegates the arbitrability question to an arbitrator ... a court possesses no power to decide the arbitrability issue").

### IV. The District Court Erred As a Matter of Law In Holding Vivint Solar Did Not Pay Arbitration Initiation Fees Within Thirty Days of the "Due Dates."

Even assuming *arguendo* § 1281.97 applies to a motion to compel arbitration under the FAA and is not preempted by the FAA, and that whether Vivint Solar was in breach of the arbitration agreements was not a question of arbitrability delegated to the arbitration provider, the district court erred as a matter of law in holding Vivint Solar was in breach and waived its right to compel arbitration under **\*23** § 1281.97. That holding totally disregarded JAMS' own statements that Vivint Solar's payments had been made within 30 days of the applicable due dates.

Plaintiffs argue that boilerplate "due upon receipt" statements on printed invoices established the "due date" for purposes of § 1281.97. The corollary of this argument is that Vivint Solar was in default of the arbitration agreements despite its reliance on case-specific statements in Notice of Intent to Initiate Arbitration letters ("NOI letters") from JAMS stating, "Respondent must pay [the amount due] by no later than [date]." *See, e.g.*, 2-ER:56, 64, 96. Plaintiffs rely on the dictionary definition of "due" as "owing," but this does not answer the question what is the "due *date*," i.e., the date by which the amount owing must be paid. Here, JAMS expressly provided the "must pay by" date in case-specific letters. Moreover, when Plaintiffs claimed to withdraw from arbitration based on § 1281.97, JAMS confirmed that Vivint Solar's payments had been made within the 30-day period. *See* 2-ER:78, 109.

As demonstrated in Vivint Solar's opening brief, the cases relied on by the district court do not support its interpretation of § 1281.97; they instead show that the "due date" for arbitration fees is when the arbitration provider states payment is due - not the date the arbitration provider issues its invoices. *See* Appellants' Opening Brief at 33-35. In *Postmates Inc. v. 10,356 Individuals*, 2020 WL 1908302 (C.D. Cal. Apr. 15, 2020), the arbitration provider set an express deadline **\*24** for payment of fees three weeks later than the date of the invoices, which stated, "Bills Are Payable Upon Receipt," and the court applied the date stated by the arbitration provider not the invoice date for purposes of § 1281.97. *Postmates*, 2020 WL 1908302, at \*4. Similarly, in *Sink v. Aden Enterprises, Inc.*, 352 F.3d 1197 (9th Cir. 2003), cited by the California legislature in its enactment of § 1281.97, the "due date" for arbitration fees relied on by this Court in affirming the vacating of a prior arbitration order was the date set by the arbitrator "in a letter," *id.* at 1198, 1201, not the date the invoice issued. Plaintiffs' Answering Brief offers no response to this authority.

Plaintiffs attempt to characterize JAMS' announcement of the pay-by dates as stating a "grace period." AB:61. But nothing in the JAMS NOI letters that announced those dates and explained the calculation of the fees suggested the due dates were based on an extension or a "grace period." For example, a June 11, 2020 letter to Plaintiff Piini stated:

> Claimant has paid $250 of the Filing Fee. Under JAMS Minimum Standards, the Consumer will only be required to pay a maximum of $250.00 of the Filing Fee. All other fees associated with this Arbitration shall be borne by the company/non-consumer party. Thus, Respondent must pay the remaining $1,500.00 Filing Fee by not later than June 17, 2020.

Karen BARAJAS as executor of the Estate of Thompson..., 2021 WL 2604204...

Case 3:23-cv-02217-SI   Document 29-1   Filed 05/19/23   Page 72 of 74

2-ER:56; *see also* 2-ER-64 (May 20, 2020 NOI Intent Letter announcing pay by date of June 3, 2020); 2-ER-96 (May 14, 2020 NOI letter announcing pay by date **\*25** of May 28, 2020). JAMS set these due dates in its NOI letters and never granted an extension; accordingly, assuming § 1281.97 somehow applied, the payments were made within 30 days of the stated due dates.

