1  KATIE TOWNSEND (SBN 254321)
2  ktownsend@rcfp.org
   REPORTERS COMMITTEE FOR
3  FREEDOM OF THE PRESS
4  1156 15th Street NW, Suite 1020
   Washington, D.C. 20005
5  Telephone: (202) 795-9300
6  Facsimile: (202) 795-9310

7  *Counsel for Non-Party Intervenor*
8  JACOB SILVERMAN

9
10            UNITED STATES DISTRICT COURT
11         NORTHERN DISTRICT OF CALIFORNIA

12
   SARAH ANOKE, CATHERINE BONN,          Case No. 3:23-cv-02217-SI
13 ISABBELLE CANNELL, MELANIE
14 EUSEBIO, SAMTHAN FESTEJO,             **NOTICE OF MOTION AND**
   CARLOS MOISES, ORTIZ GOMEZ,          **MOTION OF NON-PARTY JACOB**
15 DAWN HOISE, WAYNE KRUG,              **SILVERMAN TO INTERVENE AND**
16 LAURENT LUCE, PATRICK                **UNSEAL JUDICIAL RECORDS**
   O'CONNELL, JENNIFER RYAN,
17 JAIME SENA, JAMES SHOBE,             [Memorandum of Points and Authorities
18 KARYN THOMPSON, AND CRISTIAN         and [Proposed] Order Filed Concurrently
   ZAPATA,                              Herewith]
19
20              Petitioners,            HEARING DATE: August 16, 2024
                                        TIME: 10:00AM
21        v.
                                        Judge: Hon. Susan Illston
22 TWITTER, INC., X HOLDINGS I, INC.,
23 X HOLDINGS CORP., X CORP., AND
   ELON MUSK,
24
25              Respondents.
26
27
28

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on Friday, August 16, 2024, at 10:00AM, or as soon as this matter may be heard before the Honorable Susan Illston, United States District Court Judge for the District of Northern California, non-party Intervenor Jacob Silverman will and hereby does move to intervene in the above-captioned access for the limited purpose of seeking an order unsealing Respondents' Supplemental Rule 7.1 Corporate Disclosure Statement (the "Disclosure Statement"), filed in redacted form at ECF No. 36-3. This motion is made on the grounds that:

1) Mr. Silverman is entitled to intervene in the above-captioned action for the limited purpose of asserting his common law and First Amendment rights of access to judicial records filed with this Court, including the Disclosure Statement.

2) The First Amendment right of access attaches to Rule 7.1 disclosure statements. *See, e.g.*, *Steel Erectors, Inc. v. AIM Steel Int'l, Inc.*, 312 F.R.D. 673, 675 (S.D. Ga. 2016). A party attempting to overcome the First Amendment's presumption of access can do so only if—and only to the extent that—it can show that sealing "is essential to preserve higher values and is narrowly tailored to serve that interest." *CBS, Inc v. U.S. Dist. Ct. for Central Dist. of Cal.*, 765 F.2d 823, 825 (9th Cir. 1985) (quoting *Press-Enter. Co. v. Superior Court*, 464 U.S. 501, 510 (1984)). Under that strict standard, the Disclosure Statement must be unsealed.

3) The common law right of access likewise attaches to Rule 7.1 disclosure statements. *See, e.g.*, *Mayer v. Patriot Pickle, Inc.*, No. 23-cv-1299, 2024 WL

162881, at *4 (W.D.N.Y. Jan. 16, 2024) (collecting cases refusing to seal disclosure statements under the common law).  A party can rebut that "strong" presumption of access only by demonstrating "compelling reasons . . . that outweigh the general history of access and the public policies favoring disclosure. . . ."  *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178–79 (9th Cir. 2006) (citations omitted). Under that strict standard, too, the Disclosure Statement must be unsealed.

  This Notice of Motion and Motion are based on the concurrently filed Memorandum of Points and Authorities; all pleadings, records, and files in the above-captioned case; all matters of which the Court shall take judicial notice; and on such argument as may be presented by counsel at any hearing to be held on this Motion.

  This Motion is made following conferences of counsel by phone on Thursday, June 27 and Friday, June 28.  Petitioners do not oppose this motion; Respondents oppose intervention and oppose unsealing the Disclosure Statement.

