1  KATIE TOWNSEND (SBN 254321)
   ktownsend@rcfp.org
2  GRAYSON CLARY*
     * admitted pro hac vice
3  REPORTERS COMMITTEE FOR
   FREEDOM OF THE PRESS
4  1156 15th Street NW, Suite 1020
   Washington, D.C. 20005
5  Telephone: (202) 795-9300
   Facsimile: (202) 795-9310
6

7  JEAN-PAUL JASSY (SBN 220513)
     jpjassy@jassyvick.com
8  JASSY VICK CAROLAN LLP
   355 South Grand Avenue, Suite 2450
9  Los Angeles, California 90071
   Telephone:    310-870-7048
10 Facsimile:    310-870-7010
11

12 NICHOLAS R. HARTMANN (SBN 301049)
     nhartmann@jassyvick.com
13 JASSY VICK CAROLAN LLP
   601 Montgomery Street, Suite 800
14 San Francisco, California 94111
   Telephone:    415-539-3399
15 Facsimile:    415-539-3394
16

   *Counsel for Non-Party Intervenor*
17 JACOB SILVERMAN

18                UNITED STATES DISTRICT COURT
19              NORTHERN DISTRICT OF CALIFORNIA

20
   SARAH ANOKE et al.,                    Case No. 3:23-cv-02217-SI
21
                      Petitioners,        **REPLY IN SUPPORT OF MOTION OF
22                                         NON-PARTY JACOB SILVERMAN TO
                                           INTERVENE AND UNSEAL JUDICIAL
23         v.                              RECORDS**

24 TWITTER, INC. et al.,
                                          DATE: August 23, 2024
25                    Respondents.        TIME: 10:00AM
26
                                          Judge: Hon. Susan Illston
27

28

# TABLE OF CONTENTS

**Page:**

TABLE OF AUTHORITIES ...................................................................................................... iii

SUMMARY OF ARGUMENT ................................................................................................... 1

ARGUMENT ............................................................................................................................. 2

I.      This Court has jurisdiction to consider whether to unseal its own records. ........................... 2

II.     The motion to intervene should be granted. ............................................................................ 3

        A.      The motion to intervene is timely. .............................................................................. 3

        B.      Respondents are not prejudiced by being held to their burden to show compelling reasons to justify sealing the Disclosure Statement. ...................................................... 5

III.    The Disclosure Statement should be unsealed. ....................................................................... 6

        A.      The First Amendment requires access to the Disclosure Statement. ........................... 6

        B.      The common law requires access to the Disclosure Statement. ................................... 9

        C.      Even under a good-cause standard, the Disclosure Statement should be unsealed. .. 10

CONCLUSION ....................................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s):**

**Cases:**

*Ark. Tchr. Ret. Sys. v. State St. Bank & Tr. Co.*,
   404 F. Supp. 3d 486 (D. Mass. 2018) .......................................... 9

*Beckman Indus., Inc. v. Int'l Ins. Co.*,
   966 F.2d 470 (9th Cir. 1992) ..................................................*passim*

*Best Odds Corp. v. iBus Media Ltd.*,
   No. 2:14-cv-00932, 2014 WL 5687730 (D. Nev. Nov. 4, 2014).................... 9

*Blum v. Merrill Lynch Pierce Fenner & Smith Inc.*,
   712 F.3d 1349 (9th Cir. 2013) ....................................... 1, 4, 5

*Cosgrove v. Nat'l Fire & Marine Ins. Co.*,
   770 F. App'x 793 (9th Cir. 2019) .................................... 2, 3, 5

*Courthouse News Serv. v. Planet*,
   947 F.3d 581 (9th Cir. 2020) .............................................. 6

*Ctr. for Auto Safety v. Chrysler Grp.*,
   809 F.3d 1092 (9th Cir. 2016) ........................................... 9, 10

*Darton Archery, LLC v. Bowtech, LLC*,
   No. 23-cv-140, 2023 WL 2755760 (D. Del. Apr. 3, 2023) ....................... 2