Moreover, even if the due dates announced by JAMS in case-specific correspondence had been based on extensions of an earlier due date (they were not), nothing in § 1281.97 suggests that the extended due date would not be the operative date for purposes of the statute. One California Superior Court recently addressed and rejected an argument that the § 1281.97 due date cannot be extended by the arbitration provider. *See Martin v. Pacific American Fish Co., Inc.*, No. 20STCV23881, Minute Order (L.A. County Superior Court Feb. 11, 2021). [8] As the court explained:

**\*26** The Court finds that Defendants are not in material breach of the arbitration agreement. While the initial invoice stated a December 11, 2020 due date, Defendants obtained a new invoice date of January 29, 2021 through an extension granted to them by [the arbitration provider]. Code Civ. Proc. § 1281.97, under which the Motion is brought, does not explicitly specify what is considered the "due date" for the purposes of the statute. The "due date" referenced in the statute does not specify that it is the initially set due date, or that extensions or changes to the initial due date cannot set a new "due date" by which the deadline for payment should be measured. Section 1281.97 does not preclude a party from obtaining an extension of time of the initial due date. The Court finds that had the legislature intended that the "due date" referenced be unchangeable, it could have specifically referred to the "initial due date," just as California Code of Civil Procedure, Section 631 refers to the "initial case management conference" as a benchmark for the payment of jury fees. The Court therefore interprets Defendants' timeliness based on [the arbitration provider's] extension date for payment of January 29, 2021. As such, Defendants paid their arbitration fees timely.

*Id*. at pp. 3-4.

In support of its argument that the § 1281.97 due date should not take account of any extension granted by the arbitration provider, Plaintiffs rely on two federal tax cases. Those cases do not support Plaintiffs' argument.

*Marsh & McLennan Companies, Inc*. v. *United States*, 50 Fed. Cl. 140 (2001), held that a taxpayer is entitled to interest on overpayments applied to satisfy a later-arising tax liability from the date on which the tax was due for the year generating the liability, and not from the date on which each overpayment was **\*27** applied. In determining the applicable due date, the court relied on what is missing here: a statutory definition of "due date." A Treasury Regulation defined "due date" as "the last day fixed by law or regulation for the payment of the tax (determined without regard to any extension of time)." *Id*. at 146. Section 1281.97 has no such definition and the date for payment of arbitration fees is set by the arbitration provider, not "fixed by law or regulation."

🔖 *Tami Sportswear, Inc. v. United States*, 1974 WL 639 (N.D. Cal. Aug. 13, 1974), is similarly inapposite. It held the taxpayer could recover a refund of overpayment of internal revenue taxes together with interest from the date of the overpayment to a date that could precede the issuance of the refund check by not more than 30 days. *Id*. at \*\*2-3. As in *Marsh & McLennan*, *Tami Sportswear* relied on a Treasury Regulation, in that case one defining in "precise, inescapable terms" the due date of assessed interest. 🔖 *Id*. at \*2. Section 1281.97 provides no such definition.

### V. The District Court's Interpretation of § 1281.97 Is Inconsistent With Its Legislative Purpose.

Plaintiffs argue finally that application of § 1281.97 is unconcerned with fairness. At the same time, however, they argue as relevant to statutory interpretation the legislature's purpose to deter drafting parties from reneging on their obligations to pay arbitration fees and to ensure that a party cannot delay **\*28** adjudication of a dispute by refusing to participate in or pay for arbitration. *See* AB:49 (quoting legislative history).

Karen BARAJAS as executor of the Estate of Thompson..., 2021 WL 2604204...

Case 3:23-cv-02217-SI   Document 29-1   Filed 05/19/23   Page 73 of 74

It is therefore worth noting that none of those concerns are present here. Vivint Solar did nothing to postpone or delay the arbitrations in any material way, let alone refuse to participate in or pay for the arbitrations. Vivint Solar paid its fees within 30 days of dates stated by JAMS in case-specific correspondence and submitted timely answers to all the demands for arbitration. It is Plaintiffs who withdrew from the arbitration and moved to vacate the district court's order compelling arbitration within hours after learning Vivint Solar was about to complete payment of all required fees. Interpreting § 1281.97 to disregard JAMS' correspondence regarding case-specific due dates and find default and waiver of the right to compel arbitration in these circumstances would be inconsistent with the statutory purpose and with general principles of California law regarding waiver of rights. *See* Intel Corp. v. Hartford Acc. & Indem. Co., 952 F.2d 1551, 1559 (9th Cir. 1991) ("California courts will find waiver when a party intentionally relinquishes a right, or when that party's acts are so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished.").

**\*29 CONCLUSION**

Vivint Solar respectfully requests that this Court reverse the district court's order vacating its prior order compelling arbitration of Plaintiffs-Appellees' claims and reinstate the prior order.

Respectfully submitted

THE NORTON LAW FIRM PC

By

George C. Harris

*Attorneys for Defendants Vivint Solar, Inc., Vivint Solar Holdings, Inc., Vivint Solar Developer, LLC, and Vivint Solar Provider, LLC*

**Appendix not available.**

**Footnotes**

1    Each of the PPAs provides that: "This Agreement, and any instrument or agreement required hereunder, shall be governed by, and construed under, the internal laws of the state where the Property is located." 2-ER:188, 214, 240, 258, 262.