Dated: July 3, 2024

s/ *Katie Townsend*    
Katie Townsend
REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS

*Counsel for Non-Party Intervenor*
JACOB SILVERMAN

KATIE TOWNSEND (SBN 254321)
ktownsend@rcfp.org
REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th Street NW, Suite 1020
Washington, D.C. 20005
Telephone: (202) 795-9300
Facsimile: (202) 795-9310

*Counsel for Non-Party Intervenor*
JACOB SILVERMAN

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARAH ANOKE, CATHERINE BONN, ISABBELLE CANNELL, MELANIE EUSEBIO, SAMTHAN FESTEJO, CARLOS MOISES, ORTIZ GOMEZ, DAWN HOISE, WAYNE KRUG, LAURENT LUCE, PATRICK O'CONNELL, JENNIFER RYAN, JAIME SENA, JAMES SHOBE, KARYN THOMPSON, AND CRISTIAN ZAPATA,<br><br>            Petitioners,<br><br>    v.<br><br>TWITTER, INC., X HOLDINGS I, INC., X HOLDINGS CORP., X CORP., AND ELON MUSK,<br><br>            Respondents. | Case No. 3:23-cv-02217-SI<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF NON-PARTY JACOB SILVERMAN TO INTERVENE AND UNSEAL JUDICIAL RECORDS**<br><br>[Memorandum of Points and Authorities and [Proposed] Order Filed Concurrently Herewith]<br><br>DATE: August 16, 2024<br>TIME: 10:00AM<br><br>Judge: Hon. Susan Illston |

# TABLE OF CONTENTS

**Page:**

TABLE OF AUTHORITIES ........................................................................................iii

INTRODUCTION.....................................................................................................1

FACTUAL BACKGROUND .....................................................................................2

ARGUMENT ...........................................................................................................5

I.      The motion to intervene should be granted..........................................5

II.     The Disclosure Statement should be unsealed....................................7

        A.      The First Amendment and common law presumptions of public access

        B.      Neither the First Amendment nor the common law presumption of public access is overcome with respect to the Disclosure Statement. .... 11

CONCLUSION ......................................................................................................14

# TABLE OF AUTHORITIES

**Page(s):**

**Cases:**

*Ark. Tchr. Ret. Sys. v. State St. Bank & Tr. Co.*,
   404 F. Supp. 3d 486 (D. Mass. 2018) .......................................................................... 9

*Beckman Indus., Inc. v. Int'l Ins. Co.*,
   966 F.2d 470, 473 (9th Cir. 1992) ............................................................................... 6

*Best Odds Corp. v. iBus Media Ltd.*,
   No. 2:14-cv-00932, 2014 WL 5687730 (D. Nev. Nov. 4, 2014) ............................... 11

*BP Expl. & Prod., Inc. v. Claimant ID 100246928*,
   920 F.3d 209 (5th Cir. 2019) ....................................................................................... 7

*Carlyle v. Cicatello*,
   No. 1:22-CV-61, 2022 WL 21794410 (M.D. Ga. Nov. 28, 2022) ...................... 10, 12

*Ctr. for Auto Safety v. Chrysler Group*,
   809 F.3d 1092 (9th Cir. 2016) .............................................................................. 10, 11

*Darton Archery, LLC v. Bowtech, LLC*,
   No. 23-cv-140, 2023 WL 2755760 (D. Del. Apr. 3, 2023) .......................... 7, 11, 12

*Doe v. Mass. Inst. of Tech.*,
   46 F.4th 61 (1st Cir. 2022) ........................................................................................ 10

*Driver Opportunity Partners I, LP v. Ameriserv Fin., Inc.*,
   No. 3:22-cv-00237, 2023 WL 4711158 (W.D. Pa. July 24, 2023) ...................... 9, 12

*Foltz v. State Farm Mut. Auto. Ins. Co.*,
   331 F.3d 1122 (9th Cir. 2003) ................................................................................... 10

*Ford v. City of Huntsville*,
   242 F.3d 235 (5th Cir. 2001) ....................................................................................... 6

*Globe Newspaper Co. v. Superior Court*,
   457 U.S. 596 (1982) .................................................................................................... 7

*In re Copley Press*,
   518 F.3d 1022 (9th Cir. 2008) ................................................................. 10

*Kamakana v. City & County of Honolulu*,
   447 F.3d 1172 (9th Cir. 2006) ................................................................. 11

*Manssor v. NRRM, LLC*,
   No. 23-cv-00236, 2023 WL 4093413 (W.D. Tex. June 20, 2023) ..................... 9, 12

*Mayer v. Patriot Pickle Inc.*,
   No. 23-CV-1299, 2024 WL 162881 (W.D.N.Y. Jan. 16, 2024).................. 9, 10, 12