*Doe v. Mass. Inst. of Tech.*,
   46 F.4th 61 (1st Cir. 2022) ................................................ 7

*El Vocero de Puerto Rico v. Puerto Rico*,
   508 U.S. 147 (1993) ....................................................... 7

*Gambale v. Deutsche Bank AG*,
   377 F.3d 133 (2d Cir. 2004) ............................................... 3

*Globe Newspaper Co. v. Super. Ct.*,
   457 U.S. 596 (1982) ..................................................... 7, 8

*Grosjean v. Am. Press Co.*,
   297 U.S. 233 (1936) ....................................................... 10

*Hagestad v. Tragesser*,
   49 F.3d 1430 (9th Cir. 1995) .............................................. 2

*In re Copley Press*,
   518 F.3d 1022 (9th Cir. 2008) ........................................... 1, 7

*In re Marriage of Burkle*,
   135 Cal. App. 4th 1045 (2006) ........................................... 2, 8

*Lucy Chi v. Univ. of S. Cal.*,
   No. 2:18-cv-04258, 2019 WL 3315282 (C.D. Cal. May 21, 2019)................. 6

*Mayer v. Patriot Pickle Inc.*,
   No. 23-CV-1299, 2024 WL 162881 (W.D.N.Y. Jan. 16, 2024).................... 9

*Milliner v. Mut. Secs. Inc.*,
  No. 15-cv-03354, 2021 WL 2645794 (N.D. Cal. June 28, 2021) .................................. 6

*Mokhiber v. Davis*,
  537 A.2d 1100 (D.C. Cir. 1988) ........................................................................................ 4

*Muhaymin v. City of Phoenix*,
  No. CV-17-04565, 2021 WL 5173767 (D. Ariz. Nov. 3, 2021) .................................. 1, 6

*Nixon v. Warner Commc'ns, Inc.*,
  435 U.S. 589 (1978) ........................................................................................................... 2

*Overstock.com, Inc. v. Goldman Sachs Group, Inc.*,
  231 Cal. App. 4th 471 (2014) ............................................................................................ 8

*Packingham v. North Carolina*,
  582 U.S. 98 (2017) .................................................................................................. 2, 8, 10

*Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*,
  307 F.3d 1206 (9th Cir. 2002 .......................................................................................... 10

*Press-Enterprise Co. v. Super. Ct.*,
  464 U.S. 501 (1984) ........................................................................................................... 8

*Pub. Citizen v. Liggett Grp., Inc.*,
  858 F.2d 775 (1st Cir. 1988) ............................................................................................. 4

*San Jose Mercury News, Inc. v. U.S. Dist. Ct.*,
  187 F.3d 1096 (9th Cir. 1999) .................................................................................. 3, 4, 5

*Steel Erectors, Inc. v. AIM Steel Int'l, Inc.*,
  312 F.R.D. 673 (S.D. Ga. 2016) ..................................................................................... 2, 8

*Valley Bank of Nev. v. Super. Ct.*,
  15 Cal. 3d 652 (1975) ..................................................................................................... 1, 8

**Other Authorities:**

Nate Raymond & Moira Warburton, *Congress Approves Tougher Financial Disclosure Rules for
  U.S. Judges*, Reuters (Apr. 27, 2022) ............................................................................. 7

**Rules:**

L.R. 79-5 ............................................................................................................................. 4, 5

1

**SUMMARY OF ARGUMENT**

2     Respondents—conceding, as they must, that "corporate disclosure statements are generally

3 publicly available on court dockets," Resps.' Opp'n at 21 (ECF No. 47)[1]—are so unable to justify

4 sealing the one they filed in this case that they lead their opposition with a patently meritless claim

5 that this Court lacks jurisdiction to consider whether to unseal its own records.  That argument is

6 squarely foreclosed by Circuit precedent, as Respondents should have informed the Court.  *See*

7 *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992) (holding that "no

8 independent jurisdictional basis is needed" where a movant intervenes to modify a sealing order).