2    Plaintiffs cite two unpublished district court opinions as applying § 1281.97: Postmates, Inc. v. 10,356 Individuals, 2021 WL 540155 (C.D. Cal. Jan. 19, 2021); Tapia v. Braifrom Enterprises, Inc., 2020 WL 5167740 (C.D. Cal. July 17, 2020). AB:28-31. *Postmates* denied judgment on the pleadings that § 1281.97 is preempted by the FAA. In that case, AAA applied its own rules, not § 1281.97, to administratively close an arbitration based on failure to pay initiation fees by AAA's "final deadline." 2021 WL 540155 at \*3. Similarly, in *Tapia*, AAA closed arbitration cases because the defendant, which was out of business, failed to pay initiation fees. 2020 WL 5167740 at \*3. The court granted the opposing party's motion for attorneys' fees under § 1281.97. Neither case involved waiver of the right

Case 3:23-cv-02217-SI  Document 29-1  Filed 05/19/23  Page 74 of 74

Karen BARAJAS as executor of the Estate of Thompson..., 2021 WL 2604204...

to compel arbitration or considered whether the parties' arbitration agreements incorporated § 1281.97, and neither discussed *Wolsey* or other Ninth Circuit precedent bearing on that issue.

3    Plaintiffs cite *Brunner v. Lyft, Inc.*, 2019 WL 6001945 (N.D. Cal. Nov. 14, 2019) for the proposition that "courts routinely apply substantive law to resolve claims of default." AB:32. *Brunner* applied the FAA definition of default. 2019 WL 6001945 at *1 ("Under the Federal Arbitration Act, the term 'default' refers to 'the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration.'"). In finding no default, it relied on the arbitrator's determination. *Id.* at *2 ("the arbitrator - or, in this case, the AAA itself - is well positioned to decide in the first instance whether the non-payment of fees justifies the termination of arbitral proceedings"). *Brunner* relied on *Brown* to find no material breach of contract. *Id.*

4    As held by the district court and not challenged below, the arbitration agreements and the motion to compel arbitration here are governed by the FAA. *See* 1-ER:8 ("defendants correctly recognize that they compelled arbitration under the FAA, not the California Arbitration Act"). Three of the five agreements at issue expressly provide: "This arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act." 2-ER-189, 213, 239. All of the agreements were made pursuant to a transaction involving interstate commerce. *See* 2-ER:275-80 (alleging Plaintiffs are California residents and Defendants are Delaware corporations with principal offices in Utah). *See* 🚩*Moses H. Cone Memorial Hosp.*, 460 U.S. at 24 (FAA "create [s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act").

5    Amicus curiae Consumer Attorneys of California "requests that this Court consider certifying the question to the California Supreme Court for decision pursuant to California Rules of Court, rule 8.548 because the issues raised here, by definition, are necessary 'to settle an important issue of [California] law.'" Dkt. 34 at 7-8. As demonstrated above, this appeal concerns questions of federal law, not California law. There is no basis for a certification to the California Supreme Court.

6    🚩*Williby v. Aetna Life Ins. Co.*, 867 F.3d 1129, 1136-37 (9th Cir. 2017), found ERISA preemption and declined to consider for the first time on appeal a factual argument that a plan was actually a "payroll practice" exempt from ERISA.

7    The JAMS rules also provide that "JAMS may convene, or the Parties may request, administrative conferences to discuss any procedural matter relating to the administration of the Arbitration." JAMS Rule 6(a).

8    The Addendum contains a true and correct copy of the *Martin* Order. Though not binding, this Court may consider an unpublished state court opinion to the degree it informs an accurate interpretation of California law. *See Beeman v. Anthem Prescription Mgmt., LLC*, 689 F.3d 1002, 1008 n.2 (9th Cir. 2012) ("Although they are not precedent under California Rule of Court 977(a), we may nonetheless rely on the unpublished opinions in *A.A.M.* and *Bradley* to 'lend support' to the contention that ARP Pharmacy 'accurately represents California law.'") (quoting 🚩*Emp'rs Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 n. 8 (9th Cir. 2003)); 🚩*Comm'r v. Bosch's Est.*, 387 U.S. 456, 465 (1967) ("while the decrees of lower state courts should be attributed some weight ... the decision (is) not controlling ... where the highest court of the State has not spoken on the point.") (quotations omitted); *see also Bradley v. Gen. Motors Corp.*, 512 F.2d 602, 605 (6th Cir. 1975) ("[T]his court may give weight to the decision of a trial court in determining what is the controlling law of Tennessee.") (internal citations omitted).

---

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.