*NetChoice v. Moody*,
   34 F.4th 1196 (11th Cir. 2022) ................................................................. 1

*NetChoice v. Moody*,
   144 S. Ct. 478 (2023) ................................................................................ 1

*Nixon v. Warner Commc'ns., Inc.*,
   435 U.S. 589 (1978) ................................................................................. 8

*Oregonian Publ'g Co. v. U.S. Dist. Court for Dist. of Oregon*,
   920 F.2d 1462 (9th Cir. 1990) ................................................................. 11

*Packingham v. North Carolina*,
   582 U.S. 98 (2017).........................................................................*passim*

*Press-Enter. Co. v. Superior Court*,
   478 U.S. 1 (1986)..................................................................................... 8

*San Jose Mercury News, Inc. v. U.S. Dist. Ct.*,
   187 F.3d 1096 (9th Cir. 1999) ................................................................. 6

*Steel Erectors, Inc. v. AIM Steel Int'l, Inc.*,
   312 F.R.D. 673 (S.D. Ga. 2016) ......................................................*passim*

*United States v. Bradley*,
   No. 405CR059, 2007 WL 1703232 (S.D. Ga. June 11, 2007) ................................. 2

*United States v. Bus. of Custer Battlefield Museum & Store*,
   658 F.3d 1188 (9th Cir. 2011) ................................................................. 8

*United States v. Index Newspapers LLC*,
  766 F.3d 1072 (9th Cir. 2014) ................................................................ 12

*Wiens Cap. Mgmt., LLC v. Advoc. Consulting Legal Grp., PLLC*,
  No. 2:23-cv-81, 2023 WL 2435806 (M.D. Fla. Feb. 16, 2023) ...................... 10, 12

*Wilkins v. Tory Burch, LLC*,
  No. 4:23-cv-422, 2023 WL 3600084 (E.D. Mo. May 23, 2023) ......................... 10

*WSOU Invs., LLC v. Salesforce, Inc.*,
  No. 6:20-cv-1163, 2023 WL 2213200 (D. Del. Feb. 24, 2023) ...................... 10, 12

**Statutes:**

Protecting Americans from Foreign Adversary Controlled Applications Act, Pub.
  L. No. 118-50 (Apr. 24, 2024) ................................................................ 13

**Other Authorities:**

Faiz Siddiqui et al., *U.S. Exploring Whether It Has Authority to Review Musk's
  Twitter Deal*, Wash. Post (Nov. 1, 2022)................................................ 13

Hamza Shaban & Faiz Siddiqui, *Here's Who Helped Elon Musk Buy Twitter*,
  Wash. Post (Dec. 24, 2022) .................................................................. 3

Jacob Silverman, *Musk of the Spheres*, The Baffler (July 2022) ................... 3

Jacob Silverman, *Terms of Service: Social Media and the Price of Constant
  Connection* (2015) .............................................................................. 3

Low De Wei & Marika Katanuma, *Twitter Company 'No Longer Exists'; It's Now
  Part of Musk's X Corp.*, L.A. Times (Apr. 11, 2023)................................. 4

María Antonia Sánchez-Vallejo, *Under Elon Musk, Twitter Has Approved 83% of
  Censorship Requests by Authoritarian Governments*, El País (May 24, 2023)....... 14

Matthew Frankel, *Who Owns X (Formerly Twitter)?*, The Motley Fool (Mar. 21,
  2024) .............................................................................................. 3

McKenzie & Jacob Silverman, *Easy Money: Cryptocurrency, Casino Capitalism,
  and the Golden Age of Fraud* (2023)....................................................... 3

Patrice Taddonio, *How Saudi Arabia Weaponized Twitter to Target MBS Critics*, PBS (Nov. 7, 2019) ....................................................................................... 13

Rebecca Kern, *Musk's Foreign Investors In Twitter Are 'Worthy' of Review, Biden Says*, POLITICO (Nov. 9, 2022) ............................................................... 13

Rohan Goswami, *Elon Musk Told Joe Rogan He Bought Twitter to Stop 'Extinctionist' Mind Virus*, CNBC (Nov. 2, 2023) ............................................ 3

Will Oremus et al., *A Year Later, Musk's X Is Tilting Right. And Sinking*, Wash. Post (Oct. 27, 2023) ................................................................................. 1, 3

**Rules:**

L.R. 79-5(g)(3) ........................................................................................................ 6

L.R.  3-15 ........................................................................................................... 1, 4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# INTRODUCTION

Non-party Jacob Silverman—a journalist who covers the technology

industry—seeks to intervene in the above-captioned matter for the limited purpose of

obtaining an order unsealing the supplemental corporate disclosure statement filed by

Respondent X Corp. in this action.  *See* ECF No. 36-3 (the "Disclosure Statement").