9 The rest of Respondents' arguments stand on no firmer ground.

10     As to intervention, Respondents acknowledge that the only relevant question is timeliness,

11 *see* Resps.' Opp'n at 13–14, and have nothing to counter the "consensus among the courts of

12 appeals that intervention to challenge confidentiality orders may take place long after a case has

13 been terminated," *Blum v. Merrill Lynch Pierce Fenner & Smith Inc.*, 712 F.3d 1349, 1353 (9th Cir.

14 2013) (citation omitted).  Timeliness is measured relative to prejudice, *see id.* at 1354, and the only

15 prejudice Respondents point to is that they must litigate the issue of continued secrecy and might

16 lose, *see* Resp.'s Opp'n at 12.  But the fact that Respondents "need to explain why the relevant

17 records should remain sealed is not, itself, unduly prejudicial.  It is, after all, their burden to

18 establish that either good cause or compelling reasons justify curtailing the public's right to access

19 judicial records." *Muhaymin v. City of Phoenix*, No. CV-17-04565, 2021 WL 5173767, at *2 (D.

20 Ariz. Nov. 3, 2021).

21     The merits are likewise straightforward.  As Respondents concede, "corporate disclosure

22 statements are generally publicly available," Resps.' Opp'n at 26; that tradition of access settles that

23 a First Amendment presumption of access applies, *see In re Copley Press*, 518 F.3d 1022, 1026 n.2

24 (9th Cir. 2008) ("[w]here access has traditionally been granted to the public," the constitutional

25 presumption attaches).  And the entirety of Respondents' effort to show a countervailing interest

26 sufficient to overcome that presumption rests on the faulty claim that California recognizes a

27

28

---

[1]     Throughout this reply, citations to filings in this action use the internal pagination of the document in question.

constitutional right not to file corporate-disclosure information.  *Compare* Resps.' Opp'n at 18 (citing *Valley Bank of Nev. v. Super. Ct.*, 15 Cal. 3d 652, 656 (1975)), *with In re Marriage of Burkle*, 135 Cal. App. 4th 1045, 1063 (2006) (*Valley Bank* "does not mean that parties who come to court, voluntarily or not, are entitled to privacy in respect of court records that are . . . presumptively public records").  Were that the case, Local Rule 3-15 would be invalid in all its applications, and corporate disclosure statements would be sealed in each and every case heard in this District.

That is not the law.  Whether under the First Amendment, common law, or good cause, the result is ultimately the same: "Public disclosure that an individual has an ownership interest in an entity created by a state cannot be said to constitute a clearly defined and serious injury," *Darton Archery, LLC v. Bowtech, LLC*, No. 23-cv-140, 2023 WL 2755760, at *1 (D. Del. Apr. 3, 2023).  Respondents' bare desire to keep their Disclosure Statement secret trumps neither the "public interest in disclosure of companies with whom a federal judge may have a conflict of interest," *Steel Erectors, Inc. v. AIM Steel Int'l, Inc.*, 312 F.R.D. 673, 675 & n.3 (S.D. Ga. 2016), nor the public's interest in understanding the ownership of "the modern public square," *Packingham v. North Carolina*, 582 U.S. 98, 107 (2017).  For the reasons herein and in Mr. Silverman's opening memorandum of law, the Disclosure Statement should be unsealed.

## ARGUMENT

### I.    This Court has jurisdiction to consider whether to unseal its own records.

Respondents lead with an extended argument that this Court lacks jurisdiction to consider whether to unseal its own records in light of the remand.  That argument is frivolous.  "Every court has supervisory power over its own records," *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978), which is why "[a] third party seeking permissive intervention purely to unseal a court record does not need to demonstrate independent jurisdiction," *Cosgrove v. Nat'l Fire & Marine Ins. Co.*, 770 F. App'x 793, 795 (9th Cir. 2019); *see also Beckman*, 966 F.2d at 473 (because motions to intervene to modify a sealing order "ask the court only to exercise that power which it already has . . . no independent jurisdictional basis is needed").