Social media platforms like X play host to "the modern public square,"

providing "perhaps the most powerful mechanisms available to a private citizen to

make his or her voice heard."  *Packingham v. North Carolina*, 582 U.S. 98, 107

(2017).  But as private actors with First Amendment rights of their own, the platforms

also make "expressive choices" about "which third-party content [their] feeds will

display, or how the display will be ordered and organized."  *Moody v. NetChoice,

LLC*, No. 22-277 (U.S. July 1, 2024), slip op. at 26.  And when ownership of a

platform passes from one set of hands to another, some messages may win out over

others.  *See* Will Oremus et al., *A Year Later, Musk's X Is Tilting Right. And Sinking*,

Wash. Post (Oct. 27, 2023), https://perma.cc/5QVF-WU7J (noting that Elon Musk

"has led Twitter in an explicitly political direction" since purchasing the platform).

X Corp. "is wholly owned by X Holdings Corp."  Resp'ts' Supp. Rule 7.1

Corporate Disclosure Statement and Certification Pursuant to Local Rule 3-15 at 1

(ECF No. 36-3) (the "Disclosure Statement").  In this action, consistent with Civil

Local Rule 3-15, this Court ordered X Corp. to disclose the owners or stakeholders of

X Holdings Corp. in order to identify individuals or entities with "a financial interest of any kind in the subject matter in controversy."  Order (ECF No. 35) (quoting L.R. 3-15).  But on the basis of threadbare gestures at its business interests, X Corp. filed that information entirely under seal.  *See* Disclosure Statement at 1–5.  The First Amendment and common law rights of access to judicial records demand far greater transparency.  Even in a run-of-the-mill case, disclosure statements—because they speak to the possible existence of conflicts of interest—touch on "matters of utmost public concern" at the heart of the public's right to supervise the judicial process.  *Steel Erectors, Inc. v. AIM Steel Int'l, Inc.*, 312 F.R.D. 673, 675 n.3 (S.D. Ga. 2016) (quoting *United States v. Bradley*, No. 405CR059, 2007 WL 1703232, at *1 (S.D. Ga. June 11, 2007)).  Here, where that judicial record further implicates the public's ability to understand the financial interests that manage expression in "the modern public square," *Packingham*, 582 U.S. at 107, the case for sunlight is at its apex.

For the reasons set forth herein, Mr. Silverman respectfully urges this Court to grant his motion to intervene and direct that the Disclosure Statement be unsealed.

## FACTUAL BACKGROUND

Mr. Silverman is a journalist, a contributing editor for *The Baffler* and *The New Republic*, and the author of several books about the technology industry.  *See* Ben McKenzie & Jacob Silverman, *Easy Money: Cryptocurrency, Casino Capitalism, and the Golden Age of Fraud* (2023); Jacob Silverman, *Terms of Service: Social Media and the Price of Constant Connection* (2015).  He has written repeatedly on Elon

Musk's purchase of Twitter in particular, *see, e.g.*, Jacob Silverman, *Musk of the Spheres*, The Baffler (July 2022), https://perma.cc/7FGT-HELV, and is currently writing a book on the growing influence of conservative politics in Silicon Valley.

X Corp., for its part, owns and operates X (formerly Twitter): one of the world's most influential platforms, "[a] site that fueled social movements such as the Arab Spring, Black Lives Matter and #MeToo."  Oremus et al., *supra*, "Until October 2022, X (then known as Twitter) was a publicly traded company," but "[it] was taken private by billionaire entrepreneur Elon Musk toward the end of that month, and its name was subsequently changed to X in March 2023."  Matthew Frankel, *Who Owns X (Formerly Twitter)?*, The Motley Fool (Mar. 21, 2024), https://perma.cc/HG8U-RY4X.  As Musk has described it, he purchased the platform because the previous leadership's decisions about which content to host were "having a corrosive effect on civilization."  Rohan Goswami, *Elon Musk Told Joe Rogan He Bought Twitter to Stop 'Extinctionist' Mind Virus*, CNBC (Nov. 2, 2023), https://perma.cc/R36G-2W3B.  Musk was backed in the transaction by a range of prominent figures, from Silicon Valley investors to foreign sovereigns, many of whom publicly confirmed their ownership stakes in the company.  *See* Hamza Shaban & Faiz Siddiqui, *Here's Who Helped Elon Musk Buy Twitter*, Wash. Post (Dec. 24, 2022), https://perma.cc/8UHJ-J546.  On April 4, 2023, in filings in unrelated litigation, the platform disclosed that Twitter, Inc., had been merged into X Corp., and that X Corp., in turn, is wholly owned by a holding company named X Holdings Corp.  *See* Low

De Wei & Marika Katanuma, *Twitter Company 'No Longer Exists'; It's Now Part of Musk's X Corp.*, L.A. Times (Apr. 11, 2023), https://perma.cc/82SC-S7AP.