The Ninth Circuit has repeatedly held that non-parties may intervene to unseal judicial records in closed cases, even where the court would otherwise lack jurisdiction to revisit the merits

of the action.  *See Cosgrove*, 770 F. App'x at 794–95; *Beckman*, 966 F.3d at 473; *cf. Hagestad v. Tragesser*, 49 F.3d 1430, 1433–35 (9th Cir. 1995) (district court had jurisdiction to enter sealing order, and to reconsider it after reversal, despite otherwise lacking subject-matter jurisdiction over post-dismissal proceedings).  Yet despite filling several pages with citations to cases that are transparently inapposite because they all involved efforts to intervene "on the merits[,]" *Beckman*, 966 F.2d at 473, Respondents found no room to inform the Court of Circuit precedent on the issue. The law is clear: "The court's supervisory power" over its own records "does not disappear because jurisdiction over the relevant controversy has been lost.  The records and files are not in limbo." *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 141 (2d Cir. 2004).  The remand is irrelevant to this Court's jurisdiction to unseal its own records, the Disclosure Statement included.

## II.    The motion to intervene should be granted.

Respondents' second bid to avoid the merits is a lengthy objection to Mr. Silverman's intervention.  They believe they will be "prejudiced" because he may "succeed[] in unsealing the Statement."  Resps.' Opp'n at 12.  But Respondents' fear that they will fail to persuade the Court on the merits is not a valid reason to deny intervention.  Courts routinely revisit sealing orders when a journalist presents more thorough arguments for access than the parties did, even where "years" have passed since an action was dismissed.  *San Jose Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096, 1101 (9th Cir. 1999).  It is so routine, in fact, that the Ninth Circuit has instructed district courts to simply proceed to the merits in that posture.  *See Cosgrove*, 770 F. App'x at 795 ("In ruling on a motion to intervene for this purpose, a court *must* evaluate whether the countervailing interests opposing public disclosure can overcome the presumption in favor of it." (emphasis added)).  The same holds here.

### A.    The motion to intervene is timely.

As Respondents agree, when a non-party moves to intervene for the limited purpose of unsealing judicial records, the only question to be addressed is timeliness.[2]  *See* Resps.' Opp'n at

---

[2]    Mr. Silverman maintains that intervention as of right is also proper for the reasons stated in his opening memorandum.  But because the permissive intervention inquiry is straightforward—and avoids a question the Ninth Circuit has not yet addressed—this Reply focuses there.

14.  And the answer is clear: "[D]elays measured in years have been tolerated where an intervenor is pressing the public's right of access to judicial records," *San Jose Mercury News*, 187 F.3d at 1101, because where a right of access exists, "it exists today for the records of cases decided a hundred years ago as surely as [it] does for lawsuits now in the early stages of motions litigation," *Pub. Citizen v. Liggett Grp., Inc.*, 858 F.2d 775, 786 (1st Cir. 1988) (internal citation omitted).

   Respondents have failed to surface a single case in which a journalist or news organization was denied leave to intervene to unseal judicial records on timeliness grounds.  Indeed, their insistence that Mr. "Silverman's request to intervene in a long-closed case over which the Court lacks jurisdiction simply cannot be construed as timely," is flatly foreclosed by Ninth Circuit precedent.  Resps.' Opp'n at 12.  This jurisdiction—and every other—follows the "consensus among the courts of appeals that intervention to challenge confidentiality orders may take place long after a case has been terminated."  *Blum*, 712 F.3d at 1353 (internal citation omitted) (collecting cases); *see also Beckman*, 966 F.2d at 471 (two years after case was closed). Respondents likewise make no effort to square their argument with the Local Rules, which expressly provide that non-parties may file a motion to unseal "at any time"—and in fact recognize "a strong presumption that the document will be unsealed" if "a motion to unseal is filed more than 3 years after the case is closed."  L.R. 79-5(g)(3).