In this matter, Petitioners—former Twitter employees who were terminated after Musk purchased it—originally brought a petition in California state court alleging that Respondents had violated their arbitration agreements with Petitioners by failing to pay certain arbitration-related fees.  *See* Order Remanding Action to State Court at 1–2 (ECF No. 41).  In response, Respondents removed the action to this Court.  *See id.* at 2.  In connection with that removal, Respondents filed a corporate disclosure statement pursuant to Federal Rule of Civil Procedure 7.1 and Local Rule 3-15 that stated that "X Corp. is wholly owned by X Holdings Corp." and that "[n]o publicly held corporation owns 10% or more of X Corp.'s or X Holdings Corp.'s stock," but did not otherwise identify the individuals or entities with a financial interest at stake in this case.  Resp'ts' Rule 7.1 Corporate Disclosure Statement and Certification Pursuant to Local Rule 3-15 at 1 (ECF No. 4).

On May 11, 2023, Petitioners moved this Court for an order requiring Respondents to supplement their disclosure statement, pointing out that Respondents' failure to disclose the owners of X Holdings Corp. failed to comply with Local Rule 3-15's requirement that a statement disclose any individuals or entities with "a financial interest of any kind in the subject matter in controversy or in a party to the proceeding."  Pet'rs.' Civ. L.R. 7.1 Administrative Relief Motion at 1 (quoting L.R. 3-15).  This Court granted that motion on June 6, 2023.  *See* Order (ECF No. 35).

On June 9, Respondents filed a supplemental disclosure statement that redacted in their entirety the names of the individuals or entities with an ownership interest in X Holdings Corp., *see* Disclosure Statement at 1–5, seeking leave to maintain that information under seal, *see* Resp'ts' Admin. Mot. to Seal at 1–6 (ECF No. 36). Petitioners opposed sealing, objecting, in particular, that Respondents "refused to provide Petitioners' counsel with a copy of the document."  Pet'rs' Mem. of Law in Opp'n to Mot. to Seal at 1 (ECF No. 37).  After Respondents clarified that they would be willing to provide Petitioners—but not the public—with the information at issue, *see* Reply in Support of Resp'ts.' Admin. Mot. to Seal at 1 (ECF No. 38), this Court granted Respondents' motion in a summary order, *see* Order at 1 (ECF No. 39).

To vindicate the strong public interests at stake in public access to the Disclosure Statement—including not just the public's right to monitor the handling of these judicial proceedings but also its ability to understand the ownership of "the modern public square," *Packingham*, 582 U.S. at 107—Mr. Silverman seeks to intervene in this matter for the limited purpose of unsealing the Disclosure Statement.

## ARGUMENT

## I.     The motion to intervene should be granted.

The Ninth Circuit has made clear that "[n]onparties seeking access to a judicial record in a civil case may do so by seeking permissive intervention under Rule 24(b)." *San Jose Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096, 1100 (9th Cir. 1999); *see also Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir.

1992) (intervention granted to seek modification of protective order).  The question

of public access provides the "common question of law or fact" that Rule 24(b)(1)

requires, *see San Jose Mercury News*, 187 F.3d at 1100, and such a motion is timely

even if filed "years" after the records were sealed "where an intervenor is pressing the

public's right of access to judicial records." *Id.* at 1101; *accord* L.R. 79-5(g)(3)

(emphasizing that "non-parties may, at any time, file a motion" to unseal).  Mr.

Silverman's motion to intervene should therefore be granted under Rule 24(b)(1).

Mr. Silverman is also entitled to intervene as of right.  A journalist or "a news

agency has a legal interest in challenging a confidentiality order" that satisfies Rule

24(a)'s need for "an interest relating to the property or transaction that is the subject

of the underlying action."  *Ford v. City of Huntsville*, 242 F.3d 235, 240 (5th Cir.