   Rather than engage that authority, Respondents claim Mr. Silverman had a standalone burden to account for his movements in the months before filing his motion.  *See* Resps.' Opp'n at 12–13.  He did not.  The "reason for" delay—if any—is a "factor[]" to be weighed in judging whether the passage of time caused prejudice, *San Jose Mercury News*, 187 F.3d at 1101, not a pleading requirement, *see Mokhiber v. Davis*, 537 A.2d 1100, 1105 (D.C. 1988) (even movant who had "no excuse for [a] one-year delay" was not untimely where pressing the right of access).  After all, it "would make little sense"—and waste judicial resources—"to deny [Mr. Silverman] intervention merely because he had known about the case for a single year while allowing intervention, for example, by a college student who has just begun her senior thesis on the topic." *Mokhiber*, 537 A.2d at 1105.  More fundamentally, the passage of time is relevant only if it causes prejudice.  *See Blum*, 712 F.3d at 1354 ("Rule 24(b)'s timeliness requirement is to prevent prejudice

1  in the adjudication of the rights of the existing parties" (internal citation omitted)).  And as

2  discussed below, Respondents' arguments as to their purported prejudice not only have nothing to

3  do with the timing of Mr. Silverman's motion, they lack merit on their own terms.

**B.      Respondents are not prejudiced by being held to their burden to show
compelling reasons to justify sealing the Disclosure Statement.**

6       Prejudice is rarely, if ever, a bar to a motion to intervene to unseal judicial records:

7  "[A]ssuming an intervenor does assert a legitimate, presumptive right to open the court record of a

8  particular dispute, the potential burden or inequity to the parties should affect not the right to

9  intervene but, rather, the court's evaluation of the merits of the applicant's motion[.]"  *San Jose*

10 *Mercury News*, 187 F.3d at 1101.  In other words, whether Respondents can demonstrate any harm

11 if the Disclosure Statement is unsealed is a merits question, not a reason to avoid reaching the

12 merits.  *See Cosgrove*, 770 F. App'x at 795.  And the rule in this jurisdiction, as Local Rule 79-5

13 reflects, is that prejudice can rarely, if ever, be found in closed cases.  *See Blum*, 712 F.3d at 1354

14 (prejudice "not present when the existing parties have settled their dispute and intervention is for a

15 collateral purpose" (internal citation omitted)).

16      Respondents offer no basis for departing from that rule here.  Again, they fail to cite a single

17 case denying a journalist's motion to intervene to unseal judicial records on the basis of prejudice to

18 the parties.  Instead, Respondents object without citation to "relitigating this same issue once again,

19 which the Court has already ruled on," and complain that they do not want Mr. Silverman to

20 "succeed[] in unsealing the [Disclosure] Statement."  Resps.' Opp'n at 12.  But those objections

21 describe every motion to intervene in a closed case—they have nothing to do with whether Mr.

22 Silverman intervened one day or one decade after this Court's initial order—and as already

23 discussed above, the Ninth Circuit repeatedly has made clear that intervention to unseal records in

24 closed cases is proper.  *See Blum*, 712 F.3d at 1353; *San Jose Mercury News*, 187 F.3d at 1101;

25 *Beckman*, 966 F.2d at 471; L.R. 79-5(g)(3).

26

27

28

Courts routinely revisit an initial sealing order after a journalist intervenes to present more complete arguments—even if the issue has just been litigated.[3]  *See Lucy Chi v. Univ. of S. Cal.*, No. 2:18-cv-04258, 2019 WL 3315282, at *1 (C.D. Cal. May 21, 2019) (partially reversing a sealing order several days after it was issued because of the *Los Angeles Times*' intervention).  And in that analysis, courts place no thumb on the scale for the prior result.  *See Milliner v. Mut. Secs. Inc.*, No. 15-cv-03354, 2021 WL 2645794, at *3 (N.D. Cal. June 28, 2021) (rejecting the argument that a motion to intervene to revisit a sealing order is an "improper motion for reconsideration").  At base, Respondents' only complaint is that they "will need to explain why the relevant records should remain sealed."  *Muhaymin*, 2021 WL 5173767, at *2.  That is not prejudice.  "It is, after all, [Respondents'] burden to establish that either good cause or compelling reasons justify curtailing the public's right to access to judicial records."  *Id.*  And as Respondents' efforts to avoid the issue underline, they cannot meet that burden here.