2001).  That interest is not "adequately protected by the parties."  *San Jose Mercury

News*, 187 F.3d at 1101; *see also BP Expl. & Prod., Inc. v. Claimant ID 100246928*,

920 F.3d 209, 211 (5th Cir. 2019) ("Most litigants have no incentive to protect the

public's right of access.").[1]  And, as already explained above, intervention is timely.

Through either lens, because "representatives of the press and general public

must be given an opportunity to be heard on the question of their exclusion" when

public access is at stake, *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 609

---

[1]     Though Petitioners initially opposed Respondents' motion to seal when they understood it to be "actually seeking *in camera* review," Pet'rs' Mem. of Law in Opp'n to Mot. to Seal at 1 (ECF No. 37), the docket leaves unclear whether Petitioners continued to object after Respondents clarified that they would in fact be willing to provide Petitioners' counsel with the unredacted Disclosure Statement, *see* Reply in Supp. of Resp'ts' Admin. Mot. to Seal at 1 (ECF No. 38).

n.25 (1982) (citation and internal quotation marks omitted), Mr. Silverman's motion to intervene should be granted.

## II.     The Disclosure Statement should be unsealed.

Respondents have not justified—and cannot justify—keeping the contents of the Disclosure Statement secret.  In federal litigation, corporate disclosure statements are almost invariably available to the public:  Their relevance to evaluating conflicts of interest implicates "matters of utmost public concern," *Steel Erectors, Inc.*, 312 F.R.D. at 675 n.3 (internal citation omitted), and no countervailing interests favor secrecy because "the public disclosure that an individual has an ownership interest in an entity created by a state cannot be said to constitute a clearly defined and serious injury" that would justify abridging the public's understanding of the judicial process, *Darton Archery, LLC v. Bowtech, LLC*, No. 23-cv-140, 2023 WL 2755760, at *1 (D. Del. Apr. 3, 2023).  The First Amendment and common law require the same result here, where the heightened public interest in understanding the financial interests that shape free expression on one of the world's most widely used platforms is at stake.

### A.     The First Amendment and common law presumptions of public access attach to Rule 7.1 corporate disclosure statements.

"The law recognizes two qualified rights of access to judicial proceedings and records, a common law right 'to inspect and copy public records and documents, including judicial records and documents,' . . . and a 'First Amendment right of access'" to certain judicial proceedings and documents.  *United States v. Bus. of*

*Custer Battlefield Museum & Store*, 658 F.3d 1188, 1192 (9th Cir. 2011) (first

quoting *Nixon v. Warner Commc'ns., Inc.*, 435 U.S. 589, 597 (1978), then quoting

*Press-Enter. Co. v. Superior Court* (*Press-Enterprise II*), 478 U.S. 1, 8 (1986)).  Both

the First Amendment and common law presumptions of access attach to corporate

disclosure statements.

     In determining whether the First Amendment presumption attaches to a class of

records, courts look to the complementary and related considerations of "experience

and logic"—that is, "whether the place and process have historically been open to the

press and general public" and "whether public access plays a significant positive role

in the functioning of the particular process in question."  *Press-Enterprise II*, 478

U.S. at 8, 9.  Applying that framework, other federal courts have readily concluded

that the constitutional presumption of access attaches to disclosure statements.  *See*

*Steel Erectors, Inc.*, 312 F.R.D. at 675.  As to experience, public access to such

statements has been the historical rule and any degree of secrecy a "narrow

exception."  *Driver Opportunity Partners I, LP v. Ameriserv Fin., Inc.*, No. 3:22-cv-

00237, 2023 WL 4711158, at *3 (W.D. Pa. July 24, 2023); *see also, e.g.*, *Manssor v.*

*NRRM, LLC*, No. 23-cv-00236, 2023 WL 4093413, at *2 (W.D. Tex. June 20, 2023)

(corporate disclosure statements can be sealed only in "limited circumstances").

     Logic points in the same direction.  "[T]he corporate disclosure form is

required so that the court can evaluate issues of jurisdiction and recusal—issues that

are central to the performance of the judicial function and useful in the judicial