**III.     The Disclosure Statement should be unsealed.**

Conceding that "corporate disclosure statements are generally publicly available on court dockets," Resps.' Opp'n at 21, Respondents contend their Disclosure Statement should be kept uniquely secret.  The reasons they offer—which would describe every such statement—do not satisfy their burden under any plausibly relevant standard: not the First Amendment, not common law, and not good cause.

**A.     The First Amendment requires access to the Disclosure Statement.**

"[B]oth our common experience and the logical extension of First Amendment principles leads to the conclusion that the press's right of access to civil proceedings and documents fits squarely within the First Amendment's protections."  *Courthouse News Serv. v. Planet*, 947 F.3d 581, 591 (9th Cir. 2020) (internal citation and alteration omitted).[4]  The same considerations of

---

[3]     Respondents' insistence that Petitioners already said all there is to say on the issue of sealing is transparently incorrect.  It is clear from the papers that Mr. Silverman has raised arguments that Petitioners did not.  And in any event, Petitioners did not appeal the sealing order; non-party intervention is the only means of adequately protecting the public's independent interest in access.

[4]     Again, Respondents' brief failed to draw the Court's attention to binding Circuit precedent.  *See* Resps.' Opp'n at 19 n.7 (citing a 2019 decision to argue that "a court within this district

1   experience and logic make clear that the presumption attaches to corporate disclosure statements in

2   particular.  As Respondents concede, experience supports a First Amendment presumption of access

3   to disclosure statements.  *See* Resps.' Opp'n at 26.  And that ends the analysis: "Where access has

4   traditionally been granted to the public without serious adverse consequences, logic necessarily

5   follows.  It is only where access has traditionally not been granted that we look to logic."  *In re*

6   *Copley Press*, 518 F.3d at 1026 n.2.

7       Logic, in any event, would lead to the same result.  Respondents' suggestion that public

8   access to disclosure statements plays no positive role in the judicial process is, frankly, ridiculous.

9   Courts have forthrightly recognized the "contribution to governance of investigative reporting" that

10  exposes "judicial conflicts of interest."  *Doe v. Mass. Inst. of Tech.*, 46 F.4th 61, 68–69 (1st Cir.

11  2022) (internal citation omitted).  Just three years ago, an investigation by the *Wall Street Journal*

12  relied on corporate disclosure statements to surface nearly 700 cases in which more than 100 federal

13  judges had improperly failed to recuse—prompting a wave of vacated rulings, reforms from the

14  Judicial Conference, and bipartisan legislation.  *See* Nate Raymond & Moira Warburton, *Congress*

15  *Approves Tougher Financial Disclosure Rules for U.S. Judges*, Reuters (Apr. 27, 2022),

16  https://bit.ly/4c5ABNr.

17      Without experience or logic to stand on, Respondents lean on a non-sequitur, arguing that

18  "while corporate disclosure statements are generally publicly available on court dockets, the

19  information regarding the identities of privately held companies' shareholders is not publicly

20  available information."  Resps.' Opp'n at 26.[5]  That attempt to conflate the two stages of the right of

21  access inquiry is precisely the type of gambit the Supreme Court squarely rejected in *Globe*

22  *Newspaper*.  There, Massachusetts attempted to evade the presumption of access to criminal trials

23  by disputing the history of access to "the testimony of minor sex victims" in particular.  *Globe*

24

---

25  questioned whether the First Amendment standard even applied to access to civil proceedings"
    without acknowledging the Ninth Circuit's contrary holding in *Courthouse News* in 2020).