process." *Mayer v. Patriot Pickle Inc.*, No. 23-CV-1299, 2024 WL 162881, at *5 (W.D.N.Y. Jan. 16, 2024) (internal citation omitted).  Because of their relationship to judicial integrity, such disclosures implicate "matters of utmost public concern" at the heart of the public's right to supervise and understand the judicial process.  *Steel Erectors, Inc.*, 312 F.R.D. at 675 n.3 (internal citation omitted); *see also Ark. Tchr. Ret. Sys. v. State St. Bank & Tr. Co*., 404 F. Supp. 3d 486, 512 n.16 (D. Mass. 2018) (judicial records that implicate recusal "relat[e] to respect for the legal system" and therefore trigger "the presumption of a public right to court records").  As the U.S. Court of Appeals for the First Circuit recently observed in the related context of pseudonymity, obscuring the true parties-in-interest in a proceeding "dims the public's perception of the matter and frustrates its oversight of judicial performance;" impedes press and public scrutiny of "judicial conflicts of interest" or "ex parte contacts;" and ultimately undermines the public's ability to judge "whether justice was done." *Doe v. Mass. Inst. of Tech.*, 46 F.4th 61, 68 (1st Cir. 2022).  Both experience and logic,[2] then, make clear that the First Amendment presumption of access to judicial records attaches to corporate disclosure statements in particular.

---

[2]     As the Ninth Circuit has explained, either consideration standing alone can ground a presumption of access to a particular class of judicial records: "Where access has traditionally been granted to the public without serious adverse consequences, logic necessarily follows," *In re Copley Press*, 518 F.3d 1022, 1026 n.2 (9th Cir. 2008),  but "even without an unbroken history of public access, the First Amendment right" will attach "if public scrutiny would benefit the proceedings." *Id.* (internal citation and quotation marks omitted).  This case is especially straightforward, though, because both complementary considerations support a constitutional presumption of public access.

The common law both reinforces that conclusion and affords a separate basis for presuming public access to disclosure statements.  The common law guarantees "a strong presumption in favor of access to court records," *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003), one that attaches to any judicial record "more than tangentially related to the merits of a case," *Ctr. for Auto Safety v. Chrysler Group*, 809 F.3d 1092, 1101 (9th Cir. 2016).  Corporate disclosure statements easily clear that bar because of their necessity, as discussed above, to "evaluat[ing] issues of jurisdiction and recusal—issues that are central to the performance of the judicial function and useful in the judicial process."  *Mayer*, 2024 WL 162881 at *5 (internal citation omitted).  It is no wonder, then, that a raft of courts have recognized a common law presumption of access to such statements.[3]

In sum, whether under the First Amendment or common law, the clear weight of authority makes clear that the press and public have a presumptive right of access to the disclosure statement that Respondents filed with the Court in this proceeding.

---

[3]	*See, e.g.*, *Wilkins v. Tory Burch, LLC*, No. 4:23-cv-422, 2023 WL 3600084, at *1–2 (E.D. Mo. May 23, 2023);  *Wiens Cap. Mgmt., LLC v. Advoc. Consulting Legal Grp., PLLC*, No. 2:23-cv-81, 2023 WL 2435806, at *1–2 (M.D. Fla. Feb. 16, 2023); *Carlyle v. Cicatello*, No. 1:22-CV-61, 2022 WL 21794410, at *1 (M.D. Ga. Nov. 28, 2022); *WSOU Invs., LLC v. Salesforce, Inc.*, No. 6:20-cv-1163, 2023 WL 2213200, at *2 (D. Del. Feb. 24, 2023); *Darton Archery, LLC*, 2023 WL 2755760, at *1.  The lone exception of which Mr. Silverman is aware, *Best Odds Corp. v. iBus Media Ltd.*, No. 2:14-cv-00932, 2014 WL 5687730, at *2 (D. Nev. Nov. 4, 2014), was decided on the ground that corporate disclosure statements are "non-dispositive," *id.*—but the Ninth Circuit has since rejected the suggestion that the common law presumption of public access turns on whether a judicial record is literally "dispositive" in favor of the "more than tangentially related to the merits" test, *Ctr. for Auto Safety*, 809 F.3d at 1101.  *Best Odds* is therefore no longer good law.

**B.**  **Neither the First Amendment nor the common law presumption of public access is overcome with respect to the Disclosure Statement.**

Where the First Amendment presumption attaches to a judicial record, it may be overcome only if—and only to the extent that—"(1) closure serves a compelling interest; (2) there is a substantial probability that, in the absence of closure, this compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect the compelling interest." *Oregonian Publ'g Co. v. U.S. Dist. Court for Dist. of Oregon*, 920 F.2d 1462, 1466 (9th Cir. 1990). A party can only overcome the "strong" common law presumption, for its part, by demonstrating "compelling reasons . . . that outweigh the general history of access and the public policies favoring disclosure." *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178–79 (9th Cir. 2006) (citations omitted). In either analysis, blanket secrecy is disfavored because tailored redactions offer a less-restrictive alternative. *See id.* at 1183–85; *United States v. Index Newspapers LLC*, 766 F.3d 1072, 1093 (9th Cir. 2014). Here, where the Disclosure Statement implicates both the "public interest in disclosure of companies with whom a federal judge may have a conflict of interest," *Steel Erectors, Inc.*, 312 F.R.D. at 675, and the public's ability to understand the ownership of "the modern the public square," *Packingham*, 582 U.S. at 107, no showing Respondents might attempt could justify sealing the Disclosure Statement.