26  [5]      Respondents also include an extended comparison of the local rules of this Court and the
    Southern District of Georgia, but it is difficult to understand why:  The First Amendment "does not

27  look to the particular practice of any one jurisdiction, but instead to the experience in that *type* or
    *kind* of hearing throughout the United States[.]"  *El Vocero de Puerto Rico v. Puerto Rico*, 508 U.S.

28  147, 150 (1993) (per curiam) (internal citation omitted).

1    *Newspaper Co. v. Super. Ct.*, 457 U.S. 596, 605 n.13 (1982).  But the Justices rejected that evasion,

2    emphasizing that the presumption of access attaches to criminal trials "as a general matter" and

3    "[w]hether the First Amendment right of access to criminal trials can be restricted in the context of

4    any particular criminal trial . . . depends not on the historical openness of that type of criminal trial

5    but rather on the state interests assertedly supporting the restriction."  *Id.*  So too here.  Whatever

6    information Respondents happen to have included in *this* Disclosure Statement, they cannot avoid

7    confronting the presumption of access to such statements "as a general matter."  *Id*

8         And as to this Disclosure Statement, Respondents cannot carry their burden to show that

9    sealing "is essential to preserve higher values and is narrowly tailored to serve that interest."  *Press-*

10   *Enterprise Co. v. Super. Ct.*, 464 U.S. 501, 510 (1984).  The entirety of Respondents' discussion of

11   countervailing interests is this: "Article I, section 1 of the California Constitution provides a

12   constitutional inalienable right to privacy, which includes the privacy of a person's financial

13   information, such as investments and financial holdings."  Resps.' Opp'n at 18 (citing *Valley Bank*,

14   15 Cal. 3d at 656)).  But California law says no such thing.  Setting aside the fact that *Valley Bank*

15   dealt with consumer banking information—not a corporation's ownership information—that case

16   spoke to the scope of *discovery*; it has nothing to say about the standard for sealing judicial records.

17   *See Overstock.com, Inc. v. Goldman Sachs Group, Inc.*, 231 Cal. App. 4th 471, 504 (2014)

18   (distinguishing *Valley Bank* on that ground); *see also In re Marriage of Burkle*, 135 Cal. App. 4th at

19   1063 (*Valley Bank* "does not mean that parties who come to court, voluntarily or not, are entitled to

20   privacy in respect of court records that are . . . presumptively public records").  Otherwise, there

21   would be no public corporate disclosure statements in this District.

22        As Mr. Silverman's opening memorandum explained, the overwhelming weight of

23   persuasive authority that *has* dealt with corporate-ownership information holds that avoiding

24   disclosure of an ownership interest is not a valid interest—let alone a compelling one.  *See* Mem. of

25   P. & A. at 21 & n.4 (collecting cases).  Respondents have offered nothing that would overcome "the

26   public interest in disclosure of companies with whom a federal judge may have a conflict of

27   interest," *Steel Erectors*, 312 F.R.D. at 675, to say nothing of the heightened public interest in

28   understanding who owns one of "the most powerful mechanisms available to a private citizen to

1  make his or her voice heard." *Packingham*, 582 U.S. at 107.  The First Amendment requires public

2  access to the Disclosure Statement.

3  **B.    The common law requires access to the Disclosure Statement.**

4  Respondents likewise cannot justify secrecy under the common law, which would require

5  showing "compelling reasons . . . that outweigh the general history of access and the public policies

6  favoring disclosure." *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178–79 (9th Cir.