For one, as any number of courts have held in this same posture, "[p]ublic disclosure that an individual has an ownership interest in an entity created by a state

cannot be said to constitute an injury.  Corporations and LLCs may offer individuals protection from liability, but they don't entitle individuals to anonymity in court proceedings." *WSOU Investments*, 2023 WL 2213200, at *2.[4]   And it makes no difference whether the individuals or entities at issue invested in X Holdings Corp. "with a commitment from [Respondents] to maintain the privacy of their personal information," because Respondents "purposefully commenced this action" in this Court by opting to remove it.  *Driver Opportunity Partners I*, 2023 WL 41158, at *3; *see also Wiens Cap. Mgmt.*, 2023 WL 2435806, at *2 (denying motion to seal disclosure statement because parties "who chose to initiate suit in federal court . . . had to have known" that the information's public filing would be required).

The keen public interest in the information in question only underlines that Respondents cannot justify secrecy here.  The possible influence of a social media platform's ownership on its content and privacy practices is a subject of recurring— and legitimate—public controversy, as Musk's own explanations for acquiring Twitter highlight.  *See* Goswami, *supra*.  Only a few months ago, Congress adopted new legislation to ratchet up regulatory scrutiny of platforms controlled by "foreign adversaries," Protecting Americans from Foreign Adversary Controlled Applications Act, Pub. L. No. 118-50 (Apr. 24, 2024), and the President and members of Congress have raised similar concerns over the degree of control major foreign investors may

---

[4]    *Accord Mayer*, 2024 WL 162881, at *4; *Darton Archery, LLC*, 2023 WL 2755760, at *1; *Wiens Cap. Mgmt.*, 2023 WL 2435806, at *1–2; *Manssor*, 2023 WL 4093413, at *2; *Driver Opportunity Partners I*, 2023 WL 4711158, at *3; *Carlyle*, 2022 WL 21794410, at *1.

have over X Corp., *see* Faiz Siddiqui et al., *U.S. Exploring Whether It Has Authority to Review Musk's Twitter Deal*, Wash. Post (Nov. 1, 2022), https://perma.cc/4NYC-ETFS; Rebecca Kern, *Musk's Foreign Investors In Twitter Are 'Worthy' of Review, Biden Says*, POLITICO (Nov. 9, 2022),  https://bit.ly/3RFfp9Q.  The public involvement of the Kingdom of Saudi Arabia's Prince Alaweed bin Talal al Saud, *see* Shaban & Siddiqui, *supra*, has drawn special scrutiny because of the Kingdom's history of infiltrating Twitter to collect sensitive information on dissidents, *see* Patrice Taddonio, *How Saudi Arabia Weaponized Twitter to Target MBS Critics*, PBS (Nov. 7, 2019), https://perma.cc/W274-JPTK.  But any number of journalists and news organizations have raised broader concerns about the possibility that X Corp.'s financial interests have influenced its greater willingness, since Musk's purchase of the platform, to remove content at the request of authoritarian governments.  *See* María Antonia Sánchez-Vallejo, *Under Elon Musk, Twitter Has Approved 83% of Censorship Requests by Authoritarian Governments*, El País (May 24, 2023), https://perma.cc/PQJ8-CLFA.  Whether those apprehensions are well-founded or not, the public has an obvious interest in understanding who controls the companies operating "perhaps the most powerful mechanisms available to a private citizen to make his or her voice heard."  *Packingham*, 582 U.S. at 107.

Taken together, the balance of interests tips dramatically in favor of access. Respondents have only ever offered conclusory assertions that disclosure of its ownership information—apparently unlike disclosure of the ownership information of

the legions of other corporate entities that litigate daily, in sunlight, in the federal courts—would cause unspecified harm to its business.  Whether under the First Amendment or the common law, the Disclosure Statement must be unsealed.

## CONCLUSION

For the foregoing reasons, Mr. Silverman respectfully requests that the Court grant his motion to intervene and enter an order unsealing the Disclosure Statement.

Dated: July 3, 2024

s/ *Katie Townsend*
Katie Townsend
REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS

*Counsel for Non-Party Intervenor*
JACOB SILVERMAN