7  2006) (citations omitted).  Protesting that burden, Respondents insist that "[t]he Statement was not

8  part of any dispositive motion and was not tangentially or even remotely related in any way to the

9  merits of this action." Resps.' Opp'n at 2.  That claim makes no sense.  It would have been a grave

10  ethical breach for this Court to rule on *any* of the substantive motions filed in this case *without* first

11  considering the Disclosure Statement and evaluating whether to recuse; that is surely not what

12  happened.  And because consideration of the Disclosure Statement is a mandatory prerequisite to

13  this Court's power to adjudicate the case at all, other courts have had no difficulty concluding such

14  statements are "central to the performance of the judicial function." *Mayer v. Patriot Pickle Inc.*,

15  No. 23-CV-1299, 2024 WL 162881, at *5 (W.D.N.Y. Jan. 16, 2024) (internal citation omitted).

16  The point of the common law presumption is to promote "confidence in the administration of

17  justice," *Ctr. for Auto Safety v. Chrysler Grp.*, 809 F.3d 1092, 1096 (9th Cir. 2016) (internal citation

18  omitted), and no issue is more central to "respect for the legal system" than the possible existence of

19  grounds for recusal.  *Ark. Tchr. Ret. Sys. v. State St. Bank & Tr. Co*., 404 F. Supp. 3d 486, 512 n.16

20  (D. Mass. 2018).

21  Respondents continue to cling to *Best Odds Corp. v. iBus Media Ltd.*, No. 2:14-cv-00932,

22  2014 WL 5687730 (D. Nev. Nov. 4, 2014).  But as Mr. Silverman's opening brief explained, *Best

23  Odds* was decided under a standard that the Ninth Circuit rejected in *Center for Auto Safety*, and it

24  appears to have never been cited by any other court for its analysis of the issue.  No wonder,

25  because the decision's entire analysis of whether a presumption of access attached is this sentence:

26  "iBus Media Limited's motion is non-dispositive." *Id.* at *2.  But even putting that aside, *Best Odds*

27  is distinguishable on its own terms.  The statement there was sealed "as a prophylactic against

28  potential litigation abuses that will needlessly increase the cost of litigation."  *Id.* at *3; *see also id.*

at *1 (noting that the plaintiff had "a history of filing baseless 'strike' suits" and allegedly had filed the case solely "to discover the identity of Defendants' parent corporations in order to create additional leverage").

As the Ninth Circuit has explained, courts may justifiably guard against that sort of risk on a case-by-case basis. *See Ctr. for Auto Safety*, 809 F.3d at 1102 (noting that Rule 11 sanctions, not shrinking the reach of the right of access, would be the remedy if litigants used frivolous litigation to publicize information for improper purposes). But here, Respondents have not argued—and would have no basis to argue—that Mr. Silverman's motion has anything other than a journalistic purpose. Indeed, Respondents do not even respond to Mr. Silverman's discussion of the public interests at stake. The legitimate public interest in access to the Disclosure Statement is substantial, and the common law, too, requires that it be unsealed.

C.      **Even under a good-cause standard, the Disclosure Statement should be unsealed.**

Even if a good-cause standard applied (it does not), secrecy still would be improper in light of the strong public interests favoring transparency. "For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted," *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002). And even where that showing is made, the court must go on to "balance[] the public and private interests" at stake. *Id.* at 1211. As discussed above, Respondents have not offered a legitimate interest in support of secrecy and there is nothing "specific" at all about their showing, which would apply to every corporate disclosure statement filed in this District. *Id.* Mr. Silverman, for his part, seeks to unseal the Disclosure Statement for a legitimate—and for that matter vital—purpose: To promote "informed public opinion" on "the public and business affairs of the nation," *Grosjean v. Am. Press Co.*, 297 U.S. 233, 250 (1936), by enabling the public to better understand the ownership of one of "the most important places . . . for the exchange of views" in contemporary American life, *Packingham*, 582 U.S. at 104. Even under a good-cause analysis, the relevant balance of interests weighs heavily in favor of access.

**CONCLUSION**

For the foregoing reasons, Mr. Silverman respectfully requests that the Court grant his motion to intervene and enter an order unsealing the Disclosure Statement.

Dated: August 2, 2024

s/ *Katie Townsend*
Katie Townsend
REPORTERS COMMITTEE FOR FREEDOM
OF THE PRESS

s/ *Nicholas Ryan Hartmann*
Nicholas Ryan Hartmann
JASSY VICK CAROLAN LLP

*Counsel for Non-Party Intervenor*
JACOB SILVERMAN